**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-20862-BLOOM/Otazo-Reyes**

MILLENNIUM FUNDING, INC.,
a Nevada corporation, *et al.*,

    Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a
LIQUIDVPN, a Puerto Rico limited
liability company, *et al.*,

    Defendants.

_____/

**ORDER ON PLAINTIFFS' *EX PARTE* MOTION FOR TEMPORARY ASSET
RESTRAINT, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY**

**THIS CAUSE** is before the Court upon Plaintiffs Millennium Funding, Inc., Hunter Killer Productions, Inc., Voltage Holdings, LLC, 211 Productions, Inc., AMBI Distribution Corp., After Productions, LLC, After II Movie, LLC, Morgan Creek Productions, Inc., Eve Nevada, LLC, Bedeviled LLC, Millennium Media, Inc., Colossal Movie Productions, LLC, Day of Dead Productions, Inc., YAR Productions, Inc., FSMQ Film, LLC, FW Productions, LLC, I Am Wrath Production, Inc., Killing Link Distribution, LLC, Badhouse Studios, LLC, LF2 Productions, Inc., LHF Productions, Inc., Venice PI, LLC, Rambo V Productions, Inc., Rupture CAL, Inc., MON, LLC, SF Film, LLC, Speed Kills Productions, Inc., Millennium IP, Inc., Nikola Productions, Inc., Wonder One, LLC, Bodyguard Productions, Inc., Millennium SPVH, Inc., Outpost Productions, Inc., Definition Delaware LLC, Hannibal Classics Inc., Justice Everywhere Productions LLC, State of the Union Distribution and Collections, LLC, Paradox Studios, LLC, Dallas Buyers Club, LLC, Screen Media Ventures, LLC (collectively, "Copyright Plaintiffs") and 42 Ventures, LLC's

("42") (collectively with the Copyright Plaintiffs "Plaintiffs") *Ex Parte* Motion for Temporary Asset Restraint, Preliminary Injunction and Expedited Discovery, ECF No. [28] ("Motion"), pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), The All Writs Act, 28 U.S.C. § 1651(a), and Federal Rule of Civil Procedure 65.

Specifically, Plaintiffs request that the Court (1) issue a temporary restraining order ("TRO") ordering (a) PayPal, Inc. to freeze the PayPal accounts owned or controlled by Defendants 1701 Management LLC, AUH2O LLC, Charles Muszynski, and Michael Gamache ("LiquidVPN Defendants"); (b) Orchid Labs, Inc. ("Orchid") to freeze any funds (including, but not limited to, cryptocurrency such as OXT) owned or controlled by the LiquidVPN Defendants; (c) any U.S.-based financial institutions that are associated with said PayPal and/or Orchid accounts or hold funds of the LiquidVPN Defendants to freeze any funds in the account upon receiving notice of the TRO; (d) domain registrar Enom, Inc. to lock the domain liquidvpn.com owned by the LiquidVPN Defendants to prevent transfer to a third party; (2) issue an order to show cause why the temporary restraining order should not be converted into a preliminary injunction; and (3) permit Plaintiffs to conduct limited expedited discovery directed to Orchid and PayPal in order to determine the amount and location of the profits of the LiquidVPN Defendants' infringements, and the scope of their activities for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the Copyright Act, 17 U.S.C. § 101, *et seq*. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

This action was originally initiated on March 3, 2021. *See* ECF No. [1]. On May 5, 2021, Plaintiffs filed their First Amended Complaint, ECF No. [24] ("FAC"), seeking injunctive relief

and damages against the LiquidVPN Defendants, and others, asserting claims for direct copyright infringement, contributory copyright infringement by intentional inducement, contributory copyright infringement based on material contribution, vicarious infringement, violations of the Digital Millennium Copyright Act ("DMCA"), injunctive relief for contributory infringement, trademark infringement, federal unfair trade competition, breach of contract, unjust enrichment, and breach of publicity rights. *See generally id.*

### A. The Parties

Copyright Plaintiffs own the copyrights for specific motion pictures, a list of which is attached to the FAC. ECF No. [24-1] ("Works"). These Works are available for sale in commerce. *See* ECF No. [28-1] ¶¶ 3-10, 20. Plaintiff 42 is the owner of federal trademark registration number 5,963,253 for the mark Popcorn Time, which issued on January 14, 2020, on the principal register of the United States Patent and Trademark Office. ECF No. [25-4] ("Mark"). Plaintiff 42 distributes and streams licensed content under the Popcorn Time trademark throughout the country on one or more websites on U.S. top-level domains. *See* ECF No. [25] ¶¶ 4-7. For example, Plaintiff 42 streams in-depth humorous movie reviews called "Reel Reviews™" and debates concerning motion pictures and pop culture called "Nerd Wars™" from the website http://popcorntime4u.com/ under the registered trademark "Popcorn Time" through an agreement with Andy Signore.[1] *See id.* ¶ 4. Plaintiff 42 alleges that it has invested substantial time, effort, and financial resources in promoting its Popcorn Time Mark in connection with the marketing and sale of its website and applications in interstate commerce and engaging with content owners for licensed content. *See id.* ¶¶ 4-7.

---

[1] Andy Signore is the creator of the popular YouTube® channel Popcorned Planet (since 2009) and former executive producer of the Emmy-nominated series Honest Trailers (nominated in 2016 and 2017).

The LiquidVPN Defendants operate Virtual Private Network ("VPN") services[2] under the names "LiquidVPN" and "Popcorn Time VPN." *See* ECF No. [25-1] ¶¶ 6-13, 20. Defendant Charles Muszynski ("Muszynski"), in his capacity as manager of Defendant 1701 Management LLC ("1701"), purchased the LiquidVPN business from David Cox on February 12, 2019. ECF No. [28-3] at 28-39. Defendant Michael Gamache ("Gamache") was also extensively involved in the management and operation of LiquidVPN after it was purchased by 1701. *Id.* ¶¶ 35-36.

Plaintiffs argue that the LiquidVPN Defendants are all jointly and severally liable for the infringements in this case because 1701 and AUH2O LLC ("AUH2O") are simply alter egos for Muszynski and Gamache. Additionally, Plaintiffs take the position that the LiquidVPN Defendants consistently try to hide their true identities through the use of shell corporations and aliases to avoid liability on the copyright and trademark infringements, and that the requested TRO is necessary to prevent the LiquidVPN Defendants from dissipating assets or transferring the domain name in order to thwart this litigation.

To that end, Plaintiffs allege that Muszynski is the sole member of AUH2O (a Nevis limited liability company) and 1701 (a Puerto Rican limited liability company). ECF No. [24] ¶ 75. Muszynski has also indicated that 1701 and AUH2O are "simply [] different shelf compan[ies] into which [] assets are placed." ECF No. [28-3] ¶ 12. Plaintiffs contend that Muszynski used one of his alter egos, 1701, to purchase LiquidVPN, and used his other alter ego, AUH2O, to sell bandwidth VPN services. Indeed, Plaintiffs contend that, while 1701 owns LiquidVPN, AUH2O

---

[2] For context, a VPN is a type of Internet Service for transmitting, routing, and/or or providing connections for said transmitting and routing, through a network that provides access to the Internet. A conventional Internet Service Provider ("ISP") will assign its subscriber an Internet Protocol ("IP") address and log the subscriber's activities on the Internet while using the assigned IP address. In comparison, many VPN providers provide their subscribers "anonymous" usage by, for example, not logging subscriber access, assigning the subscriber IP addresses that are simultaneously shared among many users, and/or encrypting traffic. A VPN provider often receives IP addresses and colocation services from a larger data center, like Defendant QuadraNet, Inc. *See* ECF No. [24] ¶¶ 123, 143.

receives funds from Orchid for selling bandwidth on the LiquidVPN network to the Orchid Network in exchange for cryptocurrency. *See* ECF No. [24] ¶ 92; *see also* ECF No. [28-3] ¶¶ 17-18; *id.* at 54-65 (contractual agreement between AUH2O and Orchid).

Moreover, Plaintiffs state that Muszynski and Gamache both use the alias "Jamie Castro" on LiquidVPN's website and that they registered and purchased domains with the Registrar Namecheap under this same alias. *See* ECF No. [28-3] ¶¶ 30-34 (reflecting that the name Jamie Castro was used to register various domains including LiquidVPN.com and legalshame.co); *see also* ECF No. [28-4] ¶¶ 24-27. In addition, Plaintiffs assert that Muszynski operates the website "LEGAL SHAME" (https://legalshame.co/), where he sells his strategies for hiding assets from the government and creditors, writing under the alias of Frederick Douglas. *See* ECF No. [28-3] ¶¶ 28-30. David Cox, the previous owner of LiquidVPN, also indicated that Muszynski and Gamache continue to portray him as an employee of LiquidVPN who runs the day-to-day operations, despite the fact that Cox has not had any involvement with LiquidVPN since 2019. Moreover, Cox noted that Muszynski and Gamache continue to list Cox's dissolved former corporation, LiquidVPN, Inc., as the mailing address for LiquidVPN. *See id.* ¶¶ 38-39.

Plaintiffs' counsel has provided a copy of the Final Judgment of Dissolution of Marriage from the state court divorce proceedings between Muszynski and his ex-wife. *See* ECF No. [28-4] at 8-23. The order states that Muszynski "consistently failed to follow through on his financial obligations to Wife and to the family. Wife has had to file numerous motions for contempt throughout this litigation because of [Muszynski's] failure to cooperate." *Id.* at 17.

B. **Relevant Facts**

To the extent that they are relevant to this Motion, the facts that give rise to the claims in this case are as follows. The LiquidVPN Defendants promote their VPN service as a tool to

"[w]atch Popcorn Time without being detected by your ISP and P2P tracking software," and describe the service as a mechanism through which to stream content "without the risk of getting caught by your ISP or anyone else." ECF No. [25-1] ¶¶ 10-12, 20. On their website, LiquidVPN characterizes Popcorn Time as "a very popular content streaming service that uses the BitTorrent protocol to provide a Netflix-like experience for free." *Id.* ¶ 13.[3] Thus, the LiquidVPN Defendants advertise the use of their Popcorn Time VPN as being essentially risk free due to the anonymous IP addresses offered. *See id.* ¶¶ 10-12. The LiquidVPN Defendants further describe the LiquidVPN service as one that "fully supports bittorrent and P2P . . . . We will never censor P2P or BitTorrent . . . . In fact, we have pulled out of locations because they did not like our policies on P2P and bit torrent[.]" *Id.* ¶ 15. Likewise, the LiquidVPN website states that it is a "DMCA Free Zone: We do not have the ability to forward DMCA notices to users running BitTorrent, Popcorn Time or IPTV services." *Id.* ¶ 16. Relevant here, Popcorn Time offers its users nearly instantaneous access to huge quantities of purportedly infringing content. *See* ECF No. [28-2] ¶¶ 23-27 (describing in detail how Popcorn Time functions).

Generally, once installed, Popcorn Time provides a user-friendly interface for searching and watching copyright-protected content. A user can search through thumbnail images of thousands of titles, including Plaintiff Eve Nevada LLC's motion picture *Ava*. *See, e.g.*, ECF No. [25-1] ¶ 25 (Figure 1). The user can also search for specific content by, for example, typing "Hunter Killer" into the search bar to find Plaintiff Hunter Killer Production, Inc.'s Work, *Hunter Killer*. *See id.* ¶ 26. By pressing the "DOWNLOAD" button, Popcorn Time connects the user to torrent sources in order to download a complete, high resolution (1080p) copy of Works, such as

---

[3] Plaintiffs note that the Popcorn Time service promoted by the LiquidVPN Defendants is a piracy software application so notorious that the United States Trade Representative ("USTR") placed it on a list of examples of Notorious Markets engaged in and facilitating substantial piracy. *See* ECF No. [24] ¶ 160 (citing USTR, 2020 Review of Notorious Markets, Jan. 14, 2021, p. 26).

Copyright Plaintiffs' *Hunter Killer*, *Shock and Awe*, and *Survivor*. *See id*. ¶¶ 28-29. These torrent sources are illegal sources of copyrighted content that enable Popcorn Time users to stream or download unauthorized copies of popular motion pictures and television shows, including the Copyright Plaintiffs' Works.

The LiquidVPN Defendants contracted with a Florida company, Reliable.Net LLC ("Reliable"), to use its data center, facility, and dedicated servers in Miami, Florida. Reliable received IP addresses from Choopa LLC ("Choopa") and then reassigned the IP addresses in this facility to the LiquidVPN Defendants. *See* ECF No. [24] ¶¶ 87-88. Among the IP addresses the LiquidVPN Defendants received from Reliable was IP address 108.61.128.241, which was hosted on a server in the Miami facility. *See* ECF No. [25-5]; *see also* ECF No. [25-2] ¶ 18.

Plaintiffs engaged Maverickeye UG (haftungsbeschränkt) ("MEU") to monitor P2P/BitTorrent networks, capture evidence of acts of distribution of Plaintiffs' Works, and generate infringement notices to be sent by Plaintiffs' agents to the ISPs assigned to the offending IP addresses. *See* ECF No. [25-2] ¶ 6. David Cox also identified many of the IP addresses currently assigned to and used by the LiquidVPN Defendants. *See* ECF No. [28-3] ¶¶ 41-43; *see also id.* at 48-50. As a result of this investigation, in May of 2019, Plaintiffs' agent sent more than 40 notices to Choopa concerning confirmed acts of distributions of Plaintiffs' Works *Automata* and *I Feel Pretty* at IP address 108.61.128.241. *See* ECF No. [25-2] ¶ 18. This IP address was hosted on a server in Miami that had been reassigned from Choopa to Reliable and from Reliable to the LiquidVPN Defendants. *See id.*; *see also* ECF No. [25-9] at 4-7. Choopa promptly forwarded these notices to Reliable, who forwarded them to the designated abuse contact e-mail address at LiquidVPN. *See* ECF No. [24] ¶¶ 219-23.

The LiquidVPN Defendants also contracted with QuadraNet to use QuadraNet's data

7

center and dedicated servers in its Miami facility. As a result, QuadraNet reassigned IP addresses in this facility to the LiquidVPN Defendants. *See* ECF No. [28-3] ¶¶ 3, 42; *see also id.* at 46-47. Among the IP addresses the LiquidVPN Defendants received from QuadraNet was IP address 104.223.91.202. *See* ECF No. [25-2] ¶ 10. Plaintiffs' agent sent over 5,450 notices to LiquidVPN concerning infringements of Plaintiffs' Works at IP addresses QuadraNet had assigned to the LiquidVPN Defendants. *See id.* ¶¶ 10-11. The LiquidVPN Defendants took no action in response to any of these notices. Indeed, the LiquidVPN Defendants are not even monitoring the e-mail address for receiving abuse notices. *See* ECF No. [28-3] ¶ 40.

On October 27, 2020, Plaintiffs' counsel sent a letter to Muszynski, 1701, and 1701's counsel concerning the alleged copyright infringements prior to filing the initial complaint in this action but received no response. *See* ECF No. [28-4] ¶ 21; ECF No. [24] ¶ 289; ECF No. [25-9].

**C. This Motion**

After filing the initial complaint on March 3, 2021, 1701 and Muszynski[4] were each served with process. *See* ECF Nos. [9] & [21]. Likewise, after Plaintiffs filed their FAC on May 5, 2021, each of the LiquidVPN Defendants was served with the FAC. *See* ECF No. [45] (1701 served with FAC on May 25, 2021); ECF No. [34] (Muszynski served with FAC on May 6, 2021); ECF No. [39] (Gamache served with FAC on May 21, 2021); ECF No. [49] (AUH2O served with FAC on June 3, 2021). Ultimately, 1701, Muszynski, and AUH2O failed to timely answer or respond to the FAC, and a Clerk's Default was entered against each of them. *See* ECF Nos. [52], [53], & [69]. Gamache, on the other hand, appeared and submitted a timely Motion to Dismiss, ECF No. [62], which the Court has since denied as moot upon being notified that Plaintiffs and Gamache had reached a settlement agreement, *see* ECF Nos. [82] & [85].

---

[4] Gamache and AUH2O were not named defendants in the initial complaint.

Importantly, however, none of the LiquidVPN Defendants have received notice of this Motion, nor have they been given an opportunity to respond. Instead, Plaintiffs argue that an *ex parte* temporary restraining order is appropriate in this case because, without it, "Plaintiffs will likely suffer irreparable harm because the LiquidVPN Defendants will transfer the funds from their PayPal and Orchid accounts to a different provider in a foreign jurisdiction," or will transfer the liquidvpn.com domain name to a third party. ECF No. [28] at 15. Plaintiffs believe that Muszynski's repeated attempts to evade liability and disregard court orders, along with the LiquidVPN Defendants' efforts to conceal their true identities, justifies granting *ex parte* relief. Plaintiffs also request permission to conduct limited expedited third-party discovery directed at PayPal and Orchid in order to uncover additional accounts related to LiquidVPN and to gain a clearer understanding of the scope of each Defendant's involvement in the infringing acts.

## II. LEGAL STANDARD

Generally, a party seeking a preliminary injunction or a temporary restraining order must show: (1) a substantial likelihood of success on the merits; (2) a likelihood of immediate and irreparable harm to the movant in the absence of preliminary relief; (3) that the harm to movant outweighs any injury an injunction may cause the non-movant; and (4) that granting the injunction would not disserve the public interest. *See Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir. 1999). "The movant has the burden of proof as to each of these elements[.]" *Sprint Commc'ns, Inc. v. Calabrese*, No. 18-cv-60788, 2018 WL 6653079, at *4 (S.D. Fla. July 5, 2018) (citing *Cafe 207, Inc. v. St. Johns Cnty.*, 989 F.2d 1136, 1137 (11th Cir. 1993)), *report and recommendation adopted*, 2018 WL 6653070 (S.D. Fla. Nov. 7, 2018). "If any element is not proven, there is no need to address the others" and the injunction should be denied. *Safarelli v. Pinellas Cnty.*, 931 F.2d 718, 724 (11th Cir. 1991). Further, obtaining a TRO requires a showing that the injury is

"neither remote nor speculative, but actual and *imminent*." *Siegel v. Lepore*, 234 F.3d 1163, 1176-77 (11th Cir. 2000) (citations omitted) (emphasis added). "A District Court can [also] order an asset freeze as part of [] injunctive relief only with respect to assets in which an equitable interest is claimed and established." *Textron Fin. Corp. v. Unique Marine, Inc.*, No. 08-10082-CIV, 2008 WL 4716965, at *5 (S.D. Fla. Oct. 22, 2008) (citing *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 318-33 (1999)).

Additionally, Federal Rule of Civil Procedure 65(b)(1) states:

The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney *only if*:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1) (emphasis added).

"The requirements of Rule 65(b)(1) are not merely technical niceties that a court may easily disregard, but rather [are] crucial safeguards of due process." *Vaughan v. Bank of Am., N.A.*, No. 10-0453-KD-N, 2010 WL 3273052, at *1 (S.D. Ala. Aug. 18, 2010). Thus, "[t]o obtain *ex parte* relief, a party must strictly comply with these requirements." *Emerging Vision, Inc. v. Glachman*, No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010), *report and recommendation adopted*, 2010 WL 3293351 (S.D. Fla. Aug. 11, 2010). To that end, a movant cannot circumvent their obligation to justify proceeding *ex parte* "by merely pointing to the merits of its claims. Indeed, such an argument would swallow Rule 65(b)(2)'s requirement that the court consider not only the 'need for the restraining order,' but also 'the need for proceeding *ex parte*.'" *Adobe Sys., Inc. v. S. Sun Prod., Inc.*, 187 F.R.D. 636, 641 (S.D. Cal. 1999) (citations omitted).

> The normal reason for proceeding without notice is that the opposing side is unable to be found or the identity of the opposing side is unknown. *First Tech. Safey Sys. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). In some limited circumstances, proceeding without notice is also justified upon a showing that notice would lead to the destruction of evidence. *Id.* at 650-51. "The stringent restrictions imposed . . . on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted to both sides of a dispute." *Granny Goose Foods. Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438-39 (1974).

*Glob. HTM Promotional Grp. v. Angel Music Grp.*, No. 06-20441-CIV, 2006 WL 8432722, at *1 (S.D. Fla. Mar. 1, 2006).

Indeed, an *ex parte* TRO is viewed as an extreme remedy "to be used only with the utmost caution," *Levine v. Camcoa Ltd.*, 70 F.3d 1191, 1194 (11th Cir. 1995) (Hill, C.J., concurring), and "very few circumstances" justify granting such relief, *Glachman*, 2010 WL 3293346, at *4 (quoting *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)). "This stringent scrutiny 'is particularly warranted . . . where the Defendants are unaware that judicial proceedings have been commenced and the relief [Plaintiffs] request is drastic.'" *Glachman*, 2010 WL 3293346, at *4 (quoting *Dent Zone Network, LLC v. Heritage Admin. Co.*, No. 4:03-cv-195, 2003 WL 21183706, at *1 (E.D. Tex. May 21, 2003)). Ultimately, TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc.*, 415 U.S. at 439; *see also Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974) ("There is always a status quo. There should not be a preliminary injunction to protect it, however, unless the court's ability to render a meaningful decision on the merits would otherwise be in jeopardy.").[5]

---

[5] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit issued prior to October 1, 1981.

### III. ANALYSIS

In their Motion, Plaintiffs seek an *ex parte* TRO freezing the LiquidVPN Defendants' PayPal and Orchid accounts, along with any related accounts at other U.S.-based financial institutions, as "Plaintiffs will likely suffer irreparable harm because the LiquidVPN Defendants will transfer the funds from their Paypal and Orchid accounts to a different provider in a foreign jurisdiction." ECF No. [28] at 15. Plaintiffs also request a TRO freezing the liquidvpn.com domain name to prevent the LiquidVPN Defendants from transferring the domain to a third party. Lastly, Plaintiffs' Motion seeks permission to conduct limited expedited discovery relating to the PayPal and Orchid accounts.[6]

#### A. Injunctive Relief Without Notice Under Rule 65(b)(1)

Before addressing whether the four injunctive relief factors have been established, however, the Court must first determine whether Plaintiffs have sufficiently justified their failure to give notice to the LiquidVPN Defendants. *See Dragados USA, Inc. v. Oldcastle Infrastructure, Inc.*, No. 20-cv-20601, 2020 WL 733037, at *2 (S.D. Fla. Feb. 13, 2020); *Glachman*, 2010 WL 3293346, at *3. In seeking *ex parte* injunctive relief, Plaintiffs must satisfy the requirements of Rule 65(b)(1) regarding (a) their obligation to set forth "specific facts in an affidavit or a verified complaint [which] clearly show that [they will suffer] immediate and irreparable injury, loss, or damage" before the LiquidVPN Defendants can be heard on this Motion, and (b) the requirement that Plaintiffs' counsel "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Plaintiffs submitted multiple affidavits in support of their FAC and this Motion, the contents of which are largely detailed above. Also included

---

[6] The Motion also mentions conducting discovery directed towards "CloudFare," ECF No. [28] at 25, but aside from this passing reference, there is no mention of CloudFare in the remainder of Plaintiffs' Motion.

among these attachments is the Affidavit of Kerry S. Culpepper, Plaintiffs' counsel. *See* ECF No. [28-4] ("Culpepper Affidavit").

Ms. Culpepper explains that she has served as counsel on copyright infringement cases on numerous occasions, specifically on cases relating to piracy, and her experience has taught her that providing notice of this type of Motion will likely result in the dissipation of funds from the LiquidVPN Defendants' PayPal and Orchid accounts. *Id.* ¶¶ 2-9, 18. Likewise, the Culpepper Affidavit states:

> Based upon my prior experience dealing with Defendants engaged in massive piracy similar to the Defendants in the present matter, the Liquid VPN Defendants' deceptive tactics of concealing their true names and address [sic] when flagrantly violating federal copyright and trademark laws, Muszynski openly promoting (and selling) strategies to avoid tax liability and compliance with Court orders, and my understanding of the business dealings of the LiquidVPN Defendants, I believe that the LiquidVPN Defendants will transfer their funds from PayPal and Orchid to an account outside of this Court's jurisdiction if I send them a copy of this motion for a TRO.

*Id.* ¶ 29. Ms. Culpepper believes that, without the requested *ex parte* TRO, the LiquidVPN Defendants will transfer the liquidvpn.com website domain to a third party and transfer the funds from their PayPal and Orchid accounts to foreign jurisdictions, based on their litigation history, online behavior, and course of practice of concealing their identities. According to Plaintiffs, the transfer of the LiquidVPN Defendants' domain name and account funds would cause them immediate and irreparable injury and would leave them without any recourse.

As the United States Supreme Court has explained, the circumstances justifying the issuance of an *ex parte* TRO are extremely limited. *See Granny Goose Foods, Inc.*, 415 U.S. at 438-39 ("Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."). Pursuant to Rule 65(b)(1), courts have granted *ex parte* TROs "where notice to the

adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing." *Reno Air Racing Ass'n, Inc.*, 452 F.3d at 1131. Courts have also recognized "a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Id.*

Here, neither Plaintiffs nor Ms. Culpepper have indicated that providing notice to the LiquidVPN Defendants is impossible. In fact, their Motion presents little to no discussion about providing any such notice to the LiquidVPN Defendants at all. *See Xylem, Inc. v. Church*, No. 8:19-cv-304-T-33TGW, 2019 WL 459144, at *3 (M.D. Fla. Feb. 6, 2019) (the plaintiffs' "failure to provide the information required under Rule 65(b)(1)(B) is fatal to its request for TRO without notice" (citing *Living v. Merscorp Inc.*, No. 1:10-cv-3410-JEC-JFK, 2010 WL 11552958, at *3 (N.D. Ga. Oct. 26, 2010), *report and recommendation adopted*, 2010 WL 11553003 (N.D. Ga. Dec. 17, 2010))). This omission fails to comply with Rule 65(b)(1), and Plaintiffs cannot evade the rule's requirements and "obtain an *ex parte* restraining order by merely pointing to the merits of [their] claims. Indeed, such an argument would swallow Rule 65(b)(2)'s requirement that the court consider not only the 'need for the restraining order,' but also 'the need for proceeding *ex parte*.'" *Johnson & Johnson v. Xs Supply, LLC*, No. 8:19-cv-1673-T-33AEP, 2019 WL 11025502, at *2 (M.D. Fla. July 11, 2019) (quoting *Adobe Sys., Inc.*, 187 F.R.D. at 641).

Moreover, although Plaintiffs argue that they will suffer immediate and irreparable harm if their Motion is denied, this position is speculative and belied by the history of this case. Specifically, the Court notes that, more than four months before initiating this action, on October 27, 2020, Plaintiffs sent Muszynski and 1701 a letter regarding their alleged copyright infringements. *See* ECF No. [25-9] at 1-3. Furthermore, 1701 and Muszynski were also served with the initial complaint in this matter in mid-March and mid-April 2021, respectively. *See* ECF

14

Nos. [9] & [21].[7] Thus, the record reflects that Muszynski and 1701 were notified of this lawsuit and the nature of the claims asserted for several months prior to the instant Motion being filed, and Plaintiffs have not alleged any specific facts to establish the purported irreparable harm suffered as a result of Muszynski and 1701's notice during those months.[8] Notably, "the speculative assertion that Defendants may attempt to [dissipate assets] does not absolve Plaintiffs' responsibility to even attempt to give notice of its Motion for Temporary Restraining Order." *Johnson & Johnson*, 2019 WL 11025502, at *2.

As they have not even attempted to provide the LiquidVPN Defendants with notice here, the Court concludes that Plaintiffs have failed to sufficiently establish that providing notice to the LiquidVPN Defendants would have any effect on the prosecution of this action, as required under Rule 65(b)(1). *See Woodard-CM, LLC v. Sunlord Leisure Prod., Inc.*, No. 20-cv-23104, 2020 WL 5547917, at *2 (S.D. Fla. July 29, 2020); *Ensida Energy Afs, LLC v. Gardi*, No. 19-cv-60541, 2019 WL 8888212, at *2 (S.D. Fla. Mar. 5, 2019); *Applied Concepts Unleashed, Inc. v. Matthews*, No. 12-cv-14035, 2012 WL 13015057, at *2 (S.D. Fla. Feb. 6, 2012).

**B. Temporary Restraining Order Elements**

As discussed above, the four factors that courts consider in determining whether to grant a TRO or a preliminary injunction are the same. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005). Namely, a movant must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the

---

[7] The initial complaint in this case alleged similar claims for relief as those in the FAC and sought similar monetary and injunctive relief. *See generally* ECF No. [1].

[8] Notably, Plaintiffs take the position that AUH2O is Muszynski's alter ego, which would suggest that AUH2O was also on notice of these proceedings prior to this Motion being filed. Moreover, as Gamache has reached a settlement agreement with Plaintiffs as to the claims asserted against him, *see* ECF Nos. [82] & [85], the Court need not address him here.

threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Id.* at 1225-26 (citing *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995); *Siegel*, 234 F.3d at 1176).

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). In other words, "[t]he purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler*, 403 F.3d at 1231 (citing *Canal Auth. of State of Fla.*, 489 F.2d at 572). As such, a court does not need to address each element of injunctive relief when "no showing of irreparable injury was made." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990); *see also United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) ("unnecessary to address the other prerequisites to such relief" when a movant does "not carry the burden as to irreparable harm"); *Siegel*, 234 F.3d at 1176 ("the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper" even if a plaintiff established a likelihood of success on the merits (internal citations omitted)).

> A showing of irreparable harm is "the *sine qua non* of injunctive relief." *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir. 1978). The injury must be "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989). An injury is "irreparable" only if it cannot be undone through monetary remedies. "The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson*, 415 U.S. at 90[.].

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285.

The Eleventh Circuit has made clear that "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). "Indeed, the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* "Delay, or too much of it, indicates that a suit or request for injunctive relief is more about gaining an advantage (either commercial or litigation advantage) than protecting a party from irreparable harm." *Badillo v. Playboy Entm't Grp.*, No. 8:04-cv-591-T-30TBM, 2004 WL 1013372, at *2 (M.D. Fla. Apr. 16, 2004) (citing *Pippin v. Playboy Entm't Grp.*, No. 8:02-cv-2239-T-30EAJ, 2003 WL 21981990, at *2 (M.D. Fla. July 1, 2003)). For these reasons, the law in this Circuit is now well established that "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id.*

> In determining whether to deny a request for a TRO based on a plaintiff's delay, two time periods are relevant in determining whether a plaintiff acts promptly in seeking judicial relief: (1) a plaintiff cannot delay in filing a complaint after discovering a potential infringer, and (2) a plaintiff must move quickly in filing a motion for a preliminary injunction once a complaint has been filed. *See Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 771-72 (E.D. Mich. 2003) ("Although plaintiffs were aware of the alleged effects of SaveNow on their businesses as early as August, 2002, they delayed nine months before bringing a motion for injunctive relief. Plaintiffs' delay in seeking a preliminary injunction undermines their allegation of irreparable harm."). If *either* is unreasonably delayed, a finding of irreparable harm is significantly weakened.

*Menudo Int'l, LLC v. In Mia. Prod., LLC*, No. 17-cv-21559, 2017 WL 4919222, at *5 (S.D. Fla. Oct. 31, 2017).

Here, the record reflects that Plaintiffs were aware of the LiquidVPN Defendants' alleged infringement long before they sent Muszynski and 1701 the letter detailing the acts of copyright infringement on October 27, 2020. *See* ECF No. [25-9] at 1-3. Despite being on notice of this infringing conduct, Plaintiffs delayed filing the instant action for over four more months, or until

17

March 3, 2021. *See* ECF No. [1]. Moreover, Plaintiffs chose not to move for a TRO after filing their initial complaint. Instead, on May 5, 2021, over six months after contacting Muszynski and 1701 regarding their alleged copyright infringement and two months after initiating this action, Plaintiffs filed their FAC. *See* ECF No. [24]. The next day, Plaintiffs filed the instant Motion. ECF No. [28].

Based on the timeline of this case and the precedent in this Circuit on delays in seeking injunctive relief, the Court is unpersuaded by Plaintiffs' claim that they will suffer immediate, irreparable harm without an *ex parte* TRO. Rather, if Plaintiffs were "'concerned about a harm truly believed to be irreparable,' [they] would have acted 'swiftly to protect [themselves.]'" *Menudo Int'l, LLC*, 2017 WL 4919222, at *6 (quoting *Berber v. Wells Fargo Bank, N.A.*, No. 16-24918-CIV, 2017 WL 2417960, at *4 (S.D. Fla. June 2, 2017)). Indeed, "it is not uncommon for courts to deny a preliminary injunction in the face of unexplained delays of more than two months." *InVue Sec. Prod. Inc. v. Vanguard Prod. Grp.*, No. 8:18-cv-2548-T-33SPF, 2019 WL 4671143, at *6 (M.D. Fla. July 1, 2019), *report and recommendation adopted*, 2019 WL 4673755 (M.D. Fla. Aug. 15, 2019); *see also Wreal*, 840 F.3d at 1247-49 (denying a motion for preliminary injunction because movant waited five months after filing the complaint); *Car Body Lab, Inc. v. Lithia Motors, Inc.*, No. 21-cv-21484, 2021 WL 2652774, at *9 (S.D. Fla. June 21, 2021) (no irreparable harm after ten-month delay), *report and recommendation adopted*, 2021 WL 3404040 (S.D. Fla. Aug. 4, 2021); *Diversified Sols., Inc. v. Ohwook! Prods., Inc.*, No. 21-cv-10039, 2021 WL 1601834, at *2 (S.D. Fla. Apr. 23, 2021); *U.S. Structural Plywood Integrity Coal. v. PFS Corp.*, No. 19-cv-62225, 2020 WL 6544489, at *5 n.8 (S.D. Fla. Nov. 6, 2020) (denying requested injunction in a Lanham Act case because the nine-month delay under the facts meant that irreparable harm could not be established and choosing to not analyze the other three factors);

*Roberts v. Swearingen*, No. 8:18-cv-1062-T-33TGW, 2018 WL 4620707, at *2 (M.D. Fla. Sept. 26, 2018) (denying preliminary injunction motion based in part on four-month delay); *Badillo*, 2004 WL 1013372, at *2 (preliminary injunction denied in part due to a nine-month delay); *Seiko Kahushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp.2d 1350, 1355-56 (S.D. Fla. 2002) ("[A] plaintiff's delay in seeking an injunction in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement" (internal quotation marks omitted)). As such, in the absence of good cause—which they have not submitted—Plaintiffs cannot establish irreparable harm after a four- to six-month delay in moving for injunctive relief. Moreover, because Plaintiffs have not established irreparable harm, the Court need not address the remaining elements of a TRO. *See Ne. Fla. Chapter of the Ass'n of Gen. Contractors*, 896 F.2d at 1285; *see also Nnadi v. Richter*, 976 F.2d 682, 690 (11th Cir. 1992) (Plaintiffs, "as movant[s], bore the burden of proving each of these four factors." (citing *Canal Authority*, 489 F.2d at 573)).

In sum, Plaintiffs have failed to meet their burden of establishing irreparable harm and, as such, a basis for the issuance of a temporary restraining order.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' *Ex Parte* Motion, **ECF No. [28]**, is **DENIED**.

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 13, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:  Counsel of Record