# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO.: 1:21-cv-20862-BB

MILLENNIUM FUNDING, INC., et al.,

      Plaintiffs,

v.

1701 MANAGEMENT, LLC DBA
LIQUIDVPN, et al.,

      Defendants.

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS QUADRANET, INC.'S AND QUADRANET ENTERPRISES, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST <u>AMENDED COMPLAINT</u>

JOEL B. ROTHMAN
Florida Bar No. 98220
joel.rothman@sriplaw.com
CRAIG A. WIRTH
Florida Bar Number: 125322
craig.wirth@sriplaw.com
**SRIPLAW**
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

and

Kerry S. Culpepper
*Admitted pro hac vice*
**CULPEPPER IP, LLLC**
75-170 Hualalai Road, Suite B204
Kailua-Kona, HI 96740
808.464.4047 – Telephone
kculpepper@culpepperip.com
*Attorney for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................. 1

II.   BRIEF FACTUAL ALLEGATIONS ................................................................... 3

III.  BRIEF PROCEDURAL HISTORY ..................................................................... 8

IV.  APPLICABLE LEGAL STANDARD ................................................................. 9

V.   ARGUMENT - PERSONAL JURISDICTION AND VENUE............................. 10

   A. Florida's Long Arm Statute Clearly Provides Jurisdiction Over Defendants................... 10

     1.   Defendants Are Mere Alter Egos. ........................................................... 11

     2.   Defendants' Florida Contacts Are Imputed To Each Other Because They Are Mere Alter Egos. ...................................................... 12

     3.   Plaintiffs Have Rebutted the Declaration of Ilan Mishan........................... 13

   B.   Venue in this District is Proper .............................................................. 15

VI.  ARGUMENT – THE CLAIMS AGAINST DEFENDANTS IN THE SAC ARE ADEQUATELY PLED ........................................................................................ 16

   A.   The Second Amended Complaint is not an impermissible "Shotgun Pleading". .......... 16

   B.   The Complaint adequately pleads a claim for contributory infringement based upon material contribution against Defendants. ........................... 18

     1.   Defendants' Subscribers Are Direct Infringers. ..................................... 18

     2.   Defendants' Intent Is Imputed from Their Knowledge. ............................ 22

     3.   The SAC Points Out Simple Measures Defendants Could Have Taken. ........... 23

     4.   The SAC Adequately Pleads Defendants' Material Contribution.................. 24

   C.   The SAC Sufficiently Pleads a Claim for Vicarious Copyright Liability..................... 27

   D.   Plaintiffs' Claims for Negligence and Fraud Are Not Preempted by The Copyright Act 29

   E.   Plaintiffs Adequately Plead Negligent Misrepresentation. ........................... 30

   F.   Plaintiffs Adequately Plead Fraudulent Misrepresentation............................ 32

   G.   Plaintiffs Adequately Plead Their Claims for Equitable Estoppel. ........................ 35

VII. CONCLUSION.................................................................................................. 36

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABC, Inc. v. Aereo, Inc.*,
  573 U.S. 431, 134 S. Ct. 2498 (2014) ........................................................................... 26

*Affordable Aerial Photography, Inc. v. Modern Living Real Estate, LLC*,
  No. 19-cv-80488-BLOOM/Reinhart ............................................................................. 27

*Aldea Communications, Inc. v. Gardner*,
  725 So.2d 456 (Fla. Dist.Ct.App.1999) ......................................................................... 12

*ALS Scan, Inc. v. Steadfast Networks, Ltd. Liab. Co.*,
  819 F. App'x 522 (9th Cir. 2020) ................................................................................... 24

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................................... 9

*AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*,
  608 F. Supp. 2d 1349 (S.D. Fla. 2009) ............................................................................ 9

*Baggett v. Electricians Local 915 Credit Union*,
  620 So. 2d 784 (Fla. 2d DCA 1993) ............................................................................... 30

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................................... 9

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  ["Cox II"], 199 F. Supp. 3d 958 (E.D. Va. 2016) .......................................................... 22

*BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*,
  881 F.3d 293 (4th Cir. 2018) .......................................................................................... 20

*Braun v. Soldier of Fortune Mag., Inc.*,
  968 F.2d 1110 (11th Cir. 1992) ...................................................................................... 31

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
  902 F.2d 829 (11th Cir. 1990) ........................................................................... 10, 18, 19

*Casella v. Morris*,
  820 F.2d 362 (11th Cir. 1987) ................................................................................. 18, 19

*Chrils v. Nassau County Civil Service Com'n*,
  277 A.D.2d 226, 716 N.Y.S.2d 585 (2000) ................................................................... 29

*Clark v. Dana Woody & Assocs.*,
No. 9-cv-2931-CAB (DHB), 2013 U.S. Dist. LEXIS 18996, 2013 WL 544030 (S.D. Cal. Feb. 12, 2013) ............................................................................................................. 12

*Coach, Inc. v. Swap Shop, Inc.*,
916 F. Supp. 2d 1271 (S.D. Fla. 2012) ............................................................. 28, 29

*Dania Jai-Alai Palace, Inc. v. Sykes*,
450 So.2d 1114 (Fla. 1984)...................................................................................... 12

*Disney Enters. v. Hotfile Corp.*,
No. 11-20427-CIV-WILLIAMS ............................................................................ 20

*Exist, Inc. v. E.S.Y., Inc.*,
No. 14-62429-CIV-BLOOM/VALLE................................................................... 17

*Foley v. Luster*,
249 F.3d 1281 (11th Cir.2001) .............................................................................. 29

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,
443 F.2d 1159 (2d Cir. 1971).................................................................................. 18

*Godelia v. Doe*,
881 F.3d 1309 (11th Cir. 2018) ............................................................................. 33

*Hasenfus v. Secord*,
962 F.2d 1556 (11th Cir.1992) .............................................................................. 29

*Hustlers Inc. v. Thomasson*,
253 F. Supp. 2d 1285 (N.D. Ga. 2003) ............................................................ 29, 30

*Hydentra HLP Int. Ltd. v. Luchian*,
No. 1:15-cv-22134-UU .......................................................................................... 21

*Internet Solutions Corp. v. Marshall*,
557 F.3d 1293 (11th Cir. 2009) ............................................................................... 9

*Jalbert v. Grautski*,
554 F. Supp. 2d 57 (D. Mass. 2008) ...................................................................... 23

*Kertesz v. Net Transactions, Ltd.*,
635 F. Supp. 2d 1339 (S.D. Fla. 2009) .................................................................. 12

*Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*,
707 F. Supp. 2d 1287 (M.D. Fla. 2010).................................................................. 27

*Kruse v. Mass. Mut. Life Ins. Co.*,
No. 17-cv-61115..................................................................................................... 34

*Lewis v. Dep't of Health & Rehab. Servs.*,
    659 So. 2d 1255 (Fla. 4th DCA 1995) ................................................................... 34

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
    658 F.3d 936 (9th Cir. 2011) ..................................................................... 24, 25

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013) ................................................................... 10

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ....................................................... 9, 10, 14

*Mesler v. Bragg Mgmt. Co.*,
    39 Cal. 3d 290, 216 Cal. Rptr. 443, 702 P.2d 601 (1985) ........................ 12

*MGM Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ............................................................................ 22, 26

*Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*,
    304 F.3d 1076 (11th Cir. 2002) ............................................................. 9, 32

*Networks, LLC*,
    384 F. Supp. 3d 743 (W.D. Tex. 2019) ................................................... 20

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ................................................................. 22

*Raimbeault v. Accurate Mach. & Tool*,
    No. 14-CIV-20136-BLOOM/Valle .......................................................... 11

*Roof & Rack Products, Inc. v. GYB Investors, LLC*,
    GYB Investors, LLC, 2014 U.S. Dist. LEXIS 92334 ............................... 10

*Rothis v. M & I Marshall & Isley Bank*,
    2010 U.S. Dist. LEXIS 109074, 2010 WL 3893960 (M.D. Fla. 2010) .................................... 30

*Sculptchair, Inc. v. Century Arts, Ltd.*,
    94 F.3d 623 (11th Cir. 1996) ................................................................... 10

*Seminole Boatyard, Inc. v. Christoph*,
    715 So. 2d 987 (Fla. 4th DCA 1998) ...................................................... 11

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ................................................................................ 19

*Spanski Enterprises v. Telewizja Polska*,
    883 F.3d 904 (D.C. Cir. 2018) ................................................................ 26

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

*State Dep't of Revenue v. Anderson,*
   403 So. 2d 397 (Fla. 1981) .......................................................................................... 34

*UMG Recordings, Inc. v. RCN Telecom Servs., LLC, Civil Action No. 19-17272 (MAS) (ZNQ),*
   2020 U.S. Dist. LEXIS 158269 (D.N.J. Aug. 31, 2020) ...................................... 21, 22

*Valente-Kritzer Video v. Pinckney,*
   881 F.2d 772 (9th Cir.1989) ..................................................................................... 30

*Warner Bros. Records, Inc. v. Charter Communs., Inc.,*
   454 F. Supp. 3d 1069 (D. Colo. 2019) ...................................................................... 23

*Weinberg v. Advanced Data Processing, Inc.,*
   147 F. Supp. 3d 1359 (S.D. Fla. 2015) ..................................................................... 30

**Statutes**

Fla. Stat. § 48.193(1)(a)(1) ............................................................................................ 12

Fla. Stat. § 48.193(1)(a)(1) and (2) ............................................................................... 10

**Rules**

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 9

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Plaintiffs MILLENNIUM FUNDING, INC.; VOLTAGE HOLDINGS, LLC; AMBI DISTRIBUTION CORP.; AFTER II MOVIE, LLC; MORGAN CREEK PRODUCTIONS, INC.; MILLENNIUM FUNDING, INC.; BEDEVILED LLC; MILLENNIUM MEDIA, INC.; COLOSSAL MOVIE PRODUCTIONS, LLC; YAR PRODUCTIONS, INC.; FSMQ FILM, LLC; FW PRODUCTIONS, LLC; MILLENNIUM IP, INC.; I AM WRATH PRODUCTION, INC.; KILLING LINK DISTRIBUTION, LLC; BADHOUSE STUDIOS, LLC; LF2 PRODUCTIONS, INC.; LHF PRODUCTIONS, INC.; VENICE PI, LLC; RAMBO V PRODUCTIONS, INC.; RUPTURE CAL, INC.; MON, LLC; SPEED KILLS PRODUCTIONS, INC.; MILLENNIUM IP, INC.; NIKOLA PRODUCTIONS, INC.; WONDER ONE, LLC; BODYGUARD PRODUCTIONS, INC; OUTPOST PRODUCTIONS, INC.; GLACIER FILMS 1, LLC; DEFINITION DELAWARE LLC; HANNIBAL CLASSICS INC.; JUSTICE EVERYWHERE PRODUCTIONS LLC; PARADOX STUDIOS, LLC; DALLAS BUYERS CLUB, LLC and SCREEN MEDIA VENTURES, LLC ("Plaintiffs"), by and through their counsel, file this opposition to the Motion to Dismiss [Doc. #108] ("Motion") of Defendants QuadraNet, Inc. and QuadraNet Enterprises LLC ("Defendants").  For the reasons discussed below, Defendants' motion should be denied.

## I.     INTRODUCTION

Defendants assert that despite promoting themselves as operating a data center in Miami, advertising that they have engineers on staff in Miami for this data center, providing servers in Miami where Plaintiffs' copyright protected motion pictures are pirated, publishing an address in Miami for these servers for reporting abuse, and leasing servers to Florida companies, they should not be subject to personal jurisdiction and venue in Florida.

Defendants assert that they are not secondarily liable for the widespread piracy of Plaintiffs' copyright protected motion pictures on their servers despite receiving nearly 200,000 notices giving them explicit and specific knowledge of their subscribers' infringements (down to the second) merely because the servers their subscribers use to engaged in piracy are capable of substantial non-infringing uses – an assertion that was flatly dismissed as "meritless" by the Fourth Circuit Court of Appeals and similarly rejected by every Court where a service provider has asserted it.

However, these are just two of the incredible assertions in Defendants' Motion.  They assert they cannot control their servers even though they provide the electricity and 24/7 security. Defendants completely ignore the fact that Plaintiffs allege that their subscribers such as LiquidVPN and TorGuard directly infringe Plaintiffs' exclusive rights and spend pages of paper focusing on the actions of their subscribers' end users.  Defendants assert they do not have to update their untrue publications in the American Registry of Internet Numbers ("ARIN") Whois records even though the very previous sentence of section 4.2.3.7.1 of the Number Resource Policy Manual they cite to states "Each IPv4 reassignment or reallocation containing a /29 or more addresses ***shall be registered***…" https://www.arin.net/participate/policy/nrpm/#4-2-3-7-1-reassignment-and-reallocation-information  [last accessed on Sept. 6, 2021] (emphasis added).[1]

Defendants even clumsily attempt to prove their point by providing a copy of a Whois record for Plaintiffs' counsel's firm website.  *See* Mot. at pg. 7, Ex. "3" [Doc. #108-3]. However, the Whois record for the website is irrelevant because ARIN's reassignment requirement is for *blocks of Internet Protocol addresses*.  *See* Id. ("…reassignment or

---

[1] Defendants state that their involvement with ARIN is from 2001 and predates the agreement provided.  However, even the 2001ARIN registration agreement provides a similar requirement to register reassignments. *See* Vault, https://www.arin.net/vault/policy/archive/ipv4.html#reassign (showing IPv4 Policies from 2001-2004).

**SRIPLAW**
Cᴀʟɪꜰᴏʀɴɪᴀ ◆ Gᴇᴏʀɢɪᴀ ◆ Fʟᴏʀɪᴅᴀ ◆ Tᴇɴɴᴇꜱꜱᴇᴇ ◆ Nᴇᴡ Yᴏʀᴋ

reallocation containing a */29* or more addresses").  Plaintiffs' counsel's firm website resides on only IP address 173.201.191.223.  The Internet Protocol ("IP") address block 173.201.0.0/16 was not reassigned to Plaintiffs' counsel.  *See* Decl. of Culpepper at ¶4.  Further, Defendants' exhibit proves Plaintiffs' point.  GoDaddy provides a means for directly contacting their subscriber (Plaintiffs' counsel) in the Whois records.  *See* Exhibit "3" [Doc. #108-3] (clicking link https://www.godaddy.com/whois/results.aspx?domain=PPC-IP.COM).  Accordingly, a rightsholder having a concern about Plaintiffs' counsel's website can use the means provided by GoDaddy to contact Plaintiffs' counsel directly, unlike how Defendants only provide their own contact information as the abuse contact for the IP address blocks they reassigned to their subscribers.

## II.  <u>BRIEF FACTUAL ALLEGATIONS</u>

Plaintiffs own the copyrights for specific motion pictures ("Works"), a list of which is attached to the SAC. *See* Exhibit "1" [Doc. #104-1] (errata).   These Works are currently available for sale online and in brick-and-mortar retail stores. Many of these critically acclaimed Works were released in theaters throughout the world and feature A-list actors such as Matthew McConaughey, Samuel Jackson, Ryan Reynolds, Sylvester Stallone, Nicholas Cage, Angela Basset, Gerard Butler, Gary Oldman, Common, Linda Cardellini, Milla Jovovich, Pierce Brosnan, Dylan McDermott, Woody Harrelson, James Marsden and Rob Reiner, among others.  *See* SAC [Doc. #96] at ¶54.

To deal with this problem of massive piracy of these Works, Plaintiffs engaged Maverickeye UG (haftungsbeschränkt) ("MEU") to monitor P2P/BitTorrent networks, capture evidence of acts of distribution of Plaintiffs' Works, and generate infringement notices ("Notices") to be sent to the service provider assigned the IP addresses where infringements of

the Works was confirmed.  *See Id.* at ¶¶201.  Each Notice included at least the name of the

copyright owner, the title of the Work, the manner by which it was infringed, the infringing file

name which includes the altered copyright management information, the IP address and port

number at where infringement was confirmed and the time of infringement down to the second.

*See Id.* at ¶¶202.

     MEU determines the service provider assigned the IP address and the proper abuse

contact email address from publicly available information from ARIN.  *See Id.* at ¶¶203.

     Defendants are collectively an international enterprise operating data centers throughout

the continental United States including (according to its own advertisements) one in Miami,

Florida.  *See Id.* at ¶¶11-12 (screenshot of QuadraNet, Inc.'s website promoting the Miami Data

Center); *see also* Decl. of Mishan [Doc. #108-1] at ¶16 ("Quadranet Enterprises, LLC, it operates

data centers all over the globe…").

     Defendants are members of ARIN and receive and share IP addresses from ARIN.  For

example, Defendants were assigned ARIN handles such as "QEL-5" and "QUADR-39."  *See*

SAC at ¶¶82, 271.

     To become a member of ARIN, an organization must agree to the AMERICAN

REGISTRY FOR INTERNET NUMBERS, LTD. REGISTRATION SERVICES AGREEMENT

("Registration Agreement"). *See* https://www.arin.net/about/corporate/agreements/rsa.pdf [last

accessed on April 26, 2021].   *See* Decl. of Eric Smith [Doc. #96-22] at ¶9.

     Defendants are required per their registration agreement with ARIN to provide accurate

abuse contact for the publicly available WHOIS records. *See* SAC at ¶272.  For example,

Defendants publish an email address of abuse@quadranet.com and an address in Miami for IP

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

addresses 104.223.112.0 - 104.223.127.255 tied to the servers at their Miami data center. *See* SAC at ¶¶331.

Further, under the ARIN name "QUADRANET-MIA", QuadraNet, Inc. has received multiple IP address allotments from ARIN such as: 96.47.224.0/21; 104.129.48.0 - 104.129.51.255; 2607:FF48::/32; and 173.44.32.0/19. *See* Aff. of Arheidt [Doc. #96-20] at ¶15. QuadraNet, Inc. publishes abuse contact and address information in Miami, FL for each of these IP address allotments. *See* Id. at ¶16 (Miami address); *see also* SAC at ¶¶82-83.

Plaintiffs' agent sent over 180,000 Notices to the email address Defendants published in the WHOIS records concerning infringements at IP addresses Defendants publish as assigned to them. Rather than taking any meaningful action in response to these Notices, Defendants, at best, merely forwarded the Notices to their subscribers from an unmonitored email address. For example, even in a case when Defendants' subscriber emailed back to ask details concerning a Notice, the subscriber was ignored. *See* Id. at ¶¶302-304. Defendants not only failed to take any meaningful action in response to more than 180,000 Notices, they also completely ignored first and second letters from Plaintiffs' counsel discussing this issue. *See* Exhibits "5" and "6" [Doc. ##96-5 and "96-6"] to the SAC. Plaintiffs' counsel's first letter, sent by registered mail with a delivery receipt signed by Defendants' agent (*see* Exhibit "6" to the SAC), even discussed in detail with screenshots how one of Defendants' subscribers (Florida company Defendant TorGuard) blatantly promotes its Virtual Private Network ("VPN") service for piracy. *See* Exhibit "5" to the SAC. Defendants continued to provide service to TorGuard. *See* SAC at ¶300.

Plaintiffs allege that Defendants are alter egos. Defendants have the same address, the same CEO and some if not all of the same directors. *See* SAC at ¶¶63-69. Ilan Mishan, the CEO

of both companies, does not deny this allegation in his declaration.  *See* Decl. of Mishan [Doc. #107-1].

Plaintiffs allege that the platform of Florida-run LiquidVPN is hosted on Defendants' servers.  *See* SAC at ¶282 ("The LiquidVPN Defendants use IP addresses 23.226.133.19 and 23.226.133.20 provided by QuadraNet as the main server IP addresses for hosting their VPN network").  This allegation is confirmed even by Mr. Mishan (for up to June of 2021).  *See* Decl. of Mishan at ¶13.  Plaintiffs further allege that their Works have been pirated thousands of times at IP addresses tied to servers LiquidVPN leased from Defendants.  *See* SAC at ¶279 ("Plaintiffs' agent sent over 5400 Notices to QuadraNet concerning infringement at IP addresses QuadraNet reassigned to LiquidVPN but continues to hold itself out as the proper abuse contact.").  Mr. Mishan concedes that QuadraNet Enterprises LLC "received approximately 60 abuse notifications pertaining to IP addresses assigned to LiquidVPN…".  *See* Decl. of Mishan at ¶31.

Defendants provide service to the Florida company VPNetworks, LLC dba TorGuard from June 28, 2012 to at least March 10, 2020.  *See* SAC at ¶60.  Defendants reassigned and reallocated IP addresses including but not limited to 96.44.142.226, 104.129.28.0 and 173.254.255.106 to TorGuard.  Id at ¶¶180-181.  MEU confirmed that TorGuard used at least two of these IP addresses at servers leased from Defendants to distribute copies of many of the Plaintiffs' Works.  Id at ¶¶180-181.

Plaintiffs allege that their Works were infringed at IP addresses controlled by Defendants *in Miami*.  Particularly, Plaintiffs' agent "sent over 2619 Notices to QuadraNet concerning just this 96 Block." SAC at ¶308.  The 96 Block refers to IP address block 96.47.224.0/21 which QuadraNet, Inc. states in public Whois records belongs to it and is in Miami, FL.  *See* Aff. of Arheidt at ¶¶15-17.  Plaintiffs further alleged that "Plaintiffs' agent sent over 308 Notices to

QuadraNet between June of 2017 to April of 2021 concerning just IP address 96.47.226.34." SAC at ¶308.   This allegation is verified by Mr. Arheidt.  *See* Aff. of Arheidt at ¶17

Ilan Mishan states that "…Quadranet Enterprises LLC does have a satellite facility in Miami, Florida…"  Decl. of Mishan at ¶12.

Quadranet Enterprises LLC and QuadraNet, Inc. advertise their services in Miami, FL on their website https://www.quadranet.com/miami-datacenter.  SAC at ¶11.  Here Defendants refer to their "Miami facility" where "In-house electrical engineers and electricians are on staff…". Id.

The address Defendants provide for their "Miami facility" on this website is in Miami and is the same street address that QuadraNet, Inc. provides as its address information in the ARIN Whois records.  *See* Exhibit "1".

According to public Whois records, the registrant organization for the website quadranet.com is QuadraNet, Inc.  *See* Exhibit "3" (printout of ICANN whois records for quadranet.com).

Per paragraph 1(c) of the Registration Agreement, Defendants agreed to be bound by ARIN's Number Resource Policy Manual ("Policy"). The Policy can be found at https://www.arin.net/participate/policy/nrpm/ [last accessed on April 26, 2021].  Decl. of Eric Smith [Doc. #96-22] at ¶10.

Per paragraph 3(b) of the Registration Agreement, Defendants are responsible for updating the directory services data (Whois) to indicate who they have sub-delegated number resources.  Id. at ¶11.

Per Section 3.2 of ARIN's Policy, Defendants are required to maintain public directory records of who they had reallocated or reassigned IP addresses.   Id. at ¶12.

Despite allocating or reassigning IP addresses to its subscribers, Defendants publish ARIN Whois records falsely indicating them as the proper abuse contact at these IP addresses rather than the contact of the subscriber and fail to update the ARIN Whois records in violation of their registration agreement with ARIN. SAC at ¶¶329-330.

### III.    BRIEF PROCEDURAL HISTORY

The action was originally initiated on March 3, 2021 against Defendants 1701 Management LLC ("1701") and Charles Muszynski ("Muszynski"), among others.  *See* Complaint [Doc. #1].  1701 and Muszynski operate the VPN service "LiquidVPN".  Mr. Muszynski is a lifelong Floridian who ran the Florida limited liability company Waste Professionals for decades.  FAC at ¶3.  Although Mr. Muszynski purchased LiquidVPN through his Puerto Rican limited liability company 1701 Management, the purchase agreement was signed in Florida and called for personal jurisdiction in Florida.   *See* SAC at ¶¶77, 96, 98, 114.  LiquidVPN is effectively a Florida company ran by Florida resident Michael Gamache and an ex-Floridian (Muszynski).  *See* Id., Aff. of Cox [Doc. #96-9] at ¶¶8-9, 17.

On the same day the original Complaint was filed in this Court, the original Plaintiffs initiated a separate action in the Eastern District of Michigan against the previous owners of LiquidVPN David Cox ("Cox") and SMR Hosting, LLC ("SMR") (Civ. No. 4:21-cv-10490).  On May 27, 2021, a stipulated consent judgment was entered into between the original Plaintiffs and Cox.

On May 5, 2021, the FAC [Doc. #24] was filed against 1701, Muszynski, Gamache and Defendants among others.  A motion for temporary restraining order filed same day as the FAC included an affidavit from Cox detailing the IP address blocks LiquidVPN used, including from

QuadraNet, Inc. and QuadraNet Enterprises LLC.  *See* Aff. of Cox at ¶¶41-43, Ex. "E" [Doc. #96-14] (showing IP address blocks used by LiquidVPN).

On Aug. 17, 2021, Plaintiffs filed the SAC [Doc. #96] seeking damages and injunctive relief against Defendants, among others, based upon claims for Contributory Copyright Infringement (THIRD CLAIM), vicarious infringement (FOURTH CLAIM), Negligent Misrepresentation (SIXTH CLAIM), Fraud (SEVENTH CLAIM) and Equitable Estoppel (EIGHTH CLAIM) against, among others.

On Aug. 31, 2021, Defendants filed the present Motion to Dismiss.

## IV.     APPLICABLE LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). Pleadings that "are no more than conclusions,

are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

The plaintiff bears the initial burden of presenting a *prima facie* case for personal jurisdiction. *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). A plaintiff makes out a prima facie case if she presents sufficient evidence to withstand a motion for directed verdict. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). If the defendant then presents a meritorious challenge to personal jurisdiction through affidavits, documents, or testimony, the burden shifts back to the plaintiff to once again demonstrate jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).  Upon coming forward with evidence to counter defendant's submissions, plaintiff's evidence must be credited even if it conflicts with defendant's; thus, to the extent the plaintiff's complaint and the defendant's affidavits, testimony, or documents conflict, the district court is bound to construe all reasonable inferences in favor of the plaintiff. *Madara*, 916 F.2d at 1514.

## V.     ARGUMENT - PERSONAL JURISDICTION AND VENUE

### A.  Florida's Long Arm Statute Clearly Provides Jurisdiction Over Defendants.

Florida's long-arm statute provides that a court may exercise jurisdiction over a party engages in the acts of "Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office…in this state" or "committing a tortious act within this state." Fla. Stat. § 48.193(1)(a)(1) and (2). With respect to the "tortious activity" provision, copyright infringement will qualify.  *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir. 1990) (finding a violation of copyright and communications laws to satisfy the "tortious activity" provision of the Florida long-arm statute); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) (holding that trademark infringement

occurring in Florida satisfied the "tortious activity" provision of the Florida long-arm statute);
*Roof & Rack Products, Inc. v. GYB Investors, LLC*, 2014 U.S. Dist. LEXIS 92334, 2014 WL
3116413, at *2 (S.D. Fla. July 8, 2014) ("Copyright infringement is a tortious act, and a person
who infringes upon a copyright whose owner resides in Florida causes injury inside the
state."(internal citations omitted)).

     **1.**     **Defendants Are Mere Alter Egos.**

     Plaintiffs' allegation in the SAC that Defendants are mere alter egos (*see* SAC at ¶¶63-
69) has not been refuted by Defendants.  For example, Mr. Mishan does not deny that the entities
are mere alter egos in his declaration. *See* Decl. of Mishan [Doc. #108-1].  Defendants
commingle assets such as IP addresses.  *See* SAC at ¶67.  QuadraNet, Inc. advertises the Miami
data center for QuadraNet Enterprises, LLC on its website.  Id. at ¶11.  Indeed, Defendants'
assets are so commingled that their CEO Mr. Mishan apparently did not even know that
QuadraNet, Inc. publishes ARIN Whois records stating that it has servers in Miami, Florida
when he made the declaration that "Quadranet, Inc. does not operate a facility in Miami…for
providing…dedicated servers, and colocation services, and has not generated gross revenue from
Florida clients." Decl. of Mishan at ¶5.  Plaintiffs' allegation that Defendants are alter egos is
further supported by Defendants' initial disclosures which state that while QuadraNet
Enterprises, LLC has insurance, QuadraNet, Inc. has no insurance. *See* Decl. of Culpepper at
¶16.  Discovery will likely show further evidence supporting the assertion that Defendants are
mere alter egos.

     Defendants attempt to conflate the requirements of the veil piercing doctrine with alter
ego, which is but one element of the veil piercing doctrine.  *See Seminole Boatyard, Inc. v.
Christoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998).  Plaintiffs are not alleging at this time that

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Defendants' shareholders, directors, partners, etc. are personally liable for the conduct. Further, Defendants are incorrect in asserting that Florida law applies to the issue of whether they are mere alter egos. According to Mr. Mishan, both entities have their principal place of operations in Tarzan, California. *See* Decl. of Mishan at ¶3. Accordingly, the law of California likely governs the alter ego issue. *See Raimbeault v. Accurate Mach. & Tool, No.* 14-CIV-20136-BLOOM/Valle, 2014 U.S. Dist. LEXIS 140313, at 22-23 (S.D. Fla. Sep. 30, 2014) ("the law of the corporate Defendants' domicile/incorporation may govern the alter ego issue"). With respect to alter ego, the two general rules established by the California Supreme Court are: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300, 216 Cal. Rptr. 443, 702 P.2d 601 (1985). Factors California courts consider include: commingling of assets; whether the individuals and corporation used the same office; whether they employed the same attorney; whether the individuals failed to adequately capitalize the corporation; and whether the individuals failed to maintain minutes or adequate corporate records. *See Clark v. Dana Woody & Assocs.*, No. 9-cv-2931-CAB (DHB), 2013 U.S. Dist. LEXIS 18996, 2013 WL 544030, at *2 (S.D. Cal. Feb. 12, 2013). Plaintiffs have already established that Defendants have the same CEO and directors, use the same office, and that QuadraNet, Inc. is inadequately capitalized due to failure to carry any insurance. Defendants are represented by the same counsel. These facts undoubtedly indicate that Defendants are mere alter egos.

> **2.      Defendants' Florida Contacts Are Imputed To Each Other Because They Are Mere Alter Egos.**

Courts in this district have held that an alter ego's activities may impute to a resident corporation for purposes of personal jurisdiction under the Florida long-arm statue. *Kertesz v.*

*Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1347 (S.D. Fla. 2009) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla. 1984); *Aldea Communications, Inc. v. Gardner*, 725 So.2d 456 (Fla. Dist.Ct.App.1999)).  Defendants' CEO admits that "QuadraNet Enterprises, LLC does have a satellite facility in Miami, Florida…" but asserts that the satellite facility in Miami has no relevance because its subscriber LiquidVPN did not use it.  Decl. of Ilan Mishan [Doc. #108-1] at ¶12.   However, by QuadraNet Enterprises, LLC operating a facility in Miami, it easily satisfies the requirement that the defendant have "an office or agency in this state" Fla. Stat. § 48.193(1)(a)(1). This contact is imputed to its alter ego QuadraNet, Inc.

Moreover, Plaintiffs' allegations against Defendants are not limited to just Defendants' subscriber LiquidVPN.  Plaintiffs further allege that their Works were infringed thousands of times at IP addresses at QuadraNet's data center in Miami.  Particularly, Plaintiffs allege that "QuadraNet received IP addresses 96.47.224.0-96.47.231.255 ("96 Block") from ARIN, which QuadraNet uses at its facility in Miami", "Plaintiffs' agents have sent over 2619 Notices of Infringement to QuadraNet concerning just this 96 Block" and "Plaintiffs' agent sent over 308 Notices to QuadraNet between June of 2017 to April of 2021 concerning just IP address 96.47.226.34." SAC at ¶¶307-308.  These allegations are verified by the affidavit of Daniel Arheidt [Doc. #96-20] at ¶¶15-17.  Accordingly, the tortious activity of copyright infringement occurred in Miami.  Defendants chose to completely ignore Plaintiffs' allegation of copyright infringement at Defendants' data center in Miami in the SAC in their Motion and falsely portray the SAC as only alleging that Defendants contribute to direct infringements of LiquidVPN.

### 3. Plaintiffs Have Rebutted the Declaration of Ilan Mishan.

Mr. Mishan's declaration that "QuadraNet, Inc. does not operate a facility in Miami…." is contradicted by the affidavit of Daniel Arheidt which declares that the Plaintiffs' Works were

infringed thousands of times at IP addresses in Miami which QuadraNet publishes as belonging to it at its facility in Miami.  *See* Aff. of Arheidt [Doc. #96-20] at ¶¶15-17.  The affidavit includes a screenshot from the ARIN Whois records that conclusively shows that QuadraNet itself publishes an address in Miami, Florida for these addresses.  Id.  A complete printout of the ARIN Whois records is attached to this opposition as Exhibit "1".  This Court can take judicial notice of Exhibits 1-6 because each is merely a printout of a publicly available record or document.  As shown, Defendants indicates that QuadraNet, Inc. is the responsible party for IP address block 96.47.224.0/21 in Miami, Florida.

As shown in Exhibit "2", QuadraNet, Inc. also owns IP address 96.44.142.226, which it allocated to its Florida customer Defendant VPNetworks LLC dba TorGuard.  *See* SAC at ¶180.  Although this particular IP address is at QuadraNet, Inc.'s data center in Texas (according to the Whois records published by QuadraNet, Inc.), this fact still plainly contradicts Mr. Mishan's declaration that "QuadraNet, Inc…has not generated gross revenue from Florida clients".  Decl. of Mishan at ¶5.

QuadraNet, Inc.'s own website blatantly contradicts Mr. Mishan's declaration that "QuadraNet, Inc… does [not] advertise or solicit business in Florida". Id. at ¶7.  The website domain that prominently advertises QuadraNet's Miami data center is owned by QuadraNet, Inc. *See* SAC at ¶11, Exhibit "3" (Whois records for QUADRANET.COM domain show that the registrant is QuadraNet, Inc.).

Defendants' argument that QuadraNet, Inc. – an international company – would be "extremely burdened" to have to litigate in the forum where it operates a data center, where many of the infringements took place and where Defendants are already adequately represented by counsel is simply not believable.  Decl. of Mishan at ¶9.   Florida has a strong interest in this

dispute as many of the infringements happened in Florida, and they implicate a Florida company (TorGuard) and a Floridian-run company (LiquidVPN).

Because Plaintiffs have set forth evidence conclusively contradicting Defendants' declaration, the Court should credit Plaintiffs' evidence and construe all reasonable inferences in favor of Plaintiffs. *Madara*, 916 F.2d at 1514.   Accordingly, exercising personal jurisdiction of Defendants clearly satisfies due process.  (1) Defendants have purposefully availed themselves of the privileges of conducting business in Florida. QuadraNet, Inc. publishes in ARIN Whois records that the IP addresses at the data center in Miami belong to it.  QuadraNet Enterprises, LLC admits that it owns this facility.  QuadraNet, Inc. advertises the data center in Miami on its website.  (2) The Copyrights in Plaintiffs' Works were infringed thousands of times at IP addresses in the Miami data center.  Plaintiffs' claims against Defendants are based upon secondary liability for these infringements among other locations.  (3) Defendants' actions have a substantial connection with the forum.  QuadraNet, Inc. publishes Whois records indicating that it is the responsible entity to contact concerning abuse at the Miami facility.  Quadranet Enterprises, LLC admits to running the facility where the piracy occurred. This is not even a close question.  Personal jurisdiction is appropriate in this District.

**B.**      **Venue in this District is Proper**

Defendants' argument is basically that personal jurisdiction and venue is not proper because their subscriber LiquidVPN did not use their Miami data center.  However, as explained above, Plaintiffs' claims are not limited to LiquidVPN's direct infringements.  Rather, Plaintiffs' claims also include the thousands of infringements of their Works at Defendants' Miami data center.  Thus, a substantial part of the events giving rise to the Plaintiffs' claims occurred in Miami.  Accordingly, venue in this district is proper.

## VI.    ARGUMENT – THE CLAIMS AGAINST DEFENDANTS IN THE SAC ARE ADEQUATELY PLED

**A.    The Second Amended Complaint is not an impermissible "Shotgun Pleading".**

Defendants argue that the SAC is an impermissible shotgun pleading merely because the seventh claim for relief incorporates the allegations of the sixth claim for relief.  Mot. at pg. 8.  The seventh claim clearly states that it incorporates paragraphs 17-55 and 328-349 and paragraphs 450-462 (the sixth claim for relief).  Each of the sixth and seventh claims states the legal basis for the claim and who it is against (QuadraNet).  Accordingly, the sixth and seventh claims are not inherently confusing, deficient and impermissible.  Defendants also argue against the tenth through twelfth claims for relief even though they are clearly not even made against Defendants.  Accordingly, Defendants do not have standing to raise concerns about these claims.

Defendants also argue that the SAC is an impermissible shotgun pleading because they "are improperly lumped together". Mot. at pg. 20.  On the outset, the fact that Defendants did not make this argument in their previous motion to dismiss the FAC [Doc. #83] despite essentially similar copyright related claims being made against them undercuts their assertion that it is "impossible for the Defendants to be placed on notice as to what allegations specifically apply to their actions or misconduct".  Mot. at pg. 9, FN 17.  Nonetheless, Defendants are "lumped together" because *both are liable* for the asserted claims as clearly stated in the SAC.  *See* SAC at ¶69("QuadraNet, Inc. and QuadraNet Enterprises will be referred to below collectively as "QuadraNet").  Of the hundreds of thousands of instances of infringements of their Works, Plaintiffs included examples of specific IP addresses assigned to Defendants where their Works were infringed.  For example, in paragraph 280 Plaintiffs allege that "Plaintiffs' agent sent over 100 Notices to QuadraNet concerning observed infringements at each of IP addresses 104.223.91.154, 104.223.91.202 and 104.223.91.234 that QuadraNet reassigned to LiquidVPN."

16

In paragraphs 306-307, Plaintiffs allege that "QuadraNet received IP addresses 96.47.224.0-96.47.231.255 ("96 Block") from ARIN, which QuadraNet uses at its facility in Miami…Plaintiffs' agents have sent over 2619 Notices to QuadraNet concerning infringements of their Works at just this 96 Block. Plaintiffs' agent sent over 308 Notices to QuadraNet between June of 2017 to April of 2021 concerning just IP address 96.47.226.34." These paragraphs of the SAC were verified by Mr. Arheidt's affidavit, which includes a screenshot of ARIN Whois records showing that the 96 block was assigned to QUADRANET-MIA in Miami, Flo. *See* Aff. of Arheidt [Doc. #96-20] at ¶¶15-17. Exhibit "1", which is the complete printout of this ARIN record, shows that the 96.47' block is assigned to QuadraNet, Inc. In paragraphs 180-181, Plaintiffs allege that QuadraNet reassigned and reallocated IP addresses including but not limited to 96.44.142.226, 104.129.28.0 and 173.254.255.106 to TorGuard and that MEU confirmed that TorGuard used these IP addresses at servers leased from QuadraNet, Inc. to distribute copies of many of Plaintiffs Works such as *The Humbling* and *Automata*. Exhibit "2", which is the complete printout of this ARIN record, shows that the 96.44' block is assigned to QuadraNet, Inc. On the other hand, Defendants state on their website that the servers in Miami that are tied to the 96.47' block of IP addresses are operated by QuadraNet Enterprises, LLC. SAC at ¶11. Thus, both QuadraNet entities are clearly responsible for the claims. However, the information identifying which IP addresses are assigned to QuadraNet, Inc. and to QuadraNet Enterprises, LLC is uniquely in the possession of Defendants. Rule 8 does not require Plaintiffs to list the hundreds of thousands of IP addresses where the Works were infringed. Rather, Rule 8 merely requires that Plaintiffs provide Defendants fair notice of the claims against them. *See Exist, Inc. v. E.S.Y., Inc.*, No. 14-62429-CIV-BLOOM/VALLE, 2015 U.S. Dist. LEXIS 181144, at 12 (S.D. Fla. May 20, 2015) (finding that allegations that Defendant, an officer of the

Defendant corporations, along with the Doe Defendants, contributed to a single category of unauthorized use of Plaintiff's copyright and trademark provided Defendants with fair notice of the claims against them).

Moreover, as conceded by Defendants, Plaintiffs allege that Defendants are mere alter egos.  *See* SAC at ¶63.  As discussed above, this allegation has factual support, and is also even supported by the declaration of Mr. Mishan.

**B.      The Complaint adequately pleads a claim for contributory infringement based upon material contribution against Defendants.**

Contributory copyright infringement occurs where a party with knowledge of infringing activity materially contributes to the infringing conduct of another. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990); *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987); *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

**1.      Defendants' Subscribers Are Direct Infringers.**

The infringing activity at issue here includes the direct infringement of Plaintiffs exclusive rights of distribution, reproduction and public performance by Defendants' subscribers such as LiquidVPN, TorGuard, Noisebridge and DOES 1-100 using the servers that are leased to them by Defendants.  *See* SAC at ¶¶332, 372-379. Defendants' subscribers "transmit, route, or provide connections for transmitting copies of Plaintiffs' Works through a network under their control including servers provided by QuadraNet."  SAC at ¶375.  As explained by Mr. Mishan, Defendants directly provide the servers that their "customers may use…to host an online video game, store records, and…host Virtual Private Network ("VPN") software", that creates "a "tunnel" between the user's…computer and the desired website which all data transmitted…between the two points…" wherein "…all…activities of the user are associated

with the IP address belonging to the VPN server, not the user's IP address.".  Decl. of Mishan at

¶¶18, 20-21.  What Mr. Mishan refers to as a "tunnel" is a distribution of Plaintiffs' Works.

Defendants' subscribers encourage their end users to use these servers to run BitTorrent Client

applications to pirate Plaintiffs' Works and even advise these end users how to setup these

BitTorrent Client applications to efficiently pirate on the servers.  SAC at ¶262.  When

Defendants' subscribers distribute (transmit or route) these Works, they also copy (reproduce)

the Works.

Defendants materially contribute to this infringing activity by providing the service

including the IP addresses, servers and colocation that their subscribers use to directly infringe

Plaintiffs' exclusive rights of their Works. SAC at ¶276.   And Defendants have not just red flag

knowledge, but actual knowledge of these infringements.   "[A]ctual knowledge is not required.

All that must be shown [for contributory infringement] is that [defendant] had reason to know"

of the infringing activity. *See Cable/Home*, 902 F.2d at 846 (citing *Casella v. Morris*, 820 F.2d

362, 365 (11th Cir. 1987)).  Defendants have actual knowledge of this infringing activity from

the more than 180,000 Notices sent to them by Plaintiffs' agent and the multiple letters send to

them by Plaintiffs' counsel yet continues to provide the service to these subscribers.  SAC at

¶¶300, 302.  One of the letters pointed out a specific example (TorGuard) of a subscriber using

Defendants' service explicitly for piracy.  *See* Exhibit "5" to the SAC.  Defendants have the

continued control over this infringing activity - they provide the servers, the IP addresses, the

electricity and even "24/7 manned security".  Id at. ¶¶11, 422.

Defendants assert that Plaintiffs have failed to allege that their service "have no

substantial non-infringing uses" and improperly rely on evidence clearly outside of the pleadings

such as their revenue from certain customers to assert that their service is *capable* of substantial

non-infringing uses.  Mot. at pgs. 22-24.  However, Defendants are incorrect in their assertion that Plaintiffs must plead that their service has no substantial non-infringing use.  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) does not absolve Defendants from liability because they have knowledge that their subscribers are using the service to pirate copyright protected content and fail to take even the simplest measures to stop further piracy.  In *Sony*, the Defendant sold a *product* (the VCR) to customers without specific notice that its customer was going to use the *product* to pirate content.  Sony could not take any simple measures to stop piracy once the customer had purchased the product.  In comparison, Defendants sell an ongoing *service* (leasing their servers) to their subscribers and have *specific notice* that their subscribers are using the services to distribute copies of Plaintiffs' Works without authorization yet purposely choose to do absolutely nothing while continuing to provide the services.  In instances such as here where Defendants have knowledge of the specific infringing activity yet fail to take simple measures stop it, traditional common law principles permit a court to impute intent so that defendant may be liable, by operation of law just as if it had actually intended to infringe.  *See Disney Enters. v. Hotfile Corp.*, No. 11-20427-CIV-WILLIAMS, 2013 U.S. Dist. LEXIS 172339, at 113 (S.D. Fla. Aug. 28, 2013).

Defendants' proposition that a service provider with knowledge of ongoing infringement by its subscribers can escape liability by merely asserting that its service has substantial non-infringing uses has been repeatedly rejected.  The Fourth Circuit called this argument "meritless" when pointing out that the Supreme Court clarified in *Grokster* that "*Sony* barred secondary liability based on *presuming or imputing intent* to cause infringement solely from the design or distribution of a product capable of substantial lawful use, which the distributor knows is in fact used for infringement...the fact that a product is "capable of substantial lawful use" does not

mean the "producer can never be held contributorily liable." *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293, 306 (4th Cir. 2018); *Umg Recordings, Inc. v. Grande Communs. Networks, LLC*, 384 F. Supp. 3d 743, 767 (W.D. Tex. 2019) ("liability may be imposed for intentionally encouraging infringement through specific acts…The specific act in question here is the continued provision of internet services to customers. Thus, this is not a case of mere refusal to act. Grande acted affirmatively by continuing to sell internet services and continuing to provide internet access to infringing customers."); *UMG Recordings, Inc. v. RCN Telecom Servs.*, LLC, Civil Action No. 19-17272 (MAS) (ZNQ), 2020 U.S. Dist. LEXIS 158269, at *31 (D.N.J. Aug. 31, 2020) (rejecting RCN's argument that material contribution to infringement is precluded by the *Sony* Rule because its internet service has substantial non-infringing uses).  Courts have sustained pleadings of contributory infringement against residential service providers such as Cox, RCN and Charter that merely provide the Internet connection and a modem liable for contributory copyright infringement for their subscriber's piracy.  *Supra*.  While these residential providers had lax policies for terminating subscribers, Defendants have no policy at all.  Rather, Defendant just merely auto-forward the notices to their subscribers without any follow up.  *See* SAC at ¶¶303, 304.

Defendants' reliance on the unpublished decision of *Hydentra v. Luchian* to support its widely rejected proposition is misplaced because the Defendant in this case argued it never actually received the notices.  *See Hydentra HLP Int. Ltd. v. Luchian*, No. 1:15-cv-22134-UU, 2016 U.S. Dist. LEXIS 193457, at *53 (S.D. Fla. June 2, 2016) ("SSM claims that it never received these takedown notices and was unaware of the allegedly infringing files until this lawsuit").

Moreover, Plaintiffs allege that Defendants' "…subscribers such as LiquidVPN,

TorGuard and DOES 1-100 use QuadraNet's service overwhelmingly for the purpose of piracy

and explicitly promote their VPN services for the purpose of piracy." SAC at ¶419.  The extent

to which Defendants' subscribers use the service for piracy is so blatant that Plaintiffs have

asserted claims against Defendants' subscribers based upon intentional inducement under the

*Grokster* standard as well as direct infringement.  On top of the hundreds of thousands of notices

and multiple demand letters from Plaintiffs' counsel, if Defendants had just taken a cursory look

at their subscribers' websites they could have easily concluded that their subscribers were using

their servers and IP addresses for blatant piracy.  *See* SAC at ¶¶228, 318 (LiquidVPN displays

title art of Plaintiff Millennium Funding, Inc.'s movie *Survivor* as well as many other movies

that its service can be used to pirate).

### 2.      Defendants' Intent Is Imputed from Their Knowledge.

Defendants also argue that Plaintiffs have not sufficiently alleged "culpable intent".

However, as discussed above, *Grokster* directs the Court to analyze contributory liability in light

of common law principles which establish that intent may be imputed. *See MGM Studios Inc. v.

Grokster, Ltd.*, 545 U.S. 913, 930 (2005).  In *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d

1146, 1171 (9th Cir. 2007), the Ninth Circuit looked to the Restatement of Torts for common law

principles and stated that "If the actor knows that the consequences are certain, or substantially

certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact

desired to produce the result," when concluding that Google could be held contributorily liable if

it had knowledge that infringing images were available using its search engine, could take simple

measures to prevent further damage to copyrighted works, and failed to take such steps. *Perfect*

*10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007) (citing RESTATEMENT (SECOND) OF TORTS § 8A cmt. b (1965))

      Courts across the United States have concluded that notices similar to those sent by Plaintiffs to Defendants sufficed for establishing the requisite knowledge and thus intent for contributory infringement. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc*. ["Cox II"], 199 F. Supp. 3d 958, 979 (E.D. Va. 2016) (finding that the "jury could reasonably conclude that Rightscorp captured infringing activity on Cox's network, and that had Cox received the notices they would have satisfied the knowledge requirement); *UMG Recordings, Inc. v. RCN Telecom Servs*., LLC, Civil Action No. 19-17272 (MAS) (ZNQ), 2020 U.S. Dist. LEXIS 158269 (D.N.J. Aug. 31, 2020) (notices from Rightscorp provide factual support for Plaintiffs' allegation that RCN had knowledge of the infringement); *Warner Bros. Records, Inc. v. Charter Communs., Inc.,* 454 F. Supp. 3d 1069 (D. Colo. 2019) (Finding that Plaintiffs' allegations that Defendant's failure to stop or take other action in response to notices of infringement is a draw to current and prospective subscribers to purchase and use Defendant's internet service to pirate Plaintiffs' copyrighted works supports claim for vicarious infringement); *see also Jalbert v. Grautski*, 554 F. Supp. 2d 57, 68 (D. Mass. 2008) ("Although the defendant must have knowledge of the infringing activity, the defendant need only have known of the direct infringer's activities, and need not have reached the legal conclusion that those activities infringed a copyrighted work.") (internal quotation omitted).

      **3.**      **The SAC Points Out Simple Measures Defendants Could Have Taken.**

      The SAC pleads many of the simple measures that Defendants could have taken to stop further infringement of the Plaintiffs' Works such as null-routing IP addresses (which Defendants have done in the past), suspending subscriber accounts, and blocking BitTorrent

ports.  *See* SAC at ¶¶310-314.  Or Defendants could have done like they finally did after they were served with the FAC, kick subscribers like LiquidVPN off their servers.  *See* Decl. of Mishan at ¶13 ("LiquidVPN leased from QuadraNet Enterprises, LLC…one server in New Jersey [from July 2019 to June 2021]").  Defendants argue that they could not stop the conduct of their subscribers' customers.  Mot. at pg. 14 ("None of these "John Does" are QuadraNet's customers).  However, this assertion is irrelevant to whether Defendants could stop their *subscribers'* direct infringements, which they certainly could by taking any of the simple measures alleged in the SAC, which also would have had the added benefit of stopping the end users' infringements as well.

### 4.   The SAC Adequately Pleads Defendants' Material Contribution.

Defendants provide the servers and IP addresses that their subscribers such as LiquidVPN, TorGuard and Noisebridge use to distribute, reproduce and publicly perform copies of Plaintiffs' Works.  SAC at ¶¶332, 422.  Defendants even provide the electricity and 24/7 security for their subscribers. Id. at ¶11.

Defendants argue that a computer system operator that leases servers such as themselves cannot be held liable for their subscribers' infringements.  Defendants misleadingly state that the Ninth Circuit's unpublished decision of *ALS Scan v. Steadfast* supports this proposition while conveniently omitting the fact that it was undisputed that Steadfast forwarded the notices to the owner of the website where the infringing images were stored <u>and the owner took them down</u>. *See ALS Scan, Inc. v. Steadfast Networks, Ltd. Liab. Co.*, 819 F. App'x 522, 523 (9th Cir. 2020)("…a data-center service provider has taken adequate "simple measures" to avoid contributory copyright infringement if it forwarded notices of such infringement to the hosting website — *and every alleged infringed material was taken down*").  In stark contrast to *ALS*

*Scan, Inc.*, Defendants' subscribers continued pirating Plaintiffs Works despite the hundreds of thousands of notices.

Defendants also cite the Ninth Circuit decision of *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) ("*Louis Vuitton*") in support of this argument; however, a closer examination of the facts of *Louis Vuitton* reveals that it supports Plaintiffs' position.  In *Louis Vuitton* the Ninth Circuit agreed with the District Court's conclusion that "Appellants had control over the *services and servers* provided to the websites."  Similarly, here Defendants have direct control over the "master switch" that permits their VPN subscribers to continue distributing Plaintiffs' Works without a license.  Just like websites, VPN services "are not ethereal; while they exist, virtually, in cyberspace, they would not exist at all without physical roots in servers and internet services." Id.  To be clear, Defendants are incorrect in trying to jump on the "direct control" language in this case because this is a requirement for contributory *trademark* infringement.  For contributory copyright infringement, on the other hand, which is less stringent, liability only requires that the secondary infringer 'know or have reason to know' of direct infringement.  *See Id. at* 943.

Defendants attempt to portray themselves as Managed Solutions Group ("MSG") in *Louis Vuitton* is inaccurate and irrelevant.  MSG leased servers to Akanoc, who in turn operated the servers and ran the business. *See Id.*  at 940.  In the outset, the comparison is academic because MSG and Akanoc were ran by the same person (Defendant Chen) and thus effectively the same company.  *Id.* Also, the Plaintiff in *Louis Vuitton* never provided evidence that MSG had reasonable means to withdraw services to the direct infringers.  Id. at 942.  Nonetheless, Defendants in the present case are more akin to Akanoc then MSG because Defendants directly provide the servers that their "customers may use…to host an online video game, store records,

and…host Virtual Private Network ("VPN") software", that creates "a "tunnel" between the user's…computer and the desired website which all data transmitted…between the two points…" wherein "…all…activities of the user are associated with the IP address belonging to the VPN server, not the user's IP address.".  Decl. of Mishan at ¶¶18, 20-21.

Defendants also argue that null-routing would not have stopped further infringement because "LiquidVPN is not a direct infringer".  However, Plaintiffs allege that Defendants' subscribers such as LiquidVPN directly infringe their exclusive rights in distribution, public performance and reproduction.  *See* SAC at ¶¶375-376, 428.  This allegation is supported by the affidavit of Daniel Arheidt.  *See* Aff. of Arheidt at ¶¶9-11.  LiquidVPN's website may no longer be hosted on Defendants' servers, but even their CEO admits it was until June of 2021.  Decl. of Mishan at ¶13, *see also* Decl. of Culpepper at ¶3 (CloudFlare provides CDN service that masks host IP address).

In the context of the public performance right, the Supreme Court's decision in *ABC, Inc. v. Aereo, Inc.*, 573 U.S. 431, 134 S. Ct. 2498 (2014) clearly addresses the element of "volition or causation" necessary for direct infringement.  The Defendant in *Aereo* sold a service that allowed its subscribers to watch television programs over the Internet at about the same time as the programs were broadcast over the air.  The subscriber selected the show to watch from a menu on *Aereo's* website.  *See Id.* at 431.  The Supreme Court concluded that "when Aereo merely supplies equipment that allows others [to transmit copyright works,] the Act is unmistakable: An entity that engages in activities like Aereo's performs."  Id. at 438-439.  In grappling with a similar issue, the DC Circuit has similarly concluded that *Aereo* "forecloses [Defendant's] argument that the automated nature of its video-on-demand system or the end users' role in selecting which content to access insulates it from Copyright Act liability."  *Spanski Enterprises*

*v. Telewizja Polska*, 883 F.3d 904, 911 (D.C. Cir. 2018).  The facts here are even worse than in

*Aereo* and *Spanski* because the Defendants' subscribers not only promote their VPN services for

the purpose of infringement, they also recommend notorious movie piracy sources to their end

users, advise their end users how to configure their BitTorrent Client to efficiently pirate and

interfere with standard technical measures by deleting their end users' log information.  SAC at

¶¶154-155, 242, 262, 379.  Defendants' subscribers do not even bother concealing that their

motive for deleting end users' logs is to defeat standard measures used by rightsholders to track

infringements. *See* Id. at ¶¶109, 226, 244, 246, 257.

**C.      The SAC Sufficiently Pleads a Claim for Vicarious Copyright Liability.**

"One…infringes vicariously by profiting from direct infringement while declining to

exercise a right to stop or limit it."  *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. at 930.  In

order to state a claim for vicarious copyright infringement, a plaintiff must allege (1) "the right

and ability to supervise," and (2) "a direct financial interest" in the profits of the infringing

activity.  *See Affordable Aerial Photography, Inc. v. Modern Living Real Estate, LLC*, No. 19-

cv-80488-BLOOM/Reinhart, 2019 U.S. Dist. LEXIS 132023, at *7-8 (S.D. Fla. Aug. 6, 2019)

(citing *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1297 (M.D. Fla.

2010)

Plaintiffs allege that Defendants' subscribers such as LiquidVPN and TorGuard use

Defendants' service overwhelmingly for the purpose of piracy and explicitly promote their VPN

services for the purpose of piracy.   SAC at ¶419.  This allegation is supported by, for example,

the affidavit of Arheidt [Doc. #96-20] that shows examples of the IP addresses of Defendants'

subscribers from where their Works were pirated.

Plaintiffs further allege that Defendants have the right and ability to supervise and control the infringing activities that occur through the use of their service and that they control "the IP addresses used by its subscribers, the Internet access for its subscribers and even the electricity to the servers used by its subscribers."[2]  Id. at ¶¶421-423.  Defendants can terminate the accounts of their subscribers at any time and do so if their subscribers fail to pay.  Id. at ¶¶292-293. Defendants can log their subscribers' access to the service and even provide 24/7 manned security.  Id. at ¶¶294-296.  As noted above, Defendants finally terminated the account of LiquidVPN in June after they were served with the FAC.

Plaintiffs also allege that Defendants at all relevant times have derived a direct financial benefit from the infringement of Plaintiffs' copyrights.  Id at. ¶421.  Defendants directly profit from their VPN subscribers' distribution of Plaintiffs' copyright protected Works without authorization. As Defendants' VPN subscribers induce more end users who wish to pirate Plaintiffs' Works, Defendants' VPN subscribers purchase more services such as server space and IP addresses from Defendants.  Id at. ¶291.  The ability and availability for Defendants' VPN subscribers to distribute copyright protected Works including Plaintiffs' from Defendants' servers and IP addresses while concealing their identity from the public Whois ARIN records is a draw for subscribers and at least one of their motivations to become Defendants' subscribers. Id at. ¶289.  Defendants' VPN subscribers are also motivated to become subscribers because they know that Defendants will do nothing in response to notices sent by rightsholders. Id at. ¶290. Defendants even target and attract these customers by advertising specific VPN solutions and the high speed of their servers.  Id. at. ¶¶274-278.

---

2 Defendants' assertion in FN 25 that paragraph 423 of the SAC inadvertently included DOES 1-100 is incorrect. As clearly stated in paragraphs 113-114, DOES 1-100 are Defendants' subscribers.

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

Just like the swap meet operator in *Coach, Inc. v. Swap Shop*, Defendants: lease and maintain control over the servers and IP addresses that are used by their subscribers such as LiquidVPN and TorGuard to engage in widespread piracy; have a direct financial interest in the infringing activities because they receive lease payments for servers from these subscribers who distribute and reproduce Plaintiffs Works; and their subscribers are drawn to use Defendants' service to engage in piracy due to the widespread knowledge that Defendants' ignore notices and conceal subscriber identities from the public Whois records. *Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1282 (S.D. Fla. 2012).

Defendants argue that they receive no direct draw from the "John Does" pirating the Plaintiffs' Works.  Mot. at pg. 19.  However, Plaintiffs allege that Defendants receive a direct draw from their subscribers such as LiquidVPN's direct infringements, a point which Defendants fail to contest.  Indeed, Defendants concede that their subscribers "purchase more server space, IP addresses, and/or colocation services" but fail to recognize that their subscribers do this so that they can increase their capacity to distribute and reproduce Plaintiffs' Works for the so called "John Does".   *Id.*

**D.**     **Plaintiffs' Claims for Negligence and Fraud Are Not Preempted by The Copyright Act**

The Copyright Act "preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law." *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir.2001) (internal citations omitted). The Court applies the "extra element" test to determine if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption." *Id.* at 1285. However, the "extra element test," is not a rote comparison

of the elements of the two claims. The "extra element" of the state-law-claim must change the nature of the claim, so that it is "qualitatively different from a copyright infringement claim." *Id.*

Here, Plaintiffs allege Florida state law claims of negligent and fraudulent misrepresentation. The elements for negligent misrepresentation are the same, except the representor made the representation without knowledge as to its truth or falsity, or under circumstances in which he ought to have known of its falsity. *See Hasenfus v. Secord,* 962 F.2d 1556, 1561 (11th Cir.1992). Both state law claims require a false statement concerning a material fact, an element not considered under the scope of the Copyright Act. Courts in this Circuit have held that for a "fraud claim, a violation of the exclusive rights of section 106 does not give rise to a cause of action. In addition to violation of those rights, Plaintiff must prove 'representation of a material existing fact, falsity, scienter, deception and injury.'" *See Hustlers Inc. v. Thomasson*, 253 F. Supp. 2d 1285, 1293 (N.D. Ga. 2003) (quoting *Chrils v. Nassau County Civil Service Com'n*, 277 A.D.2d 226, 716 N.Y.S.2d 585, 586 (2000)). "As the violation of section 106 rights does not in itself constitute a state law cause of action for fraud, Plaintiffs' fraud claim is not preempted." *Id.* (citing *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir.1989)). Thus, Plaintiffs do not rely on "awareness and intent" as the "extra elements", but rather the "false statement concerning a material fact" which emphatically changes the nature of the claim and is thus, not preempted by the Copyright Act.

**E.      Plaintiffs Adequately Plead Negligent Misrepresentation.**

Defendants do not deny that they published misleading information in the ARIN records. Defendants only assert that Plaintiffs have failed to allege a legal duty owed to Plaintiffs which is one of the elements for negligence.  Mot. at pg. 27.  However, Plaintiffs alleges a claim for *negligent misrepresentation* against Defendants. *See* SAC at ¶8 ("Copyright Plaintiffs allege that

Defendants…are liable for equitable estoppel, negligent misrepresentations and fraudulent

misrepresentations under Florida law."), SAC at ¶462 ("The acts and misrepresentations of

QuadraNet constitute negligent misrepresentation.").  A claim of negligent misrepresentation

does not require a "duty".  Rather, it requires an allegation that:

> (1) there was a misrepresentation of material fact; (2) the representer either knew
> of the misrepresentation, made the misrepresentation without knowledge of its truth
> or falsity, or should have known the representation was false; (3) the representer
> intended to induce another to act on the misrepresentation; and (4) injury resulted
> in a party acting in justifiable reliance upon the misrepresentation.

*Rothis v. M & I Marshall & Isley Bank*, 2010 U.S. Dist. LEXIS 109074, 2010 WL 3893960, *5

(M.D. Fla. 2010)  [**19] (quoting *Baggett v. Electricians Local 915 Credit Union*, 620 So. 2d

784, 786 (Fla. 2d DCA 1993))

Moreover, "duty for purposes of a negligence claim encompasses concepts of

foreseeability and may arise from… (3) other judicial precedent; and (4) a duty arising from the

general facts of the case." *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359,

1365 (S.D. Fla. 2015).  Courts in this circuit have also placed a legal duty on publishing entities

to exercise due care. See *Braun v. Soldier of Fortune Mag., Inc.*, 968 F.2d 1110, 1114 (11th Cir.

1992).  To the extent a duty is an element of negligent misrepresentation, Defendants owed it to

Plaintiffs under the facts of this case and judicial precedent because it was foreseeable to

Defendants that rightsholders including Plaintiffs would rely on the misrepresented information

they provided as the Whois records.  Relying on the Whois ARIN records to determine the

appropriate party to send the Notices is consistent with IT industry practices. FAC at ¶340, Aff.

of Smith at ¶15.  Courts throughout the US have relied on the identification information of the

Whois ARIN records when approving warrants and subpoenas.  FAC at ¶341.  Thus, by

publishing false information, refusing to provide the correct abuse contact, and refusing to remove infringing material, Defendants fail their duty under public policy.

Defendants also argue that Plaintiffs have not sufficiently alleged that they are third-party beneficiaries.  However, a third-party beneficiary also is not a requirement for a negligent misrepresentation claim.  Moreover, contrary to Defendants' assertion, Plaintiffs referred to the website link to the registration agreement between Defendants and ARIN and the exact paragraph number of the registration agreement and the policy that are at issue.  Aff. of Smith at ¶9.

**F.      Plaintiffs Adequately Plead Fraudulent Misrepresentation.**

Defendants incorrectly argue that "nowhere does the SAC allege that Quadranet made false misrepresentations in the Whois records, **knowing them** to be false at the time."  Mot. at pg. 29.  However, Plaintiffs allege, for example, that "Defendant…falsely stated in the Whois records on at least June 6, 2018 that QuadraNet, Inc. is the proper abuse contact for certain IP addresses in Miami, Florida where Plaintiffs' Works were pirated. In contradiction to this statement, QuadraNet's Chief Executive Officer Ilan Mishan now states that "Quadranet, Inc…does not have any physical presence in Florida. Furthermore, Quadranet, Inc. does not have…any data servers in Florida." Id. at ¶8."  SAC at ¶465.  Moreover, Plaintiffs allege that "QuadraNet knew that its statement in the Whois records that it is the proper abuse contact for said certain IP addresses was false when it updated the Whois records. QuadraNet knows that its statement in the Whois records of ARIN that it is the proper abuse contact for said certain IP addresses is false, but it purposefully fails to update the Whois records."  Id. at ¶¶453-454. Plaintiffs further allege that "QuadraNet benefits by its false statements by maintaining control

of valuable IPv4 addresses…" Id. ¶468, *see* Exhibit "5" (WSJ article about indictment of host provider Micfo, LLC for wire fraud in obtaining over 800,000 valuable IPv4 addresses).

Defendants clearly have an obligation per their registration agreement to report reassignments.  ARIN "requires organizations to submit information for all IPv4 reassignments of /29 and larger..." https://www.arin.net/resources/registry/reassignments/ (attached as Exhibit "4").  Defendants may dispute whether they had a legal obligation to report reassignments, but in response to a motion to dismiss under Rule 12(b)(6), the Court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla.*, 304 F.3d at 1084 (11th Cir. 2002).

 Plaintiffs also argue that Plaintiffs failed to allege that the Defendants' false statements were made intentionally "for the purpose of inducing the plaintiff" to rely and act on them. To use Defendants' words (on pg. 29), it is "non-sensical" to suggest that Defendants publish an abuse contact for people to contact it regarding abuse but not for inducing people to rely and act on it.  Nonetheless, Plaintiffs allege that "Plaintiffs relied on QuadraNet's misrepresentations when determining the proper abuse contact for sending notices of infringement at the certain IP addresses"; "Plaintiffs had a right to rely on QuadraNet's misrepresentations in the Whois records. Indeed, QuadraNet is obligated per its registration agreement with ARIN to update the Whois records;" and "QuadraNet knew that rightsowners including Plaintiffs were relying on QuadraNet's misrepresentations when determining the proper abuse contact for sending notices of infringement at the certain IP addresses." SAC at ¶¶456-458.  Plaintiffs further point out that relying on the Whois ARIN records is consistent with IT industry practices and that Defendants benefit by publishing false records in the Whois records because VPN subscribers such as LiquidVPN seek to become Defendants' subscriber because they know the fact that Defendant

allocated the IP addresses to them will not be publicly displayed in Whois records and that

Defendants also benefit by maintaining control over valuable IPv4 addresses." *See* SAC at

¶¶340, 467-468.  These types of allegations are sufficient to state a claim under Florida law for

both fraudulent misrepresentation and negligent misrepresentation. *See Godelia v. Doe*, 881 F.3d

1309, 1321 (11th Cir. 2018).   As discussed above, common law principles provide that if the

actor knows that the consequences are certain, or substantially certain, to result from his act, and

still goes ahead, he is treated by the law as if he had in fact desired to produce the result.

Moreover, it is inherently contradictory for Defendants to argue *in the same motion* that they are

publishing accurate abuse contact information in the Whois records for these IP addresses (pg.

29), but that they do not have the ability to supervise, control and stop the infringing activity at

the IP addresses (pg. 23) or no right to null-route an IP addresses (pg. 17).

The Defendants lastly argue that Plaintiffs asserted damages are too remote and

speculative.  Mot. at pg. 30.  However, Defendants clearly plead that "Plaintiffs' agents have

been unable to send notices to the appropriate party that could have and would have taken

actions to stop further infringements of their Works and so that the Plaintiffs could have taken

legal action against the subscriber…earlier." SAC at ¶¶346-437, 469.  Defendants own

speculative assertion that their subscribers would have ignored notices of infringement (as

Defendants did) or even a lawsuit is "speculative".  Even Defendants finally took action and

kicked their subscriber LiquidVPN off their servers in New Jersey in June after they were served

a copy of the FAC.  *See* Decl. of Mishan at ¶13 ("LiquidVPN leased from QuadraNet

Enterprises, LLC…one server in New Jersey [from July 2019 to June 2021]").  Moreover, there

can be no speculation as to what Plaintiffs would have done.

This case should be allowed to proceed to discovery so that Plaintiffs can find the identities of Defendants' subscribers and prove that these subscribers would have taken actions.

**G.     Plaintiffs Adequately Plead Their Claims for Equitable Estoppel.**

Defendants are incorrect in their assertion that equitable estoppel is not a claim for relief. The elements of an equitable estoppel claim are: (1) a representation about a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel based on the representation and reliance thereon. *See Kruse v. Mass. Mut. Life Ins. Co.*, No. 17-cv-61115, 2017 U.S. Dist. LEXIS 129249 (S.D. Fla. Aug. 14, 2017) (citing *Lewis v. Dep't of Health & Rehab. Servs.*, 659 So. 2d 1255, 1256-57 (Fla. 4th DCA 1995) (*quoting State Dep't of Revenue v. Anderson*, 403 So. 2d 397 (Fla. 1981)).

Defendants state on their website that they have a data center including servers in Miami, Florida. *See* SAC at ¶11.  Defendants publish records in the ARIN Whois records that state some of their IP addresses are in Miami, Florida and that any abuse issues should be sent to their abuse contact.  Id. at ¶331.  Plaintiffs relied on Defendants' statements and sent them Notices to the abuse contact they published in the ARIN records concerning these IP addresses in Florida among others.  Id. at ¶456.  After Defendants were sued, their CEO Mr. Mishan stated under the penalty of perjury that QuadraNet, Inc. does not do business in Florida and has not generated gross revenue from Florida clients.  *See* Decl. of Mishan at ¶5.  Yet QuadraNet, Inc. provided IP addresses and servers to the Florida company TorGuard (*see* SAC at ¶¶83, 180-181).  Assuming Mr. Mishan is being truthful, this means QuadraNet, Inc. has been blatantly and willfully untruthful on their website and in their Whois records.  Defendants should be held to account for what they publish when they try to later take inconsistent position to what they have published

and compare themselves to credit card services, utilities, hardware manufacturers and even ICANN to escape liability.  Mot. at pgs. 3, 7.  No credit card service, utility, or hardware manufacturer published ARIN Whois records stating they were the appropriate abuse contact for the IP addresses where Plaintiffs' Works were infringed.

### VII.    CONCLUSION

Defendants' Motion should be denied because the SAC asserts ample facts supporting Plaintiffs' claims and personal jurisdiction and venue in this district is proper.  However, if the Defendants' 12(b)(6) Motion is granted, Plaintiff respectfully requests leave to amend the SAC. Further, should the Court be inclined to grant Defendants 12(b)(2)(3) Motion, Plaintiffs respectfully request limited discovery to ascertain Defendants' contacts with Florida.

Dated:  September 10, 2021                      Respectfully submitted,


                                                /s/ *Joel B. Rothman*
                                                JOEL B. ROTHMAN
                                                Florida Bar No. 98220
                                                joel.rothman@sriplaw.com
                                                CRAIG A. WIRTH
                                                Florida Bar Number:  125322
                                                craig.wirth@sriplaw.com
                                                **SRIPLAW**
                                                21301 Powerline Road, Suite 100
                                                Boca Raton, FL 33433
                                                561.404.4350 – Telephone
                                                561.404.4353 – Facsimile

                                                and

                                                Kerry S. Culpepper
                                                *Admitted pro hac vice*
                                                CULPEPPER IP, LLLC
                                                75-170 Hualalai Road, Suite B204
                                                Kailua-Kona, HI  96740
                                                808.464.4047 – Telephone
                                                kculpepper@culpepperip.com
                                                *Attorney for Plaintiffs*

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2021, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all those identified on the Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive Notices of Electronic Filing.

*s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com

### SERVICE LIST

Mr. Johnathan R. Woodard
Mr. John Cyril Malloy III
Mr. Oliver Alan Ruiz
Malloy & Malloy, PL
2800 SW 3rd Ave
Miami, FL 33129-2317
info@malloylaw.com
jwoodard@malloylaw.com
jcmalloy@malloylaw.com
oruiz@malloylaw.com
Attorneys for QuadraNet, Inc. and QuadraNet
Enterprises, LLC

Mr. Bobby A. Ghajar
Cooley LLP
1333 Second Street
Suite 400
Santa Monica, CA 90401
bghajar@cooley.com
Attorneys for QuadraNet, Inc. and QuadraNet
Enterprises, LLC

Mr. Adam Losey
Losey PLLC
1420 Edgewater Drive
Orlando, FL 32804
alosey@losey.law
Attorney for VPNetworks, LLC dba
TorGuard

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK