**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
CASE NO.: 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC. *et. al*,

    Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a LIQUIDPVN, *et. al*,

    Defendants.

_____/

**QUADRANET, INC.'S AND QUADRANET ENTERPRISES, LLC'S SPECIAL
OBJECTION AND LIMITED OPPOSITION TO THE PLAINTIFFS' MOTION
FOR ENTRY OF A DEFAULT FINAL JUDGMENT AGAINST DEFENDANTS 1701
MANAGEMENT LLC d/b/a LIQUIDVPN, AUH20 LLC, AND CHARLES MUSZYNSKI**

Quadranet, Inc. and Quadranet Enterprises, LLC (collectively "Quadranet"), by and through their undersigned counsel, file this Special Objection and Limited Opposition to the Plaintiffs' Motion for Entry of Final Default Judgment (the "Motion") against Defendants 1701 MANAGEMENT LLC d/b/a LIQUIDVPN ("LiquidVPN"), AUH2O LLC ("AUH2O"), and CHARLES MUSZYNSKI a/k/a FREDERICK DOUGLAS ("Muszynski") (collectively the "LiquidVPN Defendants"). Without waiver of and expressly preserving all their Rule 12 defenses set forth in its pending Motion to Dismiss the Second Amended Complaint ("SAC") [D.E. 96],[1] Quadranet states as follows.

## I. PRELIMINARY STATEMENT

Plaintiffs seek default judgment against 1701 Management (aka LiquidVPN) and its founder [D.E. 125], and various relief that has the potential to affect other co-defendants in the case. Like other VPN companies and innocent infrastructure companies targeted by Plaintiffs in a series of lawsuits across the country, several of the co-defendants in this case have challenged, and intend to challenge, various assertions in the Second Amended Complaint ("SAC"). [D.E. 96.] For numerous reasons, the Motion is premature and resolving it now runs counter to precedent and risks inconsistent judgments. In accordance with *Frow* and Fed. R. Civ. P. 54(b), there is no rush to grant the Motion. Instead, the Court should defer the motion and deny it *without prejudice* until at least: (1) the motion to quash filed by Mr. Muszynski [D.E. 126], the alleged founder and alter-ego of 1701 Management (LiquidVPN), is fully adjudicated; (2) the pleadings are settled after rulings on all motions to dismiss, including Quadranet's pending motion to dismiss the SAC and motion challenging jurisdiction in Florida; and (3) Quadranet and any co-defendants are given a full opportunity to be heard regarding the Motion as to any request for relief or "findings" of fact that directly or indirectly affect them. This latter concern is amplified given that the Motion requests injunctive relief as to Quadranet, which is clearly not in default. Quadranet seeks to ensure that any ruling on the Motion applies **only** to the defaulting defendants – and that it cannot in any way be used against Quadranet or other co-defendants. The Court should deny the Motion.

## II. PROCEDURAL POSTURE AND SUMMARY OF ARGUMENT

The Court is familiar with the allegations in the SAC through Quadranet's pending Motion to Dismiss, but in short, this copyright infringement case is brought by thirty-eight (38) Plaintiffs (none

---

[1] Quadranet expressly preserves all of its defenses, including but not limited to those Rule 12(b) defenses asserted in Quadranet's pre-answer Motion to Dismiss. [D.E. 108]. *Hinkle v. Cont'l Motors, Inc.*, 2018 U.S. Dist. LEXIS 231328, at *11 (M.D. Fla. July 12, 2018); *Wray v. Petersen*, 2018 U.S. Dist. LEXIS 130754, at *15 (M.D. Fla. July 17, 2018).

of which are located in Florida), against six (6) named defendants, and an uncertain number of yet-to-be named "Does 1-100." [D.E. 96]. The SAC accuses those unnamed "Does" – who utilized their own computers, BitTorrent software, and a VPN (virtual private network) service – of infringing certain rights purportedly owned by the Plaintiffs. Untethered to any of the specified infringing activity is Quadranet, a data center that provided infrastructure support only (*e.g.* electricity, cooling of servers, internet access) to LiquidVPN and TorGuard, which are just two of Quadranet's 10,000+ customers during the relevant period. [D.E. 83-1, ¶26]. As explained in Quadranet's pending motion, Quadranet did not control or supervise the alleged infringement (nor could it), and did not host the allegedly infringing content either. Plaintiffs dragged Quadranet into this lawsuit based upon alleged conduct between LiquidVPN and *LiquidVPN's customers.*

In the September 20, 2021 Motion, Plaintiffs seek default final judgment against the LiquidVPN Defendants based upon their purported failure to answer or otherwise respond to the operative Second Amended Complaint ("SAC"). The Motion is not "titled" as having any bearing on Quadranet, but buried at the end is a request for a default final judgment containing "permanent injunctive" language and restrictions **as to Quadranet**. To be sure, this request is improper and violative of Quadranet's due process rights, addressed below.

*First*, Quadranet has moved to dismiss the SAC, and that motion is pending. [D.E. 108]. Plaintiffs cannot seek a default final judgment that in any way pertains to, relates, enjoins, effects, or disposes of any issues *as to Quadranet* (which as addressed below, it purportedly does). *See Walthour v. Tennis*, 2008 U.S. Dist. LEXIS 8026, at *9 (M.D. Pa. Feb. 4, 2008) ("Timely serving and filing a motion to dismiss under Fed. R. Civ. P. 12(b) precludes entry of default."). Quadranet also argued that the SAC is an impermissible shotgun pleading; a shotgun pleading cannot serve as a basis for the entry of a default final judgment.[2] "The Court **has an obligation to sua sponte strike a shotgun pleading**." *Chiron Recovery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2019 U.S. Dist. LEXIS 135535, at *21 (S.D. Fla. Aug. 8, 2019) (emphasis added).

*Second*, there is a strong likelihood that entering a default final judgment as to the LiquidVPN Defendants at this stage of the case would result in inconsistent judgments. The Motion neglects the Supreme Court's decision in *Frow v. De La Vega,* 82 U.S. 552 (1872), the starting point when considering any requests for a default final judgment in cases involving multiple claims and multiple

---

[2] *Alvarez v. Gregory HVAC LLC*, 2021 U.S. Dist. LEXIS 163505, at *1 (M.D. Fla. Aug. 30, 2021) (dismissing the plaintiff's complaint "as a shotgun pleading," and therefore "deny[ing] the Motion for Default Final Judgment.").

2.

parties (which exists here). *Frow* recognized that "in cases involving more than one defendant, a judgment of liability should not be entered against a defaulting party alleged to be jointly liable, until the matter has been adjudicated with regard to all defendants."[3] But even in cases where joint and several liability may not be at play – such as the case here given Plaintiffs' recent Notice of Withdrawal of Joint Liability [D.E. 124] –*Frow's* instruction still applies. That is, the "preferred practice in the Eleventh Circuit" of denying a motion for default judgment as to less than all defendants "has been extended beyond situations in which the defaulting defendant may be jointly liable with non-defaulting defendants to situations in which the defaulting defendant is merely similarly situated to those who continue to contest the allegations on the merits."[4] That is the case here, where at least:

(1) Quadranet has contested personal jurisdiction, venue, and whether the Plaintiffs have even stated a claim for relief in the SAC. [D.E. 108] and the basis of Plaintiffs' claims against Quadranet's stems from its relationship with LiquidVPN;

(2) One of the defaulting defendants, Charles Muszynski (the founder of LiquidVPN) has contested whether service of the SAC was even valid [D.E. 126]. If granted, that would obviously moot the Motion (*at least* as to him personally, if not the companies that he allegedly owns as well, defendants LiquidVPN and AUH20) [D.E. 96 ¶75]; and

(3) Another VPN accused of conduct similar to that of LiquidVPN, VPNetworks, LLC d/b/a/ Torguard ("TorGuard"), has been served with a copy of the summons and the SAC, but its deadline to respond to the SAC has not yet passed [D.E. 102].

*Relatedly*, Plaintiffs also fail to address Fed. R. Civ. P. 54(b), which requires that "[w]here there are multiple claims or parties, 'the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties **only if the court expressly determines that there is no just reason for delay**."[5] *See U.S. CFTC v. Allied Mkts. LLC*, 2015 U.S. Dist. LEXIS 139768 (M.D. Fla. Oct. 14, 2015). The SAC asserts multiple direct and indirect copyright infringement claims against *all* defendants, predicated on those defendants' purported involvement in the allegedly infringing activity, such that – as presented in the convoluted SAC – they appear inextricably intertwined. Accordingly, there is "just reason for delay" in entering any sort of default final judgment.

Indeed, there is a simpler approach that protects all parties' interests. There is no prejudice to

---

[3] *Broad. Music v. Original Paddy Murphy's Llc*, No. 6:10-cv-1052-Orl-22DAB, 2011 U.S. Dist. LEXIS 173944, at *3 (M.D. Fla. Mar. 17, 2011) (*citing to Frow*, 82 U.S. 552).
[4] *Poole v. Tire Recycling Servs. of Fla.*, 2019 U.S. Dist. LEXIS 146524, at *5-6 (M.D. Fla. Aug. 8, 2019).
[5] *Empire Fire & Marine Ins. Co. v. Pandt-Brown*, 322 F. Supp. 3d 694, 696 (E.D. Va. 2018) (*citing* Fed. R. Civ. P. 54(b)) (emphasis added).

Plaintiffs if the Motion is denied *with leave to re-file following a final disposition on the merits as to all named defendants.* This approach would avoid the clear risk of entering inconsistent judgments, and will also mitigate the risk of unfair prejudice to other named defendants, such as Quadranet and TorGuard.

Otherwise, there is concern that any default final judgment as to the LiquidVPN Defendants may severely prejudice Quadranet (and potentially the other defendants, such as TorGuard). Although default judgments are not binding upon *non*-defaulting defendants, and even assuming that clear lines of demarcation are drawn by the Court (such as barring Plaintiffs from using a default final judgment in any way to argue or establish their case against Quadranet), there is real apprehension – particularly given Plaintiffs' prior exaggerations and legal positions – that Plaintiffs would improperly wield an entry default final judgment as a weapon: **(1)** against other VPN companies (against whom Plaintiffs have filed suit in other courts); **(2)** against companies *like Quadranet* that provide infrastructure support to those VPN companies; or **(3)** against Quadranet *in this case*, and more specifically, to erroneously claim (as one example) that the LiquidVPN Defendants have somehow admitted that they are "direct" or "indirect" infringers, or that the Court's default final judgment constitutes "findings" or "rulings" in that regard. If the Court considers granting the Motion, Quadranet seeks safeguards to avoid any possibility that an early default final judgment might encourage more gamesmanship or as a way for Plaintiffs to prop up their frivolous claims against Quadranet.

Moreover, to the extent that any of the LiquidVPN Defendants are actually in default – which remains to be adjudicated given the pending motion to quash – the Court could eliminate any prejudice to the Plaintiffs by adopting the approach taken in *Penn-America. See Penn-America Ins. Co. v. Architectural Railings & Grilles, Inc.*, 2015 U.S. Dist. LEXIS 181739 (N.D. Fla. Dec. 17, 2015) (denying the motion for default judgment, but holding that as to the defaulted defendant, "Mr. Shelton has lost his right to participate…but entry of judgment will await a determination of the merits of [plaintiff's] claims against the other defendants.").

Finally, to the extent that the Court is inclined to move forward with the default final judgment in any respect, Quadranet requests an opportunity to be heard and address any arguments raised by Plaintiffs or the other remaining defendants.

### III. ARGUMENT

Plaintiffs' Motion is like a "Trojan horse," masquerading on the outside as a garden-variety request for a default final judgment against the LiquidVPN Defendants. But on the inside, Plaintiffs' Motion is rife with procedural and substantive landmines, due process violations, invitations for reversible error (given the shotgun nature of the SAC), and requests for relief that are likely to result

in inconsistent judgments and severe prejudice to other defendants (including Quadranet).

Even though Quadranet is **not** in default (and has challenged the SAC [D.E. 108]), the Motion improperly invites the Court into certain reversible error by *seeking permanent injunctive relief against Quadranet*: **"Plaintiffs further seek an order pursuant to 28 U.S.C §1651(a) that QuadraNet Inc., QuadraNet Enterprises LLC**, … cease facilitating access to any or all servers, domain names and websites through which the LiquidVPN Defendants engage in the aforementioned infringements." [D.E. 125, p. 21] (emphasis added).[6] Seeking a permanent injunction via motion for default – against a *non-defaulting defendant* – is unprecedented and violates due process rights. The title of the Motion does not include either Quadranet entity, nor is the Motion expressly targeted at Quadranet, which causes greater concern given that, had the Court simply granted it, Plaintiffs assuredly would have wielded it against Quadranet.

To the extent that the Court does not deny or defer the motion, and is considering granting the Motion in any way that directly (e.g. specific injunctive relief) or that might indirectly affect Quadranet (e.g. findings of fact characterizing LiquidVPN's relationship with Quadranet), Quadranet respectfully requests an opportunity to more fully brief the issues as well as a hearing so that Quadranet's rights and defenses are in no way prejudiced by any default final judgment. Otherwise, as explained below, the Court should deny the Motion without prejudice to being renewed at a later stage in the case.

**A. This Court Should Deny the Plaintiffs' Motion for Final Default Judgment *Without Prejudice* or Defer Ruling, Pending a Full and Complete Disposition on the Merits Relative to all Defendants in This Lawsuit.**

"It is the general rule that default judgments are ordinarily disfavored because cases should be decided upon their merits whenever reasonably possible." *Vasquez v. Moving Dudes LLC*, No. 19-cv-60663-BLOOM, 2019 U.S. Dist. LEXIS 118055, at *2 (S.D. Fla. July 15, 2019) (citation omitted). In addition to being "disfavored," default judgments are not automatic, but rather within the Court's discretion. "While Rule 55(b) provides the court power to enter a default judgment, the court's decision to exercise that power is discretionary." *Country Mut. Ins. Co. v. Goldman*, 2020 U.S. Dist. LEXIS 58000, at *3 (M.D. Ala. Apr. 2, 2020). As previewed above, there are multiple reasons why the Court should exercise its discretion and deny the Plaintiffs' Motion *without prejudice*.

    1. <u>The Motion Cannot Seek Any Relief or Adjudication Affecting Quadranet</u>.

---

[6] For clarification, citations to any page numbers in this memorandum refer to the page number reflected at the top-right hand corner of the document filed with the Court.

The Motion improperly advances arguments and seeks affirmative relief relative as to Quadranet. [D.E. 125, p. 21]. This is inappropriate because Quadranet is not (and has never been) in default and has filed a pending motion in response to the SAC. [D.E. 83, 108]. *Walthour v. Tennis*, 2008 U.S. Dist. LEXIS 8026, at *9 (M.D. Pa. Feb. 4, 2008) (recognizing that "[t]imely serving and filing a motion to dismiss under Fed. R. Civ. P. 12(b) precludes entry of default.").[7] Even if the Court considers the Motion as to the defaulting defendants, the Court should reject any claims or requested relief that directly or indirectly impacts or pertains to Quadranet.[8]

2. Given the Preliminary Stage of the Case, Granting the Motion Could Prejudice the Other Defendants to this Lawsuit and Create an Unnecessary Risk of Inconsistent Judgments.

"Courts have recognized . . . that in certain circumstances a default judgment is inappropriate if it results in inconsistency among judgments." *Glob. Aero., Inc. v. Platinum Jet Mgmt., LLC*, 2009 U.S. Dist. LEXIS 116633, at *9 (S.D. Fla. Oct. 20, 2009) (citation omitted). "The Supreme Court recognized this proposition in *Frow v. De La Vega,* 82 U.S. 552 (1872)." *Id.* "In *Frow,* the plaintiff filed a complaint charging eight defendants with a 'joint conspiracy' to defraud him of a piece of real property. Of these eight defendants, Frow failed to file a timely answer and the district court entered a pre-trial default judgment against him. The district court ultimately decided the merits of the case against the plaintiff and dismissed the complaint. Frow appealed the default judgment to the Supreme Court. Ruling in favor of Frow, the Supreme Court wrote:

> If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the other, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such acts of incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

---

[7] In addition to the lack of personal jurisdiction and improper venue issues, the SAC cannot serve as a basis for any relief being entered as to Quadranet because the SAC fails to state a claim. This Court has recognized that "'a default judgment cannot stand on a complaint that fails to state a claim.'" *Hart Dairy Creamery Corp. v. Kea Invs., Ltd.*, No. 20-cv-20452-BLOOM, 2020 U.S. Dist. LEXIS 201521, at *5 (S.D. Fla. Oct. 29, 2020) (*citing Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997)). Quadranet's Motion to Dismiss [D.E. 108] has demonstrated that the SAC fails to state a claim upon which relief can be granted, and therefore, the portion of the Motion that relates to Quadranet should receive no consideration. [D.E. 125, p. 21].
[8] Aside from LiquidVPN, Quadranet may have *other* VPN clients, or may be engaged by other VPN clients in the future, and therefore any permanent injunctive relief that in any way pertains to or could affect Quadranet would be procedurally improper and prejudicial.

6.

*Frow,* 82 U.S. at 554. "Several Circuits, including the Eleventh, have found *Frow* applies to situations where defendants are jointly and severally liable, **or have closely related defenses**." *Glob. Aero, Inc,* 2009 U.S. Dist. LEXIS 116633, at *11 (emphasis added). The *Frow* principle is necessary and should be applied so "that the relief against the defendants [is] consistent." *Id.*; *see also Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430, 434 (E.D. Va. 2006) (stating that *Frow* "explicates a cautionary warning to the courts: logically inconsistent judgments resulting from an answering defendant's success on the merits and another defendant's suffering of a default judgment are to be avoided.").

Here, entering a default final judgment as to the LiquidVPN Defendants would run the risk of an inconsistent judgment as to the other defendants. Even accepting the allegations in the SAC as true, the claims against the "Doe defendants," the LiquidVPN Defendants, TorGuard (whose deadline to respond to the SAC has not yet passed), and Quadranet appear to involve the same set of accusations and circumstances, such that there is a risk of an inconsistent result if any portion of the Motion is granted. *See Mfrs. All. Ins. Co. v. Brencorp, Inc.*, 2016 U.S. Dist. LEXIS 121213, at *6 (N.D. Ga. Mar. 22, 2016) (denying plaintiff's motion for default judgment because the defendants were "similarly situated," and also because the "claims against all Defendants arises from the same set of facts and circumstances, and it is possible that granting a default judgment against Defendant Brencorp while Plaintiff's claims against Defendants Brentech and Brennan remain pending could lead to inconsistent results.").

Moreover, even if the Court ultimately denies Quadranet's Motion to Dismiss [D.E. 108], a final determination of this action is likely to result in a finding that the LiquidVPN Defendants were **not**, for example, purported "direct" or "indirect" infringers as the Plaintiffs erroneously claim them to be. An inconsistent result is also likely, to the extent the Motion were granted, as to whether the Plaintiffs complied with the Digital Millennium Copyright Act ("DMCA") notification procedures. Separately, the Court should decline to enter any findings of fact or adjudication as to whether a VPN company can be liable for infringement: (1) even though that company does not host content and cannot see the content of its clients' online activity; and (2) when those clients are using their own computers, internet access, and BitTorrent software to allegedly share copyrighted movies. Given the factual and legal problems with Plaintiffs' position, the Court should not accept those as "truth" or otherwise "conceded." Nor should the Motion be used as a backdoor attempt to create or otherwise establish any sort of "findings" that Plaintiffs may improperly attempt to wield against Quadranet.

/

> 3. <u>Given the Infancy of the Proceedings, It Would Be Prudent for the Court to Deny or Defer Plaintiffs' Motion.</u>

The procedural posture of the case should guide the Court's discretion in denying the Plaintiffs' Motion. More specifically, (1) Quadranet has a case-dispositive Motion to Dismiss pending before the Court [D.E. 108]; (2) Plaintiffs allege to have "the identification records for DOES 1-100" [D.E. 96, ¶113], but those purported "Does" have yet to be served or otherwise named in this lawsuit – conduct by those "Does" are at the heart of this case; (3) Defendant Charles Muszynski (founder of LiquidVPN) is challenging service, and if successful, would moot all or part of the Motion (*at least* as to him personally, if not the companies that he allegedly owns as well, defendants LiquidVPN and AUH20) [D.E. 96 ¶75]]; and (4) Defendant VPNetworks, LLC d/b/a/ Torguard ("TorGuard") will respond to the SAC on or before October 18, 2021 [D.E. 102].

Given this array of procedural moving parts, and in light of the core copyright claims alleged in the SAC against all of the defendants, this Court should follow suit from other intellectual property cases involving multiple claims and multiple defendants. That is, the Motion should be denied *without prejudice*. *See Island Stone Int'l Ltd. v. Island Stone India Private Ltd.*, 2016 U.S. Dist. LEXIS 193544, at *4 (M.D. Fla. Dec. 20, 2016) (denying the plaintiff's motion for default judgment in copyright infringement case as to Island Stone India, noting that "[e]ven if liability against Island Stone India and Gupta is not joint, the two Defendants are so similarly situated that entering a default judgment against only Island Stone India raises the possibility of inconsistent judgments should Gupta go on to successfully defend against Plaintiffs' claims."); *see also Champion-Cain v. MacDonald*, 2018 U.S. Dist. LEXIS 116584, at *11-12 (S.D. Cal. July 12, 2018) (denying motion for default judgment because "a risk of inconsistent judgments between Defendant Lovesurf, Inc.—the subject of the default judgment motion—and Defendant MacDonald existed," as the "Court would have needed to resolve the question of first use in trademark law, thereby creating a risk of inconsistent judgments between Lovesurf and MacDonald.").

Separately, Plaintiffs' motion does not mention Fed. R. Civ. P. 54(b). Whether this rule was inadvertently omitted, it requires that "[w]here there are multiple claims or parties, 'the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties **only if the court expressly determines that there is no just reason for delay**." Fed. R. Civ. P. 54(b) (emphasis added). The Middle District of Florida has noted that "as a practical matter, Fed. R. Civ. P. 54(b) means:

> **[W]hen a default is entered against one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting a**

8.

> ***default judgment until after trial on the merits against the remaining defendants***. This practice grew out of the case of *Frow* …, in which the Supreme Court held that the risk of inconsistency precluded the entry of default judgment against one alleged conspirator whose alleged co-conspirators were proceeding to trial. Within [the Eleventh Circuit], **the preferred practice has been extended beyond situations in which the defaulting defendant may be jointly liable with non-defaulting defendants to situations in which the defaulting defendant is merely similarly situated to those who continue to contest the allegations on the merits**.

*Poole*, 2019 U.S. Dist. LEXIS 146524, at *5-6 (citation omitted) (emphasis added) (brackets in original). The failure to mention Rule 54(b) is alone fatal to the Plaintiff's Motion. *See, e.g., U.S. CFTC*, 2015 U.S. Dist. LEXIS 139768.

Here, the crux of the SAC is that various "John Doe" defendants (who have yet to be sued) are liable for direct copyright infringement because they utilized their own computers, BitTorrent software, internet service, and a VPN (virtual private network) service – purportedly the LiquidVPN Defendants' and TorGuard's VPN service – to allegedly infringe certain rights of the Plaintiffs. [D.E. 96]. The LiquidVPN Defendants and TorGuard are next in line, as the SAC claims that they are vicariously liable for the Does' direct infringement because they provided VPN services to those Does. *Id.* Quadranet was dragged into this lawsuit for "vicarious liability" as well, on the notion that because Quadranet is data center and provides "internet access" and "electricity" to companies (the vast majority of which are not VPN clients), it is secondarily liable for the defendant VPN companies.

The claims against all of the named defendants – as presented in the SAC – appear interwoven and related. The yet-to-be-sued "Doe defendants," along with the LiquidVPN Defendants, and TorGuard (and even Quadranet) *could* potentially have closely related denials, defenses, and affirmative defenses, to the extent the SAC survives Quadranet's Motion to Dismiss *with prejudice*. In these types of situations, the risk of inconsistent results dramatically increases if a default final judgment is entered as to less than all of the named defendants. This was recognized in *Alutiiq*, which found that "[w]here claims against a defaulting defendant and a non-defaulting defendant are distinct and easily separated, there is less chance of inconsistent results if default judgment is entered against the defaulting party and the case proceeds against the non-defaulting party. However, where the defendants are similarly situated such that they *would share* or have similar defenses, entering default judgment early could lead to logically inconsistent results if the non-defaulting defendant ultimately proves the plaintiff's claims are invalid." *Alutiiq Int'l Sols., LLC v. OIC Marianas Ins. Corp.*, 2013 U.S. Dist. LEXIS 95607, at *7 (D. Nev. July 5, 2013) (citation omitted) (emphasis added.

9.

Nor does Plaintiffs' "Notice of Withdrawal of Notice of Joint Liability" ("Notice") [D.E. 124] affect the analysis. The SAC contends that all named defendants are similarly situated because they are *all* liable for contributory copyright infringement. [D.E. 96, p. 72]. *Plaintiffs* contend that Quadranet and the LiquidVPN Defendants are similarity situated and allegedly liable for vicarious infringement (Count IV). [D.E. 96, p. 74]. As Plaintiffs present it, Quadranet and the LiquidVPN Defendants are inextricably intertwined, in that Quadranet entered into an agreement "for server and/or network services" with the LiquidVPN Defendants, that Quadranet controls the internet access for LiquidVPN, and that Quadranet controls "even the electricity to the servers" that were leased by LiquidVPN. [D.E. 96, ¶¶79, 422]. Accordingly, and regardless of the Notice vis-à-vis joint and several liability, the Motion should still be denied because it does nothing to address the potential for inconsistent and severely prejudicial judgments.

By analogy, in *Poole*, the court noted that the plaintiff did not "allege that [the non-defaulting] Defendant Johnson and [the defaulting] Defendant TRS are jointly liable," but "**regardless of whether alleged liability is joint or several, both Defendants are indisputably similarly situated**." *Poole*, 2019 U.S. Dist. LEXIS 146524, at *6-7 (emphasis added). Adhering to the preferred practice within the Eleventh Circuit, and recognizing that "the merits of the case against [the non-defaulting defendant have] yet to be determined, the risk of inconsistent judgments exists. This risk can and should be avoided by denying the instant motion without prejudice pending the conclusion of the case against the non-defaulting Defendant, Christopher Johnson." *Id*.

In addition to this "preferred practice," as noted by the *Poole* decision, the "Eleventh Circuit has cited the leading federal practice treatises for the proposition that 'even when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits." *Halpin v. David*, 2009 U.S. Dist. LEXIS 17341, at *3 (N.D. Fla. Feb. 19, 2009) (citing 10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure: Civil § 2690, at 76 (3d ed. 1998)); 6 James Wm. Moore et al., Moore's Federal Practice P 55.06 (2d ed. 1983). And although *Broad. Music v. Wheels*, 2008 U.S. Dist. LEXIS 124760 (E.D. Tenn. Feb. 15, 2008) was issued outside of the Eleventh Circuit, it nevertheless provides a persuasive and well-reasoned analysis as to why the Eleventh Circuit has adopted this "preferred practice," regardless of purported joint and several liability issues:

> *Frow's* applicability turns not on labels such as 'joint liability' or 'joint and several liability,' but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform. Where *Frow* applies, it would be an abuse of discretion to enter a default judgment against some but not all defendants

10.

prior to adjudication of the claims against answering defendants. Under these circumstances, there is, as a matter of law, 'just reason for delay' of entry of judgment under Rule 54(b)." *Broad. Music, Inc.*, 2008 U.S. Dist. LEXIS 124760, at *10 (citation omitted).

There is "just reason for delay" in entering any sort of default final judgment. As other courts within the 11th Circuit have recognized, it would be more prudent to deny a motion for default judgment *without prejudice* to the ability to renew that motion, if appropriate, at the conclusion of the proceedings against all other named defendants. *Poole*, 2019 U.S. Dist. LEXIS 146524, at *7-8; *see also Penn-America Ins. Co.*, 2015 U.S. Dist. LEXIS 181739, at *2 (recognizing that the "entry of judgment among fewer than all parties (or on fewer than all claims) sometimes is appropriate, sometimes not," and further noting that "[b]ecause the claims among all parties in this case are inextricably intertwined, this is a case in which entry of judgment should await the resolution of all claims among all parties.")

4. <u>If the Court Enters a Default Judgment Against Certain of the LiquidVPN Defendants, Which It Should Not, The Order Should Specify that It Cannot be Used In Any Way Against Quadranet.</u>

Given the Plaintiffs' tactics to date [D.E. 108, p. 12], as well as the unprecedented claims filed against it, Quadranet has justified concern that Plaintiffs will seek to use any default final judgment against the LiquidVPN Defendants as a proxy to "establish" or otherwise prop-up their claims against Quadranet and other VPN defendants.[9] Of course, such a maneuver is improper, but the concern here is that whether the LiquidVPN Defendants can be construed as potential "indirect" or "direct" infringers is a conclusion of law, and a default judgment in that regard should not be binding upon Quadranet, or its ability to argue and ultimately prove (as necessary) that the LiquidVPN Defendants were in fact *not* "direct" infringers. *See Hart Dairy Creamery Corp. v. Kea Invs., Ltd.*, No. 20-cv-20452-

---

[9] Quadranet notes that *non*-defaulting defendants have filed similar types of objections to a plaintiff's motion for entry of a default final judgment as to a *defaulted* defendant. *See Mfrs. All. Ins. Co. v. Brencorp, Inc.*, 2016 U.S. Dist. LEXIS 121213, at *2 (N.D. Ga. Mar. 22, 2016) (where Defendants "Brentech and Theodore Brennan filed a response opposing the Motion for Default Judgment" as to defendant Brencorp). As another example, in *Tims*, the plaintiff filed a "motion for a default judgment against Defendant Orlando Dale," and in response, "Defendants Chief Jason Dean and the City of Atmore filed an objection to that motion." *Tims v. Dale*, 2014 U.S. Dist. LEXIS 185023, at *1 (S.D. Ala. Jan. 15, 2014). The non-defaulting defendants in that case "worr[ied] that they might be vicariously liable for a default judgment against Dale." *Id.* The Court found that the non-defaulting defendants' worry was "unnecessary" because the default judgment was only "against Dale on Counts I, II, and IV, and only in his individual capacity. Because none of those counts state a claim for relief against either Chief Dean or the City, neither of those defendants will be bound by a default judgment entered on those counts." *Id.* In the instant case, however, some of the claims in the SAC are asserted against both the LiquidVPN Defendants **and** Quadranet, which makes Quadranet's concern all the more justified.

11.

BLOOM, 2020 U.S. Dist. LEXIS 201521, at *6 (S.D. Fla. Oct. 29, 2020) ("Although facts are admitted as true, conclusions of law are not.").

However, *if* final default judgment is eventually entered against the LiquidVPN Defendants, any judgment should not: **(a)** preclude Quadranet from fully contesting the Plaintiffs' claims – to the extent its Motion to Dismiss [D.E. 108] is denied; and **(b)** in any way prejudice Quadranet in this case, as Quadranet is not bound by the allegations deemed admitted by the LiquidVPN Defendants' failure to respond to the SAC. *See, e.g., Empire Fire & Marine Ins. Co. v. Pandt-Brown*, 322 F. Supp. 3d 694, 696 (E.D. Va. 2018) ("a default judgment against one defendant does not preclude a codefendant from contesting the plaintiff's claim, and a non-defaulting defendant is not bound by the facts deemed admitted because of a codefendant's failure to appear.") (citation omitted).[10]

Yet there is a real concern that should a default final judgment be entered at *this* stage, the Plaintiffs would improperly try to use that default final judgment as a weapon: **(1)** against other VPN companies (against whom Plaintiffs have filed suit in other courts); **(2)** against companies *like Quadranet* that provide servers to those VPN companies; or **(3)** against Quadranet *in this case*, and more specifically, to erroneously claim that the LiquidVPN Defendants have somehow admitted that they are "direct" or "indirect" infringers, or that the Court's default final judgment constitutes "findings" or "rulings" in that regard. Quadranet has made clear that its VPN clients were not the ones directly pirating the allegedly infringing works; rather, it was some of *those VPN clients'* customers who were distributing the allegedly infringing works by using a VPN to access the BitTorrent software. Elsewhere, Plaintiffs have asserted that the LiquidVPN Defendants are somehow "direct" infringers solely for the purposes of trying to portray Quadranet as being "one step closer" to the alleged activity. [D.E. 108, p. 13; p. 18]. As can be gleaned from the parties' briefings on this issue, there is justification

---

[10] Quadranet cites *Empire* (where a default judgment *was* in fact entered against the defaulting party in a multi-party lawsuit) as an example how courts have established safeguards to the non-defaulting defendant. There, the court held that the default judgment "is without prejudice to [the non-defaulting defendant] Guemple's ability to defend himself in the declaratory judgment action. Guemple is 'not bound by the default judgment' or the factual allegations deemed admitted in relation to [the defaulting defendant] Pandt-Brown. Rather, he has standing, 'independent of Pandt-Brown, 'to defend [him]self in the declaratory judgment proceeding'…[and] may 'present [his] case against the insurer,' including any evidence to controvert the factual determinations made in relation to Pandt-Brown." *Id.* at 698 (citation omitted). Quadranet only cites to *Empire* to show how district courts have proceeded, and what safeguards have been in place, where the "preferred method" (*i.e.* denying a motion for default final judgment *without prejudice*) was not followed. Thus, even assuming a default final judgment was entered as to the LiquidVPN Defendants, it should contain full and complete safeguards relative to Quadranet, and have no relevance, impact, or prejudicial effect as to Quadranet.

for concern that Quadranet could be prejudiced if a default final judgment is entered as to the LiquidVPN Defendants at this stage.

> 5. <u>As an Impermissible Shotgun Pleading, The SAC Cannot Serve as a Foundation for Entry of a Default Final Judgment</u>.

This Court has recognized that the "Eleventh Circuit has repeatedly and unequivocally condemned shotgun pleadings," and therefore the SAC cannot serve as a foundation for the entry of any default final judgment. *Johnson v. Carnival Corp.*, No. 19-cv-23167-BLOOM/Louis, 2020 U.S. Dist. LEXIS 4235, at *4 (S.D. Fla. Jan. 9, 2020); *see also Alvarez v. Gregory HVAC LLC*, 2021 U.S. Dist. LEXIS 163505, at *1 (M.D. Fla. Aug. 30, 2021) (dismissing the plaintiff's complaint "as a shotgun pleading," and therefore "deny[ing] the Motion for Default Final Judgment.").

In the instant case, Quadranet's pending and case-dispositive Motion to Dismiss detailed how the SAC constitutes an impermissible shotgun pleading *not only as to Quadranet*, but also as to the LiquidVPN Defendants as well. [D.E. 108, p. 18-21]. Having been represented at all times by counsel, Plaintiffs have no justification for having filed **three (3) shotgun pleadings in a row**. [(D.E. 108, p. 21), referencing D.E. 1, 24, and 96]. Plaintiffs may argue that Quadranet is in no position to address those pleading defects found in the causes of action *asserted against the LiquidVPN Defendants*. Courts have recognized that "[t]he Court **has an obligation to sua sponte strike a shotgun pleading**." *Chiron Recovery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2019 U.S. Dist. LEXIS 135535, at *21 (S.D. Fla. Aug. 8, 2019) (emphasis added); *see also Taveras v. Ocwen Loan Servicing LLC*, No. 19-cv-23358-BLOOM, 2019 U.S. Dist. LEXIS 207830, at *12 (S.D. Fla. Dec. 3, 2019) (dismissing the plaintiff's complaint as a shotgun pleading "following the Court's **sua sponte** review of [that] initial Complaint") (emphasis and bracket added).

Keeping with that obligation, the Motion should be denied because a default final judgment cannot be predicated upon an impermissible and expressly condemned shotgun pleading. *See Larkin v. Cantu LLC*, 2017 U.S. Dist. LEXIS 96518, at *11 (M.D. Fla. May 31, 2017) (*report and recommendation adopted by Larkin v. Cantu LLC*, 2017 U.S. Dist. LEXIS 95561, at *2 (M.D. Fla. June 21, 2017) ("Because Larkin's amended complaint is an impermissible shotgun pleading, I recommend that the Court deny his motions for default judgment.")).

## B. **If the Court is Not Inclined to Deny or Defer the Motion, Quadranet Requests a Hearing.**

To the extent the Court is inclined to consider granting Plaintiffs' Motion at this stage, Quadranet requests an opportunity for further briefing and hearing on the instant Special Objection

and Limited Opposition at the Court's earliest convenience. Quadranet seeks to ensure that it is given appropriate notice and an opportunity to be heard, and to discuss the safeguards that may be included in any Final Judgment.

### V. CONCLUSION

Given the unsettled nature of the SAC, the various moving parts, and the initial concerns raised by Quadranet, and because Plaintiffs would suffer no prejudice if the Motion was denied *subject to re-filing* the motion following a final disposition on the merits, the Court is urged to deny the Motion.

This is the prudent approach taken in *Country*, where after recognizing "the possibility of inconsistent judgments," the court denied the plaintiff's motion for default judgment. *Country Mut. Ins. Co. v. Goldman*, 2020 U.S. Dist. LEXIS 58000, at *5 (M.D. Ala. Apr. 2, 2020). Even though the court denied the plaintiff's motion *at that stage of the case*, the court held that the "denial of [plaintiff] Country Mutual's motion does not give the defaulting Defendants any leeway to defend this action. They remain in default and are not entitled to notice of filings or of hearings, and they cannot appear or present evidence." *Id*. Similarly, in *Penn-America*, the court denied the plaintiff's motion for default judgment, holding that under "Federal Rule of Civil Procedure 54(b), a judgment among fewer than all parties (or on fewer than all claims) may be entered only if the district court expressly determines there is no just reason for delay and expressly directs entry of judgment." *Penn-America Ins. Co. v. Architectural Railings & Grilles, Inc.*, 2015 U.S. Dist. LEXIS 181739 *3 (N.D. Fla. Dec. 17, 2015). The court found that as to the defaulted defendant, "Mr. Shelton has lost his right to participate…but entry of judgment will await a determination of the merits of [plaintiff's] claims against the other defendants." *Id.*

To avoid prejudice to Quadranet, or invite the potential for inconsistent judgments, the same result should occur here. Even if the Court finds that any of the three (3) "LiquidVPN Defendants" are truly in default, Plaintiffs would suffer no prejudice because the Court could find that those defaulting defendants have lost their right to participate in the case. Accordingly, the Motion should be denied *without prejudice* to re-filing that motion (to the extent applicable) following a final disposition on the merits as to all named defendants.

Respectfully submitted,

Dated: October 4, 2021

s/W. John Eagan/
John Cyril Malloy, III
Florida Bar No. 964,220
jcmalloy@malloylaw.com
Peter A. Matos

14.

Florida Bar No. 992,879
pmatos@malloylaw.com
Oliver Alan Ruiz
Florida Bar No. 524,786
oruiz@malloylaw.com
Jonathan R. Woodard
Florida Bar No. 096,553
jwoodard@malloylaw.com
W. John Eagan
Florida Bar No. 105,101
Johneagan@malloylaw.com
**MALLOY & MALLOY P.L.**
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone (305) 858-8000

*Of Counsel:*
Bobby Ghajar (*pro hac vice*)
bghajar@cooley.com
**COOLEY LLP**
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Tel: 310-883-6400
*Attorneys for Quadranet, Inc. and Quadranet Enterprises, LLC*

15.