UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.:  1:21-cv-20862-BB

MILLENNIUM FUNDING, INC., *et al*,

     Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a
LIQUIDVPN, *et al*,

     Defendants.

_____

**DEFENDANT VPNETWORKS, LLC D/B/A TORGUARD'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE OR, IN THE ALTERNATIVE, MOTIONS FOR MORE DEFINITE STATEMENT OR FOR DISMISSAL OR TRANSFER FOR IMPROPER VENUE, AND INCORPORATED MEMORANDUM OF LAW**

Defendant, VPNETWORKS, LLC d/b/a TORGUARD ("TorGuard"), by and through undersigned counsel and pursuant to FED. R. CIV. P. 8(a), 10(b), and 12(b)(6), respectfully moves to dismiss Plaintiffs' Second Amended Complaint [D.E. 96] ("SAC") for failure to state a claim upon which relief can be granted or, in the alternative and pursuant to FED. R. CIV. P. 12(e), TorGuard moves for a more definite statement to clarify and distinguish the specific allegations and claims made against TorGuard, or, in the alternative and pursuant to FED. R. CIV. P. 12 (b)(3), for dismissal or transfer for improper venue pursuant to FED. R. CIV. P. 12(b)(3), and in support thereof states as follows:

**BACKGROUND**

On August 17, 2021, Plaintiffs[1] filed the SAC adding TorGuard as a defendant and alleging causes of action for direct, contributory, and vicarious copyright infringement based on the alleged

---

[1] TorGuard notes that Plaintiffs After Productions, LLC, SF Film LLC, and State of the Union Distribution and Collections, LLC have filed a voluntary notice of dismissal without prejudice as to their claims against TorGuard [D.E. 105].

conduct of TorGuard's customers [D.E. 96]. TorGuard is a virtual private network ("VPN") provider that offers encrypted and secure access to a remote computer over the Internet. VPNs are used for transmitting, routing, or providing connections for said transmitting and routing, through a network that provides access to the Internet. Most VPN providers provide their subscribers "anonymous" usage by, for example, not logging subscriber access, assigning the subscriber IP addresses that are simultaneously shared among many users, or encrypting traffic. [D.E. 96 at 102-3]. VPNs are routinely and lawfully used worldwide by businesses, individuals, and governments to preserve online privacy and keep Internet use and traffic secure from unauthorized access.[2] VPNs are thus capable of substantial noninfringing uses for legitimate, unobjectionable purposes and TorGuard did not directly, contributorily, or vicariously infringe any of Plaintiffs' copyrighted works (the "Works") in providing its services to its customers ("End Users").

TorGuard is also a registered transitory digital network communications service provider and has a designated agent to receive and respond to notices of copyright infringement pursuant to the Digital Millennium Copyright Act ("DMCA"). Despite this fact, Plaintiffs never sent any of their alleged copyright infringement and takedown notices to TorGuard's designated agent.

## <u>MEMORANDUM OF LAW</u>

To survive a motion to dismiss, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although the Court must accept the Plaintiffs' well pleaded factual allegations as true, it does not and should not accept as true mere legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, conclusory allegations and unwarranted deductions of fact similarly should not be admitted as true as a general rule in deciding a motion to dismiss. *DIRECTV, Inc. v. Thacker,* No. 6:03-cv-239-Orl-28DAB, 2003 U.S. Dist. LEXIS 25463, at *3 (M.D. Fla. Apr. 15, 2003). Care should also be taken when reviewing alleged "facts" where plaintiffs have filed shotgun pleadings that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" and assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought

---

[2] *See e.g., VirnetX Inc. v. Mitel Networks Corp.*, No. 6:11-CV-18, 2012 U.S. Dist. LEXIS 107280, at *13, 2012 WL 3135639 (E.D. Tex. Aug. 1, 2012) (defining a VPN as "a network of computers which privately and directly communicate with each other by encrypting traffic on insecure paths between the computers where the communication is both secure and anonymous.").

against," which can be grounds for dismissal in and of itself, as such pleadings invariably confuse the facts and create misleading conclusions. *See Merch. One, Inc. v. TLO, Inc.*, No. 19-cv-23719, 2020 U.S. Dist. LEXIS 7462, at *7-8 (S.D. Fla. Jan. 16, 2020) (internal quotations omitted). Ultimately dismissal is warranted then where "no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006). Dismissal, or transfer, is also warranted on the grounds of improper venue where plaintiffs have brought their claims to a court without jurisdiction over defendants or their relevant activities. *Interim Healthcare, Inc. v. Interim Healthcare of Se. La., Inc*., No. 19-cv-62412-BLOOM/Valle, 2020 U.S. Dist. LEXIS 101841, at *21 (S.D. Fla. June 10, 2020)

Plaintiffs' SAC, at almost 100 pages in length with more than 200 pages of exhibits, is a ramshackle compilation of impermissibly commingled and conclusory allegations, replete with mistaken legal conclusions posing as facts.  Its verbosity attempts to cover the fact that it fails to state a claim as to any theory of copyright infringement alleged as to TorGuard. Nor does it even remotely suggest, let alone evidence, a connection between TorGuard and the Southern District.

## I.   THE SAC SHOULD BE DISMISSED AS AN IMPERMISSIBLE SHOTGUN PLEADING THAT FAILS TO DISTINGUISH INDIVIDUAL ALLEGATIONS AND CLAIMS AGAINST TORGUARD FROM OTHER DEFENDANTS.

The Federal Rules of Civil Procedure require that any claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that each claim must be stated in "numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 8(a)(2); 10(b). Complaints that commit the "sins" of being "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" or that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" violate these rules and should be dismissed as "shotgun pleadings" because they "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 2924 20-MD-2924, 2020 U.S. Dist. LEXIS 245338, at *40 (S.D. Fla. Dec. 31, 2020) (quotations omitted). Dismissal of shotgun pleadings is warranted because it is not the defendant's or the court's duty to "expend precious time and resources in attempting to decipher a pleading that can be clarified by more conscientious drafting." *Merch.*

*One, Inc.*, 2020 U.S. Dist. LEXIS 7462, at *10. "[U]nless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *In re Zantac*, 2020 U.S. Dist. LEXIS 245338, at *45. As this Court has ruled before, "when multiple parties or multiple claims for relief are merged into a single count" the count should be dismissed as an impermissible shotgun pleading. *See e.g., Chiron Recovery Ctr., LLC v. United Healthcare Servs.*, No. 9:18-CV-81761, 2020 U.S. Dist. LEXIS 114353, at *18 (S.D. Fla. June 30, 2020) (dismissing cause of action which failed to clarify how a specific defendant breached specific duties to specific plaintiffs).

In the four counts against TorGuard there are over 100 allegations and claims that are completely irrelevant to TorGuard and even more which impermissibly combine allegations against TorGuard with allegations against Defendants LiquidVPN, Quadranet, and Does 1-100. For each count, there are 36 named Plaintiffs [D.E. 96 at ¶¶17-53] alleging causes of action for copyright infringement against at least four defendants, sometimes more, yet there is no distinction drawn as to which specific Defendant infringed which specific Work or which Plaintiff holds rights to the allegedly infringed Work. This makes it incredibly difficult to determine for which Works belonging to which Plaintiffs TorGuard is alleged to be liable. As alleged by Plaintiffs, TorGuard's End Users used the VPN to copy and distribute only 23 of the 67 identified Works [D.E. 96 at 180-182]. A laborious cross referencing of Plaintiffs' corrected Exhibit 1 to the SAC [D.E. 105] with the allegations of the SAC shows that of the 36 Plaintiffs, lumped together in the SAC as "Plaintiffs" and never individually distinguished as to TorGuard, there are 23 Plaintiffs (not including the 3 which have dismissed their claims against TorGuard) who have alleged causes of action against TorGuard, none of whom identified any specific Work of theirs that was allegedly infringed. Plaintiffs' commingling of parties and claims in the SAC creates a jumbled mess of a pleading that is nigh impossible to detangle.

There are hundreds of factual allegations which have no relevance to TorGuard at all which are nonetheless incorporated by reference into the counts against it including paragraphs 61-69, 140-144, 169-179, 183-186, 205-207, 209-211, 215-222, 225-239, 258-261, 264-276, 279-284, 286, 293-320, 322-325, 328-349. The most egregious "sin" committed by Plaintiffs in this inartful pleading is their attempt to lump TorGuard in with conduct which is alleged against other Defendants to guise the reality that the claims against TorGuard are mere conclusory

allegations that are unsupported by any facts whatsoever. For example, ¶139 alleges that "LiquidVPN, TorGuard, and Does 1-100's End Users" all installed Popcorn Time on their computers and yet the immediately following paragraphs ¶¶140-144, and indeed all the many references to Popcorn Time throughout the Complaint, only relate to the alleged conduct of LiquidVPN or its users, not TorGuard or TorGuard's End Users. Similarly, at ¶263 Plaintiffs claim that LiquidVPN and TorGuard pay affiliates to recommend their VPN for piracy but the examples given at ¶¶264-269 again only relate to LiquidVPN. Plaintiffs even go so far as to claim LiquidVPN and TorGuard do not have a policy of terminating infringers at ¶321 yet every "fact" in support of this claim only pertains to allegations against LiquidVPN, *see* ¶¶322-325.

Ultimately, Plaintiffs' causes of action all require specific knowledge or conduct by TorGuard. Plaintiffs cannot simply tack-on TorGuard into the SAC as an afterthought and use allegations solely regarding the other Defendants to substantiate its purported claims against TorGuard. Plaintiffs' failure to distinguish individual allegations and claims against TorGuard is further compounded by the inclusion in the SAC of conclusory, vague, and immaterial facts not obviously connected to any particular cause of action against *any* Defendant. Plaintiffs' numerous attempts at pleading, along with its filing of other errata and voluntary dismissals, have only confused this action further. The SAC is the Plaintiffs third attempt to base non-existent causes of action on unsupported conclusory factual allegations, unsupported conclusions of law, omissions of requisite facts, and numerous paragraphs of wholly irrelevant "explanatory" material. The SAC should be dismissed as an impermissible shotgun pleading.

## II.  THE SAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

### A.  Plaintiffs Fail to State a Claim for Direct Copyright Infringement (Count I)

In order to support a claim for direct copyright infringement, plaintiffs must prove they own a valid copyright and that the defendant copied original elements of the copyrighted work. *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010). "Although copyright is a strict liability statute, there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party." *In Religious Technology Center v. Netcom On-Line Communication Services*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995); *see also CoStar Grp. v. LoopNet Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) ("To establish direct liability [for copyright infringement] something more must be shown than

mere ownership of a machine used by others to make illegal copies. There must be actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner."). In order to impose liability upon an internet service provider for third-party users' uploading of copyrighted material, plaintiff must establish that defendant "engaged in a volitional act to cause the illegal copying. To find otherwise would impose liability upon an otherwise passive internet service provider for conduct that is simply out of its control." *Hydentra HLP Int. Ltd. v. Luchian*, No. 1:15-cv-22134-UU, 2016 U.S. Dist. LEXIS 193457, at *24 (S.D. Fla. June 2, 2016). Thus, simply owning and managing "internet facilities that allow others to upload and download copyrighted material" is not in and of itself direct copyright infringement. *See e.g., Disney Enters. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1308 (S.D. Fla. 2011). Instead, volitional conduct – "i.e., uploading the copyrighted work itself or using software to search for material to upload" – is required to find direct copyright infringement on the part of the service provider. *Id.*

Plaintiffs do not even allege which specific Works of which Plaintiffs TorGuard allegedly infringed. Moreover, Plaintiffs fail to allege that TorGuard copied original elements of the Works. Plaintiffs do not allege the dates and times TorGuard is said to have infringed each specific Work nor do they allege a causal connection between TorGuard and each such alleged infringement. Instead, Plaintiffs allege that TorGuard allegedly promotes piracy and encourages its End Users to use the VPN for piracy and "transmits, routes, or provides connections for transmitting copies" of the Works [D.E. 96 at ¶374-5]. The facts Plaintiffs cite in support of these claims all relate to alleged direct infringement by the End Users and not TorGuard. Plaintiffs state that End Users, *not TorGuard*, used BitTorrent to infringe Plaintiffs' copyrights. [D.E. 96 at ¶¶135-144; 155-157]. The mere fact that TorGuard's VPN can be used by third parties for torrenting does not support Plaintiffs' attempt to infer that TorGuard downloads or uploads Plaintiffs' Works without authorization. Thus, there is no volitional conduct by TorGuard related to the alleged infringement of the Works. At most, Plaintiffs allege TorGuard promotes torrent sites and provides "the network connections for [End Users] and distribute[s] copies" of the Works [D.E. 96 at ¶151,164]. Plaintiffs allege this same conduct is evidence of contributory and vicarious infringement, yet it is axiomatic that what is contributory or vicarious infringement cannot also be direct infringement.

Further, Plaintiffs fail to establish or even allege that TorGuard copied the Works or how it, and not Does 1-100, is responsible for copying and distributing the Works when it merely

provided the VPN. Instead, Plaintiffs impermissibly commingle their alleged claims against TorGuard and other Defendants to conclude that somehow TorGuard and other Defendants "distributed and made copies" of the Works but also that TorGuard and other Defendants "encourage their end users to use the network to distribute and reproduce" the Works. [D.E. 96 at ¶¶376-7]. In reality, Plaintiffs are trying to claim that TorGuard copied the Works by passively providing the means to "transmit, route, or provide connections for transmitting copies" to Does 1-100 which falls short of any sort of volitional conduct necessary to find direct infringement. By commingling TorGuard, Quadranet, LiquidVPN, and Does 1-100 in its conclusory allegations, Plaintiffs have not alleged any actual facts to support that TorGuard directly infringed Plaintiffs' Works. Accordingly, Count I should be dismissed as to TorGuard.

### B. Plaintiffs Fail to State a Claim for Contributory Copyright Infringement by Intentional Inducement (Count II)

"The Eleventh Circuit has stated the well-settled test for a contributory infringer as one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Hydentra*, 2016 U.S. Dist. LEXIS 193457, at *33 (internal citations omitted); *see also Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 419 (1984) (defining contributory infringer as one who "was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner.") Thus, to establish a prima facie claim of contributory infringement, plaintiff must allege: (1) a direct infringement, (2) that defendant had knowledge of the direct infringement, and (3) that defendant intentionally induced, encouraged, or materially contributed to the direct infringement. *Michael Grecco Prods. v. RGB Ventures, LLC*, No. 3:16-cv-1335-J-34PDB, 2017 U.S. Dist. LEXIS 148820, at *21-22 (M.D. Fla. Sep. 14, 2017).

#### i. TorGuard did not have knowledge of the alleged direct infringement.

In the copyright context, "knowledge" means that either the alleged contributory infringer has actual knowledge or has reason to know of the infringing activity. *Casella v. Morris*, 820 F. 2d 362, 365 (11th Cir. 1987). A computer system operator can only be held contributorily liable if it "has actual knowledge that specific infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (internal citations omitted). Generalized knowledge of the *possibility* of infringement is not

sufficient to establish contributory liability, instead plaintiff must establish that the computer system has material actual knowledge of **specific acts of infringement**. *Luvdarts, Ltd. Liab. Co. v. AT&T Mobility, Ltd. Liab. Co.*, 710 F.3d 1068, 1072 (9th Cir. 2013) (emphasis added). Additionally, willful blindness can only establish the requisite knowledge for contributory liability where the defendant takes active steps to avoid acquiring knowledge. *Id.* at 1073.

Per the DMCA, a notification of claimed infringement "must be a written communication *provided to the designated agent of a service provider*" in order to be effective. 17 U.S.C.S. § 512(3)(A) (emphasis added). Any notification from a copyright owner or person authorized to act on behalf of the copyright owner that fails to meet this requirement shall not be considered in determining whether a service provider has actual knowledge or is aware of facts or circumstances from which infringing activity is apparent. 17 U.S.C.S. § 512(3)(B)(i). Although the DMCA requires only substantial compliance as to the content of the notice, the requirement for a "written communication provided to the designate agent" is absolute, thus a DMCA notice that is not served on the service provider's designated agent is a legal nullity. *See e.g., ISE Entm't Corp. v. Longarzo*, No. CV 17-9132-MWF (JCx), 2018 U.S. Dist. LEXIS 208921, at *25 (C.D. Cal. Dec. 11, 2018) quoting 4 Nimmer on Copyright § 12B.04 which states:

> As to the basic ingredients for notifications discussed above, the statute requires parties to be only substantially in compliance. By contrast, solely as to the requirement of "written communication provided to the designated agent of a service provider," there is no such leeway. The conclusion follows that that last requirement is categorical—no matter how much compliance is achieved with the balance of the criteria, a notification that is not in writing fails. **An otherwise perfect notification, but which is not served on the service provider's designated agent, is equally a nullity.**

(emphasis added). The basic operation of the DMCA requires knowledge or awareness of specific infringing activity since providers cannot remove, or disable access to, the infringing material without sufficient notice from the copyright holder. *Viacom Int'l, Inc. v. Youtube, Inc.*, 940 F. Supp. 2d 110, 113 (S.D.N.Y. 2013) (noting that "to require expeditious removal in the absence of specific knowledge or awareness would be to mandate an amorphous obligation to take commercially reasonable steps in response to a generalized awareness of infringement" which is not imposed by the language of the statute.)

Plaintiffs allege that TorGuard had knowledge that its End Users were infringing the Works because Plaintiffs sent notices to Quadranet which Plaintiffs allege "upon information and belief"

were forwarded to TorGuard. [D.E. 96 at ¶¶208, 212-13].[3] Notably Plaintiffs do not and cannot allege that Plaintiffs notified TorGuard of the infringement because Plaintiffs never sent TorGuard any notices despite the fact that TorGuard has a registered DMCA agent and a posted DMCA policy prominently on their website for exactly this purpose. **Exhibit A**, Declaration of Adam C. Losey. Even assuming *arguendo* that Quadranet forwarded any such notices to TorGuard, it did not send the notices to TorGuard's DMCA designated agent; thus, TorGuard cannot be said to have knowledge of the infringement under the strict requirements of the DMCA. *Id.*

Plaintiffs attempt to circumvent their failure to notify TorGuard of the alleged infringement as required under the DMCA by wildly speculating that the reason TorGuard subscribes to Quadranet is because Quadranet does not update the American Registry for Internet Numbers ("ARIN") records to link the infringing IP addresses to TorGuard, which prevented Plaintiffs from sending notices to TorGuard. [D.E. 96 at ¶¶ 209, 212, 346-48]. Even when viewed in the light most favorable to Plaintiffs and, disregarding the technical realities of the ARIN which make it impossible for TorGuard to be the abuse contact for the registered IP addresses, this theory is completely unfounded and is, in fact, countered by Plaintiffs' own statements which demonstrate that they can readily ascertain which IP addresses they contend are infringing their Works. [D.E. at ¶ 212]. For example, Exhibit 5 to the SAC is a letter from Plaintiffs' counsel to Quadranet in which counsel links alleged infringement to an IP address allegedly held by TorGuard and makes demands regarding same. But Plaintiffs never sent a DMCA Notice directly to TorGuard despite presumably being able to link the IP addresses to it and being aware of the TorGuard website, and the prominent DMCA notice. Plaintiffs' experts' apparent technical expertise should have enabled them to deduce that, since TorGuard is a VPN service provider with a website for its subscribers to access, TorGuard would have its own DMCA Agent. The facts alleged by Plaintiffs thus do not support that TorGuard subscribes to Quadranet for any other reason than because Quadranet provides the server space necessary for TorGuard to provide secure Internet access to its users.

Although not a separate cause of action, Plaintiffs also claim that TorGuard cannot avail itself of the DMCA safe harbor and yet the vast majority of the allegations in support of this claim relate to the alleged notices sent to Quadranet or the actions of LiquidVPN [D.E. 96 at ¶¶ 297-

---

[3] Factually unsupported allegations based "on information and belief" are not entitled to an assumption of truth when evaluating a motion to dismiss. *Misquith v. Beach*, No. 20-CV-81123-AMC, 2021 U.S. Dist. LEXIS 187513, at *5-6 (S.D. Fla. Sep. 29, 2021).

327]. Plaintiffs even note that LiquidVPN has failed to designate and register an agent with the Copyright Office while omitting that TorGuard has registered in compliance with the requirements of the DMCA. [D.E. 96 at ¶325]. Plaintiff once again attempts to commingle its allegations against multiple defendants to mask the fact that there is zero factual support for its claims against TorGuard. The only claims it makes against TorGuard are that TorGuard does not have a policy of terminating repeat infringers and that it interferes with the standard technical measures used by copyright holders to identify or protect copyright works by deleting user logs. [D.E. at ¶¶321, 326]. Since Plaintiffs did not send the notices to TorGuard's designated agent, it has no actual knowledge of TorGuard's policies on alleged infringers and has no factual basis for this conclusion.

In sum, TorGuard did not have knowledge of, nor did it take steps to avoid knowledge of, its End Users alleged infringement of the specific Works of the specific Plaintiffs and therefore cannot be held contributorily liable for infringement.

### ii. TorGuard did not intentionally induce or encourage the alleged direct infringement.

The provider of a service or product can only be found liable for inducing or encouraging third party infringement if it provides the service or product with the "object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005); *Michael Grecco Prods.*, 2017 U.S. Dist. LEXIS 148820, at *22. Intentional inducement requires more than just allegations regarding the characteristics of the product or service or the knowledge that it may be put to infringing uses and instead requires "active steps taken to encourage direct infringement such as advertising an infringing use or instructing how to engage in an infringing use." *Grokster, Ltd.*, 545 U.S. at 936. "Mere knowledge of infringing potential or of actual infringing uses" or "ordinary acts incident to product distribution, such as offering customers technical support or product updates" do not support a finding of contributory liability. *Id.* at 937. A defendant can thus only be found to have induced or encouraged infringement on the basis of purposeful, culpable expression and conduct. *Id.* Moreover to establish inducement liability, it is crucial to establish that the service provider "communicated an inducing message to [its] users." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788, 801 (9th Cir. 2007).

In *Grokster,* the court found reason to hold defendants Grokster and StreamCast liable for intentional inducement because defendants were advertising their music sharing services as an

alternative to Napster, a music sharing program which was facing claims of massive copyright infringement. 545 U.S. at 937. The defendants' advertisements regarding their own ability to download copyrighted music files and to respond to requests to locate and play copyrighted materials, which were aimed in part at former Napster users, were indications of unlawful purpose. *Id; see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788 at 801 (noting that the software systems "were engineered, disseminated, and promoted explicitly for the purpose of facilitating piracy of copyrighted music and reducing legitimate sales of such music . . . .")

Inducement liability thus generally requires "evidence of active steps taken to entice or persuade another to infringe," whereas liability for materially contributing does not require the same level of intent provided the contribution to infringing activities is in fact "material." *Michael Grecco Prods.,* 2017 U.S. Dist. LEXIS 148820, at *22-24. Where a defendant knows of particular instances of infringement and fails to act to remove them then defendant may be contributorily liable for material infringement based on a theory of imputed intent, but not for intentional inducement. *Id.* (finding plaintiff had a plausible claim for contributory infringement based on a material contribution theory where defendant provided the means for third parties to infringe plaintiff's copyrights, actually assisted in the distribution of the images pursuant to its marketing and sub-license agreements with the third parties, and failed to act to prevent further infringement when it was in a position to do so). While the substantial noninfringing uses of a product or service are not relevant to cases of "express" or "unmistakable" intent, they are relevant to cases where intent is imputed from circumstances beyond the characteristics or uses of a product or services or constructive knowledge of the potential for infringement. *See Grokster*, 545 U.S. at 2779; *Disney Enters. v. Hotfile Corp.*, 2013 U.S. Dist. LEXIS 172339, at *113.

Plaintiffs allege TorGuard "encourages" piracy based on the innocuous statements that TorGuard markets its VPN as making "Torrenting Ultra-Secure," it "lets you use P2P activity the way you want to," it can be incorporated into BitTorrent applications, it can be used to "stream content and download anonymously," and it can be used to BitTorrent anonymously, none of which are unlawful [D.E. 96 at ¶¶ 240-242]. While TorGuard does advertise its VPN services to use BitTorrent it does not follow from this alone that TorGuard affirmatively promotes the VPN to download and stream unlawfully or in violation of Plaintiffs' copyrights. Torrenting is a form of peer-to-peer (P2P) file sharing wherein users can download and upload filed through the BitTorrent network. While torrenting can be used to pirate copyrighted works (as can any Internet

connection from any Internet service provider), it has numerous legitimate uses – including facilitating the sharing of large files with reduced download speed – and is not illegal. As such, TorGuard telling its users that they can use its VPN any way they want, including the lawful purposes for which it is provided and intended, is hardly a "clear expression" or call to illegal activity. In the same vein, TorGuard providing a proxy by which its users can torrent is also not a call to piracy. [D.E. ¶¶ 262]. Absent notice of alleged direct infringement of Plaintiffs' Works by its End Users, TorGuard cannot be deemed to intentionally induce or encourage such infringement merely by offering its services for their intended lawful use.

Plaintiffs' claims regarding TorGuard's affiliates are yet another example of the conclusory, vague, and immaterial "facts" contained in the SAC. Even if it is true that one affiliate promoted TorGuard for piracy as alleged by Plaintiffs, there is no evidence or even a claim to support that TorGuard made similar statements or even endorsed or approved the statements made by the supposed affiliate. [D.E. 96 at ¶¶ 247-250.] Plaintiffs also conclude that TorGuard intentionally deletes the log data for their end users to "conceal their piracy" while ignoring the actual stated and legitimate purpose of this practice. [D.E. 96 at ¶ 257]. As noted in the excerpt included by Plaintiffs, TorGuard deletes log data because it values user privacy, anonymity, and security including the ability to torrent without exceeding any limits. This is one of the many legitimate uses for a VPN and BitTorrent and is not illegal or *per se* infringement.

Although not cited as facts in support of Count II, perhaps because Plaintiffs realize they do not demonstrate the requisite level of intent, TorGuard would be remiss if it did not also lay to rest Plaintiffs' claims regarding other statements made by TorGuard which Plaintiffs contend "encourage" users to infringe the Works. Plaintiffs claim that TorGuard encourages users to use the VPN to pirate content because it does not block torrent sites that can be used for pirating and it provides technical support on how to use the VPN [D.E. at ¶¶153-4]. However, TorGuard is not required to block such sites or take any other affirmative action to police third-party copyrights. Responding to questions on whether a site is accessible – when the asker did not state their purpose for accessing the site or identify the specific materials they sought access to – does not mean that TorGuard had knowledge of any alleged infringement of the specific Works of the specific Plaintiffs in this action. Neither a failure to take affirmative steps to prevent infringement or offering customers technical support is a purposeful, culpable expression promoting infringement. In yet another example of an unfounded conclusion without any basis in fact, Plaintiffs also claim

that TorGuard does not have a policy of terminating repeat infringers. [D.E. at ¶ 321]. Despite Plaintiffs evident familiarity with TorGuard's website, they conveniently omit that the TorGuard's Terms of Service require all End Users to "abide by all applicable federal, state and local laws and regulations" and prohibits End Users from "uploading, transmitting, possessing, receiving, transporting, or distributing any copyrighted, trademark, or patented content which you do not own or lack written consent or a license from the copyright owner." **Exhibit B,** Copy of Terms of Service posted to https://torguard.net/terms.php and last accessed on October 13, 2021.

TorGuard also has a zero-tolerance policy for any violations and reserves the right to terminate End User's access to the VPN for any breach of the Terms of Service. *Id.* If Plaintiffs had properly notified TorGuard's designated DMCA Agent directly regarding any alleged infringement, then they would have immediately known how TorGuard's policies are implemented. By failing to do so, any allegations denying that TorGuard has appropriate policies in place simply lack credulity. In conclusion, Plaintiffs have failed to allege that TorGuard had knowledge of the direct infringement of the specific Works of each specific Plaintiff by any of its End Users, and therefore, TorGuard cannot have intentionally induced or encouraged such infringement. Accordingly, Count II must be dismissed as to TorGuard.

### C. Plaintiffs Fail to State a Claim for Material Contribution to Direct Infringement (Count III)

There can be no liability for material contribution if the product or service in question is capable of "substantial noninfringing uses," which results in wide use "for legitimate, unobjectionable purposes." *Hydentra*, 2016 U.S. Dist. LEXIS 193457, at *34 citing *Sony*, 464 U.S. at 442. It follows then that even "a defendant who distributes a product that materially contributes to copyright infringement will not be liable for contributory infringement if the product is also widely used for legitimate, unobjectionable purposes or is merely capable of substantial noninfringing use." *Id* at *37. The court need only determine whether a product or service is *capable* of substantial noninfringing uses, not whether it is currently used in a non-infringing manner. *Id.* "Absent any specific information which identifies infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material." *Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 3:16-cv-907-J-39MCR, 2017 U.S. Dist. LEXIS 155748, at *33 (M.D. Fla. Jan. 17, 2017). Where the product or service has a lawful use, a defendant can only be liable for third party

infringement if it offers the product or service "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement" beyond mere distribution with knowledge of third-party action. *Grokster, Ltd.*, 545 U.S. at 937 (remanding case where defendant's software was, and had been for some time, overwhelmingly used to infringe, and the infringement was the overwhelming source of defendant's revenue from the software which was engineered, disseminated, and promoted explicitly for the purpose of facilitating piracy of copyrighted music.)

Not only is TorGuard's VPN service *capable* of substantial noninfringing use, but it is also predominantly used and marketed for such noninfringing use and Plaintiffs have failed to account for this material fact in the SAC. TorGuard's VPN offers secure access to the Internet, privacy protections against being tracked and targeted, and access to a convenient method to download and share files. Use of a VPN to do any of these does not change the legality of the conduct. Similarly providing access to BitTorrent is a substantial noninfringing use as BitTorrent is simply a "particularly efficient peer-to-peer system" that "allows users to download different pieces of a file simultaneously from multiple users" and also "enables users to begin sharing a file before it has finished downloading, meaning that users can be both downloading and uploading different pieces of a file from, and to, multiple other users."[4] The fact that it can be used to pirate copyrighted works does not negate or even detract from its legitimate uses which are a substantial part of TorGuard's business. Unlike the peer-to-peer sharing in *Grokster* and programs like it, TorGuard's VPN was not engineered, disseminated, and promoted explicitly for the purpose of facilitating piracy. Accordingly, Count III of the SAC should be dismissed against TorGuard.

### D.  Plaintiffs Fail to State a Claim for Vicarious Infringement (Count IV)

When it comes to copyright, "a party infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Hydentra*, 2016 U.S. Dist. LEXIS 193457, at \*40. A plaintiff asserting a claim for vicarious copyright infringement must allege "(1) the right and ability to supervise, and (2) a direct financial interest in the profits of the infringing activity." *Afford. Aerial Photography, Inc. v. Modern Living Real Estate*, LLC, No. 19-

---

[4] *UMG Recordings, Inc. v. Bright House Networks, LLC*, No. 8:19-cv-710-MSS-TGW, 2020 U.S. Dist. LEXIS 122774, at \*5-6 (M.D. Fla. July 8, 2020); *see also Grokster, Ltd.*, 545 U.S. at 920 ("given these benefits in security, cost, and efficiency, peer-to-peer networks are employed to store and distribute electronic files by universities, government agencies, corporations, and libraries, among others.")

cv-80488-BLOOM/Reinhart, 2019 U.S. Dist. LEXIS 132023, at *8 (S.D. Fla. Aug. 6, 2019). Vicarious liability cannot be imposed based on a claim that defendant had constructive knowledge of the fact that its customers *may* use its equipment to make unauthorized copies of copyrighted material. *Sony*, 464 U.S. at 439. Plaintiffs have failed to allege facts to support that TorGuard either had the right and ability to supervise its End User's alleged infringement or that it profited from such infringement thus dismissal of Count IV is warranted.

> **i.  TorGuard does not have right and ability to supervise or exercise control over any alleged infringing activity of End Users, or if it does it has not declined to exert that right where it has knowledge of infringement.**

"Vicarious copyright liability is an outgrowth of respondeat superior." *Luvdarts*, 710 F.3d at 1071. In general, "contributory liability is based on the defendant's failure to stop its own actions which facilitate third-party infringement, while vicarious liability is based on the defendant's failure to cause a third party to stop its directly infringing activities." *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d at 1175. In determining whether defendants have the "right and ability to supervise" third party infringement, courts have required actual control meaning that defendants are only vicariously liable for the direct infringement of another if they "participate in, *exercise control over*, or benefit from the infringement." *Klein & Heuchan, Inc. v. CoStar Realty Info., Inc*, 707 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010) (emphasis in original) quoting *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F. 2d 89, 92 (2d Cir. 1985). A defendant exercises control over a direct infringer when it has "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Venus Fashions, Inc.*, 2017 U.S. Dist. LEXIS 155748, at *34. The determination of whether a defendant has the capacity to halt infringement is determined by examining the system's "current architecture" and attempts to suggest measures that are "imprecise, overbroad, or not workable" will not satisfy the requirement to establish defendant's practical ability to control infringing conduct. *Id.* at *34, *73.

Plaintiffs' contention that TorGuard "has the right and ability to supervise and control the infringing activities that occur through the use of their service" attempts to impute an overly broad measure of control that is not practical or feasible. Plaintiffs claim that TorGuard can control its users' alleged infringement because it controls the IP addresses and deletes log records and that it could have taken "simple measures such as null-routing End Users to stop unauthorized distribution of Works" and "logging their end users' access to servers controlled by them…to

identify end users engaged in unauthorized distribution…and stop end users from engaging in infringement" [D.E. 408, 415-6]. TorGuard can only control access to its VPN; it does not have control of, and Plaintiffs do not allege it can control, any third party websites or servers accessed by TorGuard's End Users. TorGuard only provides a means of access but does not and cannot control the specific uses of the VPN and to require it to do so, without specific knowledge and notice of infringement, would be tantamount to requiring TorGuard to police the Internet and enforce Plaintiffs' copyrights for them. As evidence of this, the "simple measures" recommended by Plaintiffs in the SAC both require knowledge and notice of the specific infringement in order to be effective; yet TorGuard did not have knowledge of any of the alleged specific infringements and does not have a legal requirement to affirmatively monitor for infringement of the specific Plaintiffs' Works. Plaintiffs further allege that TorGuard is vicariously liable because it "refused to take meaningful action to prevent the widespread infringement by its end users" by allowing End Users to access sites like Pirate Bay [D.E. at 417]. Again, TorGuard is not in the business of online censorship and does not block user Internet access to sites which are notably accessible even without the use of a VPN. Consequently, while TorGuard may have the right to terminate user accounts based on reports of infringement, it does not have the practical ability or even obligation to do so absent notice from the copyright holders.

### ii. TorGuard does not profit directly from the infringing activity of End Users.

Plaintiff must also show that defendant profited *directly* from the infringing activity in order to be found vicariously liable. Not every benefit is a direct financial benefit though and thus the court's analysis hinges not on whether the defendant received *any* benefit, but instead on whether there is a "causal relationship between the infringing activity and any financial benefit to defendant." *Klein & Heuchan, Inc.*, 707 F. Supp. 2d at 1299 citing *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). "Financial benefit exists where the availability of infringing material acts as a draw for customers." *Ellison v. Robertson*, 357 F.3d at 1078 (internal quotes and citations omitted); *see also Hydentra* 2016 U.S. Dist. LEXIS 193457, at *41 citing *Perfect 10, Inc.*, 488 F.3d at 1117 (finding that the relevant inquiry for a direct financial benefit is "whether the infringing activity constitutes a draw for subscribers, not just an added benefit").

Even under a "draw" theory, liability must be based upon a direct financial benefit to the alleged vicarious infringer meaning that the availability of infringing content must "provide

the *main* customer draw to the service" such that the "very success of the defendant's venture must depend on the infringing activity." *UMG Recordings, Inc. v. Bright House Networks, LLC*, No. 8:19-cv-710-MSS-TGW, 2020 U.S. Dist. LEXIS 122774, at \*16 (M.D. Fla. July 8, 2020) (emphasis in original). Plaintiff must therefore plausibly allege that the infringing activity is the *main* draw in order to support a claim for vicarious liability – to hold otherwise would negate the very meaning of "direct" financial benefit. *Id.* at \*16 ("absent this limitation, the draw theory would provide essentially for the limitless expansion of vicarious liability into spheres far removed from the factual settings in which vicarious liability arose—employer-employee and independent-contractor relationships.") As such, claiming that defendant's purported failure to police infringement serves as a draw for subscribers is insufficient to plead that defendant receives a direct financial benefit from its subscribers' infringement. *Id.* at \*25 (granting motion to dismiss complaint as to vicarious liability related to alleged subscriber use of BitTorrent and other peer-to-peer distribution networks to illegally download and distribute copyrighted works because plaintiffs did not adequately allege a direct financial benefit).

Plaintiffs do not, and cannot, allege that pirating is the main draw for users of TorGuard's VPN and that TorGuard derives a direct financial benefit from the alleged copyright infringement of its End Users. Instead, Plaintiffs only make the conclusory allegation that the ability to access sites like Pirate Bay anonymously acts as a "powerful" draw for users which financially benefits TorGuard [D.E. 96 at ¶¶ 414-17]. The only "facts" offered as a basis of this claim are that TorGuard provides a proxy link and instructions on how to set up BitTorrent, and that it pays affiliates to recommend its VPN service for piracy. [D.E. 96 at 262-263]. However, nothing in the materials cited by Plaintiffs supports that the proxy is offered to pirate content. By its plain language, *which is included in the SAC*, the proxy is offered to facilitate BitTorrent on Windows, which is a permissible and lawful use. Again, BitTorrent is a legitimate, efficient, peer-to-peer system that enables faster simultaneous downloading.[5] Plaintiffs' allegations are specious and baseless.

Plaintiffs attempt to proffer a statement made by an unknown third party in the comment section of a news article to show that "piracy is a draw" is similarly without merit and unsupported by the facts alleged, especially when compared to the alleged conduct of the other VPN defendants. TorGuard does not promote or endorse piracy anywhere on its site, and there is no statement of such conduct to support Plaintiffs' claims. TorGuard also explicitly directs its affiliates not to

---

[5] *UMG Recordings, Inc.*, 2020 U.S. Dist. LEXIS 122774, at \*5-6.

promote piracy and a has a strict termination policy for affiliates who violate these requirements.

Finally, Plaintiffs do not identify any direct profits that TorGuard receives from the unauthorized use of its VPN service for pirating. TorGuard does not directly provide infringing content for users or share in any proceeds from any sale of the infringing content thus TorGuard does not and cannot derive profits from advertising or the availability of specific content, infringing or otherwise. TorGuard's profits arise from flat rate subscriptions based on speed and bandwidth, the number of users, the number of servers, and the level of technical support among other factors which are not tied to infringing activity. Other than spurious allegations which are facially wrong, there is nothing to support that users choose TorGuard's VPN service for the purpose of pirating such that the "very success of [TorGuard's VPN] must depend on the infringing activity." Accordingly, Count IV must be dismissed as to TorGuard

## III.   IN THE ALTERNATIVE, DEFENDANT TORGUARD MOVES FOR A MORE DEFINITE STATEMENT OF PLAINTIFFS' CLAIMS AGAINST TORGUARD.

Fed. R. Civ. P. 12 (e) provides that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." If the Court does not grant TorGuard's motion to dismiss Plaintiffs' SAC as a shotgun pleading, or for failure to state a cause of action, TorGuard moves in the alternative for an order requiring Plaintiffs to clarify and distinguish those allegations and claims made specifically against TorGuard. Plaintiffs should be required to amend their SAC to remove all allegation unrelated to Plaintiffs' Counts against TorGuard, to identify both the specific Plaintiffs alleging infringement by TorGuard and the *specific* Works TorGuard is alleged to have infringed (directly or otherwise), when each such infringement allegedly occurred, and to separate the Counts made against TorGuard from those made against other Defendants.

## IV.   THE SAC SHOULD BE DISMISSED OR TRANSFERRED FOR IMPROPER VENUE.

Pursuant to FED. R. CIV. P. 12(b)(3) a party may assert the defense of improper venue by motion, and when plaintiffs have laid venue in the wrong division or district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. On a Rule 12(b)(3) motion to dismiss, the plaintiff has the initial burden of showing that venue in its chosen forum is proper. *Patrick Collins, Inc. v. Doe*, No. 3:12-cv-334-J-32JBT, 2012 U.S. Dist. LEXIS 186718, at *9 (M.D. Fla. Sep. 20, 2012).

"The court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper." *Id.* The proper venue for copyright infringement suits is determined by the specific venue provision of the Copyright Act, 28 U.S.C. § 1400(a), not the general provision governing suits in federal district courts. *Liberty Media Holdings, LLC v. Wintice Grp., Inc*., No. 6:10-cv-44-Orl-19GJK, 2010 U.S. Dist. LEXIS 58683, at *8 (M.D. Fla. June 14, 2010); *see also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1514 (2017) (regarding the patent venue provision in the Copyright Act, "28 U.S.C. § 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions.")[6]

For civil actions proceeding under the Copyright Act, venue "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Based on precedent from the Eleventh Circuit, a defendant "may be found" in a district in which it "could be served with process; that is, in a district which may assert personal jurisdiction over the defendant." *David Byrne & Index Music v. Crist*, No. 8:10-cv-1187-T-26MAP, 2010 U.S. Dist. LEXIS 162786, at *6 (M.D. Fla. Aug. 4, 2010). A court may assert general jurisdiction over foreign corporations when their affiliations with the venue are so "continuous and systematic as to render them essentially at home in the forum." *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). This inquiry "calls for an appraisal of a corporation's activities in their entirety" and not just the magnitude of the defendant's contact with the forum as "a corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 1559 (internal quotations omitted).

Alternatively, in order for a court to exercise specific jurisdiction over a claim, there "must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1775 (2017). Furthermore, a "defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1781. What is needed is a connection between the forum and the specific claims at issue and "when there is no such connection, specific jurisdiction

---

[6] Although some courts also apply 28 U.S.C. § 1391 in determining venue, the analysis is largely the same since under § 1400(a) venue is proper in any judicial district in which the defendant would be amenable to personal jurisdiction. *Island Stone Int'l Ltd. v. Island Stone India Private Ltd.*, No. 6:16-cv-656-Orl-40KRS, 2017 U.S. Dist. LEXIS 61027, at *32 (M.D. Fla. Apr. 4, 2017). Under either section of the statute, the Southern District of Florida is not the proper venue for this case.

is lacking regardless of the extent of a defendant's unconnected activities in the forum." *Id.* The Florida long-arm statute identifies acts which subject a person to the jurisdiction of Florida courts and under this standard the Eleventh Circuit has held that "merely posting a passive website does not constitute either the solicitation of business in Florida or the transaction of business in Florida for purposes of a jurisdictional due process analysis." FLA. STAT. § 48.193; s*ee Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 735 (11th Cir. 2018).

In asserting venue, Plaintiffs allege that "Defendants" collectively solicit, transact, or do business within the Southern District because co-defendant Quadranet operates a data center in Miami, Florida. [D.E. 96 at ¶¶10-5]. However, TorGuard is a limited liability company organized under the laws of Florida with a principal place of operations in Orlando, Florida; thus, it resides and can be found in the Middle District, not the Southern District [D.E. 96 at ¶ 60]. Additionally, none of the 36 named Plaintiffs reside in the Southern District which further supports that this district is not the proper venue for this action, as Plaintiffs could not have been harmed in this district. [D.E. 96 at ¶¶ 18-53]. Plaintiffs allege "upon information and belief" that TorGuard sells or has sold VPN services to individuals in the Southern District, but does not claim that the alleged infringement occurred in the District or in connection with sales to this District. [D.E. 96 at ¶100]. Moreover, Plaintiffs do not allege that TorGuard resides or can be found within the Southern District of Florida other than to collectively allege that all "Defendants" reside or can be found in this District [D.E. 96 at ¶¶10-6]. However, neither TorGuard nor its agents reside or may be found in the Southern District. **Exhibit C**, Declaration of Benjamin Van Pelt. TorGuard thus requests that the SAC be dismissed for improper venue or transferred to the Middle District of Florida.

## CONCLUSION

WHEREFORE, Defendant, VPNETWORKS, LLC d/b/a TORGUARD, respectfully requests that the Court grant its Motion to Dismiss and enter an Order dismissing this case with prejudice as against Defendant TorGuard or, in the alternative, enter an Order transferring this case to the Middle District of Florida as well as enter an Order requiring Plaintiffs to amend the SAC to identify and clarify the specific allegations and claims Plaintiffs have against TorGuard, and for any and all other relief the Court deems appropriate.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 18, 2021 a true and correct copy of the foregoing was electronically filed and served using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: <u>/s/ *Adam Losey*</u>
Adam C. Losey, Esq.
Florida Bar No. 69658
Linnea M. Eberhart, Esq.
Florida Bar No. 119510
LOSEY PLLC
1420 Edgewater Dr.
Orlando, FL 32804
(407) 906-1605
alosey@losey.law; leberhart@losey.law;
docketing@losey.law
*Counsel for Defendant VPNETWORKS,*
*LLC d/b/a TORGUARD*