**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No.: 1:21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC., *et al*,

    Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a
LIQUIDVPN, *et al*,

    Defendants.

---

**DEFENDANT VPNETWORKS, LLC D/B/A TORGUARD'S REPLY
TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

    Defendant, VPNETWORKS, LLC d/b/a TORGUARD ("TorGuard"), by and through undersigned counsel and pursuant to Local Rule 7.1(c), hereby replies to Plaintiffs' Opposition to TorGuard's Motion to Dismiss Second Amended Complaint ("SAC") or, in the alternative motion for a more definite statement, or, in the alternative motion for dismissal or transfer for improper venue [D.E. 145] and in support thereof states as follows:

**PRELIMINARY STATEMENT**

    Plaintiffs' "brief factual allegations" in support of its Opposition repeats the allegations of the SAC and continues to commingle claims against unrelated defendants in an effort to draw attention away from and bury the fact that Plaintiffs' SAC fails to state a claim against TorGuard as detailed in TorGuard's Motion to Dismiss, a fact which Plaintiffs attempt to remedy by submitting 9 exhibits and a 29-page declaration of counsel alleging facts outside the four corners of the SAC.[1] Plaintiffs also attempt to dispute that the SAC is a shotgun pleading by focusing on the length of the SAC as a whole without acknowledging that despite its length and verbosity,

---

[1] *E.g.* Exhibit 9 pertains to non-party "Noisebridge" and is wholly unrelated to TorGuard.

Plaintiffs fail to identify the specific facts and legal claims against TorGuard as opposed to other defendants that are not associated with TorGuard. The SAC thus should be dismissed as a shotgun pleading that fails to state a claim upon which relief can be granted and, if Plaintiffs are allowed to proceed with their claims, at minimum TorGuard is entitled to a more definite statement to clarify and distinguish the specific allegations and claims made against TorGuard and this matter should be transferred to the Middle District of Florida.

## MEMORANDUM OF LAW

### I. TorGuard has not Waived its Defense of Improper Venue under Fed. R. Civ. P. 12(b) and the Southern District is Not the Proper Venue for this Matter.

Fed. R. Civ. P. 12(b) specifically provides that "[n]o defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."[2] Additionally, a motion for more definite statement pursuant to Fed. R. Civ. P. 12(e) "must be made before filing a responsive pleading" and thus is often pled in the alternative to a motion to dismiss. *See e.g. Allicock v. Shared Servs.,* No. 18-25040-CIV-GRAHAM/McALILEY, 2019 U.S. Dist. LEXIS 238198, at *5 (S.D. Fla. Feb. 26, 2019). Furthermore, a motion to quash discovery, including depositions or subpoenas, is "purely defensive, and is not a request for affirmative relief that is inconsistent with a defense of lack of personal jurisdiction." *Oy v. Carnival Cruise Lines*, 632 So. 2d 724, 726 (Fla. 3d DCA 1994). The proper venue for copyright infringement suits is the "district in which the defendant or his agent resides or may be found" meaning the judicial district in which the defendant would be amenable to personal jurisdiction. 28 U.S.C. § 1400(a). For specific jurisdiction, certain minimum contacts with the venue must exist which are "related to the plaintiff's cause of action or have given rise to it," "involve some purposeful availment of the privilege of conducting activities within the forum," and must be "such that it should reasonably anticipate being haled into court there." *La Tele Prods. v. TV Azteca*, No. 16-25347-CIV, 2018 U.S. Dist. LEXIS 164535, at *6 (S.D. Fla. Sep. 25, 2018). "[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of

---

[2] The case cited by Plaintiffs is from the Southern District of Ohio and does not stand for the proposition cited as it held that a separate motion for judgment on the pleadings submitted defendant to the jurisdiction of the court, not a combined motion to dismiss based on alternative 12(b) bases. *See Boulger v. Woods*, 306 F. Supp. 3d 985, 996 (S.D. Ohio 2018).

the forum state via its web site, or through sufficient other related contacts." *Schuster v. Carnival Corp.*, No. 10-21879-CIV, 2011 U.S. Dist. LEXIS 126455, at *26 (S.D. Fla. Feb. 3, 2011).

TorGuard's Motion to Dismiss is made pursuant to Fed. R. Civ. P. 8(a), 10(b), 12(b)(3), 12(b)(6) and 12(e). The inclusion of the 12(b)(6) claim for failure to state a claim does not waive the 12(b)(3) claim for improper venue based on the very language of Fed. R. Civ. P. 12. Nor does adding the 12(e) claim which must be raised and is commonly alleged in the alternative to 12(b) motion to dismiss. Similarly, the 8(a) and 10(b) claims related to Plaintiffs' shotgun pleading must also be raised and are properly joined to the Motion to Dismiss. The order of the individual bases alleged is irrelevant given that they are all properly joined in a single, timely responsive motion. The defensive measures taken by TorGuard to date, including filing the Motion to Quash the Digital Ocean subpoena, do not constitute consent or submission to the venue of this District as they are purely defensive and must be made to preserve TorGuard's rights while the suit is ongoing. TorGuard notes it was added only recently to this matter and after the Court had entered the Order Setting Trial and Pre-Trial Schedule in this case, including the requirement for mediation. [D.E. 89]. Thus, TorGuard has attempted to comply with the Court's Order and has taken defensive measures in this proceeding before its response was due or while its Motion to Dismiss is pending, but it has not waived its rights to dispute venue.

Plaintiff alleges, without any authority in support, that venue is appropriate in the Southern District merely because TorGuard is a Florida limited liability company and the Southern District is in Florida. [D.E. 9 at p. 8]. Although venue is appropriate where a defendant is amenable to personal jurisdiction under § 1400(a), such jurisdiction must be exercised by the specific venue where the action is brought and not the state as a whole. Moreover, TorGuard provides secure internet access to users across the United States and internationally through its VPN service by providing users with access to software which then links the users to VPN servers offered in multiple locations which are typically separate hardware systems housed in data centers. Plaintiffs claim that TorGuard "maintains servers" and "has a location" in Miami based on excerpts from TorGuard's website which shows that it uses servers in Miami, Florida. However, TorGuard does not own or physically maintain servers in Miami. **Exhibit A,** Second Declaration of Benjamin Van Pelt. TorGuard instead leases such servers from a hosting provider who owns the hardware located in the data center. *Id.* TorGuard then remotely installs the operating system and software for its VPN which automatically runs on these servers without further or continued action by TorGuard.

3

*Id.* The servers are not targeted or limited to users in Miami and can be accessed by any user of TorGuard's VPN. *Id.* Plaintiffs omit that the same website they cite to shows that TorGuard offers "3,000+ VPN servers in 68 VPN server locations in 50 countries." **Exhibit B**, Copy of https://torguard.net/network/ last accessed on November 4, 2021. Merely leasing and installing software on servers in the District, when TorGuard leases and installs software on servers across the country and the globe, does not amount to purposeful availment of the privilege of conducting activities in the Southern District such that TorGuard should reasonably anticipate being haled into court there thus the fact that TorGuard does not operate or conduct business in, or have an office, agency, or employees in the Southern District of Florida stands uncontradicted. Ultimately, the fact remains that none of the 36 named Plaintiffs or TorGuard reside or may be found in the Southern District of Florida.

## II.     The SAC is an Impermissible Shotgun Pleading.

Dismissal of shotgun pleadings is warranted because it is not the defendant's or the court's duty to "expend precious time and resources in attempting to decipher a pleading that can be clarified by more conscientious drafting" or to determine which parties are bringing which claims against which defendants or even what claims are being made against which defendants "when multiple parties or multiple claims for relief are merged into a single count." *See Merch. One, Inc. v. TLO, Inc.*, No. 19-cv-23719, 2020 U.S. Dist. LEXIS 7462, at *10 (S.D. Fla. Jan. 16, 2020); *Chiron Recovery Ctr., LLC v. United Healthcare Servs.*, No. 9:18-CV-81761, 2020 U.S. Dist. LEXIS 114353, at *18 (S.D. Fla. June 30, 2020).

Plaintiffs claim that TorGuard takes issue with the inclusion of screenshots from TorGuard's website is without merit. TorGuard specifically moves to dismiss the SAC as an impermissible shotgun pleading not because it has screenshots, but because it fails to distinguish individual allegations and claims against TorGuard from other defendants. Here, defendants are not related entities nor is one of the other defendants an officer of TorGuard as in the case cited by Plaintiffs.[3] Instead, the defendants are wholly unrelated entities and yet Plaintiffs do not and cannot deny that the four counts against TorGuard include claims, allegations, and even Plaintiffs and Works, which are unrelated to TorGuard. Thus, it is not the length of the SAC that TorGuard objects to, rather the fact that Plaintiffs attempt to use the length of their complaint and

---

[3] *Exist, Inc. v. E.S.Y., Inc.*, No. 14-62429-CIV-BLOOM/VALLE, 2015 U.S. Dist. LEXIS 181144, at *12 (S.D. Fla. May 20, 2015).

4

commingling of claims to hide the fact that that the claims against TorGuard are mere conclusory allegations such that Plaintiffs have failed to state a claim upon which relief can be granted as it pertains to TorGuard.

### III. Plaintiffs Fail to State a Claim for Direct Copyright Infringement.

The automatic conduct of software, unaided by human intervention, is not "volitional" and volitional conduct – "i.e., uploading the copyrighted work itself or using software to search for material to upload" – is required to find direct copyright infringement on the part of service providers. *Disney Enters. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1308-9 (S.D. Fla. 2011) (dismissing cause of action for direct infringement because the "the website … merely allows users to upload and download copyrighted material without volitional conduct from [defendant].") Claims that a defendant induced infringement or had knowledge of infringement do not support a claim for direct copyright infringement. *Id.* "Knowledge coupled with inducement" or "supervision coupled with a financial interest in the illegal copying" gives rise to secondary liability, not direct-infringement liability. *Id.* at 1309. The same analysis applies to both claims of copying and of distribution of a copyrighted work. *Id.*

Except for making the unsupported legal conclusion that TorGuard "distributed and made copies," Plaintiffs make no claims that TorGuard uploaded the Works, used the VPN to search for material to upload the Works, provided, distributed, or performed copies of the Works upon request, or otherwise committed any other volitional conduct to copy or distribute Plaintiffs' works. None of the conduct alleged by Plaintiffs – not keeping user log information, providing a proxy link,[4] or providing customer support to users – constitutes direct copying or distribution of Plaintiffs' Works by TorGuard. Plaintiffs' reliance on *ABC, Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014) and *Spanski Enters. v. Telewizja Polska, S.A.*, 883 F.3d 904, 907 (D.C. Cir. 2018) is misplaced and unavailing as those cases dealt with public performance by "broadcasters" – facts which are not at issue in this case or alleged by Plaintiffs in the SAC. TorGuard's VPN service is distinguishable from the broadcasting services offered in either *Aereo* or *Spanski* because it does not "[use] its own equipment" to "allow [users] to watch television programs" by "transmitting

---

[4] TorGuard notes that the provision of the proxy link as alleged in ¶ 262 is not alleged or incorporated in the SAC in support of direct infringement, but instead only alleged in support of Plaintiffs' causes of action for contributory and vicarious liability. Regardless, the point remains that it is not volitional conduct which constitutes copying, distribution, or performance of the Works.

5

content upon a user's request." *Spanski Enters.,* 883 F.3d at 912. TorGuard's VPN does not store or transmit copyrighted materials independent of third parties, whether that be users or other websites, and does not provide copyrighted materials upon user requests. As such, TorGuard does not have copies of Plaintiffs' Works nor can it transmit or distribute same to its users upon request and thus TorGuard cannot be liable for direct infringement.

### IV. Plaintiffs Fail to State a Claim for Intentional Inducement.

The provider of a service or product can only be found liable for inducing or encouraging third party infringement if it provides the service or product with the "object of promoting its use to infringe copyright, **as shown by clear expression or other affirmative steps taken to foster infringement**." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005) (emphasis added); *Michael Grecco Prods. v. RGB Ventures, LLC,* No. 3:16-cv-1335-J-34PDB, 2017 U.S. Dist. LEXIS 148820, at *22 (M.D. Fla. Sep. 14, 2017). Knowledge of the specific infringing activity, rather than the possibility of infringement, is a material requirement to liability for intentional inducement. *Michael Grecco Prods.* 2017 U.S. Dist. LEXIS 148820, at *22; *Hydentra HLP Int. Ltd. v. Luchian*, No. 1:15-cv-22134-UU, 2016 U.S. Dist. LEXIS 193457, at *33 (S.D. Fla. June 2, 2016); *Luvdarts, Ltd. Liab. Co. v. AT&T Mobility, Ltd. Liab. Co.*, 710 F.3d 1068, 1072 (9th Cir. 2013).

Plaintiffs have failed to state a claim for intentional inducement because there is no clear expression or affirmative steps by TorGuard to induce infringement *i.e.* piracy of Plaintiffs' Works and further TorGuard did not have knowledge of the infringement alleged because the notices were not sent to its DMCA Agent. TorGuard's statements that its VPN can be used to torrent, for P2P sharing, and to stream anonymously are lawful uses of the VPN and do not affirmatively promote or encourage piracy. Plaintiffs' attempts to introduce additional non-party statements through the Declaration of Culpepper at ¶¶ 49-59 and Exhibits 3 and 4 and otherwise newly allege intentional inducement in the Declaration of Culpepper at ¶¶ 60-82 and Exhibits 5, 6, and 8 should be disregarded as outside the four corners of the SAC and thus not properly pled by Plaintiffs in support of their cause of action for intentional inducement.[5] In particular alleged statements dating

---

[5] A court's review on a motion to dismiss is "limited to the four corners of the complaint" such that a court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims, and not any materials first referred to by plaintiff in response to the motion to dismiss. *See e.g. Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 959 (11th Cir. 2009).

back to 2014, seven years before the initiation of this action, are irrelevant and have no bearing on whether TorGuard intentionally induced the infringement of Plaintiffs' Works. Similarly, the isolated business decisions of non-parties PayPal and BitTorrent in 2012 and 2013, which are taken out of context and misconstrued by Plaintiffs, are not evidence of intentional inducement by TorGuard. Plaintiffs attempts to add these claims at this juncture and rely on them in support of its Opposition only serves to highlight that Plaintiffs failed to state a cause of action for intentional inducement in the SAC.

Plaintiffs allege that notices of infringement were generated and sent per 17 U.S.C. § 512(c)(3) [D.E. 96 at ¶¶ 201-204]. Plaintiffs further allege that the DMCA provides a "safe harbor that limits the liability of a service provider for copyright infringement 'by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the services provider,' if the service provider does not have the requisite knowledge. 'responds expeditiously to remove, or disable access to, the material…' and has the appropriate designated agent for receiving notices" pursuant to 17 U.S.C. § 512(c)(1)(2) [D.E. 96 at ¶ 315]. Plaintiffs also allege that defendants QuadraNet and LiquidVPN have failed to designate and register an agent with the Copyright Office pursuant to 17 U.S.C. § 512(c)(2). [D.E. 96 at ¶¶ 319 and 325]. Plaintiffs reassert their claims based on 17 U.S.C. § 512(c) in its causes of action against TorGuard [D.E. 96 at ¶¶ 393 and 406].

Plaintiffs did not send such notices to TorGuard and only allege that such notices were sent to TorGuard by others "upon information and belief." [D.E. 96 at ¶ 213]. Such statements are not entitled to an assumption of truth thus the Declaration of Adam C. Losey as the registered DMCA Agent for TorGuard should be considered here as evidence that such notices were never provided to TorGuard's DMCA Agent. Plaintiffs attempt to allege knowledge of the notices by alleging "**if** TorGuard agreed to receive the notices from QuadraNet at a different contact" and citing to Quadranet's Terms of Service as evidence of such an agreement [D.E. 148 at p. 15, Dec. of Culpepper at ¶¶25-26]. However, the Terms do not support Plaintiffs' claims with regards to where the notices should be sent because the Terms of Service do not address copyright infringement claims. To the contrary, the sections cited by Plaintiffs only address point of contact for renewals and billing and for data breaches. **Exhibit C**, Copy of https://www.quadranet.com/terms-of-service last accessed on November 4, 2021.

TorGuard has had a registered DMCA Agent since at least 2018. Further, the effective date

7

of the SAC pursuant to Fed. R. Civ. P. 15(c) is not March 3, **2018** but rather the date of the original pleading in this matter was filed on March 3, **2021** [D.E. 1]. Plaintiffs claim they should be able to proceed to discovery to obtain evidence because TorGuard has been a client of QuadraNet since 2012. [D.E. 148 at p. 15]. It is unclear why this would entitle Plaintiff to discovery when Plaintiffs have failed to allege a timeframe for when TorGuard is alleged to have infringed on Plaintiffs' Works despite purportedly having the ability to identify the "name of the copyright owner, the title of the Work …and the time of infringement down to the second" [D.E. 148 at p. 4]. There is nothing in the SAC or Plaintiffs' Opposition to support when the alleged infringement occurred, let alone that it was prior to TorGuard's registration of its DMCA Agent in 2018. Since the issue is raised in Plaintiffs' Opposition, TorGuard reserves the right to raise any applicable statute of limitations defense.

**V.     Plaintiffs Fail to State a Claim for Material Contribution.**

Despite Plaintiffs' assertions to the contrary, knowledge of the infringing activity is a material element of contributory liability. *Hydentra*, 2016 U.S. Dist. LEXIS 193457, at *33; *Grecco Prods.*, 2017 U.S. Dist. LEXIS 148820, at *21-22. Even where there is knowledge of infringement, plaintiff can only succeed on its contributory infringement claim if it can establish that defendant's services are not capable of "substantial noninfringing uses." *Hydentra*, 2016 U.S. Dist. LEXIS 193457, at *37; *Venus Fashions, Inc. v. ContextLogic, Inc*., No. 3:16-cv-907-J-39MCR, 2017 U.S. Dist. LEXIS 155748, at *33 (M.D. Fla. Jan. 17, 2017). Plaintiffs' reliance on case law outside of the 11th Circuit, which is not positively cited to as binding precedent on the subject of "substantial noninfringing use" by any court in the 11th Circuit, is thus unavailing when it is countered by directly applicable federal case law in Florida which clearly delineates the separate requirements for liability under the two categories of contributory liability.

Plaintiffs do not and cannot deny that TorGuard's VPN is predominantly used and marketed for substantial noninfringing use. Instead, Plaintiffs rely on non-party statements about the use of BitTorrent, not TorGuard or even VPNs in general, without providing either a copy or a publicly accessible link or reference to the material cited [D.E. 148 at p. 17]. BitTorrent is an entirely separate software company distinct from TorGuard that is in no way affiliated with or controlled by TorGuard. Notably BitTorrent is not a party to this action and Plaintiffs do not seek relief against BitTorrent related to the alleged infringement despite alleging it is overwhelmingly used for piracy. Whether or not BitTorrent is capable of substantial noninfringing use is irrelevant

to the present action and the fact that TorGuard's VPN is capable of substantial noninfringing uses. Plaintiffs also newly allege TorGuard is secondarily liable for encouraging access to streaming services Netflix, Amazon Prime, and Hulu in violation of geographic restrictions. [D.E. 148 at p. 12, 17, 20 and Decl. of Culpepper at ¶¶ 29-42]. Not only is this outside the four corners of the SAC, but it is also irrelevant to the infringement alleged by Plaintiffs. Plaintiffs do not allege that their Works are streamed from any of these services or that Does 1-100 accessed their Works on such platforms by using TorGuard's VPN outside of the United States or the geographic area for which they were licensed.

## VI. Plaintiffs Fail to State a Claim for Vicarious Liability.

A plaintiff asserting a claim for vicarious copyright infringement must allege "(1) the right and ability to supervise, and (2) a direct financial interest in the profits of the infringing activity." *Afford. Aerial Photography, Inc. v. Modern Living Real Estate, LLC*, No. 19-cv-80488-BLOOM/Reinhart, 2019 U.S. Dist. LEXIS 132023, at *8 (S.D. Fla. Aug. 6, 2019). A defendant exercises control over a direct infringer when it has "both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Venus Fashions, Inc.*, 2017 U.S. Dist. LEXIS 155748, at *34. Availability of infringing content must "provide the *main* customer draw to the service" such that the "very success of the defendant's venture must depend on the infringing activity" in order to support a claim of direct financial interest in the profits of the infringing activity. *UMG Recordings, Inc. v. Bright House Networks, LLC*, No. 8:19-cv-710-MSS-TGW, 2020 U.S. Dist. LEXIS 122774, at *16 (M.D. Fla. July 8, 2020) (emphasis in original).

In *UMG Recordings, Inc. v. Bright House Networks,* the court specifically addressed vicarious liability in the context of the use of BitTorrent by subscribers of an internet service provider and found that alleging "(i) Bright House has touted how its service enables subscribers to download and upload large amounts of content, including music, in seconds; (ii) Bright House's failure to police its infringing subscribers adequately drew subscribers to purchase Bright House's services; and (iii) Bright House subscribers have illegally downloaded and distributed Plaintiffs' music on a massive scale" was insufficient to plead that Bright House receives a direct financial benefit from its subscribers' infringement. *Id.* at *15. Furthermore, the court found that not only was access to infringing content generally available on the internet insufficient to satisfy the first prong of the "draw test," but it was also insufficient to allege that such access was the main draw to Bright House's service. *Id.* at *18.

9

Similar to the plaintiffs in *UMG Recordings, Inc. v. Bright House Networks*, Plaintiffs have alleged that TorGuard offers anonymous access to content generally available on the internet through BitTorrent and has failed to police infringement by its users who have infringed Plaintiffs' Works. It is not readily apparent or plausibly alleged that users are primarily drawn to TorGuard's VPN to pirate Plaintiffs' Works. Plaintiffs claim that users are drawn to TorGuard's VPN because it does not keep user logs, but the test is not whether users are drawn to TorGuard based on TorGuard's enforcement efforts, but rather whether users are drawn to TorGuard by the availability of infringing content. *Id.* at *20. Plaintiffs do not dispute that TorGuard does not directly provide infringing content for users or share in any proceeds from any sale of the infringing content or that it cannot derive profits from advertising or the availability of specific content, infringing or otherwise. Instead, Plaintiffs merely makes new allegations that TorGuard promotes piracy through use of its VPN to stream materials from Netflix, Amazon Prime, and Hulu in violation of geographic restrictions. [D.E. 148 at p. 20]. Again, this is not pled in the SAC and is irrelevant to the alleged infringement of Plaintiffs' Works. Moreover, and as noted on the webpage cited by Plaintiffs, TorGuard's VPN allows users to access "Reddit, Facebook, and gaming websites" which are blocked by school and workplace firewalls and to access such sites without monitoring by school and workplace IT admins – all of which is noninfringing use which serves as a draw for users to use TorGuard's VPN. **Exhibit D**, Copy of https://torguard.net/unblock-websites.php last accessed on November 4, 2021. Similarly given that "Residential VPN" is a new service as of January 2021 and offered as one of many add-ons to TorGuard's VPN services, Plaintiffs' reference to it does not plausibly support that the very success of TorGuard's VPN depends on providing access to materials outside of the United States which are otherwise geo-restricted. **Exhibit E**, Copy of https://torguard.net/blog/new-residential-vpn-ips-now-available-for-us/ last accessed on November 4, 2021.

## CONCLUSION

WHEREFORE, Defendant, VPNETWORKS, LLC d/b/a TORGUARD, respectfully requests that the Court grant its Motion to Dismiss and enter an Order dismissing this case with prejudice as against Defendant TorGuard or, in the alternative, enter an Order transferring this case to the Middle District of Florida as well as enter an Order requiring Plaintiffs to amend the SAC to identify and clarify the specific allegations and claims Plaintiffs have against TorGuard, and for any and all other relief the Court deems appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 5, 2021 a true and correct copy of the foregoing was electronically filed and served using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

By: /s/ *Adam Losey*
Adam C. Losey, Esq.
Florida Bar No. 69658
Linnea M. Eberhart, Esq.
Florida Bar No. 119510
LOSEY PLLC
1420 Edgewater Dr.
Orlando, FL 32804
(407) 906-1605
alosey@losey.law; leberhart@losey.law; docketing@losey.law
*Counsel for Defendant VPNETWORKS, LLC d/b/a TORGUARD*