## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC.,
a Nevada corporation, *et al.*,

      Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a
LIQUIDVPN, a Puerto Rico limited
liability company, *et al.*,

      Defendants.

_____/

### ORDER ON QUADRANET'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants Quadranet, Inc.'s ("QI") and Quadranet Enterprises, LLC's ("QE," and collectively with QI, "Quadranet") Motion to Dismiss the Plaintiffs' Second Amended Complaint, ECF No. [108] ("Motion to Dismiss"). Plaintiffs Millennium Funding, Inc., Hunter Killer Productions, Inc., Voltage Holdings, LLC, 211 Productions, Inc., AMBI Distribution Corp., After Productions, LLC, After II Movie, LLC, Morgan Creek Productions, Inc., Eve Nevada, LLC, Bedeviled LLC, Millennium Media, Inc., Colossal Movie Productions, LLC, Day of Dead Productions, Inc., YAR Productions, Inc., FSMQ Film, LLC, FW Productions, LLC, I Am Wrath Production, Inc., Killing Link Distribution, LLC, Badhouse Studios, LLC, LF2 Productions, Inc., LHF Productions, Inc., Venice PI, LLC, Rambo V Productions, Inc., Rupture CAL, Inc., MON, LLC, SF Film, LLC, Speed Kills Productions, Inc., Millennium IP, Inc., Nikola Productions, Inc., Wonder One, LLC, Bodyguard Productions, Inc., Millennium SPVH, Inc., Outpost Productions, Inc., Definition Delaware LLC, Hannibal Classics Inc., Justice Everywhere Productions LLC, State of the Union Distribution and Collections, LLC,

Paradox Studios, LLC, Dallas Buyers Club, LLC, Screen Media Ventures, LLC and 42 Ventures, LLC's (collectively, "Plaintiffs") filed a Response in Opposition, ECF No. [117] ("Response"), to which Quadranet filed a Reply, ECF No. [123] ("Reply"). The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

## I.   BACKGROUND

Plaintiffs filed their Complaint on March 3, 2021, seeking injunctive relief and damages against Charles Muszynski, 1701 MANAGEMENT, LLC d/b/a LIQUIDVPN ("LiquidVPN"), and DOES 1-100 ("Does 1-100"). *See* ECF No. [1]. On May 5, 2021, Plaintiffs filed their First Amended Complaint ("FAC") adding Quadranet, AUH2O, LLC, and others as Defendants. *See* ECF No. [24]. On July 30, 2021, Quadranet filed their first Motion to Dismiss. *See* ECF No. [83]. On August 17, 2021, Plaintiffs filed a Second Amended Complaint ("SAC") adding VPNETWORKS, LLC d/b/a TorGuard ("TorGuard") as a Defendant. *See* ECF No. [96]. Plaintiffs assert against Quadranet, among others, contributory copyright infringement based upon material contribution ("Count III"); vicarious infringement ("Count IV"); negligence ("Count VI"); fraud ("Count VII"); and equitable estoppel ("Count VIII"). *See generally id.*; *see also* ECF No. [117] at 15. The bases for Plaintiffs' claims against Quadranet are that Quadranet leased servers that were used for copyright infringement, and that Quadranet published false Whois records to prevent Plaintiffs from contacting LiquidVPN, TorGuard, and Does 1-100. *See generally* ECF No. [96].

On August 31, 2021, Quadranet filed the instant Motion to Dismiss. ECF No. [108]. In the Motion, Quadranet argues that Plaintiffs' SAC is a shotgun pleading, Counts III, IV, and VI-VIII fail to state a claim upon which relief can be granted, the Court lacks personal jurisdiction over Quadranet, and venue is improper. *See generally id*. Plaintiffs respond that the SAC is not a

shotgun pleading, Counts III, IV, and VI-VIII do state a claim upon which relief can be granted, the Court has personal jurisdiction over Quadranet, and the venue is proper. *See generally id.* On September 20, 2021, Quadranet's Reply followed. *See* ECF No. [123].

## I.   LEGAL STANDARD

### A.  Personal Jurisdiction

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009).

"Where . . . the defendant submits affidavit(s) to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see also Internet Sols. Corp.*, 557 F.3d at 1295; *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). If the defendant makes a sufficient showing of a lack of personal jurisdiction, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986). Conclusory statements,

"although presented in the form of factual declarations, are in substance legal conclusions that do not trigger a duty for Plaintiffs to respond with evidence of their own supporting jurisdiction." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

In addressing whether personal jurisdiction over a nonresident defendant exists, "[t]he district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). "[W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Id.*

Furthermore, a court must conduct a two-part inquiry when deciding the issue of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623 (11th Cir. 1996). First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. *Sculptchair,* 94 F.3d at 626. Florida's long-arm statute recognizes two kinds of personal jurisdiction over a nonresident defendant: general jurisdiction and specific jurisdiction. *See* Fla. Stat. §§ 48.193(1)–(2); *see also easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-20062-CIV, 2020 WL 5500695, at *6 (S.D. Fla. Sept. 11, 2020). The Eleventh Circuit has held that the reach of Florida's long-arm statute is a question of state law, and that federal courts must adhere to the statutory constructions offered by the Florida Supreme Court and Florida's District Courts of Appeal. *See Louis Vuitton Malletier, S.A.*, 736 F.3d at 1352. If the requirements of the long-arm statute are satisfied, under either general jurisdiction or specific jurisdiction, then the court must also consider the federal Due Process Clause. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250-51 (11th Cir. 2000).

The court's analysis of the Due Process Clause depends on three factors: (1) defendant's purposeful availment of the forum state; (2) the cause of action arising out of the activities of which the defendant purposefully availed himself; and (3) reasonable foreseeability of the defendant being haled into court in the forum state. *See id.* (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985)). In addition, the court must determine whether exercising jurisdiction will comport with traditional notions of fair play and substantial justice, meaning the court must balance: "(a) the burden on the defendant; (b) the forum state's interest in adjudicating the dispute; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantial social policies." *Id.* at 1251 (citing *Burger King*, 471 U.S. at 466).

### B.   Venue

When a defendant objects to venue, the plaintiff bears the burden of showing that the venue selected is proper. *See Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (explaining that the plaintiff must make "only a prima facie showing of venue"). "The facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by defendants' affidavits." *Delong Equip. Co.*, 840 F.2d at 845; *see also BP Prods. N. Am., Inc. v. Super Stop 79, Inc.*, 464 F. Supp. 2d 1253, 1256 (S.D. Fla. 2006). The court may also consider facts outside the complaint to determine whether venue is proper. *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). In examining the record, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. *Id.*

Generally, venue in federal civil actions is governed by 28 U.S.C. § 1391. "Pursuant to § 1391(b), venue is proper in: (1) a judicial district in which any defendant resides, if all defendants

are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *TMJ Practice Mgmt. Assocs., Inc. v. Curran*, No. 16-81903-CIV, 2017 WL 3130421, at *3 (S.D. Fla. July 24, 2017). If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## C. Shotgun Pleading

"A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'" *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x. 274, 277 (11th Cir. 2008) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128–29 (11th Cir. 2001)). "Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources. Moreover, justice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356-57 (11th Cir. 2018) (quoting *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997)).

Overall, shotgun pleadings do not establish a connection between "the substantive count and the factual predicates . . . [and] courts cannot perform their gatekeeping function with regard to the averments of [the plaintiff's claim]." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279-80 (11th Cir. 2006). The Eleventh Circuit has identified four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each

> successive count to carry all that came before and the last count to be a combination
> of the entire complaint. The next most common type, at least as far as our published
> opinions on the subject reflect, is a complaint that does not commit the mortal sin
> of re-alleging all preceding counts but is guilty of the venial sin of being replete
> with conclusory, vague, and immaterial facts not obviously connected to any
> particular cause of action. The third type of shotgun pleading is one that commits
> the sin of not separating into a different count each cause of action or claim for
> relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims
> against multiple defendants without specifying which of the defendants are
> responsible for which acts or omissions, or which of the defendants the claim is
> brought against. The unifying characteristic of all types of shotgun pleadings is that
> they fail to one degree or another, and in one way or another, to give the defendants
> adequate notice of the claims against them and the grounds upon which each claim
> rests.

*Merch. One, Inc. v. TLO, Inc.*, No. 19-CV-23719, 2020 WL 248608, at *3 (S.D. Fla. Jan. 16, 2020)

(quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)

(footnotes omitted)). Shotgun pleadings are condemned by the Eleventh Circuit, which has

specifically instructed district courts to dismiss shotgun pleadings as "fatally defective." *B.L.E. v.*

*Georgia*, 335 F. App'x. 962, 963 (11th Cir. 2009) (citations omitted).

### D.  Failure to State a Claim

A pleading must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual

allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.

Ct. 1955, 167 L.Ed.2d 929, (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173

L.Ed.2d 868 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not

rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129

S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct.

1955. If the facts satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *Id.* at 556.

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."); *Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## II.   DISCUSSION

### A.  Personal Jurisdiction

Quadranet argues that the SAC should be dismissed for lack of personal jurisdiction. *See* ECF No. [108] at 43. Specifically, Quadranet argues it is not subject to general and specific jurisdiction in Florida and that exercising personal jurisdiction would violate Due Process. *See id.* at 43-46. Quadranet's arguments are premised on the contention that QI and QE are distinct entities, *see id.* at 20, and that the separate personal jurisdiction analyses required for each entity do not establish personal jurisdiction over either entity, *see id.* at 46. In support, Quadranet includes an affidavit from the CEO of QI and QE indicating that they are separate entities. ECF No. [108-1]. Plaintiffs respond that Quadranet's affidavit is rebutted by other evidence in the record, *see* ECF No. [117] at 19-20, QI and QE are alter egos, *see id.* at 17-18, and the conduct of one can be imputed to the other, *see id.* at 18-19. Plaintiffs argue, therefore, that the Court has personal jurisdiction over both QI and QE through the conduct of QE, *see id.* at 19, and that the exercise of personal jurisdiction would not violate Due Process, *see id.* at 21.

### i.   Alter Ego

As an initial matter, the Court must determine whether Quadranet should be treated as two separate entities or whether QI and QE are alter egos and the conduct of one entity can be imputed on the other.

In order to determine whether QI and QE are alter egos, the Court first addresses which state law to apply for the purposes of determining whether QI and QE are alter egos. This Court previously held that the law of the defendants' domicile or place of incorporation may govern the issue of alter ego. *See Raimbeault v. Accurate Mach. & Tool, LLC*, No. 14-CIV-20136, 2014 WL 5795187, at *8 (S.D. Fla. Oct. 2, 2014) ("[W]hile the parties have replicated Florida's veil piercing

standard, the law of the corporate Defendants' domicile/incorporation may govern the alter ego issue."); *see also* ECF No. [117] at 18. In *Miliken*, the court held that when deciding which state law to apply, the court should apply the most significant relationship test with respect to the particular issue.

> (1) Issues involving the rights and liabilities of a corporation . . . are determined by the local law of the state which, with respect to the particular issue, has the **most significant relationship** to the occurrence and the parties . . . .
> (2) The local law of the state of incorporation will be applied to determine such issues, **except** in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.

*Milliken & Co. v. Haima Grp. Corp.*, No. 08-22891-MC, 2010 WL 1286462, at *3 (S.D. Fla. Mar. 1, 2010), *report and recommendation adopted*, No. 08-MC-22891, 2010 WL 1286466 (S.D. Fla. Mar. 30, 2010) (citing *Int'l. Ins. Co. v. Johns,* 847 F.2d 1447, 1458 (11th Cir. 1989); Rest. (Second) Conflict of Laws § 302 (1971)) (emphasis in original).

Plaintiffs argue that California law should govern the issue of alter egos. *See* ECF No. [117] at 18. Quadranet does not respond to Plaintiffs' argument that California law should apply to the alter ego issue and assumes that Florida law applies. *See* ECF No. [108] at 20, n.18; *see generally* ECF No. [123]. According to the SAC, QI is a California corporation with its principal place of business in Tarzana, California. ECF No. [96] ¶ 61. QE is a Delaware corporation with its principal place of business in Tarzana, California. *Id.* ¶ 62. Quadranet states that although QE has an office in Miami, QI does not have a physical presence in Florida. *See* ECF No. [108] at 44. In sum, both QI and QE's principal places of business are not in Florida, and QE's office in Miami alone does not make this case an "unusual case" where Florida has the more significant relationship

than California with respect to the alter ego issue. *See Miliken*, WL 1286462, at *3.[1] Instead, because the principal places of business for QI and QE are California and the place of incorporation for QI is also California, the application of California law is appropriate for the alter ego issue. *See id*.[2]

Under California law, the alter ego doctrine "is essentially an equitable one and for that reason is particularly within the province of the trial court." *Assoc. Vendors, Inc. v. Oakland Meat Co.,* 210 Cal. App. 2d 825, 836-37 (Cal. Ct. App. 1962). "In applying the alter ego doctrine, the issue is not whether the corporation is the alter ego of its shareholders for all purposes, or whether the corporation was organized for the purpose of defrauding the plaintiff, but rather, whether justice and equity are best accomplished in a particular case, and fraud defeated, by disregarding the separate nature of the corporate form as to the claims in that case." *Shaoxing Cty. Huayue Imp. & Exp. v. Bhaumik*, 191 Cal. App. 4th 1189, 1198 (Cal. Ct. App. 2011) (citing *Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300 (Cal. 1985)).[3] In determining the alter ego issue, California courts have considered a variety of factors, including:

> commingling of assets; diversion of corporate assets to personal use; whether the individual defendants held themselves out as personally liable for the debts of the corporation; whether the individual defendants acted in bad faith; whether the individual defendants entered into contracts with the intent to avoid performance by using the corporate entity as a shield against personal liability; whether the individuals and corporation used the same office; whether they employed the same

---

[1] Plaintiffs allege that QI has an office in Miami. *See* ECF Nos. [117] at 20; [117-4] at 2; [96] ¶ 11. Even if the Court were to consider that fact, this too does not render Florida the state with the most significant relationship given QI's place of incorporation and principal place of business in California.

[2] It should be noted that although the most significant relationship test is appropriate to determine the choice of law in regard to the alter ego issue, *see Milliken & Co. v. Haima Grp. Corp*., No. 08-22891-MC, 2010 WL 1286462, at *3 (S.D. Fla. Mar. 1, 2010), the test does not coincide with the tests for personal jurisdiction or venue. The fact that California has the most significant relationship *for the alter ego issue* does not dictate whether the Court has personal jurisdiction or whether the venue is proper, which are governed by Florida's long-arm statute Fla. Stat. §§ 48.193(1)–(2) and 28 U.S.C. § 1391(b). The Court engages in a separate analysis for personal jurisdiction and venue below.

[3] Under Florida law, the plaintiff must show that there was fraud or that the corporation was formed for some illegal purpose. *Broward Marine, Inc. v. S/V Zeus*, No. 05-23105-CIV, 2010 WL 427496, at *6 (S.D. Fla. Feb. 1, 2010). As indicated above, that is not the case under California law.

attorney; whether the individuals used the corporation to procure labor, services and merchandise for another person or entity; whether the individuals failed to adequately capitalize the corporation; and whether the individuals failed to maintain minutes or adequate corporate records.

*Clark v. Dana Woody & Assocs., Inc.*, No. 09CV2931-CAB DHB, 2013 WL 544030, at *2 (S.D. Cal. Feb. 12, 2013) (citing *Assoc. Vendors, Inc.,* 210 Cal. App. 2d at 837 (citations omitted)).

In this case, QI and QE have the same CEO and an overlapping set of directors, use the same office, and share the same IP addresses. ECF Nos. [96] ¶¶ 65-67; [117] at 18. QI and QE are represented by the same Counsel. *See generally*, ECF No. [108]. Plaintiffs' affidavit also states that when Plaintiffs' Counsel requested insurance information from QI and QE, Quadranet only provided the insurance information for QE. *See* ECF No. [117-1] ¶ 16.[4] Plaintiffs argue, therefore, that QI does not have insurance and is inadequately capitalized, which weighs in favor of finding that the two entities are alter egos under California law. *See* ECF No. [117] at 18; *Clark*, 2013 WL 544030, at *2.

Quadranet filed an affidavit from the CEO of QI and QE indicating that QI and QE are separate entities, and that QI does not operate a facility in Miami. ECF No. [83-1]. However, Plaintiffs rebut Quadranet's affidavit by noting that Quadranet's website is registered to QI, *see* ECF No. [117-4] at 2, and the website advertises QI's office in Miami, indicating that QI does operate a facility in Miami, *see* ECF No. [96] ¶ 11. The Eleventh Circuit has instructed that "where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Madara*, 916 F.2d at 1514. As such, Plaintiffs have set forth sufficient allegations that QI and QE are alter egos to survive a motion to dismiss and that

---

[4] Unlike a motion to dismiss for failure to state a claim, when addressing a motion to dismiss for lack of personal jurisdiction, the Court may consider the Parties' affidavits. *See Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

the conduct of one may be imputed upon the other for the purposes of determining personal jurisdiction.

### ii.    General Jurisdiction

Florida's long-arm statute recognizes two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *See* Fla. Stat. §§ 48.193(1)–(2); *see also easyGroup Ltd.*, 2020 WL 5500695, at *6. Plaintiffs do not expressly state whether they are invoking general jurisdiction or specific jurisdiction. *See generally* ECF No. [96]. However, Plaintiffs cite specific jurisdiction provisions of Florida's long-arm statute indicating that Plaintiffs are invoking specific jurisdiction. ECF No. [117] at 16, 19 (citing Fla. Stat. §§ 48.193(1)(a)(1)-(2), not § 48.193(2)). Nonetheless, to be thorough, the Court considers both general jurisdiction and specific jurisdiction.

Regarding general jurisdiction, the Florida's long-arm statute states that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). In *Daimler AG v. Bauman et al.*, the Supreme Court held that the paradigm forum for the exercise of general jurisdiction is "one in which the corporation is fairly regarded as at home." 571 U.S. 117, 137 (2014).

As noted above, in this case, QI is a California corporation with its principal place of business in Tarzana, California. ECF No. [96] ¶ 61. QE is a Delaware corporation with its principal place of business in Tarzana, California. *Id.* ¶ 62. Therefore, neither entity can be considered to be "at home" in Florida. Furthermore, QE's office in Miami does not render QE "at home" in Florida since QE's principal place of business is in California. ECF No. [96] ¶ 62.[5] Quadranet notes that QE is not registered as a Florida business nor has agents to receive process in Florida. ECF No.

---

[5] For the same reason, to the extent that QI can be considered to have an office in Miami as Plaintiffs allege, QI's Miami office does not establish general jurisdiction.

[108] at 44. As such, the Court does not have general jurisdiction over Quadranet through either QI or QE.

### iii.    Specific Jurisdiction

The Court now turns to specific jurisdiction. Florida's long-arm statute states, in relevant part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> 2. Committing a tortious act within this state.

Fla. Stat. §§ 48.193(1)(a)(1)-(2). Plaintiffs argue that Florida's long-arm statute on specific jurisdiction applies. ECF No. [117] at 16, 19 (citing Fla. Stat. §§ 48.193(1)(a)(1)-(2)). Plaintiffs' contention is that the Court has personal jurisdiction over Quadranet pursuant to § 48.193(1)(a)(1) because QE has an office in Miami and QI is an alter ego of QE. *See* ECF No. [117] at 19; *see also* ECF No. [108-1] ¶ 12. Plaintiffs also argue that the tortious activity took place through Quadranet's servers in Miami, *see* ECF No. [117] at 19, which establishes personal jurisdiction pursuant to § 48.193(1)(a)(2).

Quadranet contends that the QI and QE are not alter egos and engages in separate specific jurisdiction analyses of each entity. *See* ECF No. [108] at 20, 45-46. Quadranet argues that the Court does not have specific jurisdiction over QI because QI does not have any contacts in Florida. *See id.* at 46. Quadranet also relies on *Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*, No. 18-CV-81445, 2019 WL 3532024, at *12 (S.D. Fla. Aug. 2, 2019), to argue that the Court does not have specific jurisdiction over QE because QE's conduct of operating servers in Florida is not related to the alleged tort. *See id.* at 44. In *Neelu*, this Court held that "[t]he business activity must

demonstrate a general course of business for pecuniary benefit connected with the alleged tort" to confer specific jurisdiction. 2019 WL 3532024, at *12. Quadranet argues that LiquidVPN did not use QE's servers in Miami and instead used servers in Los Angeles, Dallas, and New Jersey to commit the alleged tort, so there is no connection between QE's servers in Miami and the alleged tort. *See* ECF Nos. [108] at 45; [108-1] ¶ 12-14. Quadranet further argues that the SAC fails to allege that TorGuard used Quadranet's servers in Florida. *See* ECF No. [123] at 21, n.17.

However, as Plaintiffs correctly argue, the SAC alleges that Quadranet has an office in Miami and that Quadranet received IP addresses 96.47.224.0-96.47.231.255 ("96 Block") for its servers in Miami, not for its servers in Los Angeles, Dallas, and New Jersey. *See* ECF No. [96] ¶ 307; *see also* ECF No. [117] at 19. The SAC further alleges that some of the 96 Block IP addresses were the IP addresses through which copyright infringement allegedly took place. *See id.* ¶ 308. Contrary to Quadranet's assertion, the SAC alleges that Quadranet allocated its IP addresses in Miami to its subscribers such as LiquidVPN and TorGuard. *See id.* ¶ 328. While the SAC does not specify which of the IP addresses within the 96 Block were leased to which VPN company, the SAC sufficiently alleges at least one 96 Block IP address in Miami led to the alleged copyright infringement. *See id.* ¶¶ 307-09. As such, Plaintiffs' claims arise out of Quadranet's forum-related activities. Furthermore, given the Court's holding that QI and QE are alter egos of each other for the purposes of addressing personal jurisdiction, QE's conduct of having an office in Florida can be imputed to QI. In sum, there are grounds to exercise personal jurisdiction over both QI and QE for having an office in the state or committing a tortious act within the state which led to Plaintiffs' cause of action.[6]

---

[6] Even if QI and QE were not alter egos of each other, as noted above, the SAC alleges that Quadranet's website is registered to QI. ECF No. [96] ¶ 12. The website describes QI's Miami office. *Id.* ¶ 11. In addition, the Miami IP addresses are registered to QI, not QE. *Id.* ¶ 13. The IP addresses were the means

iv.    **Due Process**

Next, the Court must examine whether the exercise of personal jurisdiction over Quadranet would violate Due Process. The Court's analysis of the Due Process Clause generally depends on three factors: (1) defendant's purposeful availment of the forum state; (2) the cause of action arising out of the activities of which the defendant purposefully availed himself; and (3) reasonable foreseeability of the defendant being haled into court in the forum state. *See Future Tech. Today, Inc.*, 218 F.3d at 1250-51. In addition, the Court must determine whether exercising jurisdiction will comport with traditional notions of fair play and substantial justice. *Id.* at 1251 (citing *Burger King*, 471 U.S. at 466).

In this case, Quadranet argues that Due Process would be violated because QI does not have any contacts in Florida. *See* ECF No. [108] at 46. Quadranet also argues that Plaintiffs' claims do not arise from QE's limited contacts in Florida, it would be a burden to litigate in Florida given QE's limited contacts in Florida, and none of the Plaintiffs are located in Florida. *See id*. Plaintiffs argue that Due Process would not be violated because Quadranet purposefully availed itself to Florida by establishing an office in Miami and the office is where the alleged copyright infringement occurred. ECF No. [117] at 21. The Court agrees with Plaintiffs.

First, Quadranet established an office in Miami, and Quadranet's website states that its "Miami facility is at the center of the leading hub to most Latin American & Caribbean markets." ECF No. [96] ¶ 81.[7] Quadranet thus purposefully availed itself to Florida. Second, the alleged copyright infringement took place at Quadranet's Miami office. ECF No. [117] at 21. Accordingly,

---

through which the alleged infringement occurred. *Id.* ¶ 307-09. As such, the Court has specific jurisdiction over QI.

[7] Once again, QI and QE's conduct is imputed on each other for the purposes of addressing personal jurisdiction since Plaintiffs have sufficiently alleged that QI and QE are alter egos of each other. *See* ECF Nos. [96] ¶¶ 65-67; [117-1] ¶ 16.

Plaintiffs' cause of action arose out of Quadranet's activities in Florida. Third, it was reasonably foreseeable that Quadranet could be haled into courts in Florida after it established an office in Miami. As such, exercising personal jurisdiction will not violate Due Process.

Furthermore, Florida has an interest in adjudicating the claims since the alleged tortious acts occurred within its borders using property in the state and because the tortious acts involve Florida-based Defendants, LiquidVPN and TorGuard. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996); ECF No. [117] at 20-21. Although Quadranet argues that it will be burdened by adjudicating the dispute in the Southern District of Florida, *see* ECF No. [108] at 46, Plaintiffs correctly note that Quadranet is an international company that is capable of litigating disputes in Florida, *see* ECF No. [117] at 20, and the "modern methods of transportation and communication reduce this burden [of litigating outside of one's home state] significantly." *Robinson*, 74 F.3d at 259 (citing *McGee v. International Life Ins. Co.*, 78 S. Ct. 199, 201 (1957)). Accordingly, exercising personal jurisdiction will comport with traditional notions of fair play and substantial justice.

### B. Venue

Quadranet argues that venue is not proper because none of the relevant events took place in the Southern District of Florida. *See* ECF No. [108] at 47. Quadranet reiterates that QE did not lease any of its servers in Miami to LiquidVPN. *See id*. Quadranet also argues that none of the Plaintiffs are based in Florida. *See* ECF No. [123] at 21. Plaintiffs respond that Plaintiffs' claims against Quadranet are not limited to copyright infringement based on Quadranet's relationship with LiquidVPN alone. *See* ECF No. [117] at 21. Plaintiffs reiterate that their claims are based on Quadranet's Miami IP addresses, which were the IP addresses responsible for the alleged copyright

infringement, irrespective of whether those IP addresses were leased to LiquidVPN in particular. *See id.*

As noted above, "[p]ursuant to § 1391(b), venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *TMJ Practice Mgmt. Assocs., Inc.*, 2017 WL 3130421, at *3. In this case, not all of the defendants are residents of Florida. ECF No. [96] ¶¶ 61, 62. Therefore, the first prong of § 1391(b) does not make the Southern District of Florida the proper venue. Turning to the second prong, a "substantial part of the events" took place in Florida since Plaintiffs' claims are based on Quadranet's alleged involvement in copyright infringement through its servers in Miami. As Plaintiffs argue, their cause of action arises from the alleged copyright infringement that took place on Quadranet's Miami IP addresses irrespective of whether LiquidVPN in particular used the IP addresses. *See id.* ¶ 308.[8] As such, venue is proper.[9]

---

[8] Quadranet relies on this Court's holding in *Interim Healthcare v. Interim Healthcare of Se. La.*, No. 19-cv-62412-BLOOM/Valle, 2020 WL 3078531, at *17 (S.D. Fla. Jun. 10, 2020). ECF No. [108] at 47. However, *Interim* was a breach of contract case in which this Court found that venue was proper because a substantial part of the events took place in Florida. Similarly, in this case, a substantial part of the events took place in Florida.

[9] The Court again notes that although Florida does not have the "most significant relationship" with respect to the specific issue of alter ego, thus requiring the application of the law of the state of incorporation for the alter ego issue, a "substantial part of the events" did take place in Florida, thus making the Southern District of Florida the proper venue. As indicated above, the two tests ask different questions and require separate analyses.

### C. Shotgun Pleading

Given that the Court has personal jurisdiction over Quadranet and venue is proper, the Court now turns to Quadranet's argument that the SAC is a shotgun pleading. Quadranet argues that the SAC: (1) fails to separate into a different count each cause of action or claim for relief; and (2) asserts multiple claims against QI and QE without specifying which Defendant is responsible for which claim. ECF No. [108] at 19-20. Plaintiffs argue that (1) the SAC is "not inherently confusing, deficient and impermissible[;]" and (2) the claims asserted against Quadranet apply to both QI and QE. ECF No. [117] at 22.

Before proceeding further, the Court must consider the alter ego issue once again in order to address Quadranet's second argument that Plaintiffs failed to distinguish between QI and QE in the SAC. The Court's analysis of the alter ego issue above was for the purposes of determining personal jurisdiction and venue, which allowed the Court to rely on subsequent pleadings and affidavits. *See Carmouche*, 36 F. Supp. 3d at 1388; *Meier*, 288 F.3d at 1269. However, for the instant analysis, the Court cannot look to supporting affidavits to determine whether the SAC itself is an impermissible shotgun pleading. *See Wilchombe*, 555 F.3d at 959. The SAC must stand alone and sufficiently allege that QI and QE are alter egos. The SAC states that QI and QE have the same CEO, a similar set of directors, the same office, and the same IP addresses. ECF Nos. [96] ¶¶ 65-67.[10] The Court considers such factors to sufficiently allege that QI and QE are alter egos under California law. *Clark*, 2013 WL 544030, at *2. As such, Quadranet's second reason for why the SAC is an impermissible shotgun pleading is unpersuasive.[11]

---

[10] Unlike before, the Court cannot consider Plaintiffs' affidavit which indicates that QI is inadequately capitalized, ECF No. [117-1] ¶ 16, and the Court cannot consider the fact that QI and QE are represented by the same counsel.

[11] TorGuard also argues that the SAC asserts multiple counts against multiple Defendants without specifying which Defendant is responsible for which claim. *See* ECF No. [145] at 3. The Court does not

The Court now turns to Quadranet's first argument. This Court previously held that "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint" was an impermissible shotgun pleading. *Merch. One, Inc.*, 2020 WL 248608, at *3 (quoting *Weiland*, 792 F.3d at 1321-23). In this case, Quadranet points out that the seventh claim for relief states: "Copyright Plaintiffs re-allege and incorporate by reference the allegations contained in unnumbered first paragraph, paragraphs 17-55 and 328-349 and the sixth claim for relief." ECF No. [96] ¶ 463; *see also* ECF No. [108] at 19. Confusingly, the sixth claim for relief incorporates paragraphs 61-69, but the seventh claim for relief does not. *Compare id.* ¶ 450, *with id.* ¶ 463. As such, it is unclear if the seventh claim incorporates paragraphs 61-69 by incorporating the sixth claim or if the seventh claim incorporates the sixth claim except for paragraphs 61-69. Plaintiffs effectively concede that the seventh claim for relief incorporates the sixth claim for relief. ECF No. [117] at 22 ("The seventh claim clearly states that it incorporates paragraphs . . . 450-462 (the sixth claim for relief)."). Similarly, the tenth claim incorporates the ninth claim, and the twelfth claim incorporates the eleventh claim. *See id.* ¶¶ 494; 512.[12] Given the Eleventh Circuit's holding that district courts are to dismiss shotgun pleadings as "fatally defective," *B.L.E*, 335 F. App'x. at 963, Plaintiffs' failure is dispositive.

---

address whether the multiple counts against the other Defendants also makes the SAC a shotgun pleading and reserves ruling on that matter for a separate order on TorGuard's Motion to Dismiss.

[12] Plaintiffs argue that because Counts X-XII counts are not alleged against Quadranet, Quadranet does not have standing to challenge the SAC for being a shotgun pleading in regard to those counts. ECF No. [117] at 22. However, as Quadranet rightly argues, whether Quadranet has standing with respect to certain counts is irrelevant as the Court may *sua sponte* dismiss a complaint as a shotgun pleading. *See ILC Dover LP v. FloodBarrier, Inc*., No. 20-21350-CIV (S.D. Fla. June 1, 2020); ECF Nos. [123] at 8, n.3; [123-1]. Therefore, the Court considers the entirety of the SAC, including Counts X-XII, to determine whether the SAC is a shotgun pleading.

Perhaps recognizing the fatal flaw, Plaintiffs seek leave to amend the SAC, *see* ECF No. [117] at 42, even though Plaintiffs already had two opportunities to amend the initial complaint and were on notice of this fatal flaw through Quadranet's previous motion to dismiss Plaintiffs' FAC, *see* ECF No. [83] at 22-23. Because Plaintiffs seek leave to amend, the Court finds it pertinent to address the merits of the claims against Quadranet, to the extent that the Court can discern Plaintiffs' claims, in the interests of efficiency and judicial economy. *See Merch. One, Inc.*, 2020 WL 248608, at *4 ("[T]he Complaint constitutes an impermissible shotgun pleading . . . . Nevertheless, to the extent that Plaintiffs' claims are discernible, Defendants have raised substantive challenges to the causes of action asserted. In the interests of efficiency and judicial economy, the Court will consider each argument in turn.").

### D. Failure to State a Claim

#### i. Count III

In Count III, Plaintiffs allege that Quadranet is liable for contributory copyright infringement based upon a material contribution. *See* ECF No. [96] ¶¶ 400-02. Quadranet argues that Plaintiffs fail to state a claim for contributory copyright infringement based upon material contribution because the SAC fails to allege that Quadranet's services cannot be used for substantial non-infringing uses, Quadranet acted with culpable intent, and Quadranet materially contributed to the infringement. *See* ECF No. [108] at 22-27. Plaintiffs respond that they sufficiently state a claim for contributory copyright infringement because substantial non-infringing uses are not pertinent to a claim of contributory copyright infringement, Quadranet's subscribers are direct infringers, culpable intent can be imputed from Quadranet's knowledge of infringing activities, Quadranet could have taken measures to stop copyright infringement, and the SAC sufficiently alleges material contribution. ECF No. [117] at 24-33.

The Eleventh Circuit has stated that a contributory infringer is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Cable/Home Commc'n Corp.*, 902 F.2d at 845 (citing *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987)); *see also Sony Corp v. Universal City*, 464 U.S. 417, 437 (1984) (recognizing that the Supreme Court has defined a contributory infringer as one who "was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner."). Furthermore, the Eleventh Circuit has stated that "[t]he standard of knowledge is objective: 'Know, or have reason to know.'" *Casella*, 820 F.2d at 365 (quoting *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

### a. Substantial Non-Infringing Uses

The Court first addresses Quadranet's argument that the SAC fails to allege that Quadranet's services are not used for substantial non-infringing uses. *See* ECF No. [108] at 22. Quadranet's argument is premised on the assumption that a lack of substantial non-infringing uses is an element to the claim for contributory copyright infringement, and that to successfully state a claim for contributory copyright infringement, Plaintiffs must allege a lack of substantial non-infringing uses. *See id.* Quadranet's argument primarily relies on *Hydentra HLP Int. Ltd. v. Luchian*, No. 1:15-CV-22134-UU, 2016 WL 5951808, at *12 (S.D. Fla. June 2, 2016), in which the court dismissed claims against the defendants after determining that the plaintiff failed to establish a lack of substantial non-infringing uses. *See* ECF No. [108] at 23.

Plaintiffs appear to concede that *Hydentra* determined that a lack of substantial non-infringing uses is an element to the claim for contributory copyright infringement and attempt to distinguish *Hydentra* from the instant case by highlighting a factual distinction regarding notice. *See* ECF No. [117] at 27. Plaintiffs also rely on other cases from outside the Eleventh Circuit to

argue that *Hydentra* was wrongly decided and that *Hydentra*'s holding that defendants can avoid liability by asserting substantial non-infringing uses has been "repeatedly rejected." *Id.* at 26-27.

Before addressing Plaintiffs' argument that *Hydentra* was wrongly decided, it is necessary to first consider whether *Hydentra* set forth Quadranet's underlying premise that a lack of non-infringing uses is an element of a contributory infringement claim and whether that premise is supported by other legal authority. As an initial matter, the Eleventh Circuit has stated that a contributory infringer is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Cable/Home Commc'n Corp.*, 902 F.2d at 845 (citing *Casella*, 820 F.2d at 365 (11th Cir. 1987)). A plain reading of the elements for contributory infringement as set forth by the Eleventh Circuit shows that a lack of substantial non-infringing uses is not a required element.

In *Hydentra*, the court stated, "Plaintiff can only succeed on its contributory infringement claim if Plaintiff establishes that the Websites in question are not capable of substantial noninfringing uses." 2016 WL 5951808, at *13 (citations and quotation marks omitted). However, *Hydentra* was an order on motions for summary judgment, and the court ruled that the plaintiff failed to establish substantial non-infringing uses to survive a motion for summary judgment, not a motion to dismiss. *See id.* Therefore, *Hydentra* did not establish that the lack of substantial non-infringing uses is an element of a claim for contributory copyright infringement that must be pleaded in the complaint to survive a motion to dismiss.

Furthermore, courts have treated the lack of substantial non-infringing uses as an argument subsumed under the intent or material contribution elements of the contributory copyright infringement claim. In *Grokster*, the Supreme Court stated that Supreme Court precedent barred a determination of "secondary liability [(i.e., contributory copyright infringement)] based on

presuming or imputing intent to cause infringement solely from the design or distribution of a product capable of substantial lawful use . . ." *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 125 S.Ct. 2764, 2778 (2005). Put differently, a lack of substantial non-infringing uses could be a basis, though not the sole basis, for imputing culpable intent. Additionally, in *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, the court addressed a motion to dismiss and considered substantial non-infringing uses as an argument regarding the material contribution element of a contributory copyright infringement claim. *See* No. CV1917272MASZNQ, 2020 WL 5204067, at *3 (D.N.J. Aug. 31, 2020) ("Because internet service has substantial non-infringing uses, RCN argues that they did not provide a product which materially contributed to the alleged infringement, and the elements of a contributory infringement claim have, therefore, not been met."). The court in *RCN* rejected defendant's argument and held that substantial non-infringing uses did not refute the plaintiffs' allegation of material contribution or intentional inducement, thereby indicating that non-infringing uses was an argument to be made regarding the material contribution or intentional inducement element. *Id.* at 9 ("[T]he Court finds Plaintiffs have adequately pleaded the material contribution or inducement element.").[13, 14] As such, Quadranet's

---

[13] Plaintiffs cite three cases for their contention that courts have rejected *Hydentra*'s holding that substantial non-infringing uses can defeat a contributory infringement claim: *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc*., 881 F.3d 293, 306 (4th Cir. 2018); *Umg Recordings, Inc. v. Grande Communs. Networks*, LLC, 384 F. Supp. 3d 743, 767 (W.D. Tex. 2019); and *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, No. CV1917272MASZNQ, 2020 WL 5204067, at *9 (D.N.J. Aug. 31, 2020). ECF No. [117] at 26-27. Plaintiffs' argument and the basis for which Plaintiffs cite the three cases, however, are not directly on point. The material issue is not whether *Hydentra*'s holding was correctly or incorrectly decided. The material issue is whether *Hydentra* established that a lack of substantial non-infringing uses is an element of the claim for contributory copyright infringement. Because *Hydentra* concerned issues on summary judgment, it did not address the requisite elements that must be pleaded.

[14] Plaintiffs also argue that, unlike Quadranet, the defendants in *Hydentra* never received infringement notices, and the lack of notice caused the court in *Hydentra* to dismiss the plaintiff's contributory infringement claim. *See* ECF No. [117] at 27. Quadranet argues that the court in *Hydentra* made clear that whether the defendants had knowledge of the infringement was a question of fact, and that "[n]otwithstanding this question of fact, Plaintiff can only succeed on its contributory infringement claim if Plaintiff establishes that the Websites in question are not capable of 'substantial noninfringing uses.'" *Hydentra*, 2016 WL 5951808, at *13 (quoting *Cable/Home Commc'n*, 902 F.2d at 845-46). While

argument that Count III should be dismissed because Plaintiffs failed to allege a lack of substantial non-infringing uses is unpersuasive. Plaintiffs need not allege a lack of substantial non-infringing uses in the SAC.

### b. Culpable Intent

The Court now turns to Quadranet's argument that Count III should be dismissed for failing to allege that Quadranet acted with culpable intent. ECF No. [108] at 24. In general, to make a claim for contributory copyright infringement, the plaintiff must allege that the defendant acted with culpable intent. *Grokster*, 125 S.Ct. at 2779 (indicating that contributory copyright infringement is based on "fault-based liability derived from the common law" requiring "culpable intent"); *see also Luvdarts LLC v. AT & T Mobility, LLC*, No. CV 10-05442 DDP RZX, 2011 WL 997199, at *2 (C.D. Cal. Mar. 17, 2011), *aff'd*, 710 F.3d 1068 (9th Cir. 2013) ("In order to support a claim of secondary liability, Plaintiffs must allege 'culpable intent' and an 'illegal objective.'" (quoting *Grokster*, 125 S.Ct. at 2779, 2782)); *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018) ("Nothing in [the] complaint alleges, or even suggests, that [the defendant] actively induced or materially contributed to the infringement through 'purposeful, culpable expression and conduct.'" (quoting *Grokster*, 125 S.Ct. at 2780)). Plaintiffs primarily rely on *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 729 (9th Cir. 2007) and argue that culpable intent can be imputed if Quadranet was notified of the infringing activity and failed to take simple measures to prevent further infringement. ECF No. [117] at 28-29.

---

Quadranet is correct to the extent that the factual distinction of notice is immaterial, the holding that the plaintiff in *Hydentra* could only succeed on its contributory infringement claim by establishing the lack of non-infringing uses is immaterial because that holding relates to a motion for summary judgment. In that sense, *Hydentra* is inapposite and does not set forth the necessary elements that must be alleged to survive a motion to dismiss.

However, Quadranet correctly argues that *Perfect 10* determined that to impute culpable intent from knowledge of infringing activities, the defendant must be aware that "*specific infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works.*" 487 F.3d at 729 (emphasis in original) (citations and quotation marks omitted); ECF No. [123] at 11. In *Perfect 10*, the defendant was a computer system operator, Google, that assisted websites distribute their infringing copies and received copyright infringement notices. *See* 487 F.3d at 729. Therefore, the Ninth Circuit determined that Google may have had knowledge of specific infringing materials such that culpable intent could be imputed. *See id.*

In this case, unlike Google, Quadranet is not a computer system operator. The SAC instead alleges that Quadranet provides servers to VPN companies. ECF No. [96] ¶ 167. Quadranet notes that VPN companies encrypt their clients' ("end users") online activity, which means Quadranet was never aware of the end users' online activity on Quadranet's servers. ECF Nos. [108] at 25; [123] at 12. As such, even if Plaintiffs sent notices of copyright infringement to Quadranet, which neither Party disputes, *see* ECF Nos. [96] ¶ 1; [108] at 24, Quadranet was unaware of any specific infringing activity. Plaintiffs notably fail to address Quadranet's argument that the encryption prevents Quadranet from knowing specific infringing activity. *See generally* ECF No. [117].[15]

In addition, Plaintiffs' claim is premised on end users using BitTorrent to infringe on Plaintiffs' copyrights. ECF No. [96] ¶ 135. According to the SAC, BitTorrent's protocol transmits small "pieces" of copyrighted work. ECF No. [96] ¶ 148. These "encrypted unusable chunk[s] of zeroes and ones" are then combined on the computer of the BitTorrent user – in this case, the computers of the end users. *See Ingenuity 13 LLC v. Doe*, No. 212-CV-08333-ODW-JC, 2013 WL

---

[15] Instead, the SAC alleges that at least one VPN company encrypts its end users' VPN traffic. ECF No. [96] ¶ 105.

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

765102, at *3 (C.D. Cal. Feb. 7, 2013); *see also* ECF No. [96] ¶ 168. As such, Quadrant argues that Quadranet never had access to a complete copy of Plaintiffs' copyrighted works to become aware of any specific infringing activity. ECF No. [108] at 25. Again, Plaintiffs do not address Quadranet's argument regarding the BitTorrent protocol. *See generally* ECF No. [117]. Considering these technological roadblocks, Plaintiffs fail to sufficiently allege that Quadranet had specific knowledge of infringing activities required to impute culpable intent.

Also, to the extent that Plaintiffs invite the Court to consider *Perfect 10*, a Ninth Circuit decision, to find that the notices are sufficient to impute culpable intent, the Court notes that in *ALS Scan, Inc. v. Steadfast Networks, LLC*, 819 F. App'x 522, 524 (9th Cir. 2020), the Ninth Circuit held that the "number of [copyright infringement] notices is legally irrelevant" because "the number of notices that [the defendant] previously received gives at most a general knowledge that infringement will likely occur again in the future; this does not give notice of any specific acts of infringement that are actually occurring."[16]

Because Plaintiffs have failed to sufficiently allege that Quadranet acted with culpable intent, Count III should be dismissed as to Quadranet. The Court does not address Quadranet's remaining argument that Plaintiffs' claim must be dismissed because Quadranet has not materially contributed to the alleged infringement.

---

[16] Because Plaintiffs' attempt to impute culpable intent based on specific knowledge fails for the reasons stated above, the Court need not address Plaintiffs' argument that Quadranet could have taken simple measures to prevent further infringement, which is a required element to impute culpable intent from specific knowledge according to *Perfect 10*. *See* 487 F.3d at 729. However, the Court considers Plaintiffs' similar argument – that Quadranet had the ability to supervise, control, and stop the infringing activity – to address Plaintiffs' claim for vicarious copyright infringement below. As the following discussion indicates, Plaintiffs' claim for contributory copyright infringement must also be dismissed because the SAC fails to sufficiently allege that Quadranet could have taken simple measures to prevent further infringement.

### ii.    Count IV

In Count IV, Plaintiffs allege that Quadranet is liable for vicarious copyright infringement because Quadranet purposefully failed to update Whois records and thereby incentivized VPN companies to use Quadranet's services to facilitate their end users' copyright infringement. ECF No. [96] ¶ 289, 419-28. Quadranet argues that Plaintiffs fail to state a claim for vicarious infringement because the SAC does not allege that Quadranet profited directly from the infringement or that Quadranet had the ability to supervise, control, and stop the purported infringing activity. *See* ECF No. [108] at 28-36. Plaintiffs respond that they do state a claim for vicarious infringement because the SAC sufficiently alleges that Quadranet profited directly from the infringing activities and that Quadranet had the right and ability to supervise and control the infringing activities. ECF No. [117] at 33-34.

The Eleventh Circuit has held that for a claim of vicarious copyright infringement, "[t]he defendant must have the right and ability to supervise the infringing activity and must have a direct financial interest." *Coach, Inc. v. Swap Shop, Inc*., 916 F. Supp. 2d 1271, 1282 (S.D. Fla. 2012) (citing *Casella*, 820 F.2d at 365). The Court, therefore, considers whether, as alleged, Quadranet had a direct financial interest in the infringing activity and whether Quadranet had the right and ability to supervise the infringing activity.

### a.  Direct Financial Interest

First, to successfully allege a direct financial interest, the plaintiff must allege that the defendant profited directly from the infringing activity. *Coach, Inc.*, 916 F. Supp. 2d at 1282; *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007). Quadranet relies on *Coach, Inc*., 916 F. Supp. 2d at 1282, to argue that Quadranet did not profit directly from the infringing activity. ECF No. [108] at 29. In *Coach, Inc*., the plaintiff sued the landlords and

operators of a flea market for vicarious copyright infringement for the sale of counterfeit goods at the flea market. *See* 916 F. Supp. 2d at 1282-83. The court dismissed the vicarious copyright infringement claims against the landlords because the complaint did not allege that the landlords obtained a direct financial benefit. *See id.* Any financial benefit that the landlords received was "indirect," meaning they only leased the real property to the operators of the flea market who in turn derived a direct financial benefit from the infringing activity. *See id.* The court did not dismiss the vicarious copyright infringement claims against the operators of the flea market. *See id.* at 1282. Quadranet argues that the SAC only alleges that Quadranet leased the servers to the VPN companies. ECF No. [108] at 29. As such, much like the landlords in *Coach, Inc.*, Quadranet avers that it did not derive a direct benefit from the infringing activity. *See id.* The Court agrees. Quadranet is paid by the VPN companies, not the end users of the VPN companies who engaged in the infringing activity. *See* ECF No. [96] ¶¶ 167 (alleging that Quadranet's servers are leased to VPN companies, not the end users), 291 (noting that VPN companies, not the end users, purchase Quadranet's services).[17]

Plaintiffs argue that Quadranet is similar to the operators of the flea market in *Coach, Inc.* ECF No. [117] at 35. However, the operators derived a direct financial benefit from the infringing

---

[17] In the initial complaint, Plaintiffs describe Does 1-100 as VPN companies' end users who were responsible for direct copyright infringement. ECF No. [1] ¶¶ 173-81. In the SAC, Plaintiffs argue that Does 1-100 are not VPN companies' end users but Quadranet's subscribers who are similarly situated as VPN companies. ECF No. [96] ¶¶ 110-11. If Does 1-100 infringed on Plaintiffs' copyrights as Quadranet's subscribers and paid Quadranet directly, then Plaintiffs' claim that Quadranet benefitted directly from the infringing activity would be more persuasive. However, the SAC alleges that Does 1-100's customers – i.e., Does 1-100's own end users – engaged in copyright infringement. *See id.* As such, Quadranet did not derive a direct financial benefit from the infringing activity based on its relationship with Does 1-100. Further, even if Does 1-100 and other VPN companies could be considered direct infringers who directly engaged in copyright infringement, which TorGuard disputes, *see* ECF No. [145] at 5, Plaintiffs' vicarious copyright infringement claim against Quadranet must be dismissed nonetheless for failing to allege a practical mechanism to stop the infringing activities as discussed below. Lastly, the Court notes that Plaintiffs appear to be unsure as to whether Does 1-100 are service providers or end users. *See* ECF No. [148] at 12, n.8 (noting that Does 1-100 are "likely" other service providers rather than end users).

activities because they received rent from the vendors who were infringing on the plaintiff's copyrights, parking fees, and concession fees, which were all fueled by the availability of counterfeit products at the flea market. *See Coach, Inc.*, 916 F. Supp. 2d at 1282. As alleged, VPN companies, not the end users, paid Quadranet for its services, ECF No. [96] ¶ 167, and it is apparent that Quadranet was paid by the VPN companies regardless of whether the end users engaged in infringing activities or legitimate activities. As such, Plaintiffs fail to sufficiently allege that Quadranet profited directly from the infringing activity.[18]

### b. Right to Supervise and Control

Second, even if the SAC alleged that Quadranet did receive a direct financial benefit, the SAC must allege that Quadranet had the right and ability to supervise and control the infringing activity. *See Coach, Inc.*, 916 F. Supp. 2d at 1282. In general, the "plaintiff must establish that the defendant exercises the requisite control over the direct infringer." *Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 3:16-CV-907-J-39MCR, 2017 WL 2901695, at *12 (M.D. Fla. Jan. 17, 2017) (internal quotation marks and citation omitted). Furthermore, the plaintiff must allege that the defendant has a "practical ability to police the infringing activities of [third parties] as opposed to suggesting measures that are imprecise, overbroad or not workable." *Id.* (internal quotation marks and citation omitted).

Plaintiffs allege that Quadranet controls "the IP addresses used by its subscribers, the Internet access for its subscribers and even the electricity to the servers used by its subscribers." ECF No. [96] ¶ 422. Quadranet can terminate or "null-route" the accounts of its subscribers at any

---

[18] Quadranet also argues that the infringing activity is not the "main draw" for Quadranet's subscribers. ECF No. [108] at 31. Because Quadranet did not derive a direct financial benefit, the Court need not address this second independent basis for dismissing Count IV. Thus, to be clear, the Court does not consider Quadranet's allegation that the revenue from leasing its servers to LiquidVPN accounted for less than 0.00001% of QE's revenue because doing so would require the Court to look beyond the four corners of the SAC. *See* ECF No. [108-1] ¶ 25.

time and does so if its subscribers fail to pay. *Id.* ¶ 311; *see also id.* ¶¶ 292-93. Quadranet also provides "24/7" security for the leased servers. *Id.* at ¶ 81. Quadranet can block BitTorrent ports. *Id.* ¶ 314. However, as Quadranet correctly argues, such allegations are insufficient to allege that Quadranet has the practical ability to police infringers with measures that are not imprecise or overbroad. *See Venus Fashions, Inc.*, 2017 WL 2901695, at *12. To be clear, the SAC does not allege that Quadranet can terminate the account of end users who infringe on Plaintiffs' copyrights; Quadranet can only terminate the accounts of their subscribers, namely VPN companies. *Id.* ¶¶ 292-93, 311. If Quadranet were to terminate the accounts of VPN companies, Quadranet would be interfering with the relationship between VPN companies and their customers, many of whom may be engaged in lawful uses of VPN. *See* ECF No. [108] at 35.[19] Therefore, the measure that Plaintiffs suggest – namely, null-routing VPN companies – is an impermissibly broad measure that does not constitute a "practical ability to police infringing activities of [third parties]." *Venus Fashions, Inc.*, 2017 WL 2901695, at *12.[20]

Because Plaintiffs have failed to sufficiently allege that Quadranet had a direct financial interest in the infringing activity and that Quadranet had the right and ability to supervise the infringing activity, Count IV must be dismissed as to Quadranet.

---

[19] The Court notes that blocking BitTorrent ports is also not a practical measure because BitTorrent is a file sharing software that is not illegal. ECF No. [96] ¶ 135.

[20] Plaintiffs argue that the VPN companies are direct infringers. ECF No. [117] at 24-25. TorGuard, one of the VPN companies, argues in its Motion to Dismiss that the SAC fails to allege that TorGuard is a direct infringer. ECF No. [145] at 5. For the purposes of the Court's analysis here, whether VPN companies such as TorGuard are direct infringers is not the deciding issue because regardless of whether VPN companies are direct infringers, Quadranet cannot terminate the infringing activity by null-routing VPN companies without interfering with end users who may be using their services for lawful purposes. The Court reserves ruling on whether TorGuard is a direct infringer for a separate Order on TorGuard's Motion to Dismiss.

### iii.    Supplemental Jurisdiction over Count VI-VIII

Next, Quadranet argues that the remaining claims against Quadranet should be dismissed because they are all state law claims. ECF No. [108] at 36-37. Plaintiffs do not respond to Quadranet's argument that the remaining state law claims should be dismissed. *See generally* ECF No. [117]. The Eleventh Circuit has stated that a decision to exercise or decline supplemental jurisdiction lays in "considerations of judicial economy, convenience[,] fairness to litigants and comity." *Ingram v. School Board of Miami-Dade County*, 167 F. App'x. 107, 108 (11th Cir. 2006) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). In this case, the Parties have conducted extensive discovery, and the case has been pending since March 2021. Because of the amount of time and effort the Parties and the Court have expended in developing this case, judicial economy considerations weigh against dismissal. *See Scheu & Scheu, Inc. v. Scheu*, No. 15-10147-CIV, 2017 WL 2831060, at *4 (S.D. Fla. June 28, 2017) (retaining jurisdiction over state law claims after noting that the parties have already conducted extensive discovery); *Pilkington v. United Airlines, Inc.*, 921 F. Supp. 740, 748 (M.D. Fla. 1996) (retaining jurisdiction over state law claims after dismissing federal claims because "an extensive amount of discovery has taken place, and the amount of time and effort expended by the Court and the litigants in developing this case to this point has been substantial."). Furthermore, the case still involves pending claims against other Defendants, namely TorGuard and Does 1-100. As such, the Court exercises supplemental jurisdiction over the state claims against Quadranet and considers Quadranet's arguments in the alternative.

### iv.    Preemption of Counts VI-VII

Quadranet next argues that Counts VI and VII, negligence and fraud respectively, should be dismissed because the federal copyright claim of vicarious infringement preempts the two state

law claims. ECF No. [108] at 37. Plaintiffs argue that both state law claims are not preempted because the state law claims require a false statement concerning a material fact, which is not an element for claims under the Copyright Act. ECF No. [117] at 36.

The Eleventh Circuit has adopted a two-prong test to determine whether the Copyright Act preempts a state law cause of action. *See Crow v. Wainwright*, 720 F.2d 1224 (11th Cir. 1983). The first prong requires courts to determine whether "the rights at issue fall within the 'subject matter of copyright' set forth in sections 102 and 103" of the Copyright Act. *Id.* at 1225-26 (quoting *Harper & Row, Publishers v. Nation Enters.*, 501 F.Supp. 848, 850 (S.D.N.Y.1980)). The Parties have not expressly addressed the first prong of the analysis, but both Parties appear to assume that the rights at issue for the state law claims fall within the subject matter of copyright set forth in Sections 102 and 103. Indeed, Section 102(a)(6) provides copyright protection for "motion pictures and other audiovisual works." 17 U.S.C. § 102(a)(6). As such, the bases for the state law claims, namely Plaintiffs' copyrighted movies, fall within the subject matter of copyright set forth in Sections 102 and 103.

The second prong requires the Court to determine whether the rights at issue are equivalent to the exclusive rights conferred by Section 106 of the Copyright Act. *See Crow*, 720 F.2d at 1226. Section 106 sets forth the rights to reproduction, preparation of derivative works, distribution, performance, and display of copyrighted material. *See* 17 U.S.C. § 106. "[I]f an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created [cause] of action, then the right does not lie within the general scope of copyright and there is no preemption." *Jouria v. CE Res., Inc.*, No. 0:15-CV-61165-WPD, 2017 WL 3868422, at *3 (S.D. Fla. July 17, 2017) (quoting *Lipscher v. LRP Publications, Inc.*, 266 F.3d 1305, 1311-12 (11th Cir. 2001)). "However, the 'extra element test,' is not a rote

comparison of the elements of the two claims. The 'extra element' of the state-law-claim must change the nature of the claim, so that it is '*qualitatively* different from a copyright infringement claim.'" *Id.* at *3 (quoting *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001)) (emphasis in original). As such, the "preemption issue requires a fact-intensive inquiry." *Jouria*, 2017 WL 3868422, at *3.

Plaintiffs argue that both state law claims require a false statement concerning a material fact, which is not an element required for the vicarious infringement claim. *See* ECF No. [117] at 36. However, in this case, Plaintiffs' vicarious infringement claim relies on the allegation of a false statement. The vicarious infringement claim and the two state law claims are each premised on the same set of allegations that: (1) Quadranet failed to update the Whois records, which amounts to a false statement; (2) VPN companies are motivated to become Quadranet subscribers because Quadranet will not make public their IP addresses through the Whois records; and (3) Plaintiffs have been unable to send copyright infringement notices to the appropriate party because of the false Whois records. *See* ECF No. [96] ¶ 423, 425 (setting forth the same allegations for vicarious infringement); ¶¶ 348, 454-57, 461 (setting forth the same allegations for negligence); ¶¶ 466-467, 469 (setting forth the same allegations for fraud). In essence, when Plaintiffs assert claims of negligence and fraud, Plaintiffs are claiming that Quadranet failed to update its Whois records and thereby shielded its subscribers' IP addresses, in turn allowing end users to infringe on Plaintiffs' copyrights. This is the same underlying claim Plaintiffs allege in asserting their vicarious infringement claim – that is, Quadranet vicariously infringed on Plaintiffs' copyright by failing to update its Whois records and thereby shielding its subscribers' IP addresses, in turn allowing end users to infringe on Plaintiffs' copyrights. As such, the extra element of a false statement concerning a material fact does not render the vicarious infringement claim to be qualitatively

different from the state law claims because the vicarious infringement claim relies on the same allegation of a false statement concerning a material fact.[21]

Quadranet cites *Giddings v. Vison House Prod., Inc.*, No. CV05-2963-PHX-MHM, 2007 WL 2274800, at *3 (D. Ariz. Aug. 7, 2007), and argues that in order to survive a preemption challenge, the state law claims "must be based on a core of allegations dissimilar from those on which the copyright infringement claim is based." ECF Nos. [108] at 37-38; [123] at 17. Though not binding, the Court considers the case to be instructive. The plaintiff in *Giddings* asserted a copyright infringement claim and a state law fraud claim. *See* 2007 WL 2274800, at *3. The fraud claim required an extra element of misrepresentation. *See id.* Nonetheless, the court determined the fraud claim was preempted by the copyright infringement claim because the core of the allegations was the same for both claims since the copyright infringement claim also relied on the allegation of a misrepresentation. *See id.* Similarly, in this case, although the state law claims require an extra element of a false statement, the copyright infringement claim relies on the allegation of a false statement. Therefore, the Court finds that the state law claims have been preempted by the vicarious copyright infringement claim.

Plaintiffs do not address Quadranet's argument that Plaintiffs' state law claims are not qualitatively different due to the common allegations underlying all claims. *See generally* ECF No. [117]. Instead, Plaintiffs rely on a case from the Northern District of Georgia, *Hustlers Inc. v. Thomasson*, 253 F. Supp. 2d 1285, 1293 (N.D. Ga. 2002), where the court found that a fraud claim was not preempted by federal copyright law. *See id.* at 36. The Court is not persuaded. A review

---

[21] The Parties disagree on whether Quadranet's decision to list itself as the abuse contact in the Whois records was improper. *See* ECF Nos. [108] at 17; [117] at 8. The Court need not address the merits of the particular claim for the purposes of the Motion to Dismiss. At this stage of the proceedings, the Court only recognizes that the allegation of a false statement is required to prove Plaintiffs' vicarious copyright infringement claim and the state law claims, resulting in the preemption of the state law claims.

of the SAC indicates that the facts alleged here are materially different from the facts of *Hustlers*. The court in *Hustlers* held that for the fraud claim in that case, the plaintiff had to "prove representation of a material existing fact, falsity, scienter, deception and injury." 253 F. Supp. 2d at 1293 (quoting *Chrils v. Nassau County Civil Service Com'n,* 277 A.D.2d 226, 716 N.Y.S.2d 585, 586 (2000)). Though the court did not expressly address the issue in its relatively brief discussion of the fraud claim, there is no indication that proof of a material representation, falsity, scienter, deception, and injury was required for the plaintiff's claim for direct infringement and contributory infringement. *See id.* Here, however, Plaintiffs' claim for vicarious liability, much like the claim for fraud, relies on proof of a material representation, falsity, scienter, deception, and injury – namely, proof of false Whois records that induced VPN companies to seek Quadranet's services and subsequently caused Plaintiffs' injuries. Therefore, in this case, the fraud claim is preempted by Plaintiffs' claim for vicarious liability.[22] As such, the Court determines that Counts VI and VII have been preempted by the vicarious infringement claim and must be dismissed with prejudice. *See Hoeltzell v. Caldera Graphics*, No. 11-21245-CV, 2011 WL 13223709, at *5 (S.D. Fla. Nov. 16, 2011) (dismissing with prejudice the state law claim that was preempted by the Copyright Act). The Court does not consider Quadranet's arguments in the alternative to dismiss Counts VI and VII.

### v.   Count VIII

Finally, Quadranet seeks to dismiss Count VIII for equitable estoppel. ECF No. [108] at 41-42. Quadranet argues that equitable estoppel is not an independent cause of action under Florida law. *See id.* Plaintiffs respond that equitable estoppel is a claim under Florida law, but fail to address Quadranet's argument that equitable estoppel is not an *independent* claim. ECF No. [117]

---

[22] *Hustlers* does not involve a negligence claim. 253 F. Supp. 2d 1285. As noted above, the negligence claim is similarly preempted by the vicarious infringement claim.

at 41. Plaintiffs rely on *Kruse v. Massachusetts Mut. Life Ins. Co.*, No. 17-CV-61115, 2017 WL 3494334, at *2 (S.D. Fla. Aug. 15, 2017), in which this Court noted the elements of equitable estoppel. However, in *Kruse*, the Court did not state that equitable estoppel was an independent cause of action, and the case involved several additional claims against the defendant. *See generally id.* Further, when the Court set forth the elements of a claim for equitable estoppel in *Kruse*, the Court relied on *Lewis v. Dep't of Health & Rehab. Servs.*, 659 So. 2d 1255, 1256-57 (Fla. 4th DCA 1995), which involved the use of equitable estoppel in the context of a defense, not as an independent cause of action. *See id.* In short, the Court in *Kruse* did not set forth the proposition that equitable estoppel is an independent cause of action.

Furthermore, several cases suggest that equitable estoppel is not an independent cause of action. *See B&G Opa Holdings, Inc. v. City of Opa Locka*, 2020 U.S. Dist. LEXIS 28209, *6-7 (S.D. Fla. Feb. 18, 2020) (holding that the court "need not address the [defendant's] argument that Count X, the estoppel claim, must be dismissed for failure to state a claim, because equitable estoppel is not an independent cause of action under Florida law"); *Bair v. City of Clearwater*, 196 So. 3d 577, 584 (Fla. 2d DCA 2016) ("Florida courts recognize that equitable estoppel may be invoked against a governmental entity as a supporting theory for some other remedy."); *Diamond v. Provident Life & Accident Ins. Co.*, No. 05-21771-CIV, 2005 WL 8155197, at *4 (S.D. Fla. Sept. 29, 2005) ("Indeed, equitable estoppel is an affirmative defense, not a cause of action."); *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1077 (Fla. 2001) ("Equitable estoppel thus functions as a shield, not a sword, and operates against the wrongdoer, not the victim."); *State, Dep't of Transp. v. FirstMerit Bank*, 711 So. 2d 1217, 1218 (Fla. 2d DCA 1998) ("Estoppel is an affirmative defense, not a cause of action."). Given the weight of authority indicating that equitable estoppel is not an independent cause of action, the Court similarly holds that equitable estoppel is

not an independent cause of action and cannot be brought as a "stand-alone" claim. *B&G*, LEXIS 28209, *7 ("Estoppel may be raised offensively only to avoid a defense, such as the statute of limitations or failure to exhaust administrative remedies, but it may not be brought as a stand-alone claim." (citation and internal quotation marks omitted)). Because all of the other claims against Quadranet have been dismissed, the claim for equitable estoppel must also be dismissed. The Court does not consider Quadranet's arguments in the alternative.

### E.  Dismissal with Prejudice

As a final matter, Quadranet requests that Plaintiffs' claims be dismissed with prejudice, *see* ECF No. [108] at 12, and Plaintiffs request leave to amend their pleading if appropriate, *see* ECF No. [117] at 42. A review of the record indicates that after Plaintiffs filed their original complaint, Plaintiffs filed their FAC on May 5, 2021, adding Quadranet as a Defendant. ECF No. [24]. On July 30, 2021, Quadranet filed its first motion to dismiss. ECF No. [83]. Quadranet's prior motion to dismiss similarly argued that the FAC was a shotgun pleading. *See id.* at 22-23. Quadranet also argued that Plaintiffs failed to state a claim for which relief could be granted for Counts III and IV. *See id.* at 8-22. More specifically, Quadranet argued that Count III should be dismissed because Quadranet did not act with culpable intent. *See id.* at 11-12. Quadranet also argued that Count IV should be dismissed because Quadranet did not profit directly from the infringing activity and did not have the ability to supervise, control, and stop the infringing activity. *See id.* at 14-17, 19-21.

Subsequently, Plaintiffs filed their SAC, ECF No. [96], but failed to cure the deficiencies in their pleadings. As discussed above, the SAC is still a shotgun pleading. Plaintiffs failed to

include sufficient allegations in the SAC to refute Quadranet's argument that Counts III and IV should be dismissed for failing to state a claim.[23]

Considering the Parties' arguments and Plaintiffs' previous opportunities to amend the complaint, a third opportunity to amend the complaint would be futile, and Plaintiffs' third amended complaint would likely not survive another motion to dismiss. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004) (denying the plaintiff an opportunity to file another amended complaint when the previous amended complaint did not contain meritorious claims). While Plaintiffs could cure deficiencies related to the shotgun pleading, Plaintiffs' failure to include sufficient allegations in the SAC for Counts III and IV indicates that another opportunity to amend the complaint would be futile. As such, the Court dismisses all claims against Quadranet with prejudice.

## III.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Quadranet's Motion to Dismiss, **ECF No. [108]**, is **GRANTED**.

2.   Plaintiffs' claims against Quadranet are **DISMISSED WITH PREJUDICE**.

3.   To the extent not otherwise disposed of, any other pending motions in regard to Quadranet are **DENIED AS MOOT** and all deadlines in regard to Quadranet are **TERMINATED**.

4.   This case shall proceed against all remaining Defendants.

---

[23] Further, as stated above, Counts VI and VII have been preempted by Count IV and must be dismissed with prejudice. Count VIII is not an independent cause of action under Florida law.

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 13, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record