UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:21-cv-20862-BB

MILLENNIUM FUNDING, INC., et al.,

      Plaintiffs,

v.

1701 MANAGEMENT, LLC DBA
LIQUIDVPN, et al.,

      Defendants.

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANTS QUADRANET, INC.'S AND QUADRANET ENTERPRISES, LLC'S MOTION TO DISMISS AND FOR CLARIFICATION OF ORDER**

      Plaintiffs move this Court for reconsideration of the Order [Doc. #173] granting the Motion to Dismiss [Doc. #108] of Defendants QuadraNet, Inc. and QuadraNet Enterprises, LLC ("QuadraNet") pursuant to Rules 59(e) and 60(b)(6) of the *Federal Rules of Civil Procedure* and this Court's inherent authority to reconsider interlocutory orders. *See Ferro v. Doctors Healthcare Plans*, No. 20-cv-23449-BLOOM/Louis, 2021 U.S. Dist. LEXIS 223468, at *36 (S.D. Fla. Nov. 18, 2021) (citing *Flintlock Const. Services, LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1225 (11th Cir. 2013). Plaintiffs also request clarification as to whether the Order is a final judgment pursuant to Rule 54(b).

      First, the inclusion of the names of certain Plaintiffs that previously dismissed their claims against QuadraNet or never even made claims against QuadraNet in the Second Amended Complaint [Doc. #96] ("SAC") (or in one case in also neither the original complaint nor First Amended Complaint ("FAC")) in the Order was clear error.

Second, the portions of the Order that dismiss the plaintiffs' indirect infringement claims and exercises supplemental jurisdiction over the state law claims are based upon a manifest misunderstanding of the facts and amount to premature conclusions. As explained more fully below, null-routing an Internet Protocol ("IP") address of a subscriber is completely different from terminating the subscriber's account. At least one of QuadraNet's subscribers (TorGuard) does not always encrypt its customer's communications and instructs end users to setup their BitTorrent Client to run on TorGuard's proxy server rather than just on their own computer. Further, Plaintiffs do not yet know who QuadraNet's subscribers are and how they configure their networks. As a result it is premature to conclude that it was impossible for QuadraNet to know of the specific infringing activity or that there were no simple measures it could take to stop further piracy.

Finally, the Plaintiffs have newly discovered evidence of additional simple measures QuadraNet could take to stop further piracy.

## I.     LEGAL STANDARD

Rule 54(b) of the *Federal Rules of Civil Procedure* provides that in a multi-party action any order or decision that adjudicates fewer than all the parties does not end the action and may be revised at any time before the entry of judgment.

A motion for reconsideration should only be granted if there is (1) an intervening change in controlling law, (2) newly discovered evidence; or (3) the need to correct clear error or prevent manifest injustice. *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002).

A motion for reconsideration may be "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Kapila v.*

*Grant Thornton*, LLP, No. 14-cv-61194, 2017 U.S. Dist. LEXIS 134931, 2017 WL 3638199, at *1 (S.D. Fla. Aug. 23, 2017) (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). "Such problems rarely arise and the motion to reconsider should be equally rare." Burger King Corp., 181 F. Supp. 2d at 1369. Ultimately, reconsideration is a decision that is "left 'to the sound discretion' of the reviewing judge." *Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, No. 6:18-cv-1149-Orl-78DCI, 2020 U.S. Dist. LEXIS 171764, 2020 WL 5534280, at *2 (M.D. Fla. Apr. 1, 2020) (quoting *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993)).

**II.     ARGUMENT – The Order erroneously identifies Plaintiffs**

A.     *The Order erroneously refers to Plaintiff 42 Ventures, LLC even though it never made claims against QuadraNet.*

The first paragraph of the Order includes Plaintiffs 42 Ventures, LLC ("42") in the collective definition of Plaintiffs. *See* Order at 1. However, 42 never asserted any claims against QuadraNet (in the SAC, FAC or Original Complaint). Rather, 42 asserted trademark and unfair competition claims against only the LiquidVPN Defendants. *See* Second Amended Complaint [Doc. #96] at ¶¶ 484-500. Therefore, because 42 does not make any claims against QuadraNet, upon reconsideration the Court should amend the Order to remove 42 to correct clear error or prevent manifest injustice.

B.     *The Order erroneously refers to Plaintiffs that dismissed their claims against QuadraNet without prejudice prior to QuadraNet filing the Motion to Dismiss the SAC.*

The first paragraph of the Order also includes Plaintiffs After Productions, LLC, SF Film, LLC and State of the Union Distribution and Collections, LLC in the collective definition of Plaintiffs. *See* Order at pg. 1. However, Plaintiffs After Productions, LLC, SF Film, LLC and State of the Union Distribution and Collections, LLC filed a voluntary dismissal of their claims against

QuadraNet without prejudice [Doc. #105] on Aug. 23, 2021 prior to QuadraNet filing the Motion to Dismiss [Doc. #108] on Aug. 31, 2021. Therefore, upon reconsideration the Court should amend the Order to remove the claims of After Productions, LLC, SF Film, LLC and State of the Union Distribution and Collections, LLC as being dismissed with prejudice to correct clear error or prevent manifest injustice.

C.   *The Order erroneously refers to entities that are not Plaintiffs in the SAC.*

The first paragraph of the Order also includes Hunter Killer Productions, Inc., 211 Productions, Inc., and Millennium SPVH, Inc. in the collective definition of Plaintiffs. *See* Order at pg. 1. Although these entities were Plaintiffs in the Original Complaint and FAC, they were not Plaintiffs in the SAC. Therefore, upon reconsideration the Court should amend the Order to remove Hunter Killer Productions, Inc., 211 Productions, Inc., and Millennium SPVH, Inc. as Plaintiffs to correct clear error or prevent manifest injustice.

**III.   ARGUMENT – The Order relies on patently misunderstandings and errors of apprehension of the facts.**

Plaintiffs greatly appreciate the Court's detailed discussion and careful consideration of the allegations. However, Plaintiffs respectfully assert that the Court has patently misunderstood important factual allegations that has resulted in an error "not of reasoning but of apprehension." *Kapila*, 2017 U.S. Dist. LEXIS 134931 at * 1.

A.   *The Order confuses "null-routing an IP address" with "terminating an account."*

Plaintiffs alleged in the SAC that "QuadraNet has the capability to null-route IP addresses it assigns or allocates to its subscribers,"  SAC at ¶ 295. Plaintiffs further alleged that a simple measure QuadraNet could have taken was "…temporarily "null-routed" the IP addresses to disable

the link to the infringing activity and stop further piracy of Plaintiffs' Works. Indeed, QuadraNet advertises the ability to null route IP addresses." Id. at ¶ 311.

In its reply on the Motion to Dismiss, QuadraNet mischaracterized Plaintiffs' allegation as a contention that QuadraNet "…could have "null-routed" its subscribers… and/or terminated service to LiquidVPN" in its reply brief. QuadraNet's Reply Brief [Doc. #120] at. 8. Compare to QuadraNet Mot. to Dismiss [Doc. #108] at 28 ("…any allegation regarding Quadranet's ability to "null-route" an **IP address**… is not irrelevant, but also wildly overbroad and unworkable…")(emphasis added). Plaintiffs could not address this mischaracterization because it was made in QuadraNet's reply brief.

This Court adopted QuadraNet's mischaracterization and miscited paragraph 311 of Plaintiffs' SAC as stating, "Quadranet can terminate or "null-route" the accounts of its subscribers at any time…" Order at 30-31. However, as noted above, Plaintiffs alleged null-routing *IP addresses* not the accounts. There is a huge technical difference between null-routing one or more IP addresses where piracy is ongoing and null-routing or terminating the entire account or all IP addresses for a subscriber.

For example, the screenshot of paragraph 312 of the SAC shows QuadraNet advertises the ability to null-route one IP address ("ip route 192.168.0.4 255.255.255.255"). On this same website from which this screenshot was taken QuadraNet explains that:

> In computer networking, a null route (blackhole route) is a network route (routing table entry) that goes nowhere. Matching packets are dropped (ignored) rather than forwarded, acting as a kind of very limited firewall. The act of using null routes is often called blackhole filtering.

"QuadraNet announces client-controlled IP Nullrouting!"

https://blog.quadranet.com/quadranet-announces-client-controlled-ip-nullrouting/ [last accessed on Jan. 5, 2021]. Plaintiffs even alleged that QuadraNet had null-routed IP addresses of subscribers in the past. *See* SAC at ¶ 312.

In the order, the Court incorrectly elevated Plaintiffs' alleged simple measure of null-routing IP addresses where ongoing infringement was reported to terminating the entire account of a VPN company (i.e. null-routing all its IP addresses). *See* Order at 31 ("Therefore, the measure that Plaintiffs suggest – namely, null-routing VPN companies – is an impermissibly broad measure that does not constitute a "practical ability to police infringing activities of [third parties].") Plaintiffs respectfully suggest that it was a clear error to simply assume that the allegations that QuadraNet could have adopted simple measures such as null routing an IP address to stop further infringement is "impermissibly broad" based only on QuadraNet's argument in its reply brief without considering the network configuration of QuadraNet's subscriber.

For example, TorGuard has conceded that its services include the provision of dedicated IP addresses for some of its end users. *See* Decl. of Culpepper at ¶¶ 4-5; *see also* Exhibit "6" [Doc. #148-7] at 3 (link to website torguard.net/dedicated-ip-vpn.php advertising TorGuard's service for a "Dedicated IP VPN"). Assuming one or more of the IP addresses QuadraNet provided to TorGuard for which Plaintiffs sent notices of specific instances of ongoing distribution of their Works are dedicated IP address, null-routing dedicated IP address would not interfere with the relationship between TorGuard and its other customers who may be engaged in lawful uses of VPN.

For another example, QuadraNet states when it forwards notices to its subscribers that if the client did not respond to the abuse "Failure to do so within a timely manner (within 24 hours) will result in *suspension of services* until the server administrator has time to resolve this issue. Repeated unresolved or high priority issues may result in *a filter being applied to your uplink.*" Affidavit of David Cox [Doc. #96-9] at ¶ 3. This "filter" is likely the same blackhole filtering (i.e., null-routing)

6

discussed above. QuadraNet told LiquidVPN that it would suspend service or null-route IP address based upon notices, thus contradicting QuadraNet's argument in its reply brief that suspending service to its subscriber is an impermissibly broad measure. Further, the fact that QuadraNet admits to maintaining control to "filter" uplinks of its VPN subscribers and suspend services contradicts the Court's finding that "unlike Google, Quadranet is not a computer system operator". Order at 26.

Plaintiffs respectfully assert that they should be permitted to proceed to discovery to ascertain who QuadraNet's subscribers are, how they have configured the network and to establish that Quadranet is undoubtedly a computer system operator that has more in common with Google and many other computer system operators who are subject to contributory liability for online infringement so that a technically accurate and informed decision can be made on whether QuadraNet could have taken simple measures to stop further piracy of their Works.

After briefing on QuadraNet's Motion, Plaintiffs discovered evidence that a data center similarly situated to (and a competitor of) QuadraNet could use commercially reasonable efforts to block the foreign piracy websites responsible for a substantial portion of the piracy complained of in the SAC. *See* Exhibit "1" at 2 ("Sharktech has agreed to use commercially reasonable efforts to block the following alleged piracy websites located outside of the United States, by blocking their associated, currently-known IP addresses: (1) "YTS" (yts.mx; yts.movie); (2) "PirateBay" (https://pirate-bay-proxy.org/eng/; piratebay.org); (3) "RarBg" (https://rarbg.to/); and (4) "1337x" (https://www.1337x.tw/...") Plaintiffs requested a similar measure in the SAC. *See* SAC at 90. If QuadraNet blocked access to the foreign piracy website YTS (as Sharktech did), it would stop further piracy of Plaintiffs' Works from the websites YTS and RARBG as alleged. *See* SAC at ¶¶ 156-157. This evidence was not in Plaintiffs' possession at the time of their opposition brief or the SAC was

filed. QuadraNet likely has the same capability as its competitor Sharktech, but in discovery Plaintiffs could confirm this fact.

B.  *The Order incorrectly states that all of QuadraNet's subscribers are VPN providers that encrypt transmissions.*

Plaintiffs respectfully assert the Order's conclusion that *all* QuadraNet's subscribers involved with piracy of Plaintiffs' Works are VPN providers that encrypted transmissions was premature and not based upon the allegations in the SAC or even the arguments of QuadraNet. *See* Order [Doc. #173] at 26[1]. QuadraNet's subscriber TorGuard does not always encrypt the transmission that go through its servers. *See* Decl. of Culpepper at ¶ 14 ("…the socks5/web proxys basically mask your IP, they don't encrypt your traffic"). Even QuadraNet's CEO states that some of their customers "…may use our servers to host an online video game, other customers may store healthcare records…" Decl. of Mishan [Doc. #108-1] at ¶ 18. Among QuadraNet's subscribers are ones who used QuadraNet's servers to store pirated copies of Plaintiffs' Works which these subscribers distributed unencrypted. Even assuming *arguendo* that most of the subscribers at issue here are VPN providers, there is no allegation in the pleadings or any evidence presented by the parties that *all* VPN providers encrypt all their transmissions. And not all VPN providers do. *See, e.g.,* Charles Osbourne, *Researchers slam Hola VPN over absent encryption, user IP leaks,* Dec. 18, 2018 https://www.zdnet.com/article/researchers-slam-hola-vpn-over-absent-encryption-user-ip-leaks/#:~:text=%22Hola%20VPN%20is%20not%20a,exit%20nodes%20in%20data%20centers [last accessed on 1/9/2022].

---

[1] The Order states that Plaintiffs failed to address QuadraNet's argument that VPN encryption prevents them from knowing specific infringing activity. *See* Order at 26. However, in response Plaintiffs pointed out that if QuadraNet had just taken a cursory look at the subscribers' websites (such as LiquidVPN's website hosted on QuadraNet's server which displayed title art of Plaintiff Millennium Funding, Inc.'s movie *Survivor* as well as many other movies that its service can be used to pirate) they could have easily concluded that their subscribers were using their servers and IP addresses for blatant piracy. Opposition [Doc. #117] at 28.

Accordingly, this case should be permitted to proceed to discovery so that Plaintiffs can ascertain who are QuadraNet's subscribers and if the subscribers had configured their networks in a way that prevented QuadraNet from becoming aware of infringing activity.

C.   *The Order prematurely assumes that the complete copies of files are only on computers of end users.*

Plaintiffs also respectfully assert that it was also premature for the Court to conclude that the pieces of the copyrighted Works are combined *solely* on the computer of the BitTorrent user and thus accept QuadraNet's argument that it "never had access to a complete copy of Plaintiffs' copyrighted works to become aware of specific infringing activity." Order at 27. Once again, Plaintiffs respectfully submit that this case should be permitted to proceed to discovery so that Plaintiffs can ascertain how QuadraNet's subscribers configured their networks. For example, the SAC alleges that QuadraNet subscriber TorGuard instructs its end users to setup the BitTorrent client to use *TorGuard's* special proxy link (an IP address at a server controlled by TorGuard) to efficiently pirate content and even the SAC includes a screenshot to support this allegation. *See* SAC at ¶¶ 262, 398; *see also* Exhibit "6" [Doc. #148-7] (TorGuard describes use of its socks5 torrent proxy to protect the users BitTorrent Client application "like utorrent, bittorrent, deluge or vuze" to tunnel all your torrent traffic through a secure server). As discussed above, the traffic that goes through TorGuard's socks4 proxy is *not* encrypted. *See* Decl. of Culpepper at ¶ 14. Accordingly, in the case of TorGuard's users that used its torrent proxy, the pieces would be combined on *TorGuard's* special proxy link (at the server it leases from QuadraNet) and thus a complete copy would be on QuadraNet's server.

Moreover, if a QuadraNet subscriber used the server to store pirated copies of the Works and distribute copies from the IP address provided by QuadraNet similarly to how QuadraNet's CEO

describes how some of his customer use the service, QuadraNet would have a complete copy of the Work. Decl. of Mishan [Doc. #108-1] at ¶ 18 ("…may use our servers to host an online video game, other customers may store healthcare records…"). Plaintiffs reiterate that they do not yet know who QuadraNet's subscribers are and how they use the service. *See* Decl. of Culpepper at ¶ 12. Because QuadraNet publishes its own identification in the ARIN Whois records, rather than that of its subscribers, only QuadraNet possesses this information. *See* SAC at ¶ 329.

D.      *The Order erroneously states that Plaintiffs do not allege that the subscribers of QuadraNet are direct infringers.*

In rejecting Plaintiffs' vicarious infringement claim, the Court stated, "If Does 1-100 infringed on Plaintiffs' copyrights as Quadranet's subscribers and paid Quadranet directly, then Plaintiffs' claim that Quadranet benefitted directly from the infringing activity would be more persuasive." Order at 29, fn 17. Plaintiffs respectfully assert that this is exactly what Plaintiffs allege.

For example, Plaintiffs allege that "Defendants LiquidVPN, TorGuard and DOES 1-100 distributed and reproduced the constituent elements of Plaintiffs' copyright protected Works via networks under their control without authorization in violation of the Copyright Plaintiffs' exclusive right to reproduce and distribute the Works in copies, in violation of 17 U.S.C. §§ 106(1), 106(3)". SAC at ¶ 378. Plaintiffs particularly pointed out in their opposition that QuadraNet failed to even argue against this point. *See* Opposition [Doc. #117] at 29 ("However, Plaintiffs allege that Defendants receive a direct draw from their subscribers such as LiquidVPN's direct infringements, a point which Defendants fail to contest.")

Plaintiffs did not merely make this allegation in conclusory fashion. Rather, Plaintiffs alleged that "The LiquidVPN Defendants use IP addresses 23.226.133.19 and 23.226.133.20

provided by QuadraNet as the main server IP addresses for hosting their VPN network and pirating content," and "LiquidVPN used IP addresses 23.226.133.19 and 23.226.133.20 to distribute copies of Plaintiffs' Work." This allegation was backed up by the declaration of LiquidVPN's prior owner David Cox. *See* Decl. of Cox [Doc. #96-9] at ¶¶ 42-43; *see, e.g.,* Exhibit "D" [Doc. #96-13] ("nj3.getliquid.info" hosted at 23.226.133.19). Since these two IP addresses were used by LiquidVPN as their main server, any piracy done here was likely done by LiquidVPN rather than its end users. Further, Plaintiffs alleged that "LiquidVPN displays title art of Plaintiff Millennium Funding, Inc.'s movie *Survivor* on its website hosted on QuadraNet servers without authorization of Millennium Funding, Inc." SAC at ¶ 318, *see also* Id. at ¶228.

The Court also states in FN17 of the Order that "Plaintiffs appear to be unsure as to whether Does 1-100 are service providers or end users." However, as stated above, Plaintiffs cannot ascertain who DOES 1-100 are unless QuadraNet provides this information because QuadraNet publishes its own identity in the ARIN Whois records. The identification is in QuadraNet's possession. Accordingly, this case should be permitted to proceed with discovery so that Plaintiffs can obtain this information.

E.   *The Court's conclusions that Plaintiffs failed to plead contributory copyright infringement and vicarious infringement were based upon the above errors.*

The Court's conclusion that Plaintiffs failed to sufficiently allege that QuadraNet acted with culpable intent, and its dismissal of Count III (material contribution), was based upon the erroneous conclusion that all of QuadraNet's subscribers' transmissions were encrypted, and that no complete copy of the Works was ever on QuadraNet's servers. However, this conclusion was incorrect and premature. At least one of QuadraNet's subscribers (TorGuard) provides a proxy server so that their users operate their BitTorrent Client on QuadraNet's server unencrypted.

The Court's conclusion that Plaintiffs failed to sufficiently allege simple measures QuadraNet could take to stop further piracy that were not impermissibly broad, and its dismissal of Count IV (vicarious infringement) was based upon the erroneous conclusion that Plaintiffs alleged null-routing of all IP addresses (terminating the account) was the only simple measure. Rather, Plaintiffs alleged that QuadraNet could take the simple measure of null-routing the specific IP addresses where infringement was ongoing as a simple measure. Moreover, newly discovered evidence shows that QuadraNet could stop piracy by merely blocking access to the foreign piracy websites just like its competitor Sharktech does.

At the very least, the Order should be amended to dismiss the indirect infringement claims *without prejudice* to give Plaintiffs an opportunity to plead these specific facts in an amended complaint, or in a refiled complaint after Plaintiffs ascertain the subscriber identities and the network configurations and can allege that the transmissions of pirated copies are unencrypted and thus visible to QuadraNet, the complete pirated copies reside on servers of QuadraNet unencrypted when the end users set the proxy link IP address in their BitTorrent Client, and that QuadraNet can take further simple measures such as the website blocking measure adopted by QuadraNet's competitor Sharktech to stop further piracy. *See Carroll v. Carnival Corp.,* 955 F.3d 1260, 1269-70 (11th Cir. 2020) (evidence of industry standards is probative of the standard of care).

F.   *The Court's decision to exercise supplemental jurisdiction was based upon the error that the Parties have conducted extensive discovery.*

The Court states that "the Parties have conducted extensive discovery…" as one of its two reasons it decided to exercise supplemental jurisdiction over the state law claims against QuadraNet. Order at 32. However, not only is this incorrect, but neither Plaintiffs nor QuadraNet made this argument. The only discovery the Parties engaged in was a single Request for Production of

Documents (RPOD) Plaintiffs served on QuadraNet requesting the identifications for the subscribers at the IP addresses where Plaintiffs' have evidence of direct infringements. Plaintiffs served the first RPOD on QuadraNet on Sept. 24, 2021 and QuadraNet objected. *See* Notice of Hearing [Doc. #157]. Although the Parties resolved the discovery dispute (*see* Notice of Vacating of Hearing [Doc. #169]), the Court entered the Order dismissing QuadraNet before QuadraNet responded to the RPOD. The Parties engaged in no other depositions, interrogatories, or other discovery.

By coincidence, Plaintiffs served a second RPOD on Dec. 10, 2021 three days before this Court's order dismissing QuadraNet, but Plaintiffs immediately withdrew it after the Order. *See* Decl. of Culpepper at ¶¶ 7-13. Accordingly, the Courts conclusion that "the Parties have conducted extensive discovery…" was a patent misunderstanding of the Party's argument, a decision outside the adversarial issues presented to the Court by the Parties, and an error not of reasoning but of apprehension. Therefore, upon reconsideration, if the Court maintains dismissal of all the federal counts after reconsideration, the Court should still decline jurisdiction over the state law claims and dismiss them without prejudice. QuadraNet agrees and urged "because there are no remaining federal claims to adjudicate, this Court should dismiss Plaintiffs' state law claims (Counts VI through VIII) because "*Gibbs* strongly encourages or even requires dismissal of state claims." *Ingram*, 167 F. App'x at 108-09 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)." Mot. [Doc. #108] at 37.

## IV.  REQUEST FOR CLARIFICATION WHETHER THE ORDER IS A FINAL JUDGMENT

Fed R. Civ. P. 54(b) provides that in actions involving multiple claims or multiple parties, an order that finally disposes of fewer than all the claims, or disposes of the claims against fewer than all the parties, does not ordinarily terminate the action in the district court. Rule 54(b) provides, however, that such an order is appealable if the district court (1) directs entry of judgment

as to those claims or parties, and (2) expressly determines that there is no just reason for delay. Fed. R. Civ. P. 54(b); *Mullins v. Nickel Plate Mining Co.*, 691 F.2d 971, 973 (11th Cir. 1982). In the absence of a certification by the district court that meets the requirements of Rule 54(b), a partial disposition of a multiclaim or multiparty action "does not qualify as a final judgment [under § 1291] and is ordinarily an unappealable interlocutory order." *Mullins*, 691 F.2d at 973. Plaintiffs respectfully request that the Court clarify whether the Order is a final judgment.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its order pursuant to Rule 59(e) or 60(b), deny QuadraNet's motion to dismiss and allow the case to proceed to discovery so that Plaintiffs can ascertain who QuadraNet's subscribers are and how their networks are configured or in the alternative dismiss the claims without prejudice. Plaintiffs further request that upon reconsideration the Court eliminate the inclusion of the names of certain Plaintiffs that previously dismissed their claims against QuadraNet or never even made claims against QuadraNet. Plaintiffs further request that the Court clarify whether the Order is a final judgment.

DATED: Jan. 10, 2022                    Respectfully submitted,

/**s**/ *Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar No. 98220
joel.rothman@sriplaw.com
CRAIG A. WIRTH
Florida Bar Number: 125322
craig.wirth@sriplaw.com

**SRIPLAW**
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

and

> Kerry S. Culpepper
> *Admitted pro hac vice*
> **CULPEPPER IP, LLLC**
> 75-170 Hualalai Road
> Suite B204
> Kailua-Kona, HI  96740
> 808.464.4047 – Telephone
> kculpepper@culpepperip.com
> *Attorney for Plaintiffs*

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), counsel for the movant has conferred with counsel for QuadraNet regarding the Motion for Reconsideration requested herein. Counsel for QuadraNet stated he would oppose.

> *s/ Joel B. Rothman*
> JOEL B. ROTHMAN
> Florida Bar Number: 98220
> joel.rothman@sriplaw.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on January 10, 2022, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day on all those identified on the Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive Notices of Electronic Filing.

*s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com

## SERVICE LIST

Mr. Johnathan R. Woodard
Mr. John Cyril Malloy III
Mr. Oliver Alan Ruiz
Malloy & Malloy, PL
2800 SW 3rd Ave
Miami, FL 33129-2317
info@malloylaw.com
jwoodard@malloylaw.com
jcmalloy@malloylaw.com
oruiz@malloylaw.com
Attorneys for QuadraNet, Inc. and QuadraNet Enterprises, LLC

Mr. Bobby A. Ghajar
Cooley LLP
1333 Second Street
Suite 400
Santa Monica, CA 90401
bghajar@cooley.com
Attorneys for QuadraNet, Inc. and QuadraNet Enterprises, LLC

Mr. Adam Losey
Losey PLLC
1420 Edgewater Drive
Orlando, FL 32804
alosey@losey.law
Attorney for VPNetworks, LLC dba TorGuard