**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.:  1:21-cv-20862-BB**

MILLENNIUM FUNDING, INC., et al.,

           Plaintiffs,

v.

1701 MANAGEMENT, LLC DBA
LIQUIDVPN, et al.,

           Defendants.

_____

**PLAINTIFFS' OPPOSITION TO DEFENDANT VPNETWORKS, LLC D/B/A**
**<u>TORGUARD'S MOTION TO STAY</u>**

Plaintiffs MILLENNIUM FUNDING, INC., VOLTAGE HOLDINGS, LLC, AMBI

DISTRIBUTION CORP., AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC.,

MILLENNIUM FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA, INC.,

COLOSSAL MOVIE PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ FILM, LLC,

FW PRODUCTIONS, LLC, MILLENNIUM IP, INC., I AM WRATH PRODUCTION, INC.,

KILLING LINK DISTRIBUTION, LLC, BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS,

INC., LHF PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC.,

RUPTURE CAL, INC., MON, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP,

INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD

PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC,

DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE

PRODUCTIONS LLC, PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC,

HITMAN TWO PRODUCTIONS, INC., and SCREEN MEDIA VENTURES, LLC ("Plaintiffs"),

1
**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

file this opposition to the Motion to Stay [Doc. #184] ("Motion") of Defendant VPNetworks, LLC d/b/a TorGuard ("TorGuard").  For the reasons discussed below, TorGuard's motion should be denied.

## I.       INTRODUCTION

Plaintiffs filed the Second Amended Complaint ("SAC") [Doc. #96] on Aug. 17, 2021 seeking to stop the rampant piracy of their copyright protected motion pictures ("Works") brought on by Defendant TorGuard's promotion of its Virtual Private Network ("VPN") service for piracy, instructions to its customers how to use its VPN service for piracy, and advertisements that it destroys all evidence of its customer's piracy among other actions.[1]  TorGuard's customers use its VPN service for piracy and TorGuard destroys all evidence of its customer's piracy just as promised.

TorGuard, more than five months after waiving personal service on Aug. 18, 2021 [Doc. #102], more than three months after filing a motion to dismiss [Doc. #145] on Oct. 18, 2021, more than two months after noticing and participating in multiple hearings opposing discovery [Docs. ##141, 143, 147, 153], and receiving request for productions of documents without serving objections within the response deadlines as required by F.R.C.P. 34(b)(2), suddenly moves for a stay of discovery in a futile attempt to ride now dismissed Defendant QuadraNet's coattails.  As explained below, TorGuard's Motion should be denied because its pending motion to dismiss will likely be denied or at most granted with leave for Plaintiffs to amend.  Further, the documents requested by Plaintiffs will provide TorGuard with the very information it requested in its motion

---

[1] "If you don't have protective measures in place to secure your connection to the torrent cloud…The worst case scenario is…receive a subpoena from an attorney requesting your identity for a potential lawsuit….TorGuard offers…VPN service…protecting you from these risks.  Our private VPN…can keep you completely safe when you use a BitTorrent client...[W]e don't keep any logs…so there's no trail leading back to you…."  Exhibit "8" [Doc. #148-9].

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

for definite statement and prove TorGuard's extensive contacts with the Southern District of Florida and allow this case to proceed expeditiously.

## II.      APPLICABLE LEGAL STANDARD

Motions to stay discovery "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997). "In deciding whether to stay discovery pending resolution of a pending motion, the Court inevitably must balance the harm caused by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the needs for such discovery." *Holsapple v. Strong Indus. Inc*., Case No.: 2:12-cv-355-UA-SPC, 2012 U.S. Dist. LEXIS 128009 at \*3 (M.D. Fla. Sept. 10, 2012) (Chappell, M. J.) (*quoting Panola Land Buyers Ass'n v. Shulman*, 762 F.2d 1550 (11th Cir. 1985)).

"[D]iscovery stay motions are generally denied except where a specific showing of prejudice or burdensomeness is made." *Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV, 2014 U.S. Dist. LEXIS 84279, 2014 WL 2807617, at \*2 (S.D. Fla. June 20, 2014). The party moving for a stay of discovery has "the burden of showing good cause and reasonableness." *Feldman*, 176 F.R.D. at 652.

## III.      ARGUMENT

### A.  Defendant TorGuard has failed to meet its burden of showing prejudice.

"Ultimately, the proponent of the stay bears the burden of demonstrating its necessity, appropriateness, and reasonableness."  *Ray v. Spirit Airlines, Inc.*, No. 12-61528-CIV, 2012 U.S. Dist. LEXIS 160948, 2012 WL 5471793, at \*1 (S.D. Fla. Nov. 9, 2012).  Defendant TorGuard merely argues that being required to respond to the first and second requests for production of

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

documents ("RPOD1" and "RPOD2") while its motion to dismiss [Doc. #145] is outstanding would subject it to "unduly burdensome costs and expenses" (without any supporting declaration or other evidence) because the motion to dismiss could dispose of the entire case.  Motion at pg. 1. However, in the same motion to dismiss TorGuard also made an alternative motion for a more definite statement arguing that "Plaintiffs should be required to amend their SAC to…identify both the specific Plaintiffs alleging infringement by TorGuard and the *specific* Works TorGuard is alleged to have infringed (directly or otherwise), when each such infringement allegedly occurred…"  Motion to Dismiss at pg. 18.

The RPOD1 which TorGuard describes as "over 39,104 pages long and requires review of over 200,000 IP addresses" (Motion at pg. 3) is a list of all the notices of infringements sent to QuadraNet concerning confirmed infringements including the IP addresses, titles of the Works and dates.  *See* Exhibit "1" [Doc. #183-1] to Notice of Hearing [Doc. #183].  By identifying which of these IP addresses were assigned to it by QuadraNet, TorGuard will be provided *the exact information* it demands in its motion for more definite statement. As Plaintiffs have repeatedly stated in pleadings, QuadraNet does not publish the identifications of the subscribers such as TorGuard to whom it reassigns IP addresses.  *See* SAC at ¶¶114, 180, 329; Plaintiffs' Opposition to TorGuard's Motion to Dismiss [Doc. #148] at pg. 2 ("Defendant chooses host providers such as Digital Ocean and QuadraNet that do not publish reassigned Internet Protocol ("IP") addresses so it can conceal the IP addresses it uses and rightsholders cannot directly send it Notices of infringement").  However, TorGuard can easily respond to RPOD1 by providing Plaintiffs with the IP addresses allocated to it by QuadraNet.  TorGuard resists providing this information because it proves the vast scope of its piracy just as it tried to prevent one of its other host providers Digital Ocean from disclosing to Plaintiffs the IP addresses allocated to TorGuard and the records of

Digital Ocean forwarding similar notices of infringement to the email address TorGuard registered with Digital Ocean. *See* Order [Doc. #153]. TorGuard did not serve any objections on Plaintiff within the response deadline to RPOD1 concerning an undue burden. *See* Decl. of Culpepper at ¶4.

Not only does RPOD1 provide the exact information that TorGuard requested, but it also takes the same approach TorGuard proposed for determining which IP addresses were assigned to it concerning a third-party subpoena on Digital Ocean – giving it the "huge list" and asking TorGuard which IP addresses are its. *See* Decl. of Culpepper at ¶3.

```
17          THE COURT: So it just sounds to me like you are
18   talking from two points of view.  Plaintiff wants the bulk
19   assignments so they can compare that to their list of
20   infringement and tie that back to Digital Ocean and TorGuard,
21   and you're saying give to Digital Ocean their whole huge list
22   and then Digital Ocean is going to look and see if any of those
23   IP addresses are theirs?  That seems like you, the defendant,
24   are putting a burden on Digital Ocean who is not even
25   represented here.
```

TorGuard also argues in its motion to dismiss that the SAC should be dismissed for improper venue. Motion to Dismiss at pg. 18. RPOD2 requests, among other things, information pertaining to TorGuard's contacts with the Southern District of Florida. *See* Exhibit "2" [Doc. #183-2] to Notice of Hearing [Doc. #183] at ##16-20. The Court will likely allow this type of jurisdictional discovery before dismissing the SAC for improper venue. *See Eaton v. Dorchester Development, Inc*., 692 F.2d 727, 729 (11th Cir. 1982) (jurisdictional discovery is a "qualified right" "when a court's jurisdiction is genuinely in dispute."). Further, RPOD2 also requests

information concerning the other host providers in the US and EU used by Defendant and the IP addresses provided to it so it can once again give Defendant a complete picture of "specific Plaintiffs alleging infringement by TorGuard and the *specific* Works TorGuard is alleged to have infringed (directly or otherwise), when each such infringement allegedly occurred" as requested in its motion for alternative statement.  TorGuard did not serve any objections on Plaintiffs within the response deadline to RPOD2 concerning any undue burden.

*See* Decl. of Culpepper at ¶5.

TorGuard relies on cases flowing from *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) to support its Motion, but courts across the Eleventh Circuit have repeatedly and consistently held that this type of reliance on *Chudasama* to stay discovery pending the resolution on a motion to dismiss is "misplaced." *See e.g. Miller's Ale House, Inc. v. DCCM Rest. Grp., LLC*, Case No.: 6:15-cv-1109-Orl-22TBS, 2015 U.S. Dist. LEXIS 141119 at *4 (M.D. Fla. Oct. 16, 2015). *Koock v. Sugar & Felsenthal, LLP*, Case No.: 8:09-cv-609-T-17EAJ, 2009 U.S. Dist. LEXIS 81153 at *6 (M.D. Fla. Aug. 19, 2009) ("*Chudasama* does not establish the general rule that discovery should not proceed while a motion to dismiss is pending.").  In the contrary, Plaintiffs will be burdened if discovery is stayed pending resolution of TorGuard's motion to dismiss because they would not be able to provide TorGuard the exact information it requests in its motion for alternative statement or present evidence of TorGuard's jurisdictional contacts with this District.

**B.  A preliminary peek of TorGuard's Motion shows that is likely to be denied.**

Defendant TorGuard does not even make any arguments concerning the merits of its motion to dismiss.  Rather, it merely asserts that because it makes arguments similar to those made by QuadraNet that persuaded this Court, it is likely to succeed.  However, as discussed below,

there are numerous differences between: (i) the arguments made by QuadraNet that were accepted by the Court and those made by TorGuard in its motion to dismiss; and (ii) the allegations Plaintiffs make against QuadraNet in the SAC with those made against TorGuard.

1.      *The SAC is not a shotgun pleading.*

TorGuard asserts that the SAC asserts multiple counts against multiple Defendants without specifying which Defendant is responsible for which claim and is thus a shotgun pleading.  *See* Motion to Dismiss [Doc. #145] at pg. 18.  However, Count 1 (direct infringement) states the specific steps TorGuard takes to directly infringe Plaintiffs' Works.  *See, e.g.,* SAC at ¶378 ("Defendants LiquidVPN, TorGuard and DOES 1-100 distributed and reproduced the constituent elements of Plaintiffs' copyright protected Works…").  Count 2 states the specific steps TorGuard takes to induce infringement.  *See*, *e.g.,* Id. at ¶¶388-390 ("As instructed and encouraged by TorGuard, TorGuard's end users install and use the BitTorrent Client applications on their devices while assigned IP addresses by TorGuard to conceal their identities").  Count 3 also states the specific steps TorGuard takes to materially contribute to copyright infringement.  *See, e.g.,* Id. at ¶398 ("Not only has TorGuard failed to take reasonable steps to minimize the infringing capabilities of its service, TorGuard actively promotes its proxy service that can be installed directly in BitTorrent client applications to infringe Copyright protected Works").  Count 4 also states the specific steps TorGuard takes to vicariously infringe Plaintiffs' Works.  *See, e.g.,* Id. at ¶¶414-418 ("TorGuard has refused to take any meaningful action to prevent the widespread infringement by its end users. Indeed, the ability of end users to use TorGuard's so-called "Torrent VPN" to access piracy websites such as Pirate Bay…").  Even the paragraphs of the SAC incorporated by reference in the Counts clearly set forth which Defendant is responsible for the

conduct.  This point is so clear that TorGuard was able to detail in its motion to dismiss which allegations are attributable to LiquidVPN.  *See* Motion to Dismiss [Doc. #145] at 5.

Defendant asserts based on *Chiron Recovery Ctr., LLC v. United Healthcare Servs.*, No. 9:18-CV-81761, 2020 U.S. Dist. LEXIS 114353 (S.D. Fla. June 30, 2020) the blanket premise that multiple parties cannot be referred to in a single count.  *See* Motion to Dismiss [Doc. #145] at 4.  However, in *Chiron* each of the Plaintiffs' basis for relief against the Defendant was based upon a different insurance plan, thus the count failed to clarify how the Defendant breached specific fiduciary duties to specific Plaintiffs.  *See Chiron*, 2020 U.S. Dist. LEXIS 114353, at *18.  Moreover, there were serious questions in *Chiron* concerning whether the lead Plaintiff Chiron had the authority to pursue claims on behalf of the other Plaintiffs.  *See Id.*  None of the unique concerns of *Chiron* are present in this case.  Rather, Plaintiffs have included the copyright certificate numbers for their Works and alleged that TorGuard and its customers (end users) infringed the copyrights in their Works.   RPOD1 will further provide TorGuard with the exact QuadraNet IP addresses, Work titles and infringement dates.

Moreover, a pleading is not automatically rendered an impermissible shotgun pleading merely because a count refers to multiple defendants.  The Eleventh Circuit opinion of *Weiland v. Palm Beach Cty. Sheriff's Office* cited by *Chiron* describes the fourth type of shotgun pleading as "…the relatively rare sin of asserting multiple claims against multiple defendants *without specifying which of the defendants are responsible for which acts or omissions*, or which of the defendants the claim is brought against."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (emphasis added).  Accordingly, because all counts asserted against TorGuard in the SAC refer to it by name rather than collectively as "Defendants" and specify the

acts TorGuard are responsible for, a preliminary peek of Defendant's Motion to Dismiss shows that the SAC is not the fourth type of shotgun pleading as defined by *Weiland*.

In the Order [Doc. #173] granting QuadraNet's motion to dismiss, the Court expressly rejected QuadraNet's argument that referring to QuadraNet Enterprises, Inc. and QuadraNet, Inc. collectively as "QuadraNet" rendered the SAC an impermissible shotgun pleading. *See* Order at pgs. 19. However, the Court further stated that: (i) Count 7's incorporation by reference of Count 6 is unclear; and (ii) Count 10's incorporation of Count 9 and Count 12's incorporation of Count 11 renders the SAC an improper shotgun pleading. *See* Order [Doc. #173] at 20. However, TorGuard did not make these arguments in its motion to dismiss. Therefore, a preliminary peek of *Torguard's* motion would not lead to the conclusion that the SAC is a shotgun pleading.

Dismissed counts 6-7 were made only against QuadraNet. Accordingly, they are effectively no longer part of the SAC by Court order. Therefore, counts 6-7 should not be considered when determining whether the SAC is a shotgun pleading. Further, Plaintiffs respectfully disagree with the conclusion that a pleading is automatically rendered an impermissible shotgun merely because it incorporates a single prior count. Rather, as stated by this Court in the Order [Doc. #173], a shotgun pleading is "where each count adopts the allegations of *all preceding counts*". Order at 20. Claims for negligent and fraudulent misrepresentations are like siblings as both torts require a misrepresentation. *See, e.g., Cohen v. Corbitt*, 135 So.3d 527, 529 (Fla. 1st DCA 2014) (fraudulent misrepresentation); *U.S. Fire Ins. Co. v. ADT Sec. Servs., Inc*, 134 So.3d 477, 480 n.6 (Fla. 2d DCA 2013) (negligent misrepresentation). Count 7 merely incorporate by reference count 6 (a single count) to establish the misrepresentation and further described the who, what and when heightened requirements of fraud. Claim 7 does not adopt the allegations of all preceding counts.

Count 9 does not adopt the allegations of any prior counts.  Accordingly, Count 10's incorporation by reference of just count 9 does not automatically make the SAC a shotgun pleading because it did not adopt the allegations of *all preceding counts*.  Similarly, Count 11 (breach of contract) only adopts the allegations of <u>one</u> count (count 9).  Count 12 (unjust enrichment) adopts the allegations of Count 11 which adopts the allegations of claim 9.  However, Count 12 was voluntarily dismissed in Plaintiffs' Motion for Default Judgment against the LiquidVPN Defendants.  *See* Motion for Default Judgment [Doc. #125] at 19 ("Millennium and Voltage voluntarily withdraw their claim for unjust enrichment").  Accordingly, Count 12 should not be considered when determining whether the SAC is an impermissible shotgun pleading.

Moreover, the LiquidVPN Defendants (against whom Counts 9-12 are alleged) have not asserted that the Counts are confusing.  In *Weiland* the Eleventh Circuit stated that the "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323 (11th Cir. 2015).  *Weiland* considered as the important consideration in concluding that the pleading was not a shotgun pleading that it was not a situation where the burden of the opposing party to understand the factual allegations against them had materially increased.  *See Id.* at 1324.  Because the LiquidVPN defendants have not asserted that Count 12, or Counts 9-11 were confusing and burdensome to understand, this Court should not conclude that Counts 9-11 and dismissed Count 12 renders the SAC a shotgun pleading.

Finally, the Court expressly said Plaintiff could cure deficiencies related to the shotgun pleading in an amended complaint.  *See* Order at 39.  The Order incorrectly stated that Plaintiffs "were on notice of this fatal flaw through Quadranet's previous motion to dismiss…"  Id. at 21.

QuadraNet's previous motion to dismiss complained merely of "…Counts II through XII "re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs."" QuadraNet's First Motion to Dismiss [Doc. #83] at 19.  As argued above, the SAC does not include multiple counts that incorporate by reference the allegations of all prior counts.

2.    *The Order granting QuadraNet's Motion to Dismiss does not address Plaintiffs'*
*allegations of direct copyright infringement (Count 1) and intentional inducement (Count 2).*

Counts 1 and 2 were not asserted against QuadraNet.  In footnote 20 of the Order, the Court explicitly stated that it "reserves ruling on whether TorGuard is a direct infringer…"
Order [Doc. #173] at 31.  Regarding Count 1, TorGuard alleges that (1) "Plaintiffs do not allege the dates and times TorGuard is said to have infringed each specific Work nor do they allege a causal connection between TorGuard and each such alleged infringement".  Motion to Dismiss at pg. 6.   However, TorGuard acknowledges the impossibility of meeting this standard by complaining about the more than 200,000 IP addresses and tens of thousands of pages in RPOD1. A pleading that met TorGuard's standard of reciting all the dates and times would be more than 30,000 pages long.  Defendant also alleges that (2) "…there is no volitional conduct by TorGuard related to the alleged infringement of the Works."  Id.  However, the SAC sufficiently pleads volitional conduct such as Defendant deleting the evidence of the end users' infringements, providing a special proxy link for its end users along with instructions to set up their BitTorrent client to efficiently pirate content, and assisting its end users to access pirated content from notorious piracy sources such as The Pirate Bay.  *See* SAC at ¶¶154, 262.

Regarding Count 2, Plaintiffs have sufficiently alleged that TorGuard promotes its VPN services for piracy and given examples of clear expression or other affirmative steps taken to foster infringement such as its assistance to end users to access pirated content from notorious piracy

sources such as The Pirate Bay and promotions of the service for piracy.  *See* Id.; *e.g.,* Docs. ##148-4, 148-5.

Accordingly, a preliminary peek of the portion of Defendant's motion to dismiss shows that Counts 1 and 2 are not especially dubious claims where disposing of the case by motion to dismiss would avoid needless and extensive discovery.

3.     *The Order granting QuadraNet's Motion to Dismiss hints that Plaintiffs' vicarious infringement claims against Defendant TorGuard are adequately pled.*

The Court dismissed Plaintiffs' vicarious infringement claim against QuadraNet because: (a) QuadraNet did not profit directly from the infringing activity because it was paid by the VPN companies regardless of whether the end users engaged in infringing activities or legitimate activities; and (b) QuadraNet did not have the practical ability to police infringers with measures that are not imprecise or overbroad because QuadraNet could not terminate the account of the end users but only of the VPN companies.[2]  *See* Order at 30-31.  However, these conclusions do not apply to TorGuard because (a) it profits directly from the infringing activity of its end users which are its customers and (b) it has the practical ability to police infringers.  As alleged in the SAC, TorGuard can: log the activities of its pirating customers that use BitTorrent to pirate Plaintiffs' Works to identify the pirating customers and terminate their service; block BitTorrent ports; block access to notorious piracy websites; null-route the IP addresses of ongoing infringement and terminate the accounts of repeat pirating customers.  *See* SAC at ¶¶408-409.  Multiple VPN service competitors of Defendant have adopted these types of measures to prevent widescale piracy.  *See* Ernesto Van der Sar, "VPN Provider Agrees to Block Torrent Traffic and The Pirate Bay on U.S. Servers", Jan. 17, 2022,  TorrentFreak,  https://torrentfreak.com/vpn-provider-agrees-to-block-

---

2 As argued in Plaintiffs' motion for reconsideration [Doc. #180] at 4-8, Plaintiffs respectfully disagree with this conclusion because QuadraNet can null route an *individual IP address* associated with infringing activity.

torrent-traffic-and-the-pirate-bay-on-u-s-servers-220117/ [last accessed on Feb. 6, 2022] (VPN provider agrees to block BitTorrent traffic and notorious piracy websites); Ernesto Van der Sar, "VPN Service 'Agrees' to Block BitTorrent and Keep Logs to Settle Piracy Lawsuit (Updated)" Oct. 11, 2021, https://torrentfreak.com/vpn-service-will-block-bittorrent-and-keep-logs-to-settle-piracy-lawsuit-211011/ [last accessed on Feb. 6, 2022] (VPN provider agrees to log BitTorrent traffic and block access to notorious piracy websites); Andy Maxwell, "Anti-Censorship VPN Service Agrees to Block Major Pirate Sites", Dec. 12, 2020,   https://torrentfreak.com/anti-censorship-vpn-service-agrees-to-block-major-pirate-sites-201212/ [last accessed on Feb. 6, 2022] (VPN provider agrees to block access to numerous notorious piracy websites).  As the examples of simple measures Plaintiffs have set forth that can prevent piracy have been adopted by some of TorGuard's competitors, TorGuard cannot plausibly argue that they are not practical at this stage of the pleadings.  In the contrary, TorGuard refuses to adopt these measures because piracy is a significant portion of its business.  *See* Motion to Dismiss at pg. 16 (TorGuard states concerning blocking access to piracy sites that "it is not in the business of online censorship").

In the Order, the Court stated in a footnote that blocking BitTorrent ports is not a practical measure because BitTorrent is not illegal.  Order at p 31 (FN 19).  However, as discussed above, other VPN providers have adopted restrictions of BitTorrent to prevent piracy.  Further, even residential Internet Service Providers restrict peer-to-peer traffic.  *See, e.g.,* WOW! Network Management Policies at ¶1,   https://www.wowway.com/sites/default/files/2021-05/network-management-practices.pdf ("In some instances, the techniques that we use may affect...non-customers' ability to establish session connections within the network (such as peer-to-peer sessions)...")

The unique problem in this case is the end users' use of BitTorrent (for which 96 percent of the activity is infringing activity[3]) for piracy combined with Defendant's policy of deleting the end users' log records. If an end user believes that Defendant is preserving logs of its access, the end user would not use the VPN service for piracy via BitTorrent. Accordingly, the issue of whether blocking BitTorrent ports or ordering Defendant to at least preserve logs of end users using BitTorrent ports is imprecise, overbroad or not workable should be permitted to at least proceed to summary judgment so that Plaintiffs can present factual evidence such as expert testimony and the configuration of Defendant's network.

Accordingly, a preliminary peek of the portion of Defendant's motion to dismiss shows that Count 4 (vicarious infringement) is not an especially dubious claim where disposing of the case by motion to dismiss would avoid needless and extensive discovery.

4.      *The Order granting QuadraNet's Motion to Dismiss makes clear that Plaintiffs' material contribution claims against Defendant TorGuard are adequately pled.*

Defendant's entire argument against Plaintiffs' claim for material contribution is that Defendant's VPN service is capable of substantial noninfringing uses. *See* Motion to Dismiss [Doc. #145] at 14. However, the Order granting QuadraNet's motion to dismiss noted that "lack of substantial noninfringing uses is not a required element" for material contribution. Order at 23. Defendant further argues that "it is also predominantly used and marketed for such noninfringing use". Id. Not only is this argument outside of the pleading, but Defendant cites nothing in support of it.

---

3 *See* David Price, "NetNames Piracy Analysis: Sizing the Piracy Universe", September 2013, pg. 18, http://creativefuture.org/wp-content/uploads/2016/01/netnames-sizing_piracy_universe-FULLreport-sept2013.pdf [last accessed on Oct. 1, 2021] ("Of all unique visitors to bittorrent portals in January 2013, it is estimated that 96.28% sought infringing content during the month…")

In the Order granting QuadraNet's motion to dismiss, the Court noted that (1) because VPN companies encrypt their end users' online activity, QuadraNet was never aware of the end user' online activity. *See* Order at 26. However, as pointed out in Plaintiffs' Motion for Reconsideration, Defendant TorGuard does not always encrypt the transmission that go through its servers. *See* Decl. of Culpepper [Doc. #180-1] at ¶ 14 ("…the socks5/web proxys basically mask your IP, they don't encrypt your traffic"). Moreover, to the extent TorGuard's encryption of its end users' online activity prevents it from having real time knowledge of its customers' piracy, TorGuard cannot be rewarded for purposely disabling itself to do so. *See In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003) (A defendant who disables itself from doing anything to prevent infringement does not reasonably implement a repeat infringer policy.)

Nonetheless, Plaintiffs reiterate that TorGuard has knowledge of its end users' online infringing activity from the thousands of infringement notices that are forwarded to it from its host providers such as QuadraNet and Digital Ocean that provided it with specific knowledge of ongoing copyright infringement. For example, Plaintiffs' agent sent more than 5000 notices to each of the 10 IP addresses for QuadraNet. Aff. of Arheidt [Doc. #96-20] at ¶12. Further, documents provided by Digital Ocean show instances in which thousands of notices were sent to Defendant (to the email address Defendant provided to Digital Ocean) for the same IP address for years. *See* Decl. of Culpepper at ¶7. TorGuard attempts to get around this fact by arguing that it did not have knowledge because the notices were not sent to its DMCA agent. Reply Brief [Doc. #156] at 6-7. However, the notices were sent to the points of contacts TorGuard provided to Digital Ocean and QuadraNet. Further, it would not be feasible for Plaintiffs to send notices to TorGuard's DMCA agent because TorGuard does not update the public records to show the IP addresses allocated to it.

Moreover, as recognized by the Court, the correct standard for contributory liability requires allegations of either actual or constructive knowledge of the infringing conduct, i.e. that TorGuard "[k]now, or have reason to know," (Doc. #173 at 22 quoting *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987)). TorGuard had reason to know from the thousands of notices of ongoing infringement that were sent to it by its host providers that its end users were using its VPN service to pirate Plaintiffs' Work exactly as instructed.

Accordingly, a preliminary peek of the portion of Defendant's motion to dismiss shows that Count 3 (material contribution) is not an especially dubious claim where disposing of the case by motion to dismiss would avoid needless and extensive discovery.

**C. TorGuard fails to set forth good cause for amending the scheduling order.**

Implicitly recognizing that its motion to dismiss is likely to fail, TorGuard also argues that "were Plaintiffs' Complaint against TorGuard not to be dismissed, a new scheduling report would likely need to be submitted and a new pre-trial schedule would likely need to be set to account for both the time that has elapsed since these proceedings were initiated and the dismissal of two defendants and addition of a new defendant." Motion at pg. 11. TorGuard has set forth no legal basis supporting this assertion. TorGuard should not be rewarded for failing to diligently prepare its defense and participate in discovery.

**IV.     CONCLUSION**

Defendant TorGuard has failed to show prejudice or burdensomeness by permitting discovery to proceed pending resolution of its motion to dismiss. Further, a preliminary peek shows that its motion to dismiss will fail. Accordingly, TorGuard's Motion for Stay should be denied.

Dated:  February 8, 2022                    Respectfully submitted,


                                           /s/ *Joel B. Rothman*
                                           JOEL B. ROTHMAN
                                           Florida Bar No. 98220
                                           joel.rothman@sriplaw.com
                                           CRAIG A. WIRTH
                                           Florida Bar Number:  125322
                                           craig.wirth@sriplaw.com
                                           **SRIPLAW**
                                           21301 Powerline Road, Suite 100
                                           Boca Raton, FL 33433
                                           561.404.4350 – Telephone
                                           561.404.4353 – Facsimile

                                           and

                                           Kerry S. Culpepper
                                           *Admitted pro hac vice*
                                           **CULPEPPER IP, LLLC**
                                           75-170 Hualalai Road, Suite B204
                                           Kailua-Kona, HI  96740
                                           808.464.4047 – Telephone
                                           kculpepper@culpepperip.com
                                           *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on <u>February 8, 2022</u>, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all those identified on the Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive Notices of Electronic Filing.

*s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com

### SERVICE LIST

Mr. Johnathan R. Woodard
Mr. John Cyril Malloy III
Mr. Oliver Alan Ruiz
Malloy & Malloy, PL
2800 SW 3rd Ave
Miami, FL 33129-2317
info@malloylaw.com
jwoodard@malloylaw.com
jcmalloy@malloylaw.com
oruiz@malloylaw.com
Attorneys for QuadraNet, Inc. and QuadraNet
Enterprises, LLC

Mr. Bobby A. Ghajar
Cooley LLP
1333 Second Street
Suite 400
Santa Monica, CA 90401
bghajar@cooley.com
Attorneys for QuadraNet, Inc. and QuadraNet
Enterprises, LLC

Mr. Adam Losey
Losey PLLC
1420 Edgewater Drive
Orlando, FL 32804
alosey@losey.law
Attorney for VPNetworks, LLC dba
TorGuard

Richard J. Mockler

18
**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

MOCKLER LEINER LAW, P.A.
600 N. Willow Ave., Suite 101
Tampa, Florida 33606
Tel. (813) 331-5699
richard@mocklerlaw.com,
mocklerlaw@yahoo.com
Attorney for Charles Muszynski