UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.:  21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC., *et al.*

    Plaintiffs,

    vs.

1701 MANAGEMENT LLC, *et al*,

    Defendants.

_____/

**JOINT STATEMENT OF UNDISPUTED FACTS BETWEEN PLAINTIFFS AND DEFENDANT VPNETWORKS, LLC**

    Plaintiffs MILLENNIUM FUNDING, INC., VOLTAGE HOLDINGS, LLC, AMBI DISTRIBUTION CORP., AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC., MILLENNIUM FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA, INC., COLOSSAL MOVIE PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ FILM, LLC, FW PRODUCTIONS, LLC, MILLENNIUM IP, INC., I AM WRATH PRODUCTION, INC., KILLING LINK DISTRIBUTION, LLC, BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS, INC., LHF PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., RUPTURE CAL, INC., MON, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP, INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC, DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE PRODUCTIONS LLC, PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC and SCREEN MEDIA VENTURES, LLC ("Plaintiffs") and Defendant VPNETWORKS, LLC d/b/a TorGuard ("TorGuard") agree that the following facts are undisputed, and are provided associated

20-023DBa

with Court mandated production pursuant to the February 16, 2022 Order (Dkt. 190) which requires production on a rolling basis beginning February 16, 2022 (the "Discovery Order").

1. TorGuard has reviewed and produced documentation in compliance with the Discovery Order, including those showing that TorGuard leased servers and Internet Protocol ("IP") addresses from QuadraNet, Inc. and QuadraNet Enterprises, LLC ("QuadraNet") from June 28, 2012 until late 2021 when TorGuard notified Quadranet that it was terminating service. *See* Doc. #148-3.

2. TorGuard used some of these servers and associated IP addresses leased from QuadraNet in Miami, Los Angeles and Texas to operate SOCKS5 proxy servers for the use of its customers ("end users"). Exhibit "1" is an accurate reflection of how TorGuard's website torguard.net/network/socks5 appeared on March 2021 which promoted the SOCKS5 proxy servers and IP addresses.

3. The IP addresses TorGuard used for the SOCKS5 proxy servers and that were provided by QuadraNet included:173.254.222.146; 173.254.222.154; 173.254.222.162; 173.254.222.178; 98.143.158.50;173.44.37.106; 173.44.37.82; 173.44.37.114; 173.44.37.90;173.44.37.98; 96.44.144.122; 96.44.147.106; 96.44.147.42; 96.44.148.66; and 96.44.189.114 ("SOCKS5 IP addresses"). *See* Exhibit "1"

4. As TorGuard stated publicly on its website, traffic on the SOCKS5 proxy server is not encrypted. *See* Doc. #180-1 at ¶14.

5. TorGuard, like other VPN providers, instructed end users to configure their BitTorrrent Client with the settings for a SOCKS5 proxy server for optimum download speed. Accordingly, when an end user uses its BitTorrent Client to download and upload files including Plaintiffs' Works configured with the SOCKS5 proxy server, the traffic will flow through the SOCKS5 proxy

20-023DBa

server. *See* Services, https://torguard.net/knowledgebase.php?action=displayarticle&id=241 [last accessed on Feb. 25, 2022].



6. Because traffic on TorGuard's SOCKS5 proxy servers is not encrypted, to the best of TorGuard's knowledge, as a matter of computer science Quadranet could have used conventional network monitoring tools to capture data packets of the piracy and confirm the piracy in the Notices Plaintiffs sent to Quadranet.

7. Although the file copies are transmitted as pieces per the BitTorrent Protocol, as a matter of computer science conventional network monitoring tools such as deep packet inspection can be used to determine network traffic.

8. Plaintiffs' counsel has provided records showing that 97,640 Notices were sent to QuadraNet confirming piracy at the SOCKS5 IP addresses and that 47,219 Notices were sent to QuadraNet confirming piracy at other IP addresses assigned to TorGuard through November of 2021. These records were included in the excel sheet of approximately 250,000 hit dates of

20-023DBa

confirmed infringement that was sent to TorGuard in Plaintiff's first Request for Production of Documents ("RPOD1"), which TorGuard complied with in congruence with the Discovery Order. *See* Docs. ##183, 183-1 at pgs. 11-18, 184 at ¶7.

9. Plaintiffs' counsel has further provided records of over 98,500 instances of captured infringements at just the SOCKS5 IP address 96.44.144.122.

10. TorGuard and Plaintiffs agree that these records and notices in RPOD1 show that copies of these Works were distributed from the SOCKS5 IP address.

11. TorGuard and Plaintiffs agree that these records and the notices show that copies of all Plaintiffs' Works except *2047: Sights of Death* were distributed from the SOCKS5 IP addresses.

12. TorGuard has maintained a registered DMCA agent since at least 2018 in accordance with 17 U.S.C. §512(c)(2) whose contact information is publicly available on the website operated by the US Copyright Offices. *See* Docs. ##145-1 at ¶3; 148-2.  Our records indicate that Quadranet did not send any of these Notices to our registered DMCA agent, which has been confirmed by TorGuard's DMCA agent after a review of records. *See* Doc. #145-1 at ¶¶11-12.

13. TorGuard values intellectual property rights of others, as stated in TorGuard's publicly posted policies.  Had Quadranet sent these Notices to our DMCA agent, TorGuard's ordinary business practices would have been to immediately take steps to stop further piracy.

14. Quadranet never took any disciplinary actions against TorGuard in response to these Notices. Indeed, when TorGuard notified Quadranet that it was terminating service, Quadranet tried to persuade TorGuard to continue service by offering different terms.

15. TorGuard has maintained an account with the Association of Registered Internet Numbers ("ARIN") under the name VPNetworks LLC.  TorGuard would have cooperated with Quadranet to update the ARIN records to show that the IP addresses had been reassigned to TorGuard had it

been requested. After discussions with Plaintiffs, TorGuard now understands that Plaintiffs did not send the Notices directly to TorGuard's DMCA agent because ARIN's public records only showed that Quadranet was the registrant for the SOCKS5 IP addresses.

16. Based upon TorGuard's experience and knowledge, it is common practice in the industry for a host provider to null route an IP address of a subscriber even if the subscriber is a VPN provider where it has received multiple Notices of infringement such as those sent by Plaintiffs and no action was taken by the subscriber. If Quadranet had null routed one of the IP addresses assigned to TorGuard where Plaintiffs' sent Notices or at least forwarded the notices to TorGuard's DMCA agent, TorGuard would have taken immediate steps to stop further piracy such as suspending users and adopting a firewall to filter out BitTorrent traffic as it has now begun to do.

17. TorGuard also used some of these servers and IP addresses to offer dedicated VPN IP addresses to end users. A dedicated IP address is "static" rather than "dynamic" so it would not change during the life of the end user's service.

18. If Quadranet had null-routed one of the dedicated IP addresses of an end user, this action would not have interfered with the use of the service by other end users.

DATED: March 2, 2022

Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com
**SRIPLAW**
21301 Powerline Road
Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile
*Attorney for Plaintiffs*

/s/ Adam C. Losey
Adam C. Losey, Esq.
Florida Bar No. 69658
*Counsel for Defendant VPNETWORKS, LLC d/b/a TORGUARD*

20-023DBa

-and-

CULPEPPER IP, LLLC
Kerry S. Culpepper, *pro hac vice*
Hawaii Bar No. 9837
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:     (808) 464-4047
kculpepper@culpepperip.com
*Attorney for Plaintiffs*