**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
CASE NO.: 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC. *et. al*,

    Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a LIQUIDPVN, *et. al*,

    Defendants.

_____/

**QUADRANET, INC.'S AND QUADRANET ENTERPRISES, LLC'S
MOTION TO STRIKE PLAINTIFFS' REPLY AND ACCOMPANYING
DECLARATIONS IN SUPPORT OF PLAINTIFFS' MOTION FOR
<u>RECONSIDERATION OF THE DISMISSAL ORDER [D.E. 202]</u>**

Quadranet, Inc. and Quadranet Enterprises, LLC (collectively "Quadranet"), pursuant to S.D. Fla. L.R. 7.1(c), respectfully move the Court to strike the Plaintiffs' Reply in Support of their Motion for Reconsideration [D.E. 202], including the new declarations attached thereto [D.E. 202-1, 202-2, 202-3] (collectively Plaintiffs' "Reply"). That Reply is another exercise in vexatiousness, and at least a "third bite" at the apple, in contravention of the Local Rules and law governing reconsideration motions. In support, Quadranet states as follows.

## PRELIMINARY STATEMENT

On December 13, 2021, and after Plaintiffs had already been given multiple chances to amend their pleading – including after Quadranet filed a motion to dismiss – this Court entered a lengthy order granting Quadranet's Motion to Dismiss the Second Amended Complaint (the "Order of Dismissal"). [D.E. 173]. The Order of Dismissal decided correctly that Plaintiffs' Second Amended Complaint ("SAC") constituted an impermissible shotgun pleading, and therefore, "[g]iven the Eleventh Circuit's holding that district courts are to dismiss shotgun pleadings as 'fatally defective,' *B.L.E.*, 335 F. App'x at 963, Plaintiffs' failure is dispositive." [D.E. 173, p. 20]. The Order of Dismissal also analyzed how Plaintiffs failed to state a claim upon which relief may be granted, and appropriately dismissed the claims against Quadranet with prejudice.[1]

On January 10, 2022, Plaintiffs sought a "re-do" through a Motion for Reconsideration of the Court's Order of Dismissal. [D.E. 180]. Significantly, that motion did **not** challenge, dispute, or otherwise seek reconsideration of this Court's ruling that the SAC constituted an **impermissible shotgun pleading**, requiring dismissal under Eleventh Circuit precedent. On that basis alone, the Order of Dismissal should not be disturbed. Nonetheless, Quadranet responded to the Motion for Reconsideration (the "Opposition"), explaining why Plaintiffs' arguments failed to meet the standard for reconsideration, were improper "do-overs," and were otherwise unavailing or impermissible. [D.E. 189, p. 6-13].

---

[1] The Order of Dismissal was also decided correctly because, in finding that Plaintiffs had failed to state a claim, it recognized that Quadranet was far removed from the allegedly infringing activity. Quadranet simply has, as part of its routine business operations for the past two decades, merely leased dedicated computers which operate as servers. Quadranet's many subscribers install and maintain their own software on Quadranet's computers and, much like a power company is responsible for ensuring that electricity stays on, Quadranet is only responsible for ensuring that the servers stay connected to the internet. Aside from providing technical support pertaining to hardware issues, power supply, and internet connection to the servers, Quadranet has no involvement with the software that its lessees install on the servers, and similarly has no direct access to the software. Succinctly stated, Quadranet provides basic internet infrastructure services only.

On March 4, 2022, Plaintiff filed a reply in support of their Motion. This Motion to Strike addresses that improper Reply, which was filed in direct violation of Local Rule 7.1(c). As Quadranet pointed out in its Opposition [D.E. 189], Plaintiffs' Reconsideration Motion merely repackaged all of the assertions that they previously made in response to Quadranet's motion to dismiss, all of which were rejected by this Court. Unwilling to adhere to the fundamental rule that "[m]otions to reconsider are not platforms to relitigate arguments previously considered and rejected,"[2] and following Quadranet's opposition memorandum demonstrating the futility of the Plaintiffs' request for reconsideration [D.E. 189], Plaintiffs turned to an "everything-but-the-kitchen-sink" approach in their Reply. Plaintiffs simply do not care whether they violate the Local Rules, or whether they adhere to the limiting circumstances justifying a motion for reconsideration. Rather, through their lengthy Reply, Plaintiffs offer up new and alternative theories as to what they "believed" Quadranet could have done, what "might" have happened, and whether Quadranet "may have" had the personnel to monitor various data.

To illustrate, Plaintiffs' Motion for Reconsideration – in which Plaintiffs were required to show clear error or *legally permissible* "new evidence" – was barely fourteen (14) pages. [D.E. 180]. Plaintiffs also attached a four (4) page declaration with a few screenshots from an irrelevant website [D.E. 180-1], and a three (3) page stipulation of dismissal from an unrelated lawsuit brought in Colorado [D.E. 180-2]. Plaintiff's Reconsideration Motion (including all exhibits) amounted to twenty-one (21) pages of material. Quadranet responded in full to that motion.

By contrast, Plaintiffs' Reply (including all exhibits) amounts to **ninety-three (93) pages of material**, **nearly four times (4x)** the amount of Plaintiffs' opening Motion for Reconsideration.[3] Those facts alone should tell this Court all that it needs to know. Although Quadranet disputes Plaintiffs' new arguments, Quadranet declines to participate in Plaintiffs' procedurally improper tactic to re-litigate once again what was already decided before, and help themselves to yet another do-over – this time in the posture of a reply to a reconsideration motion. Instead, Quadranet limits this Motion to Strike to what ***is*** procedurally appropriate under the Local Rules – rules that Plaintiffs' Reply refused to follow – and respectfully requests that the Court strike the Reply for violation of Local Rule 7.1(c), as it is not limited to the rebuttal of matters addressed in Quadranet's opposition memorandum [D.E. 189].

---

[2] *Barsoum v. United States*, 2017 U.S. Dist. LEXIS 229370, at *5-6 (M.D. Fla. Jan. 12, 2017).
[3] The Reply is comprised of ten (10) pages of briefing, and ***three (3)*** new declarations totaling eighty-three (83) pages in length.

**MEMORANDUM OF LAW**

**I. Plaintiffs' Reply Should be Stricken Pursuant to Local Rule 7.1(c).**

Pursuant to S.D. Florida Local Rule 7.1(c), a movant may serve a reply memorandum in further support of its motion, provided that such reply is "strictly limited to rebuttal of matters raised in the memorandum in opposition without re-argument of matters covered in the movant's initial memorandum of law." As the Eleventh Circuit has repeatedly "admonished, 'arguments raised for the first time in a reply brief are not properly before a reviewing court.'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (citation omitted). "Judges in this district, therefore, have repeatedly rejected attempts by parties to raise new arguments in reply memoranda." *Willis v. DHL Glob. Customer Sols. (USA)*, 2011 U.S. Dist. LEXIS 116516, at *9 (S.D. Fla. Oct. 7, 2011); *see also Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) ("it is improper for Defendant to raise this new argument in its Reply brief, the argument will not be considered."); *Giglio Sub s.n.c. v. Carnival Corp.*, 2012 U.S. Dist. LEXIS 144140, at *7 (S.D. Fla. Sep. 25, 2012) ("Bringing up new facts in a reply brief is also improper if no good reason exists for why the party could not have introduced the facts in its original motion.");

Plaintiffs would have the Court excuse their decision to submit an 83-page reply – which includes three (3) previously unfiled declarations – by claiming that Plaintiffs were "rebutting" arguments made by Quadranet in its opposition memorandum. [D.E. 189]. However, Quadranet's opposition memorandum [D.E. 189] did not, for example, attack any allegations or assertions made by David Cox or "Daniel Arheidt" (or his alias), and in fact neither individual even signed an affidavit in support of Plaintiffs' Motion for Reconsideration. There was nothing for Plaintiffs to "rebut" in this regard, much less in the context of a reconsideration motion. Nevertheless, in their Reply, Plaintiffs submitted 35-pages of new material in the form of the Cox and Arheidt Declarations [D.E. 202-1, 202-2], trying another tact after Quadranet again exposed the impropriety of its arguments. This tactic clearly runs afoul of the prohibitions in Local Rule 7.1(c).

These declarations, as well as the Culpepper Declaration at D.E. 202-3, should be stricken. The law requires that in seeking reconsideration of the Order of Dismissal based upon "new evidence," the "'movant must show either that the evidence is newly discovered or, if the evidence were available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence.' *Chery v. Bowman*, 901 F.2d 1053, n.6 (11th Cir. 1990). [Plaintiffs have] not met this standard." *Barsoum v. United States*, 2017 U.S. Dist. LEXIS 229370, at *3-4 (M.D. Fla. Jan. 12, 2017) (brackets added); *see also Carruega v. Steve's Painting, Inc.*, 2017 U.S. Dist.

3.

LEXIS 124535, at *4 (M.D. Fla. Aug. 7, 2017) (defendants, "as movants for reconsideration here, bear the burden to show that "the evidence was not available during the pendency of the motion [to compel]._") (brackets in original). Neither the Motion for Reconsideration nor the Reply ever once even attempts to excuse Plaintiffs' ambush of "evidence," and failed to prove that these submissions were somehow "newly discovered." They were not, and would not have been appropriate for inclusion in an opening motion for reconsideration, **much less for the first time on a reconsideration reply.**

It is irrelevant that Plaintiffs might argue that the evidence falls within the scope of some argument that Quadranet rebutted in its Opposition [D.E. 189]. Instead, this Court can (and should) find that it is inappropriate to consider any "new evidence" that does not satisfy the standards for reconsideration, *i.e.*, evidence that was not available during the pendency of Quadranet's underlying Motion to Dismiss.

1. **The "Second Affidavit of David Cox" was not Introduced in Plaintiffs' Motion for Reconsideration, and Should be Stricken Because it Improperly Attempts to Inject New Arguments in Plaintiffs' Ongoing "Third Bite at the Apple."**

Even though it would have been improper to do so on a request for reconsideration, Plaintiffs' Motion for Reconsideration [D.E. 180] did not attach a new affidavit by an individual named David Cox. In turn, Quadranet's Opposition [D.E. 189] did not address any new affidavit or arguments made by David Cox. Incredulously though, in their Reply, Plaintiffs attached a **twenty-eight (28) page** declaration (including exhibits) by David Cox [D.E. 202-2], a hired individual that Plaintiffs "compensated" for his statements within the declaration. [D.E. 202-2, ¶3]. As an initial matter, the Cox Declaration "constitutes new evidence, available when plaintiffs filed the principal motion [for reconsideration], raised in the reply for the first time." *TCC Air Servs. v. Schlesinger*, 2009 U.S. Dist. LEXIS 21010, at *19 (S.D. Fla. Mar. 5, 2009) (brackets added). As in *TCC Air*, this "new evidence [should] not be considered" (*id.*). In sum, the Court cannot review a reconsideration reply declaration to conclude that it somehow erred in the Order of Dismissal.

Beyond that procedural bar, Quadranet observes that the Cox Declaration contains many technological errors, misleading assertions, qualifiers, and hypotheses as to what Quadranet "could have done." *See, e.g.* [D.E. 202-2, "I *do not believe* that Quadranet did not know about the piracy BitTorrent traffic going through these proxy servers that it leased to its subscribers because it *likely* has a team that is constantly monitoring the data."] (emphasis added). All of this is a belated red herring. Regardless what Mr. Cox "believes" or what is "likely" to have (or not have) taken place, the

4.

Cox Declaration is entirely new and advances all sorts of novel arguments and contentions about Quadranet. Plaintiffs' Reply even uses the Cox Declaration to argue that "LiquidVPN was 'kicked off' servers of other host providers multiple times because of excessive notices while [Cox] owned it." [D.E. 202, p. 3, fn. 1]. These types of arguments are irrelevant, untimely, and entirely prejudicial – Plaintiffs cannot continue to raise new lines of attack in a reply to a request for reconsideration. Again, Quadranet's Opposition [D.E. 189] never once even mentioned Mr. Cox, nor did it call into question any of Mr. Cox's unfounded (and paid for) theories. Plaintiffs' use of the Cox Declaration in their Reply is a flagrant violation of Local Rule 7.1 and should be stricken.

2. **The "Affidavit of Daniel Arheidt" was not Introduced in Plaintiffs' Motion for Reconsideration, and Should be Stricken Because it Improperly Attempts to Inject New Arguments in Plaintiffs' Ongoing "Third Bite at the Apple."**

Plaintiffs' Reply improperly attachs a purported declaration from an individual allegedly located in Germany, who makes various bogus claims speculating as to what Quadranet "could have" done. *See, e.g.* [D.E. 202-1, opining that "Quadrant *could have* searched for the unique hash numbers," "Quadranet *could have* obtained the torrent file," or "Quadranet *could have* monitored the IP address"). For similar reasons outlined above, the Arheidt Declaration should either be stricken or receive no consideration because the Plaintiffs failed to carry their burden in showing that this was somehow "newly discovered evidence." *Chery v. Bowman*, 901 F.2d 1053, n.6 (11th Cir. 1990).

Next, and leaving aside the disputed issues within the Arheidt Declaration – as well as the obvious fact that the affiant does not work for Quadranet and is no position to speculate as to what Quadranet "could or could not" have done, or whether those hypotheticals are legally relevant – these opinions were not raised in Plaintiffs' Opposition to the Motion to Dismiss **or** their Motion for Reconsideration. By including them now in Plaintiffs' Reply, Plaintiffs attempt to inject new arguments and "have the last word" on matters that Quadranet did not have the opportunity to respond to in its Opposition. [D.E. 189].

Finally, it is worth calling at least some attention to the fact that one U.S. District Judge in the Western District of Washington expressed troubling concerns about "Mr. Arheidt" when he submitted a similar type of declaration on behalf of "MaverickEye" in one of the many copyright troll cases filed across the country:

> Nowhere in Arheidt's declarations does he indicate that either he or MaverickEye is licensed in Washington to conduct private investigation work. See RCW 18.165.150 (performing the functions of a private investigator without a license is a gross misdemeanor); see also RCW 18.165.010(12)(e) (defining a "private investigator agency" to include a person or entity that is in the business of "detecting, discovering,

5.

> or revealing . . . [e]vidence to be used before a court"). Plaintiff's counsel has apparently been aware since October 2016, when he received a letter concerning *LHF Productions, Inc. v. Collins*, that Arheidt might be committing a crime by engaging in unlicensed surveillance of Washington citizens, but he did not disclose this fact to the Court or offer any analysis for why such conduct is not prohibited by RCW 18.165.150. Plaintiff's counsel's lack of candor was a serious breach of his ethical duties…
>
> The Court has recently become aware that Arheidt is the latest in a series of German declarants (Darren M. Griffin, Daniel Macek, Daniel Susac, Tobias Fieser, Michael Patzer) who might be aliases or even fictitious. See Lynch Decls. (docket nos. 81 & 120), *Elf-Man, LLC v. Lamberson*, E.D. Wash. Case No. 2:13-cv-395-TOR; Clay Decl. (docket no. 65-1), *Clear Skies Nevada, LLC v. Anderson*, N.D. Ill. Case No. 1:15-cv-6708; see also Reply, *Leaverton v. Killer Joe Nevada, L.L.C.*, 8th Cir. Case No. 14-3274, 2015 WL 636262. Plaintiff will not be permitted to rely on Arheidt's declarations or underlying data without explaining to the Court's satisfaction Arheidt's relationship to the above-listed declarants and producing proof beyond a reasonable doubt of Arheidt's existence.

*See* Exhibit 1, p. 3. Plaintiffs and their counsel (Kerry Culpepper) have used a "Mr. Arheidt declaration" in similar types of copyright troll cases. *See, e.g.* Exhibit 2. Ultimately, however, there is no need though for this Court to grapple with such issues, because in the final analysis, the Order of Dismissal was correctly decided in all respects. And because the Arheidt Declaration is improper and should be stricken under Local Rule 7.1(c), it is not necessary to adjudicate: (a) whether Mr. Arheidt is a real person; (b) whether he has connections, affiliations, and financial interests aligned with the Plaintiffs and/or their counsel; and (c) whether his "private investigative work" of U.S. citizens, allegedly conducted in Germany, runs afoul of any state or federal law. It is similarly unnecessary to indulge Plaintiffs' smoke and mirror attempt to drag Quadranet (and the Court) into a side show about what a company like Quadranet – a company without any ties to the VPN provider clients accused of infringement – might have done to somehow watch BitTorrent packets that, when assembled, allegedly infringe. What *is* important, however, is that the Arheidt Declaration clearly violates Local Rule 7.1(c), and should be stricken in all respects.

3. **The Declaration of Kerry Culpepper [D.E. 202-3] was not Introduced in Plaintiffs' Motion for Reconsideration, and Should be Stricken Because it Improperly Attempts to Inject New Arguments in Plaintiffs' Ongoing "Third Bite at the Apple."**

Plaintiffs' Reply also attached the declaration of Kerry Culpepper [D.E. 202-3], which contains many new arguments and claims not previously raised in Plaintiffs' Motion for Reconsideration. For example, Mr. Culpepper cites to various "articles discussing website blocking," which Mr. Culpepper admits were "last accessed" on February 26 and February 27, 2022 [D.E. 202-3, ¶6]; since Quadranet's opposition memorandum was filed prior to that time (*i.e.* on February 15, 2022), Quadranet never had

the opportunity to address or otherwise refute those articles. These articles were published *years ago*, so there is no reason why – if Plaintiffs truly believed them to be of any value – Plaintiffs could not have attached or otherwise discussed them in opposition to Quadranet's motion to dismiss, or even in Plaintiffs' opening Motion for Reconsideration. Given their publication date, Plaintiffs cannot (and do not) seriously argue that these articles were "newly discovered." Notwithstanding that these internet articles are hearsay, discuss purported rulings from *non-U.S.* courts, and have no value relative to the Order of Dismissal, it was prejudicial for Plaintiffs (through the Culpepper Declaration) to attach new articles to the Reply which were not previously raised or otherwise introduced.

The Culpepper Declaration also relies upon and cites to a "Joint Statement of Facts" that Plaintiffs and TorGuard papered up together as part of Plaintiffs' "confidential settlement agreement" with TorGuard [D.E. 202-3, ¶3]. That filing was not advanced in Plaintiffs' Motion for Reconsideration, and therefore Quadranet never had the opportunity to rebut those averments in its opposition memorandum. Adding to the prejudice, and even though this Court entered an order approving the stipulation of dismissal "as to Plaintiffs' and VPNetworks, LLC [TorGuard] only," and **denying as moot** the "Joint Statement of Facts" [D.E. 201, p. 2], that order did not stop the Plaintiffs from including that filing into their Reply, as though it carried any weight, relevance, or significance. *See Book v. Mendoza*, 2012 U.S. Dist. LEXIS 7402, at *9 n.3 (D. Conn. Jan. 23, 2012) (defining "moot" as "having no practical significance") (*citing* Black's Law Dictionary (9th ed. 2009)).

As yet another example, the Culpepper Declaration cites to and attaches a "joint stipulation" from a separate lawsuit styled *Killing Link Distribution, LLC v. Sophidea, Inc.*, 20-cv-3813 in the Northern District of California [D.E. 202-3, ¶7]; but as shown in "Exhibit G" to the Culpepper Declaration (*i.e.* the joint stipulation), that document was executed **over a year ago** on December 9, 2020 [D.E. 202-3, p. 57]. Even though it is irrelevant to this action, and regardless of the fact that this December 9, 2020 joint stipulation is not "newly discovered evidence," if it was relevant (it is not), Plaintiffs *could have* attached and discussed this "joint stipulation" in their opposition to Quadranet's motion to dismiss, or even in Plaintiffs' Motion for Reconsideration. Plaintiffs failed to do so, and therefore they cannot use a reply memorandum to inject new documents and arguments not previously raised.

Plaintiffs' reckless disregard of the rules and the posture of this case, and resulting prejudice to Quadranet, continue throughout the Culpepper Declaration. For example, the Culpepper Declaration admits that Plaintiffs do not "know all of Quadranet's subscribers," but then proceeds to name several purported VPN providers such as "IP Vanish VPN, Cyberghost VPN and NordVPN." [D.E. 202-3, ¶7]. Based on speculation, Mr. Culpepper – counsel for Plaintiffs and a part owner of

one of the Plaintiffs – muses that "*if* any of these VPN providers used Quadranet for their unencrypted proxy servers, their traffic would also be visible to Quadranet." *Id.* In addition to being pure guesswork, this assertion is an entirely new proposition that was never raised in Plaintiffs' Motion for Reconsideration. Again, it is improper.

Also not contained, addressed, or otherwise argued in Plaintiffs' Motion for Reconsideration – or in Quadranet's Opposition memorandum – was any reference to "VPN Seedboxes." *See generally* [D.E. 180; 189]. Yet, in violation of Local Rule 7.1(c), the Culpepper Declaration advances a paragraph devoted to a "seedbox," a case discussing a "seedbox," and attaching an internet article which was **not** included or otherwise discussed in Plaintiffs' Motion for Reconsideration (even though it was available at the time Plaintiffs sought reconsideration of the Dismissal Order).

Paragraphs 18 through 22 of the Culpepper Declaration also contain several screenshots of internet "forums" displaying conversations between unknown users such as "Vanilla Gorilla" and "JustCuz81" on the one hand, and unnamed commentators/moderators on the other hand. It is truly perplexing how Plaintiffs believe that commentary on an internet chat forum from someone who identifies themselves as "Vanilla Gorilla" has any serious value or credibility. In addition to the fact that these screengrabs are hearsay and lack authenticity, they are also unreliable, meaningless, and show nothing. These screengrabs were not provided or otherwise included in Plaintiffs' opening Motion for Reconsideration, and therefore fall well outside of what is permitted in a reply memorandum under Local Rule 7.1(c).

**4. The Newly Cited *Unicolors* Decision is Inapplicable and Misapplied by Plaintiffs.**

On page three (3) of their Reply, Plaintiffs cite to the opinion from *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 211 L.Ed.2d 586, 589 (February 24, 2022). As an initial matter, this opinion had not yet been issued at the time of Plaintiffs' Motion for Reconsideration, and therefore neither Plaintiffs nor Quadranet addressed it. But *Unicolors* does not "rebut" anything that Quadranet argued in its opposition memorandum [D.E. 189], and for that reason alone, and it should receive no consideration in Reply.

Regardless, Quadranet is compelled to point out Plaintiffs' misapprehension of *Unicolors*. That case has nothing to do with a copyright infringement analysis (either direct or vicarious), did not involve data centers, internet service providers ("ISP's), or any other issues that are even remotely tangential to those in the instant case. Rather, the seminal issue is *Unicolors* was whether the plaintiff could bring suit after, as the defendant contended, the plaintiff had "knowingly included inaccurate information on its registration application, rendering its copyright registration invalid." *Id.* at 588. On

8.

appeal, "the Ninth Circuit determined that it did not matter whether [plaintiff] was aware that it had failed to satisfy the single unit of publication requirement, because the safe harbor excuses only good-faith mistakes of fact, not law. [Plaintiff] had known the relevant facts, so its knowledge of the law (or lack thereof) was irrelevant." *Id.* at 589. The Supreme Court vacated the lower court's ruling, holding that a "lack of either factual or legal knowledge can excuse an inaccuracy in a copyright registration." *Id.* None of the issues from *Unicolors* are before this Court, as Quadranet never argued that Plaintiffs' alleged copyright registrations are invalid (as the defendant did in *Unicolors*).

At the end of the day, this is yet another example of Plaintiffs twisting facts and misapplying the law in their "kitchen-sink" approach to seeking reconsideration of this Court's Order of Dismissal. Plaintiffs' Reply should be stricken on this basis as well.

## Conclusion

A motion for reconsideration seeks "an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Fernandez v. United States*, No. 19-cv-24073-BLOOM/Louis, 2021 U.S. Dist. LEXIS 10159, at *4 (S.D. Fla. Jan. 20, 2021) (*citing Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). As the movants seeking reconsideration of the Order of Dismissal [D.E. 173], Plaintiffs failed "to establish the extraordinary circumstances supporting reconsideration." *Id.* *4-5. There has been no intervening change in controlling law, and Plaintiffs failed to demonstrate the need to correct any clear error or manifest injustice.

In their opening Motion for Reconsideration [D.E. 180], Plaintiffs were prohibited from introducing any "new evidence" *unless* Plaintiffs could prove that such evidence was "newly discovered or, if the evidence w[as] available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence." *Chery v. Bowman*, 901 F.2d 1053, n.6 (11th Cir. 1990). As demonstrated in Quadranet's opposition memorandum [D.E. 189], **Plaintiffs did not even address that burden, much less carry it.** The Reply at issue grossly repeated this error, as none of the Plaintiffs' arguments or the accompanying declarations [D.E. 202-1, 202-2, 202-3] raised any "new evidence" that is *legally permissible* to consider under a Rule 59 or Rule 60 standard of review. Beyond that, the Reply (and its attachments) run contrary to Local Rule 7.1(c), and should therefore be stricken because they were not "strictly limited to rebuttal of matters raised in [Quadranet's] memorandum in opposition without re-argument of matters covered in the movant's initial memorandum of law." *Local Rule 7.1(c)*.

Based upon the foregoing arguments and legal authorities, Quadranet respectfully requests that the Reply be stricken in all respects, or at least disregarded, and that Plaintiffs' Motion for

Reconsideration be denied.

## CERTIFICATE OF GOOD FAITH CONFERENCE

  Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for the movant has made reasonable efforts to confer with the Plaintiffs regarding the relief sought herein, and Plaintiffs are opposed to this Motion to Strike.

                       Respectfully submitted,

Dated:  March 17, 2022          Jonathan Woodard
                    John Cyril Malloy, III
                    Florida Bar No. 964,220
                    jcmalloy@malloylaw.com
                    Peter A. Matos
                    Florida Bar No. 992,879
                    pmatos@malloylaw.com
                    Oliver Alan Ruiz
                    Florida Bar No. 524,786
                    oruiz@malloylaw.com
                    Jonathan R. Woodard
                    Florida Bar No. 096,553
                    jwoodard@malloylaw.com
                    W. John Eagan
                    Florida Bar No. 105,101
                    Johneagan@malloylaw.com
                    **MALLOY & MALLOY P.L.**
                    2800 S.W. Third Avenue
                    Miami, Florida 33129
                    Telephone (305) 858-8000

                    *Of Counsel*:
                    Bobby Ghajar (*pro hac vice*)
                    bghajar@cooley.com
                    **COOLEY LLP**
                    1333 2nd Street, Suite 400
                    Santa Monica, CA 90401
                    Tel: 310-883-6400
                    *Attorneys for Quadranet, Inc. and Quadranet Enterprises, LLC*