**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-20862-BLOOM/Otazo-Reyes**

MILLENNIUM FUNDING, INC.,
a Nevada corporation, *et al.*,

      Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a
LIQUIDVPN, a Puerto Rico limited
liability company, *et al.*,

      Defendants.

                                   /

## ORDER ON MOTION FOR RECONSIDERATION

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Reconsideration of Order

Granting Defendants Quadranet, Inc.'s and Quadranet Enterprises, LLC's Motion to Dismiss and

Clarification of Order, ECF No. [180] ("Motion").[1] Defendants Quadranet Inc. and Quadranet

Enterprises (collectively, "Quadranet" or "Defendant") filed a Response in Opposition, ECF No.

[189] ("Response"), to which Plaintiffs filed a Reply, ECF No. [202] ("Reply"). The Court has

carefully reviewed the Motion, all opposing and supporting submissions, the record in this case,

the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is

granted in part and denied in part consistent with this Order.

### I.  BACKGROUND

Plaintiffs' initial Complaint was filed on March 3, 2021, and sought injunctive relief and damages

against Charles Muszynski, 1701 MANAGEMENT, LLC d/b/a LIQUIDVPN ("LiquidVPN"),

and DOES 1-100 ("Does 1-100"). *See* ECF No. [1]. The First Amended Complaint ("FAC")

---

[1] The Motion does not specify which Plaintiffs have joined the Motion. The Court surmises that all Plaintiffs who filed the Second Amended Complaint, ECF No. [96], joined the Motion.

thereafter added Quadranet, AUH2O, LLC, and others as Defendants. *See* ECF No. [24]. On July 30, 2021, Quadranet filed its first Motion to Dismiss. *See* ECF No. [83]. Plaintiffs filed the Second Amended Complaint ("SAC"), adding VPNETWORKS, LLC d/b/a TorGuard ("TorGuard") as a Defendant. *See* ECF No. [96]. In the SAC, Plaintiffs asserted claims against Quadranet, among others, contributory copyright infringement based upon material contribution ("Count III"); vicarious infringement ("Count IV"); negligence ("Count VI"); fraud ("Count VII"); and equitable estoppel ("Count VIII"). *See generally id.*; *see also* ECF No. [117] at 15. Plaintiffs claimed that Quadranet leased servers that were used for copyright infringement, and that Quadranet published false Whois records to prevent Plaintiffs from contacting LiquidVPN, TorGuard, and Does 1-100. *See generally* ECF No. [96].

On August 31, 2021, Quadranet filed its second Motion to Dismiss. ECF No. [108] ("Motion to Dismiss"). In the Motion to Dismiss, Quadranet argued that Plaintiffs' SAC is a shotgun pleading, Counts III, IV, and VI-VIII failed to state claims upon which relief could be granted, the Court lacked personal jurisdiction over Quadranet, and the venue was improper. *See generally id.* On September 10, 2021, Plaintiffs refuted each ground. *See generally* ECF No. [117].

On December 13, 2021, the Court entered its Order on Quadranet's Motion to Dismiss, dismissing with prejudice all claims asserted against Quadranet. *See* ECF No. [173] ("Order"). Plaintiffs thereafter filed the instant Motion, contending that the Order is based on misunderstandings of the facts and premature conclusions, that Plaintiffs have discovered new evidence, and that the Order misidentifies certain Plaintiffs. *See generally* ECF No. [180]. Plaintiffs also request clarification as to whether the Order is a final judgment. *See id.* at 13-14. On February 15, 2022, Quadranet filed its Response, arguing that Plaintiffs fail to present an intervening change in controlling law, the availability of new evidence, or the need to

correct clear error or manifest injustice. *See generally* ECF No. [189]. Quadranet does not object to the Court clarifying whether the Order constitutes a final judgment in favor of Quadranet. *See id.* at 19-20. On March 4, 2022, Plaintiffs' Reply followed. *See* ECF No. [202].

## II. LEGAL STANDARD

A motion for reconsideration is "an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002). "The burden is upon the movant to establish the extraordinary circumstances supporting reconsideration." *Saint Croix Club of Naples, Inc. v. QBE Ins. Corp.*, No. 2:07-cv-00468-JLQ, 2009 WL 10670066, at *1 (M.D. Fla. June 15, 2009) (citing *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F. Supp. 1072, 1073 (M.D. Fla. 1993)).

> A motion for reconsideration must do two things. First, it must demonstrate some reason why the court should reconsider its prior decision. Second, it must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice.

*Cover v. Wal-Mart Stores, Inc.*, 148 F.R.D. 294, 295 (M.D. Fla. 1993) (citations omitted). "Such problems rarely arise and the motion to reconsider should be equally rare." *Burger King Corp.*, 181 F. Supp. 2d at 1369.

Because court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure," a motion for reconsideration must clearly "set forth facts or law of a strongly convincing nature to demonstrate to the Court the reason to reverse its prior decision." *Am. Ass'n of People With Disabilities v. Hood*, 278 F. Supp. 2d 1337, 1339, 1340 (M.D. Fla. 2003) (citations omitted). As such, a court will not reconsider its prior ruling without a showing of "clear and obvious error where the 'interests of justice' demand correction." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, No. 6:11-cv-1637-Orl-31, 2013 WL 425827, at *1 (M.D. Fla. Feb. 4, 2013) (quoting *Am. Home Assurance Co. v. Glenn Estess & Assoc.*, 763 F.2d 1237,

3

1239 (11th Cir. 1985)). "When issues have been carefully considered and decisions rendered, the only reason which should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based." *Taylor Woodrow Constr. Corp.*, 814 F. Supp. at 1072-73; *see also Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 n.2 (S.D. Ala. 2008) (noting that reconsideration motions are to be used sparingly, and stating, "imagine how a district court's workload would multiply if it was obliged to rule twice on the same arguments by the same party upon request").

Similarly, "[a] motion for reconsideration should raise new issues, not merely readdress issues litigated previously." *PaineWebber Income Props. Three Ltd. Partnership v. Mobil Oil Corp.*, 902 F. Supp. 1514, 1521 (M.D. Fla. 1995); *see also Lamar Advertising of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 490 (M.D. Fla. 1999) ("A motion to reconsider is not a vehicle for rehashing arguments the Court has already rejected and should be applied with finality and with conservation of judicial resources in mind." (internal quotation marks omitted)). Furthermore, a motion for reconsideration "is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Hood v. Perdue*, 300 F. App'x 699, 700 (11th Cir. 2008) (citation omitted).

> It is improper for defendant to utilize its Motion to Reconsider as a platform for rearguing (and expounding on) an argument previously considered and rejected in the underlying Order. *See Garrett v. Stanton*, [No. 08-0175-WS-M, 2010 WL 320492, at *2 (S.D. Ala. Jan. 18, 2010)] ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license to move for reconsideration . . . as a matter of course, and to utilize that motion as a platform to criticize the judge's reasoning, to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome. This is improper."); *Hughes v. Stryker Sales Corp.*, [No. 08-0655-WS-N, 2010 WL 2608957, at *2] (S.D. Ala. June 28, 2010) (rejecting notion that motions to reconsider "are appropriate whenever the losing party thinks the District Court 'got it wrong'").

*Smith v. Norfolk S. Ry. Co.*, No. 10-0643-WS-B, 2011 WL 673944, at *2 (S.D. Ala. Feb. 17, 2011).

At the same time, the Eleventh Circuit has determined that a motion for reconsideration cannot be used to "present evidence that could have been raised prior to the entry of judgment." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.,* 408 F.3d 757, 763 (11th Cir. 2005)). "This prohibition includes new arguments that were 'previously available, but not pressed.'" *Id.* (quoting *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) (per curiam)); *see also In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Prac. Litig.*, No. 12-MD-02324-LENARD, 2014 WL 2758805, at *5 (S.D. Fla. June 17, 2014) ("Parties who ignore arguments made by their opponents do so at their own peril and should not rely on the restrictive standard of a motion for reconsideration to provide them with a second bite at the apple."). Ultimately, reconsideration is a decision that is "left 'to the sound discretion' of the reviewing judge." *Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, No. 6:18-cv-1149-Orl-78DCI, 2020 WL 5534280, at *2 (M.D. Fla. Apr. 1, 2020) (quoting *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993)).

## III.   DISCUSSION

### A.   Null-Routing IP addresses

Plaintiffs first argue that there is a distinction between null-routing an IP address and null-routing an account. *See* ECF No. [180] at 4-8.[2] Plaintiffs claim that Quadranet mischaracterized Plaintiffs' allegation that Quadranet could null-route IP addresses to mean that Quadranet could null-route accounts. *See id.* at 4-5. Plaintiffs further argue that the Court adopted Quadranet's mischaracterization of Plaintiffs' allegation. *See id.* at 5. Plaintiffs aver that in doing so, the Court mistakenly concluded that there were no practical measures to stop further infringement because null-routing an account was an impermissibly broad measure. *See id.* at 6. Plaintiffs also claim to provide new evidence that Quadranet's competitor, Sharktech, agreed to implement certain

---

[2] Plaintiffs equate blackhole filtering to null-routing IP addresses. *See* ECF No. [180] at 6-7.

practical measures to block its end users' access to copyright infringement sites. *Id.* at 7-8. Therefore, Plaintiffs argue that there were practical measures that Quadranet could have taken and the Court should not have dismissed Plaintiffs' vicarious copyright infringement claim. *See id.* at 12.

Quadranet responds that the Court correctly determined that null-routing is an impermissibly broad measure that does not constitute a practical ability to police the infringing activities of third parties. *See* ECF No. [189] at 6-8. In support, Quadranet argues that it did not have specific knowledge of infringing activities and therefore could not have null-routed IP addresses the first place. *See id.* at 6-7. Even if it did have knowledge, Quadranet argues that each IP address is assigned to multiple end users, so null-routing a specific IP address would have resulted in null-routing not only the IP address of the particular end user infringing on Plaintiffs' copyrighted works but also the IP address of all end users assigned to the same IP address. *See id.* at 7. In addition, Quadranet asserts that it uses dynamic IP addresses that are periodically reassigned, and an alleged infringer could simply get a new IP address if Quadranet null-routed a particular IP address. *See id.* Quadranet further argues that Plaintiffs' reliance on a settlement agreement with Sharktech, a non-party to this case, is irrelevant and does not constitute "new evidence." *See id.* at 8-9.

Plaintiffs argue in their Reply that specific knowledge of infringing activities is not required for a vicarious infringement claim. *See* ECF No. [202] at 3. Plaintiffs also draw on the Joint Statement of Undisputed Facts Between Plaintiffs and Defendant VPNetworks, LLC, ECF No. [198-1] ("TorGuard's Facts"), to argue that they discovered that at least forty (40) percent of the noticed copyright infringement took place on unencrypted servers, indicating that Quadranet was aware of the infringing activity. *See id.* Plaintiffs further argue that Quadranet willfully blinded itself to the infringing activity. *See id.* at 3-4. In regard to Quadranet's claim that it uses

dynamic IP addresses, Plaintiffs argue that Quadranet's subscriber TorGuard offers dedicated, static IP addresses, which contradicts Quadranet's claim that it uses dynamic IP addresses. *See id.* at 3. Plaintiffs also note that TorGuard conceded that if Quadranet null-routed an IP address, it would not have affected other end users' use of TorGuard's services. *See id.* Plaintiffs also claim that Quadranet could have null-routed dynamic IP addresses for a limited period of time if the IP addresses were in fact dynamic. *See id.*

The Court agrees with Quadranet. The Court recognizes the technological distinction between null-routing an IP address and null-routing an account that Plaintiffs now seek to emphasize. However, Plaintiffs fail to persuade the Court that null-routing IP addresses is a practical, effective measure. As an initial matter, although Plaintiffs argue that the Court should consider TorGuard's Facts as new evidence that Quadranet uses static IP addresses that can be null-routed without affecting multiple end users, TorGuard's Facts are not properly before the Court.[3] Simply put, TorGuard's Facts only pertain to TorGuard.[4] Quadranet never stipulated to TorGuard's Facts. As such, TorGuard's Facts have no bearing on readdressing Quadranet's Motion to Dismiss, which is based on the insufficiency of the allegations in the SAC. Therefore, the Court declines to consider TorGuard's Facts, including any suggestion that Quadranet uses static IP addresses or that forty (40) percent of noticed copyright infringement took place on unencrypted servers.

Further, to the extent that Plaintiffs rely on a separate settlement agreement with Sharktech, who is a non-party to this case, the Court is again not persuaded. The manner in which Sharktech operates and is willing to implement systems to attempt to block pirating websites is from an

---

[3] Plaintiffs and TorGuard filed an amended stipulation of dismissal with the same Joint Statement of Undisputed Facts Between Plaintiffs and Defendant VPNetworks, LLC. *See* ECF No. [200-1].
[4] The Court stated in its Order of Dismissal, that "[t]he Stipulation, **ECF No. [200]**, is **APPROVED** as to Plaintiffs and Defendant VPNETWORKS, LLC *only*." ECF No. [201] (emphasis in original; italics added).

unrelated settlement agreement that has no bearing on Quadranet's ability and alleged obligation to implement similar measures. Thus, after putting aside TorGuard's Facts and Sharktech's settlement agreement, Plaintiffs provide no new evidence to disrupt the Court's prior Order that the SAC fails to allege any practical measures Quadranet could have taken.

Even if the Court were to consider TorGuard's Facts and Sharktech's settlement agreement, the Court is not persuaded that null-routing IP addresses is a practical measure to police infringing activity considering Quadranet's contention that its IP addresses are dynamic and that each IP address has multiple end users. *See* ECF No. [189] at 7. Further, assuming for the sake of argument that Quadranet could null-route a specific IP address – static or dynamic – without interfering with other end users' legitimate use of the same IP address, Quadranet's actions would be wholly ineffective as the copyright infringer could get a new IP address to continue infringing Plaintiffs' copyrighted works. *See id.* at 7-8. In other words, null-routing an IP address or an account is not a practical measure to police infringing activity. As such, the Court finds no reason to amend its prior Order determining that Plaintiffs failed to allege a "practical ability to police infringing activities of [third parties]." *See* ECF No. [173] at 31 (citing *Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 3:16-CV-907-J-39MCR, 2017 WL 2901695, at *12 (M.D. Fla. Jan. 17, 2017)). Since Plaintiffs failed to allege a practical ability to police infringing activity even if the infringing activity was known to Quadranet, the Court need not address Plaintiffs' argument that Quadranet had notice of the specific infringing activity or was willfully blind to the infringing activity. Therefore, Plaintiffs' Motion on this matter is denied.[5]

---

[5] As a final note, Plaintiffs claim that the "filter" Quadranet can apply makes Quadranet a computer system operator similar to Google. ECF No. [180] at 7. Plaintiffs are unpersuasive, however, because they do not explain why the ability to apply a filter somehow makes Quadranet a computer system operator comparable to Google as opposed to a provider of servers. Furthermore, this argument does not change the Court's analysis or its overall conclusion.

**B. Encryption by Quadranet's Subscribers**

Next, Plaintiffs argue that the Court erred in presuming that all of Quadranet's subscribers encrypt their end users' online activity and concluding that Quadranet was unaware of specific copyright infringement. *See* ECF No. [180] at 8-9. Plaintiffs argue that Quadranet's subscribers do not always encrypt their end users' online activity because at least one of Quadranet's subscribers – namely TorGuard – makes available unencrypted proxy servers for its end users. *See id.* Therefore, Plaintiffs argue that Quadrant had specific knowledge of copyright infringement to establish culpable intent in support of Plaintiffs' contributory copyright infringement claim based upon a material contribution. *See id.*

Quadranet responds that Plaintiffs improperly raise a new argument that some of Quadranet's subscribers may not encrypt their end users' online activity. *See* ECF No. [189] at 10. Quadranet also argues that even if some of Quadranet's subscribers make available the option to use unencrypted proxy servers, the SAC fails to allege what portion of the end users, if any, actually used the proxy servers, whether Quadranet hosted TorGuard's proxy servers in addition to TorGuard's main servers, and whether Quadranet could view the end users' online activity on TorGuard's proxy servers if Quadranet hosted them. *See id.* at 10-11. Further, even if the end users' online activity on the proxy servers were unencrypted, given Plaintiffs' theory that the alleged infringement occurred through BitTorrent – a protocol that breaks down files that are subsequently transferred in indecipherable "chunks" – Quadranet would have only seen "unusable chunks of ones and zeroes" rather than a complete copies of Plaintiffs' copyrighted works. *See id.* at 11. Therefore, Quadranet argues that it had no specific knowledge of copyright infringement required for culpable intent. *See id.* at 10-11.

Plaintiffs reply that they alleged in the SAC that TorGuard offers a "lightweight solution" proxy server. *See* ECF No. [202] at 4-5 (citing ECF No. [96] ¶¶ 108, 262, 398). Plaintiffs also

maintain that they have new evidence that nearly forty (40) percent of the notices sent to Quadranet concerned copyright infringement on TorGuard's unencrypted proxy servers and that sixty (60) percent of all copyright infringement notices concerned TorGuard. *See id.* at 5. With regard to Quadranet's contention that the BitTorrent protocol only allows for the transmission of indecipherable "unusable chunk[s]," Plaintiffs argue, for the first time in their Reply, that Quadranet could have monitored publicly available "trackers" to determine IP addresses broadcasted as pirating Plaintiffs' copyrighted works and cross-referenced its IP addresses to confirm any infringing activity. *Id.* at 5-6. In addition, Plaintiffs argue for the first time that Quadranet could have performed a "deep packet inspection" of the "unusable chunk[s]" to confirm that the data transmissions were parts of Plaintiffs' copyrighted works. *Id.* at 6. Plaintiffs also rely on *Blois v. Friday*, 612 F.2d 938, 940 (5th Cir. 1980), to argue that "a technical error or a slight mistake by [a party's] attorney should not deprive [the party] of an opportunity to present the true merits of his claims." *Id.* at 5.

The Court agrees with Quadranet. First, the SAC alleges that TorGuard offers a proxy server as a "lightweight solution," but that allegation is not an allegation that TorGuard offers an unencrypted server. *See* ECF No. [202] at 4-5 (citing ECF No. [96] ¶¶ 108, 262, 398). The SAC fails to allege that the "lightweight solution" is an unencrypted server. *See* ECF No. [96] ¶¶ 108, 262, 398. Plaintiffs are essentially raising a novel argument in their Motion for Reconsideration that a "lightweight solution" is an unencrypted server, which, if true, should have been raised previously. *Wilchombe*, 555 F.3d at 957. To put it simply, "[p]arties who ignore arguments made by their opponents do so at their own peril and should not rely on the restrictive standard of a motion for reconsideration to provide them with a second bite at the apple." *In re Horizon*, 2014 WL 2758805, at *5. Further, Plaintiffs' reliance on *Blois*, 612 F.2d at 940, to argue that "a technical error or a slight mistake" should not deprive Plaintiffs of an opportunity to present the true merits

of their claims is unavailing. In *Blois*, the plaintiff's counsel neglected to file a notice of his change of address, which caused a "short delay" when the plaintiff filed his motion, and the Fifth Circuit held that the "short delay" did not justify the district court's decision to enter a final default summary judgment. 612 F.2d at 940. The Court considers a short delay in filing a motion to be materially different from failing to raise an argument in response to a motion to dismiss.

Second, even if the Court were to assume for the sake of argument that the SAC's reference to a "lightweight solution" constituted an allegation that TorGuard offers unencrypted proxy servers, Quadranet correctly argues that Plaintiffs provide no evidence on what portion of the end users, if any, used the proxy servers, that Quadranet hosted the proxy servers in addition to other servers providing VPN services, and whether Quadranet could view the end users' online activity on the proxy servers if Quadranet hosted them. *See* ECF No. [189] at 10-11. As noted above, Plaintiffs' argument that Quadranet hosted the proxy servers and that forty (40%) percent of the notices sent to Quadranet were on unencrypted traffic are based on TorGuard's Facts. *See* ECF No. [202] at 5 (citing ECF Nos. [200-1] ¶ 8, [202-3] ¶¶ 3-5, 8).[6] Such evidence is not properly before the Court.

Third, the Court reiterates that Plaintiffs' theory of liability relies on BitTorrent, which merely allows for the transfer of unusable "pieces" or "chunk[s]" of copyrighted materials that are recombined afterward. ECF No. [96] ¶ 148; *see also* ECF No. [173] at 26-27 (citing *Ingenuity 13 LLC v. Doe*, No. 212-CV-08333-ODW-JC, 2013 WL 765102, at *3 (C.D. Cal. Feb. 7, 2013) (noting that "unusable chunk[s] of zeroes and ones" are transferred using the BitTorrent protocol)). Therefore, even if the "pieces" or "chunk[s]" were transferred on unencrypted servers, the SAC fails to allege how Quadranet could have known that the "chunk[s]" of data were Plaintiffs' copyrighted works. *See generally* ECF No. [96]. Plaintiffs' argument that Quadranet could have

---

[6] The Declaration of Culpepper cites to TorGuard's Facts. *See* ECF No. [202-3] ¶¶ 3-5, 8.

implemented additional measures – such as proactively researching publicly available trackers and cross-referencing its IP addresses to confirm infringing activity or performing a "deep packet inspection" – are also new arguments that Plaintiffs failed to raise in the SAC or their Response to the Motion to Dismiss. ECF No. [202] at 5-6. Further, the Court is not aware of, and Plaintiffs do not cite, pertinent legal authority that requires Quadrant to implement such measures to proactively seek specific knowledge of copyright infringement. *See id.* at 6.[7] Therefore, Plaintiffs failed to allege in their SAC that Quadranet had specific knowledge of copyright infringement, which is an element required to prove culpable intent for a claim of contributory copyright infringement based upon a material contribution.[8]

Further, as the Court noted in its prior Order, even if Plaintiffs satisfactorily alleged specific knowledge of copyright infringement, Plaintiffs' claim of contributory copyright infringement still fails. Plaintiffs must also allege that Quadranet could have taken practical measures to prevent further infringement, which is an element required to impute culpable intent from specific knowledge. *See* ECF No. [173] at 27, n.16 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 729 (9th Cir. 2007)). However, as discussed in the Court's prior Order and addressed above, the SAC fails to allege that Quadranet could have taken practical measures to prevent further infringement. *See id.*

---

[7] Plaintiffs cite *Malibu Media, LLC v. John Does 1 through 10*, No. 2:12-CV-3623-ODW, 2012 WL 5382304, at *2 (C.D. Cal. June 27, 2012), but the case does not impose an obligation on entities like Quadranet to take measures to proactively seek specific knowledge of copyright infringement. *See* ECF No. [202] at 6. The case merely notes that the plaintiff, not the defendants, took proactive steps to detect copyright infringement. *See Malibu Media*, 2012 WL 5382304, at *2.

[8] The Court declines to consider the article that Plaintiffs cite from December 2018, because it was not cited in Plaintiffs' Response in Opposition to Quadranet's Motion to Dismiss even though it was available at that time. *See* ECF No. [180] at 8.

## C.  Availability of Complete Copies of Copyrighted Works

Plaintiffs argue that the Court erred in assuming that pieces of the copyrighted works were combined solely on the end users' computers and that Quadranet never had access to the copyrighted works. *See* ECF No. [180] at 9. Plaintiffs maintain that some of TorGuard's end users used TorGuard's proxy servers hosted by Quadranet and that pieces of Plaintiffs' copyrighted works were combined on the proxy servers, thus making available complete copies of copyrighted works on Quadranet's servers. *See id.* Plaintiffs also extrapolate from Quadranet CEO's statement that some of Quadranet's servers can be used "to host an online video game" and that other customers "may store healthcare records" to argue that complete copies of copyrighted works were stored on Quadranet's servers. *See id.* at 9-10 (quoting ECF No. [108-1] ¶ 18). Plaintiffs aver, therefore, that the Court should not have concluded that the SAC fails to allege that Quadranet had specific knowledge of copyright infringement. *See id.* at 11.

Quadranet argues that Plaintiffs' own arguments undermine their contention that copyrighted works were combined on Quadranet's servers. *See* ECF No. [189] at 11-12. TorGuard's proxy servers allow end users to "tunnel all . . . torrent traffic through a secure server." *Id.* at 11 (quoting ECF No. [180] at 9 (quoting ECF No. [148-7])). Quadranet argues that Plaintiffs' claim that "unusable chunk[s]" of copyrighted works "tunnel . . . through" the proxy servers indicates that complete copies were not combined on its servers but merely passed through the proxy servers. *Id.* at 11-12. Therefore, Quadranet argues that the Court correctly determined that the SAC fails to allege that Quadranet had specific knowledge of copyright infringement and that Plaintiffs are attempting to make an "incredible [inferential] leap" despite being aware of the basic functionality of a server. *Id.*

Plaintiffs reply by insisting that it is not an incredible leap to presume that copies of copyrighted works could be recombined on Quadranet's servers. *See* ECF No. [202] at 7. Plaintiffs

argue that "[a]t the very least, the pieces would be copied when they passed through the proxy server." *Id.* at 7. In addition, Plaintiffs argue for the first time that if a subscriber used the proxy server to operate a "seedbox," the copyrighted works could have been recombined on Quadranet's server. *Id.* at 7.

The Court agrees with Quadranet. Simply put, the SAC does not allege that the copyrighted works were recombined on Quadranet's servers. *See generally* ECF No. [96]. Quadranet CEO's statement that some servers could be used to host an online video game or store healthcare records does not support Plaintiffs' specific contention that copyrighted works were recombined on Quadranet's servers. To the extent that Plaintiffs rely on a proxy server setting that allows end users to "tunnel" BitTorrent traffic "through" TorGuard's proxy servers, a plain reading of the proxy server settings and instructions does not support Plaintiffs' claim that copyrighted works were recombined on Quadranet's servers but instead indicates that pieces of the copyrighted works merely passed through the proxy servers. *See* ECF Nos. [96] ¶ 262, [148-7] at 2. Further, Plaintiffs' argument regarding the use of proxy servers to operate a seedbox is a new argument that Plaintiffs raise for the first time in their Reply and is not alleged in the SAC. *See generally* ECF No. [96]. Lastly, because the Court declines to consider TorGuard's Facts, which Quadranet did not stipulate to and are not properly before the Court, Plaintiffs provide no evidentiary support for their claim that TorGuard's proxy servers are unencrypted, that Quadranet hosted TorGuard's proxy servers, or that TorGuard's end users actually used TorGuard's proxy servers. In sum, the Court finds no reason to reconsider its prior Order determining that complete copies of copyrighted works were not available on Quadranet's servers.

In addition, as noted above and in the Court's prior Order, even if Plaintiffs satisfactorily alleged specific knowledge, Plaintiffs' claim of contributory copyright infringement still fails. Plaintiffs must also allege that Quadranet could have taken practical measures to prevent further

infringement. *See* ECF No. [173] at 27, n.16 (citing *Perfect 10*, 487 F.3d at 729). The SAC fails to sufficiently allege that Quadranet could have taken practical measures to prevent further infringement. *See generally* ECF No. [96].

### D. Claims of Direct Infringement Against Quadranet's Subscribers

Plaintiffs argue that the Court mistakenly states that Plaintiffs do not assert claims of direct copyright infringement against Quadranet's subscribers. *See* ECF No. [180] at 10-11. According to Plaintiffs, the SAC asserts claims of direct copyright infringement against Quadranet's subscribers, Plaintiffs thus adequately allege that Quadranet received a direct financial interest from its subscribers' direct copyright infringement, and the Court should not have dismissed Plaintiffs' claim of vicarious copyright infringement against Quadranet. *See id.* Quadranet argues that Plaintiffs' decision to shift their claims against Does 1-100 and claim that Quadranet's other subscribers engaged in direct copyright infringement is not credible and contradicts Plaintiffs' theory of copyright infringement. *See* ECF No. [189] at 12-13.

First, the Court addresses Plaintiffs' argument regarding Does 1-100. Plaintiffs concede that they are unsure about the identity of Does 1-100 and whether they are internet service providers or end users. *See* ECF No. [180] at 11. Despite their own uncertainty, it is indisputable that the SAC alleges that Does 1-100 are internet service providers whose customers are the end users. *See* ECF No. [96] ¶¶ 110-11. Therefore, the Court concluded in its prior Order that if the SAC alleged that "Does 1-100 infringed on Plaintiffs' copyrights [as end users and] as Quadranet's subscribers and paid Quadranet directly, then Plaintiffs' claim that Quadranet benefitted directly from the infringing activity would be more persuasive." ECF No. [173] at 29, n.17. However, because Does 1-100 were not alleged to be end users, who had committed direct copyright infringement, but were instead alleged to be internet service providers whose own end users had committed direct copyright infringement, Plaintiffs' argument that Quadranet received a direct

15

financial interest from Does 1-100's end users' direct copyright infringement was unpersuasive. *See id.*

Plaintiffs now appear to argue that the SAC alleges that Does 1-100 are internet service providers who directly infringed on Plaintiffs' copyrighted works, despite not being end users themselves. *See* ECF No. [180] at 10-11. However, the Court is not persuaded by the recharacterization of Does 1-100 as internet service providers who somehow directly infringed on Plaintiffs' copyrighted works, despite not being end users, in light of the plain language of the SAC and Plaintiffs' theory of liability. *See* ECF No. [96] ¶¶ 110-11. Plaintiffs' theory of copyright infringement that end users used the BitTorrent protocol to infringe Plaintiffs' copyrighted works undermines Plaintiffs' claim that Does 1-100 engaged in direct copyright infringement despite not being end users.

Further, although Plaintiffs argue that they did not assert their direct copyright infringement claim against Does 1-100 in a conclusory fashion, the SAC and Plaintiffs' Motion only present allegations concerning LiquidVPN and TorGuard's direct copyright infringement, not Does 1-100's direct copyright infringement. *See* ECF Nos. [96] ¶ 394-98 (failing to provide any allegation against Does 1-100), [180] at 10-11. As such, even if the SAC alleged that Does 1-100 are somehow direct infringers despite not being end users, Plaintiffs' claims of direct infringement against Does 1-100 are alleged in an unpersuasive, conclusory fashion.

The Court now turns to Plaintiffs' argument that Quadranet's other subscribers, namely LiquidVPN and TorGuard, committed direct copyright infringement and paid Quadranet for its services. In the Order, the Court did not consider Plaintiffs' allegations against other subscribers for their alleged direct copyright infringement because Plaintiffs' theory of liability was based on end users infringing on Plaintiffs' copyrighted works. *See* ECF No. [173] at 28-30. However, to the extent that Plaintiffs seek clarification of the Court's implied reasoning, the Court makes

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

express in this Order that Plaintiffs' own theory of liability against those subscribers undermines Plaintiffs' claim that those subscribers directly infringed on Plaintiffs' copyrights. As noted above, the BitTorrent protocol allows Quadranet's subscribers' end users to transfer copyrighted works with other BitTorrent users; it does not allow Quadranet's subscribers to obtain complete copies of the copyrighted works to disseminate themselves. ECF No. [96] ¶ 159-64; *see also* ECF No. [173] at 26-27 (citing *Ingenuity 13 LLC v. Doe*, No. 212-CV-08333-ODW-JC, 2013 WL 765102, at *3 (C.D. Cal. Feb. 7, 2013) (noting that "unusable chunk[s] of zeroes and ones" are transferred using the BitTorrent protocol)). Plaintiffs' claim that Quadranet's subscribers are liable for direct copyright infringement belies Plaintiffs' own theory of liability. Therefore, Plaintiffs fail to adequately allege that Quadranet received a direct financial benefit from its subscribers.

Lastly, even if the Court were to determine that the SAC alleged that some subscribers, such as LiquidVPN, allowed their end users to download Plaintiffs' copyrighted works outside the BitTorrent protocol,[9] or determine that some of the subscribers' conduct in relation to the BitTorrent protocol could be considered direct copyright infringement, Plaintiffs fail to persuade the Court that the SAC alleged practical measures Quadranet could have taken to police the infringing activities. *See* ECF No. [173] at 29, n.17 (noting that Plaintiffs' vicarious infringement claim against Quadranet must be dismissed for failing to allege practical measures to stop infringing activities even if the subscribers were liable for direct copyright infringement). As such, Plaintiffs' objection to the Court's determination regarding Plaintiffs' claim of direct copyright infringement against Quadranet's subscribers does not disturb the Court's overall conclusion that the vicarious copyright infringement claim against Quadranet must be dismissed with prejudice.

---

[9] Given the shotgun nature of the SAC, it is difficult to ascertain whether the SAC alleges that LiquidVPN's end users similarly used BitTorrent or instead downloaded copyrighted works outside of the BitTorrent protocol. *See* ECF No. [96] ¶ 284.

**E. Failure to Plead Contributory and Vicarious Copyright Infringement**

Plaintiffs contend that the Court's dismissal of their contributory and vicarious copyright infringement claims was erroneous based on their arguments above. *See* ECF No. [180] at 11-12. Plaintiffs further argue that the Court should at least permit Plaintiffs to file an amended complaint. *Id.* at 12. However, as noted above, Plaintiffs' arguments are ultimately unavailing, and the Court sees no reason to amend its prior Order dismissing Plaintiffs' contributory and vicarious copyright infringement claims. Further, a fourth complaint would likely be futile. To the extent that Plaintiffs would attempt to include allegations drawn from TorGuard's Facts, the Court has already addressed why TorGuard's Facts would not save Plaintiffs' claims even if they were considered. In addition, any allegation drawn from Sharktech's settlement agreement is inapposite to Plaintiffs' claims against Quadranet. As such, the Court denies Plaintiffs' request to allow Plaintiffs to replead their contributory and vicarious copyright infringement claims against Quadranet because Plaintiffs' fourth complaint would likely not survive another motion to dismiss. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004) (denying the plaintiff an opportunity to file another amended complaint when the previous amended complaint did not contain meritorious claims).

**F. Exercise of Supplemental Jurisdiction**

Plaintiffs argue, in the alternative, that the Court should have declined to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims after dismissing Plaintiffs' federal law claims. *See* ECF No. [180] at 12-13. Plaintiffs argue that the Court's exercise of supplemental jurisdiction was based on the mistaken premise that the Parties have conducted extensive discovery. *See id.* Plaintiffs also note that Quadranet argued against the exercise of supplemental jurisdiction in its prior pleading. *See id.* (citing ECF No. [108] at 37). Quadranet responds that it has engaged in significant discovery, and that irrespective of whether it has

engaged in significant discovery, the Eleventh Circuit has recognized that district courts can use their discretion "to exercise jurisdiction over state law claims in a case even after dismissing the federal claim that created original jurisdiction." ECF No. [189] at 13-14 (quoting *Bravo v. Loor-Tuarez*, 727 F. App'x 572, 576 (11th Cir. 2018)).

The Court agrees with Quadranet. As the Court stated in its prior Order, the Eleventh Circuit has held that the exercise of supplemental jurisdiction lays in "considerations of judicial economy, convenience[,] fairness to litigants and comity." ECF No. [173] at 32 (quoting *Ingram v. School Board of Miami-Dade County*, 167 F. App'x. 107, 108 (11th Cir. 2006)). Simply put, Plaintiffs fail to explain why this Court's exercise of supplemental jurisdiction is not fair to Plaintiffs or why further adjudication in state courts would cure any perceived unfairness. *See* ECF Nos. [180] at 12-13, [202] at 9-10. In addition, the Court stated in its prior Order that "[b]ecause of the amount of time and effort the Parties *and the Court* have expended in developing this case, judicial economy considerations weigh against dismissal." ECF No. [173] at 32 (emphasis added). Irrespective of the extent of discovery that has taken place, Plaintiffs offer no meaningful argument as to why judicial economy considerations weigh in favor of dismissal, especially since the Court has expended the time and effort to resolve all claims and thereby saved the Parties and Florida state courts from having to re-litigate closely related claims. Moreover, the Court reasoned that at the time of the Court's prior Order, "the case still involve[d] pending claims against other Defendants, namely TorGuard and Does 1-100." *Id.* Plaintiffs acknowledge this second reason for the Court's decision to exercise supplemental jurisdiction, *see* ECF No. [180] at 12 (noting that the Court's decision was based on "two reasons"), but fail to address why the second reason should not be given any weight. As such, Plaintiffs' request on this matter is denied.

### G. Misidentification of Plaintiffs

Lastly, Plaintiffs argue that the Court misidentified certain Plaintiffs. *See* ECF No. [180] at 3-4. Plaintiffs argue that 42 Ventures, LLC never made claims against Quadranet. *See id.* at 3. Plaintiffs After Productions, LLC, SF Film, LLC, and State of the Union Distributions and Collections, LLC dismissed their claims against Quadranet. *See id.* at 3-4. Plaintiffs Hunter Killer Productions, Inc., 211 Productions, Inc., and Millennium SPVH, Inc. did not join the SAC. *See id.* at 4.

Quadranet first argues that the SAC does not identify which Plaintiffs are asserting claims against Quadranet and "repeatedly lump[s]" all the Plaintiffs together, creating the impression that 42 Ventures, LLC joined the other Plaintiffs in asserting claims against Quadranet. *See* ECF No. [189] at 14-16. As such, Quadranet sought dismissal of "*all* claims by *all* of the Plaintiffs" including 42 Ventures, LLC. *Id.* at 17 (citing ECF No. [108] at 12) (emphasis in original). Quadranet notes that Plaintiffs, in turn, failed to argue that 42 Ventures, LLC never made claims against Quadranet in their Response to Quadranet's Motion to Dismiss. *See id.* at 17-18. Therefore, Quadranet argues that Plaintiffs are prohibited from raising a new argument that 42 Ventures, LLC should not be included in the collective definition of Plaintiffs. *See id.* Next, Quadranet argues that although After Productions, LLC, SF Film, LLC, and State of the Union Distributions and Collections, LLC, dismissed their claims against Quadranet, they sought permanent injunctive relief against Quadranet, after they filed their notice of voluntary dismissal. *See id.* at 18-19 (citing ECF No. [125] at 21). Therefore, the Court's Order dismissing all claims brought by After Productions, LLC, SF Film, LLC, and State of the Union Distributions and Collections, LLC, is also appropriate as it dismisses those Plaintiffs' request for a permanent injunction against Quadranet. *See id.* at 18-19. Quadranet does not, however, dispute that the Order should be

amended to remove Hunter Killer Productions, Inc., 211 Productions, Inc., and Millennium SPVH, Inc. *See id.* at 19.

The Court reiterates that Plaintiffs' SAC is a shotgun pleading.[10] In light of the deficient pleading, Quadranet reasonably sought the dismissal of "*all* claims by *all* of the Plaintiffs." ECF No. [108] at 12. However, considering Plaintiffs' belated clarification regarding which Plaintiffs asserted claims against Quadranet, the Court amends its prior Order. The Court's prior Order is amended to exclude 42 Ventures, LLC, After Productions, LLC, SF Film, LLC, State of the Union Distributions and Collections, LLC, Hunter Killer Productions, Inc., 211 Productions, Inc., and Millennium SPVH, Inc. in its collective definition of Plaintiffs. *See* ECF No. [173] at 1-2. To clarify, the remaining Plaintiffs' claims against Quadranet are dismissed with prejudice, and because Plaintiffs concede that the misidentified Plaintiffs did not assert a claim against Quadranet, there are no outstanding claims against Quadranet.

**H. Claims Against LiquidVPN Defendants and Final Judgment**

The dismissal of all claims against Quadranet and TorGuard leaves only defaulting Defendants Charles Muszynski, LiquidVPN, and AUH2O, LLC (collectively, "LiquidVPN Defendants") as the named Defendants in this case. As such, the Court now turns to Plaintiffs' claims against the LiquidVPN Defendants, the Motion for Reconsideration of Order Denying Motion for Default Judgment, ECF No. [168], and Plaintiffs' instant request to clarify whether the Court's prior Order on Quadranet's Motion to Dismiss is a final judgment, *see* ECF No. [173] at 13-14. The Court previously denied Plaintiffs' Motion for Default Judgment against the LiquidVPN Defendants due to the risk of inconsistent judgments. *See* ECF No. [167]. Plaintiffs Millennium Funding, Inc., Voltage Holdings, LLC, and 42 Ventures, LLC filed a Motion for

---

[10] Plaintiffs do not object to the Court's determination that the SAC is a shotgun pleading. *See generally* ECF No. [180].

Reconsideration of Order Denying Motion for Default Judgment, raising new arguments that they failed to raise in the Motion for Default Judgment. *See generally* ECF No. [168].

Parties may not raise new arguments in a motion for reconsideration that they failed to raise, *see Wilchombe*, 555 F.3d at 957. However, after the dismissal of Quadranet and TorGuard, the Court agrees that there is no longer a risk of inconsistent judgments with respect to the claims for trademark infringement, federal unfair competition, breach of contract, unjust enrichment, and breach of publicity rights against the LiquidVPN Defendants. Nevertheless, the Court sees no reason to reconsider the Court's Order on Plaintiffs' Motion for Default Judgment because the Court expressly stated that Plaintiffs would be permitted to file an amended motion for default judgment after a final disposition on the merits of the case. *See* ECF No. [167] at 9.

To that end, the Court denies the Motion for Reconsideration of Order Denying Motion for Default Judgment, but the Court clarifies that the Court's Order on Quadranet's Motion to Dismiss, ECF No. [173], as well as the Order of Dismissal with Prejudice as to Defendant VPNetworks Only, ECF No. [201], constitute a final disposition on the merits of Plaintiffs' claims against Quadranet and TorGuard. As such, Plaintiffs shall file an amended motion for default judgment in accordance with the Court's Order on Default Judgment Procedure, ECF No. [113], and set forth why there is no longer a possibility of inconsistent liability for each claim asserted against the LiquidVPN Defendants.

## I. Dismissal of Does 1-100

As a final note, Plaintiffs assert claims against Does 1-100, who have not been identified and against whom summonses have not been issued. Federal Rule of Civil Procedure 4(m) requires service of the summons and complaint to be perfected upon defendants within ninety (90) days after the filing of the complaint. Plaintiffs filed the SAC on August 17, 2021, ECF No. [96], generating a November 15, 2021 service deadline. To date, Plaintiffs have not filed proposed

summonses for Does 1-100 or shown good cause. In addition, there is no evidence in the record of any factor that would otherwise justify a permissive extension of time to serve absent a showing of good cause—such as expiration of the applicable statute of limitations, or that Does 1-100 are evading service or concealing a defect in attempted service. As such, the claims against Does 1-100 are dismissed without prejudice.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion for Reconsideration of Order Granting Defendants Quadranet, Inc.'s and Quadranet Enterprises, LLC's Motion to Dismiss, **ECF No. [180]**, is **GRANTED IN PART AND DENIED IN PART**.

   a. The Court amends the Court's Order on Quadranet's Motion to Dismiss, ECF No. [173] at 1-2, to exclude from the collective definition of Plaintiffs 42 Ventures, LLC, After Productions, LLC, SF Film, LLC, State of the Union Distributions and Collections, LLC, Hunter Killer Productions, Inc., 211 Productions, Inc., and Millennium SPVH, Inc.

   b. The Court clarifies that the Court's Order on Quadranet's Motion to Dismiss, ECF No. [173], is a final disposition on the merits of Plaintiffs' claims against Quadranet.

   c. The Motion is **DENIED** in all other respects.

2. The Motion for Reconsideration of Order Denying Motion for Default Judgment, **ECF No. [168]**, is **DENIED**.

3. The Motion to Strike Plaintiffs' Reply and Accompanying Declarations in Support of Plaintiffs' Motion for Reconsideration of the Dismissal Order, **ECF No. [207]**, is **DENIED AS MOOT**.

4.  Plaintiffs shall file an amended Motion for Default Judgment for all claims asserted against the LiquidVPN Defendants on or before **March 29, 2022**.

5.  Plaintiffs' claims against Does 1-100 are **DISMISSED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 18, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

24