**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC. et al,

      Plaintiffs,

      vs.

1701 MANAGEMENT LLC et al,

      Defendants.

_____

**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS 1701 MANAGEMENT LLC d/b/a LIQUIDVPN, AUH2O LLC AND
CHARLES MUSZYNSKI a/k/a FREDERICK DOUGLAS**

20-023DBa

Plaintiffs MILLENNIUM FUNDING, INC., VOLTAGE HOLDINGS, LLC, AMBI DISTRIBUTION CORP., AFTER PRODUCTIONS, LLC, AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC., MILLENNIUM FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA, INC., COLOSSAL MOVIE PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ FILM, LLC, FW PRODUCTIONS, LLC, MILLENNIUM IP, INC., I AM WRATH PRODUCTION, INC., KILLING LINK DISTRIBUTION, LLC, BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS, INC., LHF PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., RUPTURE CAL, INC., MON, LLC, SF FILM, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP, INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC, DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE PRODUCTIONS LLC, STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC, PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, HITMAN TWO PRODUCTIONS, INC., and SCREEN MEDIA VENTURES, LLC ("Copyright Plaintiffs") and 42 VENTURES, LLC ("42") (collectively "Plaintiffs"), move this honorable Court for Entry of Final Default Judgment against Defendants 1701 MANAGEMENT LLC d/b/a LIQUIDVPN ("1701"), AUH2O LLC ("AUH2O"), and CHARLES MUSZYNSKI a/k/a FREDERICK DOUGLAS ("Muszynski") (collectively "LiquidVPN Defendants") for Count 1 (direct infringement), Counts 2-3 (contributory infringement by inducement and material contribution), Count 4 (vicarious infringement), Count 5 (secondary liability for DMCA violations), Count 9 (trademark infringement), Count 10 (unfair competition), Count 11 (breach of contract) and Count 13 (breach of publicity) pled in the Second Amended Complaint ("SAC") [Doc. #96].  Plaintiffs voluntarily withdrew Count 12 (unjust enrichment).

I.      **THERE IS NO POSSIBILITY OF INCONSISTENT LIABILITY**

Plaintiff respectfully state that there is no possibility of inconsistent liability among the LiquidVPN Defendants because they are jointly and severally liable for Plaintiffs' claims and liability for all has been resolved due to their default.  Plaintiffs did not allege that other now dismissed Defendants in this action are jointly and severally liable with the LiquidVPN Defendants. *See* Doc. #124.

This Court previously denied default judgement without prejudice against the LiquidVPN Defendants because of a risk of inconsistent judgments concerning direct or indirect infringement of

Plaintiffs' copyright claims with other now dismissed Defendants. *See* Order [Doc. #167] at pg. 6. However, 42 makes only trademark and unfair competition claims against only the LiquidVPN Defendants. *See* SAC at ¶¶484-500. Therefore, there is no risk of inconsistent judgments with other now dismissed Defendants concerning 42's trademark and unfair competition claims.

MILLENNIUM FUNDING, INC. ("Millennium") and VOLTAGE HOLDINGS ("Voltage") make breach of contract and publicity claims against only the LiquidVPN Defendants. *See* SAC at ¶¶501-511 and 519-525. Accordingly, there is no risk of inconsistent judgments with other dismissed Defendants concerning Millennium's and Voltage's breach of contract and publicity claims.

The Copyright Plaintiffs did not make direct infringement claims or inducement claims against now dismissed Defendants QuadraNet, Inc. and QuadraNet Enterprises, LLC ("Quadranet"). Accordingly, there is no risk of inconsistent judgments with Quadranet concerning the direct infringement claims and the inducement claims.

The Copyright Plaintiffs did make material contribution claims against Quadranet. *See Id.* at ¶¶400-402. However, the Copyright Plaintiffs made allegations against LiquidVPN such as "LiquidVPN actively promotes the LiquidVPN service as "Popcorn Time VPN" and a means to safely infringe Copyright protected Works" that were not made against Quadranet. SAC at ¶397. Accordingly, there is no risk of inconsistent judgments with Quadranet concerning the material contribution claims.

## II.   THE SAC IS NOT A SHOTGUN PLEADING

The Court referred to the SAC as a shotgun pleading in the context of an order denying reconsideration of Quadranet's motion to dismiss. *See* Order [Doc. #209] at 21. However, Count 1 (direct infringement) states the specific steps LiquidVPN takes to directly infringe Plaintiffs' Works. *See, e.g.,* SAC at ¶378 ("Defendants LiquidVPN…distributed and reproduced the constituent elements of Plaintiffs' copyright protected Works…"). Count 2 states the specific steps LiquidVPN takes to induce infringement. *See*, *e.g.,* Id. at ¶¶386-387. Count 3 also states the specific steps LiquidVPN takes to materially contribute to copyright infringement. *See*, *e.g.,* Id. at ¶¶394-397. Count 4 also states the specific steps LiquidVPN takes to vicariously infringe Plaintiffs' Works. *See, e.g.,* Id. at ¶¶408-412.

In the Order [Doc. #173] granting QuadraNet's motion to dismiss, the Court stated that: (i) Count 7's incorporation by reference of Count 6 is unclear; and (ii) Count 10's incorporation of

Count 9 and Count 12's incorporation of Count 11 renders the SAC an improper shotgun pleading. *See* Order [Doc. #173] at 20.   However, dismissed counts 6-7 were made only against QuadraNet. Accordingly, they are effectively no longer part of the SAC by Court's Order.   Therefore, Counts 6-7 should not be considered when determining whether the SAC is a shotgun pleading.   Further, Plaintiffs respectfully disagree with the conclusion that a pleading is automatically rendered an impermissible shotgun merely because it incorporates a single prior count. Rather, as stated by this Court in the Order [Doc. #173], a shotgun pleading is "where each count adopts the allegations of *all preceding counts*".   Order at 20.

Count 9 does not adopt the allegations of any prior counts.   Accordingly, Count 10's incorporation by reference of just count 9 does not automatically make the SAC a shotgun pleading because it did not adopt the allegations of *all preceding counts*.   Similarly, Count 11 (breach of contract) only adopts the allegations of <u>one</u> count (count 9).   Count 12 (unjust enrichment) adopts the allegations of Count 11 which adopts the allegations of Count 9.   However, Count 12 was voluntarily dismissed in Plaintiffs' Motion for Default Judgment against the LiquidVPN Defendants.   *See* Motion for Default Judgment [Doc. #125] at 19 ("Millennium and Voltage voluntarily withdraw their claim for unjust enrichment").   Accordingly, Count 12 should not be considered when determining whether the SAC is an impermissible shotgun pleading.

Moreover, the LiquidVPN Defendants (against whom Counts 9-12 are alleged) have not asserted that the Counts are confusing.   In *Weiland v. Palm Beach Cty. Sheriff's Office*, the Eleventh Circuit stated that the "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).   *Weiland* considered as the important consideration in concluding that the pleading was not a shotgun pleading that it was not a situation where the burden of the opposing party to understand the factual allegations against them had materially increased.   *See Id.* at 1324.   Because the LiquidVPN Defendants have not asserted that Count 12, or Counts 9-11 were confusing and burdensome to understand, this Court should not conclude that Counts 9-11 and dismissed Count 12 renders the SAC a shotgun pleading.

Finally, the Court expressly said Plaintiff could cure deficiencies related to the shotgun pleading in an amended complaint.   *See* Order at 39.   The Order stated that Plaintiffs "were on notice of this fatal flaw through Quadranet's previous motion to dismiss…" Id. at 21.   However,

4

QuadraNet's previous motion to dismiss complained merely of "…Counts II through XII "re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs."" QuadraNet's First Motion to Dismiss [Doc. #83] at 19.  As argued above, the SAC does not include multiple counts that incorporate by reference the allegations of all prior counts. Accordingly, assuming *arguendo* that the SAC is a shotgun pleading, Plaintiffs should be granted leave to amend the SAC to correct this shotgun issue.  *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("a district court must *sua sponte* give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds. In the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings.").

## III.   FACTUAL BACKGROUND

Plaintiffs filed the SAC seeking injunctive relief and damages against the LiquidVPN Defendants among others, for direct copyright infringement, contributory copyright infringement, vicarious infringement, Digital Millennium Copyright Act ("DMCA") violations, trademark infringement, federal unfair competition, breach of contract, unjust enrichment and breach of publicity rights.  *See* SAC [Doc. #96].

Copyright Plaintiffs are the owners of the copyrights in the Works listed in Exhibit "1" [Doc. #104-1, errata] of the SAC.  The Works are currently available for sale in commerce.  *See* Id. at  ¶127; Affidavit of Jonathan Yunger [Doc. #96-24] at ¶¶3-10, 20.

The LiquidVPN Defendants operate a Virtual Private Network ("VPN") service under the names "LiquidVPN" and "Popcorn Time VPN".  *See* SAC at ¶226.

A VPN is a type of Internet Service for transmitting, routing, and/or or providing connections for said transmitting and routing, through a network that provides access to the Internet. A conventional Internet Service Provider ("ISP") will assign its subscriber an Internet Protocol ("IP") address and log the subscriber's activities on the Internet while using the assigned IP address.  In comparison, many VPN providers provide their subscribers "anonymous" usage by, for example, not logging subscriber access, assigning the subscriber IP addresses that are simultaneously shared among many users, and/or encrypting traffic.  A VPN provider often receives IP addresses and colocation services from a larger data center such as QuadraNet.  *See* SAC at ¶103.

The LiquidVPN Defendants describe their VPN service as a tool to "Watch Popcorn Time without being detected by your ISP and P2P tracking software" and promote it as a tool that can be

used to pirate copyright protected content "without the risk of getting caught by your ISP or anyone else." *See* SAC at ¶¶225-226.

The Popcorn Time promoted by the LiquidVPN Defendants is a piracy software application so notorious that the United States Trade Representative ("USTR") placed it on a list of examples of Notorious Markets engaged in and facilitating substantial piracy. *See* SAC at ¶141 (citing USTR, 2020 Review of Notorious Markets, Jan. 14, 2021, pg. 26).

The Popcorn Time promoted by the LiquidVPN Defendants has been referred to in the news media as "Netflix for Pirates". http://fortune.com/2016/02/26/popcorn-time-netflix-pirates/ [last accessed on 3/23/2022]. Even the LiquidVPN Defendants describe Popcorn Time as "…a very popular content streaming service that uses the BitTorrent protocol to provide a Netflix-like experience for free." *See* SAC at ¶140.

Popcorn Time offers its users nearly instantaneous access to huge quantities of infringing content. *See* Affidavit of Stephen Bunting [Doc. #96-17] at ¶¶23-27. The following is a general overview. Once installed, Popcorn Time provides a user-friendly interface for searching and watching copyright protected content. A user can search through thumbnail images of over thousands of titles including Voltage's motion picture *Ava*. *See* Aff. of Bunting at ¶25 (Figure 4). A user merely needs to enter "Hunter Killer" in the search bar to find the Millennium's Work *Hunter Killer*. *See* Id. at ¶26. By pressing the "DOWNLOAD" button, Popcorn Time connects the user to torrent sources to download a complete high resolution (1080p) copy of Works such as *Hunter Killer*, *Shock and Awe* and *Survivor*. *See* Id. at ¶¶28-29. These torrent sources are illegal sources of copyrighted content that enable Popcorn Time users to view unauthorized streams or download unauthorized copies of popular motion pictures and television shows, including the Copyright Plaintiffs' Works.

Muszynski is the sole member in AUH2O and 1701, which he has described as his "shelf companies". *See* SAC at ¶¶75, 97; Affidavit of David Cox [Doc. #96-6] at ¶12. Muszynski used one of his alter egos, 1701, to purchase the assets, and uses another one of his alter egos, AUH2O to sell bandwidth VPN service. While 1701 owns LiquidVPN, AUH2O receives funds from Orchid Labs, Inc. for selling bandwidth on the LiquidVPN network to the Orchid Network. *See* SAC at ¶85. *See also* Aff. of Cox [Doc. #96-6] at ¶12 and Ex. G.

Muszynski use the fake name "Jamie Castro" on the website for LiquidVPN and as the registration name for the domain with registration domains. *See* SAC at ¶30, Aff. of Cox [Doc.

#96-6] at ¶¶30-34 (the name Jamie Castro used to register various domains including LiquidVPN.com and legalshame.co). *See also* Affidavit of Kerry S. Culpepper [Doc. #96-26] at ¶¶25, 37.

The LiquidVPN Defendants advertise use of their Popcorn Time VPN to "Enjoy Popcorn Time…without the risk of getting caught by your ISP or anyone else".  Aff. of Joshua Lee at ¶12.

The LiquidVPN Defendants further promote their VPN service as "fully supports bittorrent and P2P…We will never censor P2P or BitTorrent…In fact, we have pulled out of locations because they did not like our policies on P2P and bit torrent..."  Id. at ¶15.

The LiquidVPN Defendants further promote their VPN service as a "DMCA Free Zone..." Id. at ¶16.

The LiquidVPN Defendants continue to promote their VPN service for use of peer-to-peer networks such as BitTorrent even after defaulting in this case.  *See* https://my.liquidvpn.com/knowledgebase/605/Can-I-use-Bittorrent-and-P2P.html [last accessed on 3/22/2022] ("We will never censor P2P or BitTorrent on any of our servers").

Plaintiff 42 is the owner of a federal trademark registration, Reg. No. 5,963,253 for the mark Popcorn Time, which issued on Jan. 14, 2020 on the principal register of the United States Patent and Trademark Office. This registration for the standard character mark Popcorn Time covers CLASS 9: Downloadable computer software for downloading and streaming multimedia content images, videos and audio. A true copy of this registration is attached as Exhibit "2" [Doc. #96-2] to the SAC. The registration is valid and subsisting and has never been cancelled.  42's US trademark asserts a first date of use of November 29, 2019.

Plaintiff 42 distributes and streams licensed content under the Popcorn Time trademark throughout the U.S. on one or more websites on U.S. top level domains.  *See* Aff. of Culpepper [Doc. No. 96-26] at ¶4.

For example, 42 streams in depth humorous movie reviews called "Reel Reviews™" and debates concerning motion pictures and pop culture called "Nerd Wars™" from the website http://popcorntime4u.com/ under the registered trademark "Popcorn Time" through an agreement with Andy Signore, the creator of the popular YouTube® channel Popcorned Planet (since 2009) and former executive producer of the Emmy nominated series Honest Trailers (nominated in 2016 and 2017).  *See* Id.

Plaintiff 42 has invested substantial time, effort and financial resources promoting its Popcorn Time trademark in connection with the marketing and sale of its website and apps in interstate commerce and engaging with content owners for licensed content. *See* Id. at ¶¶4-7.

Plaintiff 42's Popcorn Time trademark is inherently distinctive as applied to 42's goods and/or services that bear the mark. *See* SAC at ¶134.

The LiquidVPN Defendants contracted with the Florida company Reliable.Net LLC ("Reliable") to use Reliable's data center and dedicated servers in a facility in Miami, Florida. Reliable received IP addresses from Choopa and reassigned IP addresses in this facility to the LiquidVPN Defendants. *See* SAC at ¶¶121-122.

Among the IP addresses the LiquidVPN Defendants received from Reliable was IP address 108.61.128.241 hosted on a server in the Miami, Florida facility. *See* Exhibit "3" [Doc. #96-3], SAC at ¶¶169-170.

Copyright Plaintiffs engaged Maverickeye UG (haftungsbeschränkt) ("MEU") to monitor P2P/BitTorrent networks to capture evidence of acts of distribution of their Works and to generate infringement notices to be sent to the ISPs assigned the IP addresses at which MEU confirmed instances of actual observed distribution. *See* Aff. of Arheidt [Doc. #96-20]; SAC at ¶201; Exhibit "1". MEU has successfully confirmed acts of distribution even from IP addresses used by VPN end users. *See* Decl. of Derek Dueker at ¶¶3-5; Decl. of Benjamin Van Pelt at ¶¶3-4 and 9-12.

In just May of 2019, Copyright Plaintiffs' agent sent over 40 notices to Choopa concerning confirmed acts of distributions of Plaintiffs' Works *Automata* and *I Feel Pretty* at IP address 108.61.128.241 on the Miami, Florida server reassigned from Choopa to Reliable and from Reliable to the LiquidVPN Defendants. *See Id*. at ¶216, Ex. 3. Choopa promptly forwarded these notices to Reliable, who forwarded them to the designated abuse contact email address at LiquidVPN. *See* SAC at ¶¶219-220.

David Cox, the previous owner of LiquidVPN, identified many of the IP addresses currently assigned to and used by the LiquidVPN Defendants. *See* Aff. of Cox at ¶¶41-43, Ex. D and E. The LiquidVPN Defendants contracted with QuadraNet to use QuadraNet's data center and dedicated servers among other facilities in the United States. QuadraNet reassigned IP addresses in this facility to the LiquidVPN Defendants. *See* Aff. of Cox ¶¶3, 42; Ex. D.

Among the IP addresses the Defendants received from QuadraNet was IP address 104.223.91.202. *See* Aff. of Arheidt at ¶10.

8

Plaintiffs' agent sent over 5450 notices to Defendants concerning infringements of Plaintiffs' Works at IP addresses QuadraNet assigned to the LiquidVPN Defendants. *See* Id. at ¶¶10-11.

The LiquidVPN Defendants took no action in response to any of these notices. Indeed, the LiquidVPN Defendants are not even monitoring the email address for receiving abuse notices. *See* Aff. of Cox at ¶40.

Plaintiffs' counsel sent a letter to 1701 and 1701's counsel concerning this matter prior to filing the original complaint that was completely ignored. *See* Aff. of Culpepper at ¶21; SAC at ¶324; Ex. 7.

A Clerk's Default [Doc. #112] was entered against the LiquidVPN Defendants on September 3, 2021, as the LiquidVPN Defendants failed to appear, answer, or otherwise plead to the Second Amended Complaint ("SAC") [Doc. #96], despite having been served.

## II.      LEGAL STANDARD

Default judgment may be entered against a party who "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).

Upon entry of default by the clerk, the well-pled factual allegations of the SAC, other than those related to damages, will be taken as true. *PetMed Express, Inc. v. Medpets.com*, 336 F.Supp.2d 1213, 1217 (S.D. Fla. 2004) (citing *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987)).

The Copyright Act authorizes courts to grant injunctive relief "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The Court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S. Code § 1116.

## III.      ANALYSIS

### A. Personal Jurisdiction over the LiquidVPN Defendants is appropriate

Florida's long-arm statute provides that a court may exercise jurisdiction over a party who commits "a tortious act within this state." Fla. Stat. § 48.193(1)(a)(1) and (2). With respect to the "tortious activity" provision, copyright infringement will qualify. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir. 1990) (finding a violation of copyright

and communications laws to satisfy the "tortious activity" provision of the Florida long-arm statute); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) (holding that trademark infringement occurring in Florida satisfied the "tortious activity" provision of the Florida long-arm statute); *Roof & Rack Products, Inc. v. GYB Investors, LLC*, 2014 U.S. Dist. LEXIS 92334, 2014 WL 3116413, at p. 2 (S.D. Fla. July 8, 2014) ("Copyright infringement is a tortious act, and a person who infringes upon a copyright whose owner resides in Florida causes injury inside the state."(internal citations omitted)). Florida's specific jurisdiction requires the plaintiff to establish a nexus between the injuries suffered and the defendant's contacts. *See Woods v. Nova Companies Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999) (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)).

Muszynski is a lifelong Floridian who ran the Florida limited liability company Waste Professionals for decades.  SAC at ¶¶72-76.  Although Muszynski purchased LiquidVPN from David Cox and SMR Hosting, LLC through his Puerto Rican entity 1701, the purchase agreement was signed in Florida and called for personal jurisdiction in Florida.  Id. at ¶¶96, Aff. of Cox; Ex. "B" [Doc. #96-11]. Together with Florida resident Michael Gamache, Muszysnki operated the LiquidVPN service by obtaining servers and IP addresses in Miami from the Florida company ReliableSite.Net LLC among other data centers.  *See* SAC at ¶¶78-79.  LiquidVPN is effectively a Florida company ran by Florida resident (Gamache) and an ex-Floridian (Muszynski).  Plaintiffs' Works were pirated by the LiquidVPN Defendants and their end users from IP addresses at servers in Florida.  Accordingly, the LiquidVPN Defendants committed the torts of copyright and trademark infringement in Florida and have perfectly availed themselves of the privileges of conducting business in Florida.  Further, Muszynski waived personal jurisdiction by filing his motion to quash service [Doc. #126].

Moreover, it appears that Muszynski directed and engaged in many of these infringing activities in Daytona Beach, Florida from his IP address log records.  *See* SAC at ¶74.  Because 1701 and AUH2O are Muszynski's alter egos, the activities of Muszynski can be imputed to them. Courts in this district have held that an alter ego's activities may impute to a resident corporation for purposes of personal jurisdiction under the Florida long-arm statue. *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1347 (S.D. Fla. 2009) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla. 1984); *Aldea Communications, Inc. v. Gardner*, 725 So.2d 456

(Fla. Dist.Ct.App.1999)).  Accordingly, personal jurisdiction over the LiquidVPN Defendants is appropriate.

**B.  The LiquidVPN Defendants were served multiple times and default was entered.**

On March 15, 2021, 1701 was duly served a copy of the original complaint pursuant to Rule 4(h)(1) of the *Federal Rules of Civil Procedure*.  *See* Affidavit of Service [Doc. #9].  The Clerk entered default against 1701 on April 21, 2021.  *See* [Doc. #18].

On May 25, 2021, 1701 was duly served a copy of the FAC pursuant to Rule 4(h)(1).  *See* Affidavit of Service [Doc. #45].  The Clerk entered default against 1701 again on June 10, 2021. *See* [Doc. # 52].

On June 3, 2021, AUH2O was duly served a copy of the FAC pursuant to Rules 4(h)(2) and 4(f)(A).  *See* Affidavit of Service by C. John Arthurton II [Doc. #49].  The Clerk entered default against AUH2O on April 21, 2021.  *See* [Doc. #18].

On April 26, 2021, Muszynski was duly served a copy of the original Complaint.  *See* Affidavit of Service [Doc. #21].  On May 5, 2021, Muszynski was duly served a copy of the FAC pursuant to Rules 4(e)(1), 5(b)(2)(C) and/or 5(b)(2)(B)(i).  *See* Affidavit of Service [Doc. # 34].  The Clerk entered default against Muszynski on June 10, 2021.  *See* [Doc. #53].

On Sept. 23, 2021, Defendant Muszynski filed a motion to quash service of process [Doc. #126] through counsel.

On Nov. 17, 2021, the Court issued the Order [Doc. #166] denying Defendant Muszynski's motion to quash.

The LiquidVPN Defendants have filed no further papers in this matter.  Accordingly, it is clear that the LiquidVPN Defendants have purposefully chosen to default.

**C.  The Copyright Claims**

To prevail on their direct copyright infringement claims, the Copyright Plaintiffs need only (1) "show ownership" and (2) a violation of "at least one exclusive right" under 17 U.S.C. § 106. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *see also Disney Enters. v. Hotfile Corp.*, No. 11-20427-CIV-Williams, 2013 U.S. Dist. LEXIS 172339, at 94 (S.D. Fla. 2013). Copyright Plaintiffs satisfy both requirements. First, there is no dispute about Copyright Plaintiffs' ownership of the Copyrighted Works. The Copyright Office has issued certificates of registration for the Copyrighted Works as listed in Exhibit "1" [Doc. #104-1].  These certificates create a presumption of copyright validity and of ownership.  *See* 17 U.S.C. § 410(c).  The

Copyright Plaintiffs are either the original authors (from work by hire agreements) indicated in the certificate or parent or affiliate companies of the original authors. *See*, *e.g.* Aff. of Yunger [Doc. #96-24] at ¶¶3-5.

Second, the Copyright Plaintiffs have sufficiently alleged that the LiquidVPN Defendants directly infringe their exclusive rights of distribution and public performance of their Works in violation of 17 U.S.C. §§ 106(3) and (4). As stated by the LiquidVPN Defendants on their website, "Popcorn Time is a very popular content *streaming* service that uses the ***BitTorrent protocol*** to provide a Netflix-like experience for free. The United Kingdom has passed laws that could lead to up to 10 years in prison for *streaming* media with the Popcorn Time software. LiquidVPN will keep the fun times popping."" Aff. of Lee at ¶13 (emphasis added). The LiquidVPN Defendants have violated the Copyright Plaintiffs' exclusive right of distribution by distributing copies of Plaintiffs' Works from Popcorn Time via their VPN network when end users choose DOWNLOAD to download a copy of Plaintiffs' Works via Popcorn Time while using Defendants' so called "Popcorn Time VPN". *See* Aff. of Bunting [Doc. #96-17] at ¶¶28-29. The LiquidVPN Defendants have violated the Copyright Plaintiffs' exclusive right of public performance by streaming copies of Plaintiffs' Works from Popcorn Time over their so-called Popcorn Time VPN network when end users choose WATCH IT NOW to stream copies of Plaintiffs' Works. *See* Id. at ¶29 (Figure 11). When a party transmits a performance of a Copyrighted Work to a public audience, that party directly infringes the public performance right. *See American Broadcasting Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2509 (2014) (service that made Internet streams of content performed publicly: "Aereo communicates the same contemporaneously perceptible images and sounds to a large number of people who are unrelated and unknown to each other."); *see also, e.g., WPIX, Inc. v. IVI, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012) ("undisputed" that defendant's Internet streaming of television programs infringed public performance right).

Third, the Copyright Plaintiffs have sufficient alleged that the LiquidVPN Defendants contribute to infringements of the Copyrighted Works. "One infringes contributorily by intentionally inducing or encouraging direct infringement." *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005). The LiquidVPN Defendants intentionally induce and encourage their end users' direct infringements. When the Defendants' end users use their so-called Popcorn Time VPN to download, stream, share and/or reproduce copies of the Copyright Plaintiffs' Works exactly as encouraged by the LiquidVPN

Defendants, these end users also directly infringe Plaintiffs exclusive rights of public performance, distribution and reproduction. The LiquidVPN Defendants contribute to these infringements by providing the Popcorn Time VPN for its end users to pirate Plaintiffs' Works using Popcorn Time "without getting caught". The LiquidVPN Defendants also have knowledge that their end users are using their Popcorn Time VPN to pirate Plaintiffs' Works from the thousands of notices that Plaintiffs' agent sent to QuadraNet and Choopa that were forwarded onto the LiquidVPN Defendants. The LiquidVPN Defendants also had knowledge that their end users are using their VPN service to pirate copyright protected Works including Plaintiffs' Works because this is exactly how they instructed their end users to use the VPN service. Indeed, the LiquidVPN Defendants promote the VPN service as "Popcorn Time VPN" and include Plaintiff Millennium's title art for its motion picture *Survivor* as an example of a movie that can be pirated. *See* Aff. of Lee at ¶¶12, 16, 20.

Fourth, the Copyright Plaintiffs have sufficient alleged that the LiquidVPN Defendants are vicariously liable for their end users' infringements of their Works. "One…infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. at 930. In order to state a claim for vicarious copyright infringement, a plaintiff must allege (1) "the right and ability to supervise," and (2) "a direct financial interest" in the profits of the infringing activity. *See Affordable Aerial Photography, Inc. v. Modern Living Real Estate, LLC*, No. 19-cv-80488-BLOOM/Reinhart, 2019 U.S. Dist. LEXIS 132023, at *7-8 (S.D. Fla. Aug. 6, 2019) (citing *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010). The LiquidVPN Defendants have the right and ability to supervise and control the infringing activities of the end users that occur through the use of their so-called Popcorn Time VPN service and at all relevant times have derived a direct financial benefit from the infringement of Plaintiffs' copyrights. *See* SAC at ¶410. Indeed, the LiquidVPN Defendants promote not just Popcorn Time, but particularly Millennium's Work *Survivor* as a Work their service can be used to pirate. Id. at ¶228. The LiquidVPN Defendants could take simple measures such as null-routing and/or logging IP addresses to stop unauthorized distribution of Plaintiffs' Works over servers controlled by them that they lease from QuadraNet but purposefully refuse to do so. Id. at ¶¶408-409. Even LiquidVPN acknowledges that it monitors certain ports for abuse and automatically shuts down ports "for 1 minute to 1 hour depending on how        many         times         traffic         is         flagged."

https://my.liquidvpn.com/knowledgebase.php?action=displayarticle&id=675 [last accessed on 3/22/2022]. Accordingly, the LiquidVPN Defendants are vicariously liable for their end users' infringements.

The LiquidVPN Defendants have no safe harbor from liability because they fail to implement a policy for terminating repeat infringers and have not even registered a DMCA agent with the Copyright office. *See BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293 (4th Cir. 2018). Moreover, the LiquidVPN Defendants cannot use their policy of not logging their end users' access to provide anonymous IP addresses (*see* Aff. of Lee at ¶¶11-12) as an excuse for not terminating repeat infringers. A defendant who disables itself from doing anything to prevent infringement does not reasonably implement a repeat infringer policy. *See In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003).

17 U.S.C. § 504(c) provides that a copyright owner may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $750 or more than $30,000.00 as the court considers just. 17 U.S.C. § 504(c)(1). In addition, if the Court finds that Defendant's copyright infringement was willful, it may impose damages above the maximum limit up to a sum of not more than $150,000.00. The LiquidVPN Defendants continued their infringing conduct after receiving thousands of notices and even after receiving notice from Plaintiffs' counsel in Oct. of 2020. *See* Exhibit "7" [Doc. #96-7] to the SAC (10/27/2020 letter sent to 1701 and its counsel by certified mail). Pursuant to 17 U.S.C. § 504(c), the Copyright Plaintiffs requests the maximum statutory damages of $150,000 for infringement of each of the sixty-six (66) Works because not only do the LiquidVPN Defendants willfully directly infringe their distribution rights, the LiquidVPN Defendants willfully contributed to and induced infringement of the Works by promoting their service as Popcorn Time VPN for blatant piracy. Indeed, the LiquidVPN Defendants even included title art of the movie *Survivor* (of Millennium) without authorization on their website. *See* SAC at ¶228. Accordingly, Copyright Plaintiffs request that the Court find the LiquidVPN Defendants' infringements are willful and award statutory damages of $9,900,000 against the LiquidVPN Defendants for direct and contributory copyright infringement.

**D.     The DMCA Claims**

Copyright Plaintiffs sufficiently alleged secondary liability for DMCA violations against the LiquidVPN Defendants under the theories of contributory and vicarious liability. *See* SAC at

¶¶429-449. "One infringes contributorily by inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930, 125 S.Ct. 2764.

Copyright Plaintiffs have alleged DMCA violations against the LiquidVPN Defendants' end users pursuant to 17 U.S.C. §1202 for including the unauthorized wordings "RARBG," "YTS" or "FGT," in the Copyright Management Information ("CMI") of the file copies of Copyright Plaintiffs' Works.  *See* SAC at ¶¶434, 187-200. Through its conduct, the LiquidVPN Defendants knowingly and intentionally induced, enticed, persuaded, and caused these end users to commit DMCA violations through encouraging them to use the notorious Popcorn Time piracy application to access torrent files for copying copyright-protected Works from notorious movie piracy websites such as YTS. *See Id.* at ¶¶187-200, 229.  Moreover, despite the LiquidVPN Defendants having actual and constructive knowledge of their end users' DMCA violations and the right and ability to supervise and control the DMCA violations that occur through the use of their service, they have refused, and continue to refuse, to take any meaningful action to prevent the widespread DMCA violations by their subscribers. *See* Id. at ¶222.

Pursuant to 17 U.S.C. § 1203(c)(3)(B), Copyright Plaintiffs are entitled to an award of "…the sum of not less than $2,500 or more than $25,000" for each DMCA violation.  Due to the ubiquity and continuing ability of the LiquidVPN Defendants' end users to use the service to conceal their identity while using the piracy application Popcorn Time exactly as promoted and encouraged by Defendants, the LiquidVPN Defendants are secondarily liable for thousands of DMCA violations. Indeed, just from a single IP address 108.61.128.241 assigned to the LiquidVPN Defendants, there are thousands of instances of DMCA violations. *See* Exhibit "3" to the SAC [Doc. #96-3] (CMI in file names altered to include "FGT" and "YTS"). Copyright Plaintiffs elect to receive the maximum statutory damages of $25,000 for each of the three DMCA violations ("RARBG," "YTS" or "FGT" for each of Copyright Plaintiffs' twenty-one (66) Works. Accordingly, Copyright Plaintiffs request damages of $4,950,000 against the LiquidVPN Defendants for secondary liability as to DMCA violations.  *See Millennium Funding, Inc., et al. v. Wicked Technology Limited d/b/a VPN.HT*, 21-cv-282-RDA-TCB, Doc. #64 (E.D. Va. 2021) (attached as Exhibit "2") (finding vicarious liability for DMCA violations and awarding maximum statutory damages of $25,000).

**E.      Plaintiff 42's Trademark Claims**

15

Plaintiff 42's mark has been registered in the U.S. Patent and Trademark office, Russia and Iceland. *See* Exhibit "2" [Doc. #96-2] to the SAC, Aff. of Culpepper [Doc. #96-26] at ¶2. A Defendant is liable for trademark infringement for, "without the consent of the registrant…the use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive…" 15 U.S.C. § 1114(1) (2021). A counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, [the plaintiff's] mark." 15 U.S.C. § 1127 (2021). A counterfeit mark does not have to be an exact replica, for that "would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways." *United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012) (internal quotations and citation omitted).

The LiquidVPN Defendants have intentionally used Plaintiff 42's Mark Popcorn Time in US commerce without authorization or license by using the name "Popcorn Time VPN" to promote their VPN service to use the piracy application Popcorn Time. Defendants' Popcorn Time mark uses exactly the same standard characters as 42's registered trademark Popcorn Time. *See* Aff. of Lee at ¶20. The LiquidVPN Defendants have no senior user rights in the US because any prior use was for criminal copyright infringement. *See In re JJ206, LLC,* 120 USPQ2d 1568, 1570 (TTAB 2016) (finding applicant's use and intended use of the applied for marks on marijuana vaporizers unlawful because the goods constitute illegal drug paraphernalia under the Controlled Substances Act).

Finally, the LiquidVPN Defendants' use of Plaintiff 42's Mark in connection with promotion of their service for movie piracy is likely to confuse consumers since the two marks are identical. 42 distributes software with licensed content under the name Popcorn Time, while the LiquidVPN Defendants use it for promoting software for pirating content under the name Popcorn Time. Where a party produces counterfeit goods, there is a presumption of likelihood of confusion. *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). As discussed above, the LiquidVPN Defendants used, and continue to use, the mark Popcorn Time to promote and distribute their VPN service for using the piracy application Popcorn Time. These actions are sufficient to create a presumption of consumer confusion and a likelihood that Plaintiff 42 will succeed on its claim for trademark infringement.

16

Plaintiff 42 has sufficiently pleaded its claim for unfair competition. As with trademark infringement, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. *Two Pesos, Inc. v. Taco Cabana. Inc.*, 505 U.S. 763, 780, (1992). Because 42's registered mark Popcorn Time is identical to the LiquidVPN Defendants' mark Popcorn Time, there is a high likelihood of confusion.   Therefore, because Plaintiff 42 has established the merits of its trademark infringement claim against the LiquidVPN Defendants, including that consumers are likely to be confused, a likelihood of success is also shown as to 42's claims for federal unfair competition.

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of services, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs request an award of statutory damages of $250,000 for the LiquidVPN Defendants' use of 42's mark Popcorn Time in connection with their piracy business and for the unfair competition. *See Millennium Funding, Inc., et al. v. Wicked Technology Limited d/b/a VPN.HT*, 21-cv-282-RDA-TCB, Doc. #64 (E.D. Va. 2021) (awarding Plaintiff 42 maximum statutory damages of $2,000,000)(attached as Exhibit "2"). The allowed scope of monetary damages for unfair competition is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment for unfair competition is limited to the amount awarded pursuant to damages for the LiquidVPN Defendants' counterfeiting.

## F.    Claim for Breach of Contract and Unjust Enrichment

David Cox and SMR Hosting, LLC assigned claims for breach of contract against the LiquidVPN Defendants to Plaintiffs Millennium and Voltage per a stipulated consent judgment in the action 4:21-cv-10490-SDD-RSW in the Eastern District of Michigan. *See* Exhibit "3".

Plaintiffs attached a copy of the ASSET PURCHASE & EARN-OUT AGREEMENT ("Agreement") [Doc. #96-11] between 1701 and David Cox ("Cox") and SMR Hosting, LLC ("SMR") to the SAC. The Agreement provides that it "shall be governed, construed, litigated, and enforced in accordance with laws of the State of Florida…". Agreement at ¶15. Under Florida

17

law, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Ferguson Enters., Inc. v. Astro Air Conditioning & Heating, Inc.*, 137 So. 3d 613, 615 (Fla. 2d DCA 2014) (citing *Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013)); *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).

The Agreement called for 1701 to pay David Cox and SMR Hosting, LLC to perform post earn-out Work for LiquidVPN in exchange for a payment at Cox's hourly rate. *See* SAC at ¶502. 1701 breached the Agreement by failing to pay SMR the total of $46,540.00 excluding interest. Id. at ¶506.  1701's obligation to make the agreed upon payment was not excused or relieved. 1701's breaches of the agreement were substantial failures to perform that are material.  The LiquidVPN Defendants are jointly liable for this breach.  Millennium and Voltage request $46,540.00 as damages for the LiquidVPN Defendants' breach of the Agreement.  Millennium and Voltage voluntarily withdraw their claim for unjust enrichment.

## G.      Claim for Breach of Statutory and Common Law Right of Publicity

Florida Statute § 540.08 prohibits the unauthorized publication of a person's name or likeness.  To maintain a cause of action for a violation of section 540.08, a plaintiff must allege that his or her name or likeness is used to directly promote a commercial product or service. *Lane v. MRA Holdings*, LLC, 242 F. Supp. 2d 1205 (M.D. Fla. 2002); *Tyne v. Time Warner Entm't Co.*, 204 F. Supp. 2d 1338 (M.D. Fla. 2002); *Loft v. Fuller*, 408 So. 2d 619 (Fla. 4th DCA 1981).

The LiquidVPN Defendants "publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name and/or other likeness of David Cox on the website liquidvpn.com", Cox did not consent to use of his name on the website and Cox has suffered damages as a result of said use of his name and/or other likeness without his permission by the LiquidVPN Defendants.  SAC at ¶¶520-522. Particularly, the LiquidVPN Defendants "promote Cox as one of the persons who "run the day to day operations of LiquidVPN" on the website knowing that Cox ceased all involvement with LiquidVPN in 2019."  Id. at ¶360. Cox has stated that he has lost approximately $25,863 in business from lost customers in the past year who canceled service based upon the mistaken assumption that he is affiliated with LiquidVPN. *See* Decl. of Cox at ¶9.  Because of the LiquidVPN Defendants' default, Plaintiffs Voltage and Millennium cannot ascertain the extent to which the LiquidVPN Defendants have profited from this unauthorized use of Cox's name and likeness.

18

Cox assigned his claims for breach of publicity to Voltage and Millennium in the stipulated consent judgment in the action 4:21-cv-10490-SDD-RSW in the Eastern District of Michigan. *See* Exhibit "3". Voltage and Millennium request damages of $25,863 for the LiquidVPN Defendants' breach of Cox' statutory and common law publicity rights.

## H.   Permanent Injunction

Plaintiffs seek a permanent injunction against the LiquidVPN Defendants which (A) enjoins them from infringing to and/or contributing to infringements of the Copyright Plaintiffs' copyrighted Works and 42's trademark; (B) orders them to remove the title art of Plaintiff Millennium Funding, Inc.'s Work *Survivor* and any reference to Cox or LiquidVPN, Inc. that falsely portrays him and his dissolved corporation as playing a role in the operations of LiquidVPN from their website; and (C) orders them to block subscribers from accessing notorious piracy websites of foreign origin that are listed in the annual trade report of Notorious Foreign Markets published by the United States Government such as (a) YTS; (b) Piratebay; (c) Rarbg; (d) 1337x; and (e) Popcorntime on networks under their control.

Permanent injunctive relief is appropriate where a Plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiffs have carried their burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

LiquidVPN Defendants' encouragement of its end users to use Popcorn Time is undoubtedly causing the Copyright Plaintiffs irreparable harm. *See* Affidavit of Yunger at ¶¶14-17 and 21-23.   First, by inducing unauthorized distributing and streaming of the Copyright Plaintiffs' Works, Popcorn Time deprives the Copyright Plaintiffs of their exclusive rights to control how, when, and to whom they will disseminate their Copyrighted Works. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985) ("The rights conferred by copyright are designed to assure contributors to the store of knowledge a fair return for their labors.").

Second, the LiquidVPN Defendants' advertisements that give their end users the impression that by using Defendants' so-called "Popcorn Time VPN" they can freely obtain infringing copies of the Copyrighted Works via Popcorn Time inevitably and irreparably undermines the legitimate market in which consumers can purchase access to the same works. *See*

Aff. of Yunger [Doc. #96-24] at ¶¶16, 20-23.  The LiquidVPN Defendants promotes their VPN services as a means to intentionally compete with authorized and legitimate offerings, including licensed VOD services and as a means for consumers to avoid the need to pay for those offerings. *See* Id. at ¶¶22-23.

U.S.C. §1116(a) was amended on Dec. 27, 2020 per the Trademark Modernization Act to provide that a trademark owner such as 42 is "…entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection … upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order."  15 U.S.C. §1116(a).

Third, the LiquidVPN Defendants threaten harm to the Copyright Plaintiffs' relationships and goodwill with authorized licensees, which demonstrates irreparable harm. *See* Id. at ¶17, *see Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) ("substantial evidence … that VidAngel's service undermines the value of the Studios' copyrighted works, their 'windowing' business model, and their goodwill and negotiating leverage with licensees").

The Plaintiffs have provided affidavits of Culpepper and Arheidt verifying the LiquidVPN Defendants' trademark infringement by using Plaintiff 42's trademark "Popcorn Time" and contributory copyright infringements for blatantly promoting their "Popcorn Time VPN" for the purpose of piracy.  *See* Docs. ##96-20 and 96-26.

Copyright Plaintiffs have no adequate remedy at law so long as the LiquidVPN Defendants continue to operate their LiquidVPN service to distribute their Works without authorization. Absent the requested injunction, Plaintiff 42 cannot stop the LiquidVPN Defendants from using 42's registered trademark in connection with piracy. An award of monetary damages alone will not cure the injury to 42's reputation and goodwill that will result if Defendants' infringing and counterfeiting and infringing actions are allowed to continue. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks and copyrights, which are illegal acts.

The public has a compelling interest in protecting copyright owners' marketable rights to their works. *See Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005) ("[t]he economic philosophy behind the [Copyright] [C]lause...is the conviction that encouragement of individual effort by personal gain is the best way *to advance public welfare* through the talents of authors and inventors" (emphasis added)).

Further, the public has an interest in being protected from being misled by the LiquidVPN Defendants' advertising into installing Popcorn Time and using it to illegally stream and downloads copyright protected Works.  Enjoining the Defendants' illegal conduct plainly furthers the public interest.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter final default judgment and permanent injunction against Defendants 1701 MANAGEMENT LLC d/b/a LIQUIDVPN, AUH2O LLC, and CHARLES MUSZYNSKI a/k/a FREDERICK DOUGLAS in the form of the proposed Final Default Judgment and permanent injunction filed herewith.


DATED: March 24, 2022                       Respectfully submitted,


                                            /s/ *Joel B. Rothman*
                                            JOEL B. ROTHMAN
                                            Florida Bar No. 98220
                                            joel.rothman@sriplaw.com
                                            CRAIG A. WIRTH
                                            Florida Bar Number:  125322
                                            craig.wirth@sriplaw.com

                                            **SRIPLAW**
                                            21301 Powerline Road, Suite 100
                                            Boca Raton, FL 33433
                                            561.404.4350 – Telephone
                                            561.404.4353 – Facsimile

                                            And

                                            Kerry S. Culpepper
                                            *Admitted pro hac vice*
                                            **CULPEPPER IP, LLLC**
                                            75-170 Hualalai Road
                                            Suite B204
                                            Kailua-Kona, HI  96740
                                            808.464.4047 – Telephone
                                            kculpepper@culpepperip.com

                                            *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on March 24, 2022, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all those identified on the Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive Notices of Electronic Filing.

*s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com

## SERVICE LIST

Mr. Johnathan R. Woodard
Mr. John Cyril Malloy III
Mr. Oliver Alan Ruiz
Malloy & Malloy, PL
2800 SW 3rd Ave
Miami, FL 33129-2317
info@malloylaw.com
jwoodard@malloylaw.com
jcmalloy@malloylaw.com
oruiz@malloylaw.com
Attorneys for QuadraNet, Inc. and QuadraNet
Enterprises, LLC

Mr. Bobby A. Ghajar
Cooley LLP
1333 Second Street
Suite 400
Santa Monica, CA 90401
bghajar@cooley.com
Attorneys for QuadraNet, Inc. and QuadraNet
Enterprises, LLC

Mr. Adam Losey
Losey PLLC
1420 Edgewater Drive
Orlando, FL 32804
alosey@losey.law
Attorney for VPNetworks, LLC dba
TorGuard