## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-20862-BLOOM/Otazo-Reyes

MILLENNIUM FUNDING, INC.,
a Nevada corporation, *et al.*,

      Plaintiffs,

v.

1701 MANAGEMENT LLC d/b/a
LIQUIDVPN, a Puerto Rico limited
liability company, *et al.*,

      Defendants.

_____/

### ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

**THIS CAUSE** is before the Court upon the Plaintiffs MILLENNIUM FUNDING, INC., VOLTAGE HOLDINGS, LLC, AMBI DISTRIBUTION CORP., AFTER PRODUCTIONS, LLC, AFTER II MOVIE, LLC, MORGAN CREEK PRODUCTIONS, INC., MILLENNIUM FUNDING, INC., BEDEVILED LLC, MILLENNIUM MEDIA, INC., COLOSSAL MOVIE PRODUCTIONS, LLC, YAR PRODUCTIONS, INC., FSMQ FILM, LLC, FW PRODUCTIONS, LLC, MILLENNIUM IP, INC., I AM WRATH PRODUCTION, INC., KILLING LINK DISTRIBUTION, LLC, BADHOUSE STUDIOS, LLC, LF2 PRODUCTIONS, INC., LHF PRODUCTIONS, INC., VENICE PI, LLC, RAMBO V PRODUCTIONS, INC., RUPTURE CAL, INC., MON, LLC, SF FILM, LLC, SPEED KILLS PRODUCTIONS, INC., MILLENNIUM IP, INC., NIKOLA PRODUCTIONS, INC., WONDER ONE, LLC, BODYGUARD PRODUCTIONS, INC., OUTPOST PRODUCTIONS, INC., GLACIER FILMS 1, LLC, DEFINITION DELAWARE LLC, HANNIBAL CLASSICS INC., JUSTICE EVERYWHERE PRODUCTIONS LLC, STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC,

PARADOX STUDIOS, LLC, DALLAS BUYERS CLUB, LLC, HITMAN TWO PRODUCTIONS, INC., and SCREEN MEDIA VENTURES, LLC (collectively, "Copyright Plaintiffs"), and 42 VENTURES, LLC's ("42") (collectively with Copyright Plaintiffs, "Plaintiffs"), Motion for Entry of Final Default Judgment against Defendants 1701 MANAGEMENT LLC d/b/a LIQUIDVPN ("1701"), AUH2O LLC ("AUH2O"), and CHARLES MUSZYNSKI a/k/a FREDERICK DOUGLAS ("Muszynski") (collectively, "LiquidVPN Defendants" or "Defendants"), ECF No. [210] ("Motion"). A Clerk's Default was entered against Defendants on September 3, 2021, as Defendants failed to appear, answer, or otherwise plead to the Second Amended Complaint ("SAC"), ECF No. [96], despite having been served. *See* ECF No. [112]. The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, Plaintiffs' Motion is granted in part and denied in part consistent with this Order.

## I.    FACTUAL BACKGROUND

Plaintiffs filed a Second Amended Complaint ("SAC") seeking injunctive relief and damages against LiquidVPN Defendants, among others, for direct copyright infringement, contributory copyright infringement, vicarious infringement, Digital Millennium Copyright Act ("DMCA") violations, trademark infringement, federal unfair competition, breach of contract, unjust enrichment, and breach of publicity rights. *See* ECF No. [96].[1]

Copyright Plaintiffs are the owners to several copyrighted works, attached hereto as Exhibit 1. *See also* ECF No. [104-1] ("Works" or "Copyrighted Works"). The Works are currently available for sale in commerce. *See, e.g.,* ECF No. [96-24] ¶¶ 3-10, 20. LiquidVPN Defendants

---

[1] To the extent that Plaintiffs argue that the counts against LiquidVPN Defendants are not alleged in a shotgun manner, the Court is persuaded. *See* ECF No. [210] at 3-5. In the interest of the judicial economy, the Court foregoes requiring Plaintiffs to file an amened complaint to cure the deficiencies in the SAC related to other parties who have since been dismissed from this case.

operate a Virtual Private Network ("VPN") service under the names "LiquidVPN" and "Popcorn Time VPN". *See* ECF No. [96] ¶ 226.

A VPN is a type of Internet Service for transmitting, routing, and/or or providing connections for said transmitting and routing, through a network that provides access to the Internet. A conventional Internet Service Provider ("ISP") will assign its subscriber an Internet Protocol ("IP") address and log the subscriber's activities on the Internet while using the assigned IP address. In comparison, many VPN providers provide their subscribers "anonymous" usage by, for example, not logging subscriber access, assigning the subscriber IP addresses that are simultaneously shared among many users, or encrypting traffic. A VPN provider often receives IP addresses and colocation services from a larger data center such as Defendant QuadraNet, Inc. *See* ECF No. [96] ¶ 103.

LiquidVPN Defendants describe their VPN service as a tool to "Watch Popcorn Time without being detected by your ISP and P2P tracking software" and promote it as a tool that can be used to pirate copyright protected content "without the risk of getting caught by your ISP or anyone else." *See* ECF No. [96] ¶¶ 225-226. Popcorn Time promoted by LiquidVPN Defendants is a piracy software application so notorious that the United States Trade Representative ("USTR") placed it on a list of examples of Notorious Markets engaged in and facilitating substantial piracy. *See id.* ¶ 141. Popcorn Time promoted by LiquidVPN Defendants has been referred to in the news media as the "Netflix for Pirates." *See The 'Netflix for Pirates' Is Making a Triumphant Return*, Fortune.com, http://fortune.com/2016/02/26/popcorn-time-netflix-pirates/ (last    visited March 25, 2022). Even LiquidVPN Defendants describe Popcorn Time as "a very popular content streaming service that uses the BitTorrent protocol to provide a Netflix-like experience for free." *See* ECF No. [96] ¶ 140.

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

Popcorn Time offers its users nearly instantaneous access to huge quantities of infringing content. *See* ECF No. [96-17] ¶¶ 23-27. The following is a general overview. Once installed, Popcorn Time provides a user-friendly interface for searching and watching copyright protected content. A user can search through thumbnail images of over thousands of titles including Plaintiff Voltage Holdings, LLC's Work *Ava*.



*See id.* ¶ 25.

A user merely needs to enter "Hunter Killer" in the search bar to find the Plaintiff Millennium Funding, Inc.'s Work *Hunter Killer*. *See id.* ¶ 26. By pressing the "DOWNLOAD" button, Popcorn Time connects the user to torrent sources to download a complete high-resolution copy of Works such as *Hunter Killer*, *Shock and Awe*, and *Survivor*. *See id.* ¶¶ 28-29. These torrent sources are illegal sources of copyrighted content that enable Popcorn Time users to view

4

unauthorized streams or download unauthorized copies of popular motion pictures and television shows, including Copyright Plaintiffs' Works.

Defendant Muszynski is the sole member of AUH2O and 1701, which he has described as his "shelf companies." *See* ECF Nos. [96] ¶¶ 75, 97; [96-6] ¶12. Muszynski used one of his alter egos, 1701, to purchase the assets, and used another one of his alter egos, AUH2O, to sell bandwidth VPN service. While 1701 owns LiquidVPN, AUH2O receives funds from Orchid Labs, Inc. for selling bandwidth on the LiquidVPN network to the Orchid Network. *See* ECF No. [96] ¶ 85; *see also* ECF No. [96-9] ¶ 12.

Muszynski uses the fake name "Jamie Castro" on the website for LiquidVPN and as the registration name for the domain with registration domains. *See* ECF Nos. [96] ¶ 30, [96-9] ¶¶ 30-34 (the name Jamie Castro used to register various domains including LiquidVPN.com and legalshame.co). *See also* ECF Nos. [210-8]; [96-26] ¶¶ 25, 37. LiquidVPN Defendants advertise use of their Popcorn Time VPN to "Enjoy Popcorn Time . . . without the risk of getting caught by your ISP or anyone else." ECF No. [25-1] ¶ 12. LiquidVPN Defendants further promote their VPN service by claiming that it "fully supports bittorrent and P2P . . . . We will never censor P2P or BitTorrent . . . . In fact, we have pulled out of locations because they did not like our policies on P2P and bit torrent . . . . " *Id.* ¶ 15. LiquidVPN Defendants further promote their VPN service as a "DMCA Free Zone." *Id.* ¶ 16.

Plaintiff 42 is the owner of a federal trademark registration, Reg. No. 5,963,253 for the mark Popcorn Time, which was issued on January 14, 2020, on the principal register of the United States Patent and Trademark Office. This registration for the standard character mark Popcorn Time covers CLASS 9: Downloadable computer software for downloading and streaming multimedia content images, videos, and audio. *See* ECF No. [96-2]. The registration is valid and

subsisting and has never been cancelled. Plaintiff 42's U.S. trademark asserts a first date of use of November 29, 2019.

Plaintiff 42 distributes and streams licensed content under the Popcorn Time trademark throughout the U.S. on one or more websites on U.S. top level domains. *See* ECF No. [96-26] ¶ 4. For example, 42 streams in depth humorous movie reviews called "Reel Reviews™" and debates concerning motion pictures and pop culture called "Nerd Wars™" from the website http://popcorntime4u.com/ under the registered trademark "Popcorn Time" through an agreement with Andy Signore, the creator of the popular YouTube® channel Popcorned Planet and former executive producer of the Emmy nominated series Honest Trailers. *See id.* Plaintiff 42 has invested substantial time, effort, and financial resources promoting its Popcorn Time trademark in connection with the marketing and sale of its website and apps in interstate commerce and engaging with content owners for licensed content. *See id.* ¶¶ 4-7. Plaintiff 42's Popcorn Time trademark is inherently distinctive as applied to Plaintiff 42's goods and/or services that bear the mark. *See* ECF No. [96] ¶ 134.

LiquidVPN Defendants contracted with the Florida company Reliable.Net LLC ("Reliable") to use Reliable's data center and dedicated servers in a facility in Miami, Florida. Reliable received IP addresses from Choopa and reassigned IP addresses in this facility to LiquidVPN Defendants. *See id.* ¶¶ 121-122. Among the IP addresses LiquidVPN Defendants received from Reliable was IP address 108.61.128.241 hosted on a server in the Miami, Florida facility. *See* ECF Nos. [96-3], [96] ¶¶ 169-170. Copyright Plaintiffs engaged Maverickeye UG (haftungsbeschränkt) ("MEU") to monitor P2P/BitTorrent networks to capture evidence of acts of distribution of their Works and to generate infringement notices to be sent to the ISPs assigned the IP addresses at which MEU confirmed instances of actual observed distribution. *See* ECF Nos. [96-20]; [96] ¶ 201.

In May of 2019, Copyright Plaintiffs' agent sent over forty (40) notices to Choopa concerning confirmed acts of distributions of Plaintiffs' Works *Automata* and *I Feel Pretty* at IP address 108.61.128.241 on the Miami, Florida server reassigned from Choopa to Reliable and from Reliable to LiquidVPN Defendants. *See* ECF No. [96] ¶ 216. Choopa promptly forwarded these notices to Reliable, who forwarded them to the designated abuse contact email address at LiquidVPN. *See id.* ¶¶ 219-220. David Cox, the previous owner of LiquidVPN, identified many of the IP addresses currently assigned to and used by LiquidVPN Defendants. *See* ECF No. [96-9] ¶¶ 41-43. LiquidVPN Defendants contracted with QuadraNet to use QuadraNet's data center and dedicated servers among other facilities in the United States. QuadraNet reassigned IP addresses in this facility to LiquidVPN Defendants. *See* ECF No. [96-9] ¶¶ 3, 42. Among the IP addresses Defendants received from QuadraNet was IP address 104.223.91.202. *See* ECF No. [96-20] ¶ 10. Plaintiffs' agent sent over 5450 notices concerning infringements of Plaintiffs' Works at IP addresses that QuadraNet assigned to LiquidVPN Defendants. *See id.* ¶¶ 10-11. LiquidVPN Defendants took no action in response to any of these notices. Indeed, LiquidVPN Defendants are allegedly not monitoring the email address for receiving abuse notices. *See* ECF No. [96-9] ¶ 40. Plaintiffs' counsel sent a letter to 1701 and 1701's counsel concerning this matter prior to filing the original complaint, and the letter was ignored. *See* ECF No. [96] ¶ 324. A Clerk's Default was eventually entered against LiquidVPN Defendants for failing to respond to the original complaint. *See* ECF No. [112].

## II.     LEGAL STANDARD

Default judgment may be entered against a party who "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). "Entry of judgment by default is a drastic remedy which should be used only in extreme situations." *Wahl v. McIver,* 773 F.2d 1169, 1174 (11th Cir. 1985). Before

judgment may be entered against a defendant, the defendant must have been served properly or have waived service of process. *See Valdez v. Feltman* (*In re Worldwide Web Sys.*), 328 F.3d 1291, 1299 (11th Cir. 2003).

The Copyright Act authorizes courts to grant injunctive relief "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The Court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116.

## III.   ANALYSIS

### A. Personal Jurisdiction Over LiquidVPN Defendants

Florida's long-arm statute provides that a court may exercise jurisdiction over a party who commits "a tortious act within this state." Fla. Stat. § 48.193(1)(a)(1)-(2). With respect to the "tortious activity" provision, copyright infringement will qualify. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 857 (11th Cir. 1990) (finding a violation of copyright and communications laws to satisfy the "tortious activity" provision of the Florida long-arm statute); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) (holding that trademark infringement occurring in Florida satisfied the "tortious activity" provision of the Florida long-arm statute). Florida's specific jurisdiction requires the plaintiff to establish a nexus between the injuries suffered and the defendant's contacts. *See Woods v. Nova Companies Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999) (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

Defendant Muszynski is a former resident of Florida who ran the Florida limited liability company Waste Professionals for decades. ECF No. [96] ¶¶ 72-76. Although Muszynski purchased LiquidVPN from David Cox and SMR Hosting, LLC through his Puerto Rican entity, 1701, the purchase agreement was signed in Florida and called for personal jurisdiction in Florida. *Id*. ¶¶ 96, ECF Nos. [96-9]; [96-11]. Together with Florida resident Michael Gamache, Muszynski operated LiquidVPN services by obtaining servers and IP addresses in Miami from the Florida company ReliableSite.Net LLC among other data centers. *See* ECF No. [96] ¶¶ 78-79. LiquidVPN is effectively a Florida company ran by Florida resident (Gamache) and an ex-Floridian (Muszynski). Plaintiffs' Works were pirated by LiquidVPN's subscribers at IP addresses in Florida. Accordingly, LiquidVPN Defendants committed the torts of copyright and trademark infringement in Florida and have availed themselves of the privileges of conducting business in Florida.

Moreover, it appears that Muszynski directed and engaged in many of these infringing activities in Daytona Beach, Florida, from his IP address log records. *See* ECF No. [96] ¶ 74. Because 1701 and AUH2O are Muszynski's alter egos, the activities of Muszynski can be imputed to them. Courts in this district have held that an alter ego's activities may impute to a resident corporation for purposes of personal jurisdiction under the Florida long-arm statue. *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1347 (S.D. Fla. 2009) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla. 1984)). Accordingly, personal jurisdiction over LiquidVPN Defendants is appropriate.

**B. Service Upon LiquidVPN Defendants and Entry of Clerk's Default**

On March 15, 2021, 1701 was duly served a copy of the original complaint pursuant to Rule 4(h)(1). *See* ECF No. [9]. The Clerk entered default against 1701 on April 21, 2021. *See* ECF

No. [18]. On May 25, 2021, 1701 was duly served a copy of the FAC pursuant to Rule 4(h)(1). *See* ECF No. [45]. The Clerk entered default against 1701 again on June 10, 2021. *See* ECF No. [52]. On June 3, 2021, AUH2O was duly served a copy of the FAC pursuant to Rules 4(h)(2) and 4(f)(A). *See* ECF No. [49]. The Clerk entered default against AUH2O on April 21, 2021. *See* ECF No. [18]. On April 26, 2021, Muszynski was duly served a copy of the original Complaint. *See* ECF No. [21]. On May 5, 2021, Muszynski was duly served a copy of the FAC pursuant to Rules 4(e)(1), 5(b)(2)(C), and 5(b)(2)(B)(i). *See* ECF No. [34]. The Clerk entered default against Muszynski on June 10, 2021. *See* ECF No. [53].

Upon entry of default by the clerk, the well-pled factual allegations of the SAC, other than those related to damages, will be taken as true. *PetMed Express, Inc. v. Medpets.com*, 336 F.Supp.2d 1213, 1217 (S.D. Fla. 2004) (citing *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987)). On September 23, 2021, Defendant Muszynski filed a motion to quash service of process through his counsel. *See* ECF No. [126]. On November 17, 2021, the Court issued its Order denying Defendant Muszynski's Motion to Quash. *See* ECF No. [166].

**C. Copyright Claims[2]**

Copyright Plaintiffs have sufficiently alleged that LiquidVPN Defendants contribute to their end users' copyright infringement. "One infringes contributorily by intentionally inducing or encouraging direct infringement." *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005). LiquidVPN Defendants intentionally induced and encouraged direct infringement of users of Popcorn Time. When Defendants' subscribers use their so-called Popcorn Time VPN to download, stream, share, or reproduce copies of Copyright

---

[2] To the extent that Plaintiffs seek judgment in their favor regarding the direct copyright infringement claim, the Court is not persuaded for the reasons stated in its Order on Motion for Reconsideration. *See* ECF No. [209] at 16-17.

Plaintiffs' Works exactly as encouraged by LiquidVPN Defendants, these subscribers directly infringe Plaintiffs exclusive rights of public performance, distribution, and reproduction. LiquidVPN Defendants contribute to these infringements by providing the Popcorn Time VPN for its end users to pirate Plaintiffs' Works using Popcorn Time "without getting caught." LiquidVPN Defendants also have knowledge that their end users are using their Popcorn Time VPN to pirate Plaintiffs' Works from the thousands of notices that Plaintiffs' agent sent to QuadraNet and Choopa that were forwarded onto LiquidVPN Defendants. LiquidVPN Defendants also had knowledge that their end users are using their VPN service to pirate copyright protected works including Plaintiffs' Works because this is exactly how they instructed their subscribers to use the VPN service. Indeed, LiquidVPN Defendants promote the VPN service as "Popcorn Time VPN" and include Plaintiff Millennium Funding, Inc.'s title art for its motion picture *Survivor* as an example of a movie that can be pirated. *See* ECF No. [25-1] ¶¶ 12, 16, 20.

Second, Copyright Plaintiffs have sufficiently alleged that LiquidVPN Defendants are vicariously liable to their end users' infringements of the Works. "One . . . infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). In order to state a claim for vicarious copyright infringement, a plaintiff must allege (1) "the right and ability to supervise," and (2) "a direct financial interest" in the profits of the infringing activity. *See Affordable Aerial Photography, Inc. v. Modern Living Real Estate, LLC*, No. 19-cv-80488-BLOOM/Reinhart, 2019 U.S. Dist. LEXIS 132023, at *7-8 (S.D. Fla. Aug. 6, 2019) (citing *Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010)). LiquidVPN Defendants have the right and ability to supervise and control the infringing activities of the end users that occur through the use of their so-called Popcorn Time VPN service and at all relevant times has derived a direct

financial benefit from the infringement of Plaintiffs' copyrights. ECF No. [96] ¶ 410. Indeed, LiquidVPN Defendants promote not just Popcorn Time, but particularly the Work *Survivor* as a Work their service can be used to pirate. *Id*. ¶ 228. LiquidVPN Defendants could take simple measures such as null-routing and/or logging IP addresses to stop unauthorized distribution of Plaintiffs' Works over servers controlled by them that they lease from QuadraNet but purposefully refuse to do so. *Id*. ¶¶ 408-409. Accordingly, LiquidVPN Defendants are vicariously liable for their end users' infringements.

LiquidVPN Defendants have no safe harbor from liability because they fail to implement a policy for terminating repeat infringers and have not registered a DMCA agent with the Copyright office. *See BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293 (4th Cir. 2018). Moreover, LiquidVPN Defendants cannot use their policy of not logging their subscribers' access to provide anonymous IP addresses, *see* ECF No. [25-1] ¶¶ 11-12, as an excuse for not terminating repeat infringers. A defendant who disables itself from doing anything to prevent infringement does not reasonably implement a repeat infringer policy. *See In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003).

Further, 17 U.S.C. § 504(c) provides that a copyright owner may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $750.00 or more than $30,000.00 as the court considers just. *See* 17 U.S.C. § 504(c)(1). In addition, if the Court finds that Defendant's copyright infringement was willful, it may impose damages above the maximum limit up to a sum of not more than $150,000.00. Pursuant to 17 U.S.C. § 504(c), Copyright Plaintiffs requests the maximum statutory damages of $150,000.00 for the infringement of each of the sixty-six (66) Works because not only did LiquidVPN Defendants infringe their distribution rights, LiquidVPN Defendants willfully contributed to and induced infringement of

the Works by promoting their service as Popcorn Time VPN for blatant piracy. Accordingly, Copyright Plaintiffs request damages of $9,900,000.00 against LiquidVPN Defendants for contributory copyright infringement.

### D. DMCA Claims

Copyright Plaintiffs sufficiently alleged secondary liability for DMCA violations against LiquidVPN Defendants under theories of contributory and vicarious liability. *See* ECF No. [96] ¶¶ 429-449. "One infringes contributorily by inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930.

Copyright Plaintiffs have alleged DMCA violations against LiquidVPN Defendants' end users pursuant to 17 U.S.C. §1202 for including the unauthorized wordings "RARBG," "YTS" or "FGT," in the Copyright Management Information ("CMI") of the file copies of Copyright Plaintiffs' Works. *See* ECF No. [96] ¶¶ 434, 187-200. Through their conduct, LiquidVPN Defendants knowingly and intentionally induced, enticed, persuaded, and caused these end users to commit DMCA violations by encouraging them to use the notorious Popcorn Time piracy application to access torrent files for copying copyright-protected Works from notorious movie piracy websites. *See id.* ¶¶ 187-200, 229. Moreover, despite LiquidVPN Defendants having actual and constructive knowledge of their end users' DMCA violations and the right and ability to supervise and control DMCA violations that occur through the use of their service, they have refused, and continue to refuse, to take any meaningful action to prevent the widespread DMCA violations by their subscribers. *See id.* ¶ 222.

Pursuant to 17 U.S.C. § 1203(c)(3)(B), Copyright Plaintiffs are entitled to an award of "the sum of not less than $2,500 or more than $25,000" for each DMCA violation. Due to the ubiquity

and continuing ability of LiquidVPN Defendants' end users to use the service to conceal their identity while using the piracy application Popcorn Time exactly as promoted and encouraged by LiquidVPN Defendants, LiquidVPN Defendants are secondarily liable for thousands of DMCA violations. Indeed, just from a single IP address 108.61.128.241 assigned to LiquidVPN Defendants, there are thousands of instances of DMCA violations. *See* ECF No. [96-3]. Despite this, Copyright Plaintiffs elect to receive the maximum statutory damages of $25,000.00 for each of the three (3) DMCA violations ("RARBG," "YTS," or "FGT") for each of Copyright Plaintiffs' sixty-six (66) Works. Accordingly, Copyright Plaintiffs request damages of $4,950,000.00 against LiquidVPN Defendants for secondary liability as to DMCA violations.

### E. Plaintiff 42's Trademark Claims

Plaintiff 42's mark has been registered in the U.S. Patent and Trademark office, Russia, and Iceland. *See* ECF Nos. [96-2]; [96-26] ¶ 2. A defendant is liable for trademark infringement when it uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. § 1114(1) (2021). A counterfeit mark is defined as "a spurious mark which is identical with, or substantially indistinguishable from, [the plaintiff's] mark." 15 U.S.C. § 1127 (2021). A counterfeit mark does not have to be an exact replica, for that "would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways." *United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012) (internal quotations and citation omitted).

LiquidVPN Defendants have intentionally used Plaintiff 42's Mark Popcorn Time in U.S. commerce without authorization or license by using the name "Popcorn Time VPN" to promote

their VPN service to use the piracy application Popcorn Time. Defendants' Popcorn Time mark uses exactly the same standard characters as Plaintiff 42's registered trademark Popcorn Time. *See* ECF No. [25-1] ¶ 20. LiquidVPN Defendants have no senior user rights in the U.S. because any prior use was for copyright infringement. *See In re JJ206, LLC,* 120 USPQ2d 1568, 1570 (TTAB 2016) (finding applicant's use and intended use of the applied for marks on marijuana vaporizers unlawful because the goods constitute illegal drug paraphernalia under the Controlled Substances Act).

Finally, LiquidVPN Defendants' use of Plaintiff 42's Mark in connection with promotion of their service for movie piracy is likely to confuse consumers since the two marks are identical. Plaintiff 42 distributes software with licensed content under the name Popcorn Time, while LiquidVPN Defendants use it for promoting software for pirating content under the name Popcorn Time. Where a party produces counterfeit goods, there is a presumption of likelihood of confusion. *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987). As discussed above, LiquidVPN Defendants used, and continue to use, the mark Popcorn Time to promote and distribute their VPN service for using the piracy application Popcorn Time. These actions are sufficient to create a presumption of consumer confusion and a likelihood that Plaintiff 42 will succeed on its claim for trademark infringement.

Plaintiff 42 has also sufficiently alleged its claim for unfair competition. As with trademark infringement, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. *Two Pesos, Inc. v. Taco Cabana. Inc.*, 505 U.S. 763, 780, (1992). Because Plaintiff 42's registered mark Popcorn Time is identical to LiquidVPN Defendants' mark, there is a high likelihood of confusion. Therefore, because Plaintiff 42 has established the merits

of its trademark infringement claim against LiquidVPN Defendants, including that consumers are likely to be confused, a likelihood of success is also shown as to Plaintiff 42's claims for federal unfair competition.

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of services, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good or service. *See* 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service. *See* 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs request an award of statutory damages of $250,000.00 for LiquidVPN Defendants' use of Plaintiff 42's mark Popcorn Time in connection with their piracy business and for the unfair competition. The allowed scope of monetary damages for unfair competition is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment for unfair competition is limited to the amount awarded pursuant to damages for LiquidVPN Defendants' counterfeiting.

### F. Claim for Breach of Contract and Unjust Enrichment

David Cox and SMR Hosting, LLC assigned claims for breach of contract against LiquidVPN Defendants to Plaintiffs MILLENNIUM FUNDING, INC. ("Millennium") and VOLTAGE HOLDINGS, LLC ("Voltage") per a stipulated consent judgment in *Millennium Funding, Inc. et al v. SMR Hosting, LLC et al*., No. 21-cv-10490-SDD-RSW (E.D. Mich. 2021). The Agreement between 1701 and David Cox ("Cox") and SMR Hosting, LLC ("SMR") states that it "shall be governed, construed, litigated, and enforced in accordance with laws of the State of Florida . . . ." ECF No. [96-11] ¶ 15 ("Agreement"). Under Florida law, "[t]he elements of a

breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Ferguson Enters., Inc. v. Astro Air Conditioning & Heating, Inc.*, 137 So. 3d 613, 615 (Fla. 2d DCA 2014) (citing *Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013)); *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).

The Agreement calls for 1701 to pay David Cox and SMR Hosting, LLC to perform post earn-out work for LiquidVPN in exchange for a payment at Cox's hourly rate. ECF No. [96] ¶ 502. 1701 breached the Agreement by failing to pay SMR the total of $46,540.00 excluding interest. *Id.* ¶ 506. 1701's obligation to make the agreed upon payment was not excused or relieved. 1701's breaches of the Agreement were substantial failures to perform that are material. Plaintiffs Millennium and Voltage request $46,540.00 as damages for LiquidVPN Defendants' breach of the Agreement, and Millennium and Voltage voluntarily withdraw their claim for unjust enrichment.

**G. Claim for Breach of Statutory and Common Law Right of Publicity**

Florida Statute § 540.08 prohibits the unauthorized publication of a person's name or likeness. To maintain a cause of action for a violation of § 540.08, a plaintiff must allege that his or her name or likeness is used to directly promote a commercial product or service. *Lane v. MRA Holdings*, LLC, 242 F. Supp. 2d 1205 (M.D. Fla. 2002); *Tyne v. Time Warner Entm't Co.*, 204 F. Supp. 2d 1338 (M.D. Fla. 2002); *Loft v. Fuller*, 408 So. 2d 619 (Fla. 4th DCA 1981).

LiquidVPN Defendants "publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name and/or other likeness of David Cox on the website liquidvpn.com," Cox did not consent to use of his name on the website, and Cox has suffered damages as a result of said use of his name and/or other likeness without his permission by LiquidVPN Defendants. ECF No. [96] ¶¶ 520-522. Particularly, LiquidVPN

Defendants "promote Cox as one of the persons who 'run the day to day operations of LiquidVPN' on the website knowing that Cox ceased all involvement with LiquidVPN in 2019." *Id.* ¶ 360. Cox has stated that he has lost approximately $25,863.00 in business from lost customers in the past year who canceled service based upon the mistaken assumption that he is affiliated with the LiquidVPN website. *See* ECF No. [210-6] ¶ 9. Because of LiquidVPN Defendants' default, Plaintiffs Voltage and Millennium cannot ascertain the extent to which LiquidVPN Defendants have profited from this unauthorized use of Cox's name and likeness. As such, Plaintiffs Voltage and Millennium request of damages of $25,863.00 for LiquidVPN Defendants' breach of Cox' statutory and common law publicity rights is granted.

### H. Permanent Injunction

Plaintiffs seek a permanent injunction against LiquidVPN Defendants which (A) enjoins LiquidVPN Defendants from infringing and/or contributing to infringements of Copyright Plaintiffs' copyrighted Works and 42's trademark; (B) orders LiquidVPN Defendants to remove the title art of Plaintiff Millennium's Work *Survivor* and any reference to Cox or LiquidVPN, Inc. that falsely portrays Cox and Cox's dissolved corporation as playing a role in the operations of LiquidVPN from their website; and (C) orders LiquidVPN Defendants to block subscribers from accessing notorious piracy websites of foreign origin that are listed in the annual trade report of Notorious Foreign Markets published by the United States Government such as (a) YTS; (b) Piratebay; (c) Rarbg; (d) 1337x; and (e) Popcorntime on networks under their control.

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *See*

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Plaintiffs have carried their burden on each of the factors.

LiquidVPN Defendants' encouragement of its subscribers to use Popcorn Time is undoubtedly causing the Copyright Plaintiffs irreparable harm. *See* ECF No. [96-24] ¶¶ 14-17, 21-23. First, by inducing unauthorized distributing and streaming of Copyright Plaintiffs' Works, LiquidVPN Defendants deprive Copyright Plaintiffs of their exclusive rights to control how, when, and to whom they will disseminate their Copyrighted Works. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985) ("The rights conferred by copyright are designed to assure contributors to the store of knowledge a fair return for their labors.").

Second, LiquidVPN Defendants' advertisements that give their end users the impression that by using Defendants' so-called "Popcorn Time VPN" they can freely obtain infringing copies of the Copyrighted Works via Popcorn Time inevitably and irreparably undermines the legitimate market in which consumers can purchase access to the same Works. *See* ECF No. [96-24] ¶¶ 16, 20-23. LiquidVPN Defendants promotes their VPN services as a means to intentionally compete with authorized and legitimate offerings, including licensed video-on-demand services and as a means for consumers to avoid the need to pay for those offerings. *See id.* ¶¶ 22-23.

Third, LiquidVPN Defendants threaten harm to Copyright Plaintiffs' relationships and goodwill with authorized licensees, which demonstrates irreparable harm. *See id.* ¶ 17; *see also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) ("substantial evidence . . . that VidAngel's service undermines the value of the Studios' copyrighted works, their 'windowing' business model, and their goodwill and negotiating leverage with licensees").

Plaintiffs have provided affidavits of Culpepper and Arheidt verifying LiquidVPN Defendants' trademark infringement by using Plaintiff 42's trademark "Popcorn Time" and

contributory copyright infringements for blatantly promoting their "Popcorn Time VPN" for the purpose of piracy. *See* ECF Nos. [96-20]; [96-26].

Copyright Plaintiffs have no adequate remedy at law so long as LiquidVPN Defendants continue to operate their LiquidVPN service to distribute their Works without authorization. Absent the requested injunction, Plaintiff 42 cannot stop LiquidVPN Defendants from using Plaintiff 42's registered trademark in connection with piracy. An award of monetary damages alone will not cure the injury to Plaintiff 42's reputation and goodwill that will result if LiquidVPN Defendants' infringing and counterfeiting and infringing actions are allowed to continue. By contrast, LiquidVPN Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks and copyrights, which are illegal acts.

The public has a compelling interest in protecting copyright owners' marketable rights to their works. *See Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005) ("[t]he economic philosophy behind the [Copyright] [C]lause . . . is the conviction that encouragement of individual effort by personal gain is the best way *to advance public welfare* through the talents of authors and inventors" (emphasis added)). Further, the public has an interest in being protected from being misled by LiquidVPN Defendants' advertising into installing Popcorn Time and using it to illegally stream and downloads copyright protected works. Enjoining LiquidVPN Defendants' illegal conduct thus furthers the public interest. Accordingly, permanent injunctive relief is appropriate.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

Case No. 21-cv-20862-BLOOM/Otazo-Reyes

1. Plaintiffs' Motion, **ECF No. [201]**, is **GRANTED IN PART AND DENIED IN PART** against Defendants 1701 MANAGEMENT LLC d/b/a LIQUIDVPN ("1701"), AUH2O LLC ("AUH2O"), and CHARLES MUSZYNSKI a/k/a FREDERICK DOUGLAS.

2. Final Default Judgment will be entered by separate order.

   **DONE AND ORDERED** in Chambers at Miami, Florida, on March 25, 2022.

   _____
   **BETH BLOOM**
   **UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record