## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **MILLENNIUM FUNDING, INC. et al,** | * | 21-cv-20862-BLOOM/Otazo-Reyes |
| Plaintiffs, | * | |
| v. | * | |
| **1701 MANAGEMENT LLC et al,** | * | |
| Defendants. | * | |
| and | * | |
| **Glo-Jet International Corp et al.** | * | |
| Garnishees | * | |

## MOTION IN REPLY TO PLAINTIFFS' OPPOSITION [ECF 333]

**TO THE HONORABLE COURT:**

**COMES NOW**, garnishee **GLO-JET INTERNATIONAL CORP and GLO-JET INTERNATIONAL HOLDINGS (PUERTO RICO) LLC** (collectively known as garnishee), by and through the undersigned attorney, and very respectfully **ALLEGES** and **PRAYS** as follows:

### I. INTRODUCTION

1. Garnishees request **LEAVE OF COURT** to file excess pages of reply memorandum as to provide the Court with a complete argument in Reply to all of Plaintiff's allegations.

### II. GARNISHMENT RULES IN FLORIDA

2. Trial judges should keep in mind that the Garnishee is not an original debtor. Judgment creditors derive their right to proceed against a Garnishee only by virtue of the fact that the Garnishee **holds money or property owed to the judgment debtor**. Reeves v. Don L. Tullis and Assoc. Inc., 305 So.2d 813 (Fla. 1st DCA 1975).

3. When the trial judge was presented with facts which made it appear inequitable to enforce the final judgment against the Garnishee, he should have exercised his discretion and set aside the final judgment pursuant to Fla.R.Civ.P. 1.540(b)(1). Id. at 713. See also, Adams v. ICMA Retirement Corporation, 452 So.2d 1001 (Fla. 1st DCA 1984) as to the court's discretion regarding final judgments.

4. The responsibility of a Garnishee towards a judgment creditor emanates from Section 77.04 of Florida Statutes (2019), and it requires the Garnishee to serve "an answer on the Plaintiff' stating whether the Garnishee had in its possession "tangible or intangible personal property of [the] defendant" during the times specified in the writ.

The answer from the Garnishee must state:

> (1) Whether the Garnishee was or is indebted to the defendant as of the date the Writ was served, at the time of the answer, or at any time between those dates.
>
> (2) The extent of the defendant's property, including any deposit, account, or tangible or intangible personal property that the garnishee had or has in his or her possession or control as of the date the writ was served, as of the date of the answer, or at any time between those times.
>
> (3) Whether the Garnishee knows of any other person who is indebted to the defendant or who may have any of the defendant's property in his or her possession or control.
>
> (4) The name or names and addresses, if known to the Garnishee, of the defendant as well as any other persons who have or appear to have an ownership interest in the property.

5. In an answer a Garnishee may proceed via proffer as Section 77.04 does not require an affidavit or form. See ECF 331.

### III. SETTING ASIDE THE DEFAULT AND THE DOCTRINE OF SOLAROLL

6. Because a default judgment has not been entered, the Federal Circuits are in agreement that the more lenient **good cause standard** is permitted. See US v. $23,000 in US Currency, 356 F.3d 157, 164 (1st Cir. 2004).

7. Garnishees already answered. A court can enter a default judgment against a defendant who never appears or answers a complaint, for in such circumstances the case never has been placed at issue. **If the defendant has answered the complaint but fails to appear at trial, issue has been joined, and the court cannot enter a default judgment**. See Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., 803 F.2d 1130, 1131 (11th Cir. 1986). Because Garnishees have already appeared and answered Solaroll, supra controls. The Plaintiffs fail to explain in their Opposition how Solaroll is inapplicable after Garnishees filed a critical response.

8. In an abundance of caution Garnishees refute the rest of Plaintiffs' Opposition chronologically and in a detailed manner.

9. Although decisions on setting aside both entries of default and default judgments are solely entrusted to district court's discretion, which discretion is especially broad when considering whether to set aside entry of default, rather than default judgment. McManus v. Am. States Ins. Co., 2000 U.S. Dist. LEXIS 21492 (C.D. Cal. 2000).

### IV. ANALYSIS

**A. Objections to the findings of facts of the R&R**

10. The analysis provided by the Plaintiff in section IV A of ECF 333 is wrong. At this stage, that is, before the entry of default judgment an appearance and/or answer from Garnishee may avert default judgment in accordance with <u>Solaroll</u>.

11. That is because what is ultimately intended by the R&R is to recommend default judgment. If the defendant (Garnishee in this case) learns that an entry of default has been granted, it can **prevent entry of judgment of default by showing that it took some action, or to <u>otherwise defend</u>**. For example, by filing an answer, it can prevent the entry of default. See <u>Maason & Hanger-Silas Mason Co. v. Metal Trades Council</u>, 726 F2.d 166, 168 (5th Cir. 1984) (Court denied motion for default judgment after Defendant filed an answer). The 11th Circuit through <u>Solaroll</u> interpreted the phrase "otherwise defend" narrowly; finding that there is no failure to defend when a defendant files an answer and only later does not appear. This defeats the entry of default judgment. See O'connor's Federal Rules Civil Trials, 2017 ed.

12. Other actions that may show an intent to defend include: A late answer raising affirmative defenses filed after petition of default. See <u>US v. Harre</u>, 983 F.2d 128, 129-30 (8th Cir. 1993). Letters or conversations about the lawsuit between Attorneys for the parties. See <u>Lacy v. Sitel Corp</u>., 227 F.3d 290, 291 (5th Cir. 2000) (Default judgment was entered against defendant in Plaintiff's race discrimination action under Title VII. Claiming good cause for relief, the defendant moved to vacate judgment, which the court denied. On appeal, the court found that such denial was an abuse of discretion. Thus, the court reversed and remanded for further proceedings.)[1]

---

[1] In this case Plaintiff's attorney contacted the subscriber for information which the subscriber in good faith provided information as to the garnishment claimed by the Plaintiffs. See Affidavit of Allan Rivera as Exhibit

13. Because Garnishees answered Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., 803 F.2d at 1131 **controls and the court cannot enter a default judgment**. See Seven Elves, Inc. v. Eskenazi, 635 F.2d 396 (5th Cir. Unit A 1981); Bass v. Hoagland, 172 F.2d 205, 209-10 (5th Cir.), cert. denied, 338 U.S. 816 (1949).

14. A reading of the R&R reflects a narrative of the background of the case stating the events as they transpired and a boilerplate recommendation. Garnishees can do little with the R&R in terms of objections as it only narrated the events in the docket of the Court, but instead the Garnishees also answered and raised defenses, and/or otherwise defended their cause of action. The Plaintiffs also misconstrue the effect of an entry of default. The entry of default is merely a docket entry that one party is in default. See Dow Chem. v. Rascator Maritime S.A., 782 F.2d 329, 335 (2nd Cir. 1986).

15. The Garnishees filed a motion to set aside the entry of default in accordance with FRCP 55(c) which is what is required and, in the process, answered and raised defenses in accordance with the Florida Statute, therefore objecting to the R&R.

**B. If Solaroll is ignored the standard for setting aside the default is good cause**

16. The Plaintiffs raise an argument stating that a higher standard of excusable neglect should apply under United States v. Young, 806 F.2d 805, 806 (1987) and misleading the Court to ¶12 of Garnishees' Motion. Garnishees correctly identified the "good cause" standard in ¶s 10 and 12. Young does not offer any kind of guidance in this case as the party in Young, well beyond the time for appeal, moved under Fed. R. Civ. P.

---

2. Also, as evidenced by the Affidavit of Kerry S. Culpepper (ECF 333-2) Garnishees' Officer Andy Keesee at least tried to communicate and inquire about the nature of service with the opposing attorney.

60(b) to reconsider the eviction order and default judgment, even when the district court's order was not appealed. Here, there is not even a default judgment.

17. Garnishees reiterate that Rule 55(c), Fed.R.Civ.P., provides that the court may set aside an entry of default for **good cause** and object Plaintiffs' arguments that excusable neglect applies. The good cause standard exclusively governs relief from entry of default. **The importance of distinguishing between an entry of default and a default judgment lies in the standard to be applied in determining whether or not to set aside the default**.[2] The excusable neglect standard that courts apply in setting aside a default judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default. Jones v. Harrell, 858 F.2d 667, 669 (11th Cir. 1988).

18. Because Rule 55(c) does not define "good cause" courts typically **rely on the same three factors used to evaluate a motion to vacate default judgment for excusable neglect** – prejudice to plaintiff, meritorious defense, and culpable conduct. See Bricklayers & Allied Craftworkers v. Moulton Masonry & Constr. LLC. 779 F.3d 182, 186 (2nd Cir. 2015). But courts are free to use additional ones beyond those three. See Perez v. Wells Fargo N.A., 774 F.3d 1329, 1336 (11th Cir. 2014). This is the crucial misconception of Plaintiffs' analysis and by failing to develop it, the Opposition should be denied. Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996).

---

[2] "It is important to distinguish between an entry of default and a default judgment." United States v. Real Property & All Furnishings Known as Bridwell's Grocery & Video, 195 F.3d 819, 820 (6th Cir. 1999). Entry of default and entry of default judgment are distinct concepts that must be treated separately. Northland Ins. Co. v. Cailu Title Corp., 204 F.R.D. 327, 47 Fed. R. Serv. 3d (Callaghan) 733, 2000 U.S. Dist. LEXIS 12718 (W.D. Mich. 2000). District courts are more willing to set aside an entry of default than a final default judgment. See OJ Distrib. V. Hornell Brewing Co. 340 F.3d 345, 353 (6th Cir. 2003).

19.     Garnishees therefore must use the excusable neglect standard up to a certain point, not as proposed by Plaintiffs, **but with the more favorable good cause standard to be applied in determining whether or not to set aside the default**. The correct standard in determining whether to set aside the default is good cause. See <u>EEOC v. Mike Smith Pontiac GMC, Inc.</u>, 896 F.2d 524, 528 (11th Cir. 1990) requiring defendants to direct the court to proper standard.

**C. Garnishees' Motion fails to present evidence of Excusable Neglect.**

20.     The determination of what constitutes excusable neglect is generally an equitable one, taking into account the totality of the circumstances surrounding the party's omission. See, e.g., <u>Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership</u>, 507 U.S. 380 (1993) (discussing excusable neglect under Bankruptcy Rule 9006(b)(1)). See <u>Sloss Indus. Corp. v. Eurisol</u>, 488 F.3d 922, 934 (11th Cir. 2007) applying said standard to a default judgment under Rule 60(b)(1).

21.     At Garnishees' Motion (ECF 331 at ¶ 4) officer for Garnishees Manuel A. Keesee stated through proffer that he failed to save the date in the calendar for filing an answer, but was more than willing to resolve the issue. He at least contacted the Attorneys for Plaintiffs. See Affidavit of Keesse at ¶8 as Exhibit 1. This is also corroborated by the Affidavit of Kerry S. Culpepper (ECF 333-2) stating that Keesee at least tried to communicate and inquire about the nature of service with the opposing Attorney. Keesee also thought that the matter was part of a larger scam advanced by Muszynski. See Affidavit of Keesse ¶8.

22.     Failing to save a calendar date under these circumstances, believing that the officer (Keesee) was being a victim of a fraud, and after having made at least once

confirmed phone call to an unknown Attorney (Culpepper) more than suffices for the good cause standard and could be determined as an "otherwise defend" action under Solaroll. Case law also provides similar results under less favorable circumstances. See ECF 331 at ¶ 12 for County National Bank of North Miami v. Sheridan, 403 So. 2d 502 (Fla. 4th DCA 1981) (Writ reached bank attorney whose secretary, due to sudden illness, failed to set up a file and calendar the garnishment proceeding for a proper response); Florida Aviation Academy, Dewkat Aviation, Inc. v. Charter Air Center, Inc., 449 So. 2d 350 (Fla. 1st DCA 1984) (inexperienced legal secretary failed to calendar the time for filing an answer to the complaint).

23. Plaintiffs use Sword v. Dolphin Moving Sys., No. 8:19-cv-1073-T-02SPF, 2020 U.S. Dist. LEXIS 733, at *10 (M.D. Fla. Jan. 3, 2020) to support their contention of excusable neglect. Sword is not applicable as it relates to vacating a default judgment under Rule 60(b) three months after the entry of judgment.

24. Taking into account the totality of the circumstances surrounding the Keese's omission, the fact that Trial judges should keep in mind that the Garnishees are not an original debtor, the honest belief that Keesee was being scammed, and that Keesee made an honest effort to communicate should more than satisfy the good cause standard and provide excusable neglect for setting aside a notice of default. Also, the Garnishees already answered, raised defenses, and shared partial discovery with the Plaintiffs raising a Solaroll issue. Equity requires Garnishee to not be responsible for debtors' judgment.

**D. Plaintiffs' argument that the Motion fails to present a meritorious defense**

25. The meritorious defense for a Garnishee in accordance with the Florida Statutes is to provide an answer. Nothing in § 77.04 requires a Garnishee to provide an affidavit.

26. The Plaintiffs raise an Objection as to the use of *present tense* in Garnishees' Answers at ECF 333 ¶ 29. The Plaintiffs aver that Garnishees' "Answer carefully states only in the present tense "…Garnishee does not have any property belonging to the Judgment Debtors…Garnishee does not know of any persons indebted to Judge Debtor(s)…" Motion [Doc. #331] at ¶¶18-19." Plaintiffs continue stating that "Garnishees fail to state whether it had property of Judgment Debtors or if it knew of persons indebted to Judgment Debtors from the time of service up until it filed the Answer as required in the Writs."

27. § 77.04 only asks "whether the Garnishee knows of any other person who is indebted to the defendant or who may have any of the defendant's property in his or her possession or control" in the present tense and without temporal limitations. Even with the *de minimis* objection, the Answer would still remain the same. As to the property objection, Garnishees reiterate that from September 29, 2022 (date of Writ of service up until today) they have no property of debtors. See Affidavit of Keesse ¶¶ 18-22.

28. **Because the Plaintiffs do not raise Objections to Answers at ECF 331 at ¶¶14-17 those answers should be deemed a meritorious defense, unopposed, and sufficient to set aside the entry of default and satisfy the Florida Statutes.**

29. The Plaintiffs continue making insinuations and trying to prove that Glo-JET (Garnishees) are part of the debtors. First, Garnishees are not debtors. Second, all the

allegations put forth by Plaintiffs are cursory, barebones and perfunctory in nature. Let us see:

30. "Garnishees cannot argue that they have no legal ties or property of judgment debtor (Muszynski) when they knowingly conduct business with him to export gold and other minerals from Africa on Garnishees' Private Charter Planes even though they get paid from the numerous alter egos such as Rudolph Trident LLC to avoid his creditors because they know Muszynski is the true party in interest. See Exhibit "P-3" (Muszynski describes the various trusts and LLCs he has set up to conceal his ownerships)." ECF 333 at ¶29.

**Answer:** It is critical to state herein that the Garnishee strictly follows Standard Procedures of Conducting Business – which has been published on the company's website for the public to see Ref: https://www.glo-jet.com/wp-content/uploads/2021/04/Standard-Procedures-with-Glo-JET-1.pdf. Charter Hire process usually commences with the filling of Risk and Compliance Form 401(a) which the charterer must fill and submit together with passport copies for purposes of detailed scrutiny and track down fraud, illegal materials, controlled substances and/or potential scams especially gold and diamonds coming out of Africa. It is in our records that Charles Muszynski never Chartered a Plane with us for his so-called Gold Trade business. See affidavit of Keesee ¶7. Also, Exhibit "P-3" (ECF 311-3) is not probative of any legal or financial relationship with Glo-JET. It does not mention that Glo-JET has any business with debtors. Rudolph Trident LLC is not in the list of clients of Garnishees. Exhibit "P-2" (ECF 311-2) does not mention Garnishees and they do not conduct any business transporting metals from Africa unless it is paid cargo, which is extremely expensive. See

Case 1:21-cv-20862-BB   Document 344   Entered on FLSD Docket 01/09/2023   Page 11 of 15

Millennium Funding V. 1701 Management LLC
21-cv-20862-BLOOM/Otazo-Reyes

11

Affidavit Keesee ¶¶ 6-7. The Garnishees are therefore unable to prove the existence of something that does not exist. Neither can they prove issues that are outside their purview.

31. Garnishees' assertion that there exists no relationship with Defendant Muszynski becomes even more implausible when considered along with Garnishees' fantastical assertion that it merely took over the lease after Muszynski abandoned it – although the payment from Garnishee of $8,055.63 was on July 14, 2021 less than two weeks from when Defendant Muszynski signed the renewal on July 3, 2021 through his alter ego Rudolph Trident, LLC. ECF 333 at ¶29. Keesee has been staying at PDR on and off as a guest since around October 2020. See Exhibit 5 for email with PDR's Lillian Rodriguez evidencing that since that date Andy Keesee has requested to stay at PDR as a hotel guest for himself, and not for a third party or debtors. Exhibit 6 is a screenshot from the account of Garnishees paying said lease on July 14, 2021, not Muszynski. If the Court wishes to see the full statement the Garnishees can file it upon request *ex-parte*.

| 7/14 | Purchase authorized on 07/12 Jetblue 279216 Salt Lake Cty UT S461193804814047 Card 5940 | 637.89 |
| 7/14 | WT Fed#02462 Banco Popular DE P /Ftr/Bnf=Marina Pdr Operations Srf# Ow00001492479366 Trn#210714028779 Rfb# Ow00001492479366 | 8,055.63 |

**Exhibit 6**

**Answer**: The payment from Garnishee to PDR of $8,055.63 was on July 14, 2021, a different date as specified in Debtors' Muszynski lease agreement, this is because Glo-JET took over Muszynski lease agreement after he signed it and couldn't pay for it. However, an executive of Glo-JET was and is the one residing in the apartment, not Muszynski. See Affidavit of Keese ¶¶ 16-18. Also, Plaintiff had discovery with Marina Puerto del Rey, the lessor to Glo-JET. Marina did not provide a lease because Puerto

11

Rico law does not require a written lease, the only thing available to PDR and Garnishees as evidence is an invoice under Andy Keesee or Glo-JET.

32.     Even assuming that some allegation of the residential lease was true, it is objected by Garnishees as the obligation to answer only starts upon service of Writ on Sept. 29, 2022, well beyond the date of the lease. See Section 77.04 of Florida Statutes. Attached as Exhibits 3 and 4 to this Reply are an invoice and statement referencing Glo-JET and Andy Keesee as the ones renting the apartment. Exhibit 4 include 3 statements from September and November 2022 referencing Andy Keesee as he party to the statement, not any of the debtors.

### E. Plaintiffs' argument of Prejudice

33.     The answer and petition to set aside hardly prejudices Plaintiffs as Garnishee has no relationship with the Debtors and no obligation to satisfy their judgment. Plaintiffs state that they have lost an invaluable opportunity to enforce a money judgment while they are pursuing other Garnishees. Also, Garnishees have not actively concealed their communications with Debtors and are more than willing to offer evidence, but for Plaintiffs aggressive moves towards default judgment. Time spent in Court litigating is equally unmeritorious and unsupported by case law. Delaying plaintiff's collection of a judgment or requiring a plaintiff to litigate on the merits of the claim is not sufficient. US v. One Parcel of Real Property, 763 F.2d 181, 183(5th Cir 1985). The mere possibility of prejudice from delay, which is inherent in any case, is not sufficient. Hibernia National Bank v. Administration Cent. SA, 776 F.2d 1277, 1280 (5th Cir 1985).

34.     Plaintiffs have shown no great burden or prejudice. However, Garnishees would undoubtedly suffer a prejudicial outcome and inequitable result if even after joining

the issue the Court enters a default judgment and forces them to pay an obligation that they have never incurred, but for fiction of law. Equity requires the Court to determine that setting aside the notice of default is the proper result as Plaintiffs still can collect from the responsible parties.

### F. Compliance with LR 7.1(a)(3) is not required

35. LR 7.1(a)(3) specifically exempts the Pre-filing Conferences Required of Counsel *for garnishment or other relief under Federal Rule of Civil Procedure 64.*

36. Garnishees' Motion at ECF 331 raises numerous combined remedies emanating from Garnishment, Rule 64 and Florida Statutes. Setting aside the Notice of Default activates Solaroll, and Rule 55(c), yet the Answer must be made in accordance with Florida Statutes.

37. Because remedies under State Law have been invoked triggering Rule 64 it is the honest belief of Garnishees that they are exempt from complying with LR 7.1(a)(3). Also, strict adherence to LR 7.1(a)(3) could jeopardize and severely harm Garnishees putting them in a position of disadvantage if a conference was held between attorneys instead of otherwise defending their rights. An entry of a default judgment in the millions of dollars by a federal court could have a devastating effect including positioning Plaintiffs in an advantageous position *vis a vis* Garnishees. Plaintiffs' request, under the circumstances, is onerous and provides an unjust and inequitable result.

38. Coupling these considerations with the general judicial policy favoring resolution of disputes on the merits, Garnishees' violations (if any) of the Local Rules are not egregious enough to deny their motion outright. See Krauser v. BioHorizons, Inc., No.

10-80454-CIV-MARRA/JOHNSON, 2011 U.S. Dist. LEXIS 159505, at *7 (S.D. Fla. June 30, 2011).

## V. CONCLUSION

39. Entering a Default Judgment under the particular of the case circumstances would be tantamount to a wrong and a gross miscarriage of justice. Garnishee has no relationship with Debtors and no assets from Debtors providing a strong ironclad defense.

40. This Motion has been shared with opposing counsel prior to filing in accordance with LR 7.1(a)(3) and in good faith we have provided time to confer.

**WHEREFORE**, it is respectfully requested from this Honorable Court that it sets aside the default Judgment and that it permits the answer to the Writ of Garnishment.

**RESPECTFULLY SUBMITTED,**

**/s/ ALLAN AMIR RIVERA-FERNANDEZ**
Allan A. Rivera
FL Bar No. 1011093

CAPITAL CENTER BLDG., SUITE 401
239 ARTERIAL HOSTOS AVENUE
SAN JUAN, PUERTO RICO 00918
PHONE: (787) 763-1780
FAX:   (787) 763-2145
E-MAIL: allan@capital.tax

**I HEREBY CERTIFY**: That I, on this same date, a true and correct copy of the foregoing was served by the Court's CM/ECF System to all parties and/or counsel registered to receive such service and by email on to the parties and/or counsel on the Service List below.

Millennium Funding V. 1701 Management LLC | 15
21-cv-20862-BLOOM/Otazo-Reyes

**S/ ALLAN AMIR RIVERA-FERNANDEZ**
**Allan A. Rivera**

## SERVICE LIST

Kerry Culpepper
Culpepper IP, LLC
75-170 Hualalai Road, Suite B204
Kona, HI 96740
kculpepper@culpepperip.com

Joel Rothman
SRIPLAW, PLLC
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
Joel.rothman@sriplaw.com

*Counsel for Plaintiffs*