IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:21-cv-20862-BB

MILLENNIUM FUNDING, INC., et al.,

Plaintiff, February 7, 2023
9:01 a.m.

vs.

1701 MANAGEMENT, LLC, et al.,

Defendant. Pages 1 THROUGH 34

---

TRANSCRIPT OF 3
VIA ZOOM
BEFORE THE HONORABLE BETH BLOOM
UNITED STATES DISTRICT JUDGE

Appearances:

FOR THE PLAINTIFFS: CULPEPPER IP, LLLC
KERRY S. CULPEPPER, ESQ.
75-170 Hualalai Road, Suite B204
Kona, Hawaii 96740

SRIPLAW
CRAIG A. WIRTH, ESQ.
21301 Powerline Road, Suite 100
Boca Raton, Florida 33433

FOR GARNISHEE BUHOSABIO: LUIS R. RIVERA LAW OFFICES
ALLAN A. RIVERA FERNANDEZ, ESQ.
239 Avenue Arterial Hostos, Suite 401
San Juan, Puerto Rico 00918

FOR GARNISHEE TERRY LACY: FORD HARRISON
VIKTORYIA JOHNSON, ESQ.
101 East Kennedy Boulevard, Suite 900
Tampa, Florida 33602

APPEARANCES CONTINUED:

FOR DEFENDANT MUSZYNSKI: MOCKLER LEINER LAW OFFICES
RICHARD J. MOCKLER, ESQ.
600 North Willow Avenue, Suite 101
Tampa, Florida 33606

COURT REPORTER: Yvette Hernandez
U.S. District Court
400 North Miami Avenue, Room 10-2
Miami, Florida 33128
yvette_hernandez@flsd.uscourts.gov

(Call to order of the Court, 9:01 a.m.)

THE COURT: Good morning to everyone.

I'm not certain if we are waiting for anyone else, or if we're ready to call the case and get started.

MR. RIVERA: I don't know, Your Honor. I think I can see everyone.

THE COURT: Okay. Let's go ahead and call the case and we'll get started.

COURTROOM DEPUTY: Calling Civil Case Number 21-20862, Millennium Funding, Inc., et al., v. 1701 Management, LLC, et al.

Counsel, please state your appearances for the record, starting with Plaintiffs' counsel.

MR. WIRTH: Good morning, Your Honor. Craig Wirth, co-counsel for SRip Law for the Plaintiff.

THE COURT: Good morning.

MR. CULPEPPER: Good morning, Your Honor. This is Kerry Culpepper, also appearing for Plaintiffs.

THE COURT: Good morning.

MR. RIVERA: Anybody else from Plaintiffs?

No?

Good morning, Your Honor. Attorney Allan Rivera on behalf of Garnishee Buhosabio.

THE COURT: Good morning.

MS. JOHNSON: Good morning, everybody. Victoria

Johnson, attorney, on behalf of Garnishee Terry Lacy in his individual capacity.

THE COURT: Ms. Johnson, could you state the name of the Judgment Debtor or the Garnishee.

MS. JOHNSON: Terry Lacy.

THE COURT: All right. I think we have one other individual that is attempting to connect.

(Pause in proceedings.)

THE COURT: I just see a name "Class Action Jarrod." I don't know who that is. May just be an observer at this hearing.

All right. Have we made all the appearances?

Let me note that it is after 9:00. The Court did schedule this hearing via Zoom teleconference. That was by way of Docket Entry 370. Let me note for the record that I am in the courtroom. The courtroom doors are open, and any individual is certainly welcome to attend this proceeding, but it does appear that we have appearances by two of the Judgment Debtors and/or the Garnishes.

Let me state that, by way of Docket Entry 370, the Court did enter an order granting the Plaintiffs' motion for a worldwide asset restraint. And the Court did schedule this for hearing. At which time, the Judgment Debtors and/or any other affected persons could challenge the appropriateness of the Court's order and move to dissolve it. And the Court has

received, by way of filings, a notice, which is Docket Entry 390, by the Plaintiff, as well as a response, Docket Entry 386, filed by Mr. Rivera Fernandez.

So at this point, since the Plaintiff does carry the burden to demonstrate that it is entitled to this injunction, if you would like to proceed. I'm not certain, Mr. Culpepper or Mr. Wirth, if you would like to proceed with argument.

MR. CULPEPPER: Good morning, Your Honor. This is Mr. Culpepper. I'll be proceeding with the argument.

THE COURT: Mr. Culpepper, perhaps we should start with advising the Court of the true status of the hearing of the TRO that was issued by the Nevis court.

MR. CULPEPPER: Yes, Your Honor. Yesterday, I submitted the latest filings in the Nevis hearing. That hearing was continued until February the 17th. Mr. Muszynski filed numerous documents in the days before the hearing, making motions. And the Court continued that hearing to give the -- to give the Claimants -- well, they're claimants in Nevis -- but the Plaintiffs an opportunity to file an opposition to Mr. Muszynski's motion.

So the TRO is still in effect in Nevis. Mr. Muszynski was given some money to pay for his day-to-day expenses and for -- a lump sum amount for a personal matter that he had.

THE COURT: All right. And Mr. Culpepper, as you know, the Court held in place the temporary restraining order

until the Judgment Debtors could accurately and completely complete Form 1.977 pursuant to Florida statute, and that you certified that you have been able to ascertain all of the Judgment Debtors' assets.

So my question to you is: What is the status of that? And if you can provide some information of what portion of the judgment entered against the Defendants, the Judgment Debtor, has already been recovered.

MR. CULPEPPER: As far as the money judgment, zero has been recovered. PayPal -- Your Honor, a week ago, entered a judgment against PayPal for about $500 or so. But we haven't received that yet. The -- what was your first part of that question, please, again?

THE COURT: Have the Judgment Debtors completed the requisite form, Form 1.977, in which it gives you information to ascertain the assets of the judgment debtors?

MR. CULPEPPER: Yes. No, they have not, Your Honor. And I want to bring up the contempt. They have not made any attempt to purge the contempt, that order for not filling out that document.

In the Nevis action, Mr. Muszynski disclosed his assets only in Nevis, but not in other counties. So the short answer is no, the form has not been completed. The judgment debtors have not made any attempt to purge that form. And the judgment debtors --

THE COURT: Sir?

MR. CULPEPPER: The judgment debtors have also not complied with the latest discovery order at Docket 371, where they were ordered to respond to a request for production of documents and to disclose a time for a deposition.

That -- in that same discovery order, the request for admissions that were submitted, that the judgment debtors ignored, were deemed admitted. Those requests for admissions are at Docket Entry 357-1. By the fact of those being deemed admitted, Mr. Muszynski has admitted that he's depleting assets, that he's moving money out of this jurisdiction to avoid the judgment.

THE COURT: And Mr. Culpepper, what authority are you relying upon that it's appropriate to enter an asset restraint, like the one that you have requested of this Court, after entry of a final judgment?

MR. CULPEPPER: The -- first, this Court's inherent authority to enforce its own money judgment; the contempt order that this Court already entered against Mr. Muszynski for failing to disclose assets; his -- frankly, his numerous acts of committing perjury in documents that he filed in this case.

I'd like to point out that the judgment debtors didn't file any opposition to the motion. The only possible -- and also, I want to point out. The gentleman "Class Action Jarrod," that's Mr. Muszynski. He's done in this other

hearings. He's done this in Orange County. I would ask the Court to ask him to turn on his video.

THE COURT: Is that who "Class Action Jarrod" is?

MR. CULPEPPER: Yes, Your Honor. That's Mr. Muszynski.

THE COURT: Is that Mr. Muszynski, Mr. Culpepper?

UNIDENTIFIED SPEAKER: No.

THE COURT: Mr. Culpepper, is that Charles Muszynski?

MR. CULPEPPER: Sorry. I was incorrect. That's not Mr. Muszynski. That's -- okay. I was incorrect about that.

Sorry, Your Honor.

THE COURT: All right. Can we continue, sir?

MR. CULPEPPER: Yes.

The only opposition that was filed was by Buhosabio. But it really wasn't an opposition. Their arguments were that the TRO in Nevis is not going to hold up. But the TRO that Your Honor entered was not based on the TRO in Nevis. Your Honor made clear that Your Honor was entering the TRO based on evidence submitted independently that Mr. Muszynski is depleting assets, he's transferring money out of this jurisdiction to avoid the money judgment.

So that -- I don't quite understand what Mr. Rivera is getting at with that. And he also tries to turn around and attack the jurisdiction of the writ of garnishment to Buhosabio. I don't think that's relevant to this motion. But

if Your Honor wants to discuss that, I just want to point out that Buhosabio made a general appearance in their answer. They didn't contest personal jurisdiction. And I also want to point out that Buhosabio filed an answer where they said that they don't have any assets of Mr. Muszynski or the judgment debtors.

It doesn't -- it's contradictory for them to suddenly appear and oppose this worldwide asset restraint of the judgment debtors, if their position is they don't have any money of the judgment debtors.

THE COURT: Well, Mr. Culpepper if, in fact, the Garnishee Buhosabio has responded that there are no assets that are in their possession with regard to the judgment debtors, the Defendants in this action, then are you representing or perhaps moving to ensure that any preliminary injunction is not as against Buhosabio, similar to Glo-Jet, where the Court just received a motion to voluntarily dissolve that writ of garnishment based on the recognition that that Garnishee did not have possession of the funds by the Judgment Debtor?

MR. CULPEPPER: This is a different situation than Glo-Jet. To be frank, I intend to deny Buhosabio's answer on behalf of the Plaintiffs.

But I just want to point out it's a contradiction. If Buhosabio is going to say that they don't have any assets of the Judgment Debtors, then why are they here vigorously trying to contest this worldwide asset restraint? They can't have it

both ways and say they don't have any money --

THE COURT: I agree with you. You can't have it both ways. And I suspect that Mr. Rivera Fernandez will certainly be forthright in -- they're advising the Court that there are no assets that the garnishee holds, and therefore there's really no standing to challenge the scope of the Court's order, or Mr. Rivera Fernandez will tell the Court that perhaps there are assets and will make an argument that under the law that this Court must apply that the Court does not have the ability to enter a preliminary injunction with regard to this scope.

So should we, Mr. Culpepper, perhaps allow Mr. Rivera Fernandez to answer that question in whatever way is the truth?

MR. CULPEPPER: Yes, Your Honor.

THE COURT: Mr. Rivera Fernandez?

MR. RIVERA: Yes, Your Honor.

Our stance right now is that we do not have any assets from -- as the information gathered -- from the Judgment Debtors, that we can turn over -- or the information as required by the Florida statutes that we can turn over the Plaintiffs.

However, the reason that we are appearing here, is because there are facts that may be used if in Plaintiffs' petition against Buhosabio as it directly references us on numerous occasions at Docket 360. And we don't want that to come back and bite us after this hearing is done. And then

this -- in fact, if the order is entered, and we have nothing to do with it, we don't have an issue with the order. But in accordance with the facts as stated in 360, this injunction may hinder the operations of Buhosabio. And that's something that we -- we do not -- we do not want to happen.

Also, there is a larger issue here, Your Honor. This Court probably may not have jurisdiction because it is drawing from the authority on the Florida statutes to impose garnishment in another jurisdiction. And in Nevis, those matters need to to be dealt in accordance to Nevis law, which is kind of complicated and have a lot of protection for debtors, in accordance to the brief research that I have enumerated in my response.

If it is Plaintiffs' position that we have nothing -- we already answered. If it is Plaintiffs' position that it is not going to enforce this TRO against us, then, yeah, we definitely have no standing. I more than certainly agree, and I will be happy to withdraw any objections. But I do know -- and -- that this will come back to us. That is why we're appearing. That is why Garnishee Terry Lacy is also appearing. Because there is some factual assertions in Plaintiffs' motion that affect us. If it wasn't that way, we wouldn't be appearing, Your Honor.

THE COURT: Mr. Culpepper, the Court certainly has jurisdiction to enter a preliminary injunction, because the

Plaintiff holds a valid judgment. And certainly you have set forth, by way of your filings, that there's irreparable injury in that there's been a transfer or a shifting of assets that has prevented any recovery.

My question to you, Mr. Culpepper, is with regard to those Judgment Debtors, while it appears that the Plaintiff has, at least by way of the filings, set forth a sufficient basis with regard to those two prongs, as well as the public and private interest factors in terms of whether, in fact, this Court should enter that order -- my direct question to you is one that Mr. Fernandez Rivera raised, and that is, Mr. Fernandez Rivera has filed a response on behalf of Buhosabio. This is a Garnishee, not a Judgment Debtor. And the question that is directly before the Court is why the Court should expand the scope of its order to include Garnishees and individuals that have filed with the Court statements that they hold no assets on behalf of the Judgment Debtors.

MR. CULPEPPER: Your Honor, I don't think there has to be an expansion. It's simple. If you have assets of Mr. Muszynski, or assets that he controls, you need to freeze them and don't let him dissipate them. So if Mr. Lacy and Mr. -- Mr. Lacy and Buhosabio's position is that they don't have any assets or money of Mr. Muszynski, they have nothing to be worried about.

Now, the problem is they do hold assets of

Mr. Muszynski. They hold it through the various trusts that he uses to obscure his ownership. That's why they're here today, and that's why they're concerned. So the simple -- the order doesn't have to be expanded. It's simple. If Mr. -- I'm sorry -- Mr. Lacy and Mr. -- and sorry -- Buhosabio's position is correct that they don't have any assets or funds of Muszynski, or that he controls, they don't have to do anything and they shouldn't be worried about this order. They know what they have, and they know who owns their companies. They know who he sends the money to. They know who transfers money to them.

THE COURT: And Mr. Fernandez Rivera, why wouldn't it work both ways? That is, you've represented not only in your filings, but you've represented to this Court that Buhosabio holds no interest in any of the Judgment Debtors' assets. If that is the case, and if you do not possess any assets, then you would not be implicated or restrained by the Court's order. That is, there would be no assets in which this order would apply to. So why are you arguing against its implementation or its effect as to your client?

And I'd like you to explain to me how you're making the representation that you hold no assets, no assets in trust, no assets in any type of a vehicle that belongs to the Judgment Debtors. To that extent, I don't know why you're opposing the entry of this order and how it would possibly apply to you if

that statement that you made to the Court is correct.

MR. RIVERA: Your Honor, because the same statements that Attorney Culpepper is making is trying to get at us by saying if we don't have assets, we don't have assets. And then he says that we have assets. So it's a never-ending story of following up against Buhosabio, when there's nothing for us to hand out.

However, the factual implications of Mr. Culpepper is that we have assets, that somehow Mr. -- the Judgment Debtor -- sorry -- I forget his name -- Mr. Charles -- owns the assets of the company or its a vehicle for him. Then that's what we're arguing here. I don't -- and as I stated before, if my answer is taken, we wouldn't have any standing to challenge here. But the problem, as I already mentioned to the Court, is that in Docket 360 Buhosabio is mentioned numerous ways as part of Mr. -- of the Debtor, of Mr. Muszynski, something that we are challenging. And we don't want -- this injunction to simply not affect the operations of Buhosabio.

If the injunction is solely against Muszynski, then, Your Honor, by all means -- and the Judgment Debtors, the Plaintiffs have a right to enforce their judgment and all that. But not against someone that isn't a garnishee or a third party. That is our position.

THE COURT: But the Plaintiffs have filed sufficient information. They have argued, and it's set forth in the

filings with the Court, that Mr. Muszynski shifted profitable ventures owned by 1701 to his other controlled entity Buhosabio, and placed the bank accounts in the name of Terry Lacy to attempt to conceal his ownership. And that's at Docket Entry 311-3.

So why would that be -- why would that not be sufficient for the Court to enter an order as to Buhosabio, because there's evidence that the Judgment Debtor is concealing and transferring his assets in order to avoid the payment of this judgment?

MR. RIVERA: Well, Your Honor, in accordance to our answer that we have filed, we don't have any assets from him. And as I already mentioned, those are the facts that are affecting us. And that is why we're appearing at this hearing when it affects us.

MR. CULPEPPER: Your Honor, this is Mr. Kerry Culpepper for the Plaintiffs. I don't want to speak out of turn. May I continue?

THE COURT: Mr. Culpepper?

MR. CULPEPPER: Yes. As I said, again, if Buhosabio has no assets of Muszynski or the other Judgment Debtors, they have -- or controlled by the Judgment Debtors, they have no concern.

The -- we can't play word games here. Mr. Muszynski owns these entities through a trust. He is the manager of the

trust -- or I'm sorry -- or the beneficiary of the trust. Mr. Lacy and Mr. -- well, Mr. Lacy and Buhosabio know who owns the company Buhosabio. They can't play word games and say because it's owned by a trust that it's not owned by Muszynski. They know who sends the money. They know who the money's been transferred from. I've seen the accounts. I've seen the transfers from the AUH account into the Buhosabio account.

MR. RIVERA: Are you done?

MR. CULPEPPER: Yes. I'm sorry. Go ahead, Mr. Rivera.

THE COURT: Did Ms. Johnson want to speak of behalf of Terry Lacy, since I have a docket filing that states that: "AUH20 holds 1701 that has been abandoned. It used to own LiquidVPN, but due to the DMCA action brought by the copyright troll, total loss. Buhosabio's account is in Terry Lacy's name and Social Security number."

Ms. Johnson, since you've appeared today, did you want to speak on behalf of Terry Lacy?

MS. JOHNSON: Yes, Your Honor. Very briefly.

So I represent Mr. Lacy in his individual capacity only. And I think at the appropriate time we will engage in appropriate motion practice to dissolve the writ as against him. But at this time Mr. Lacy individually is still part of this case because Your Honor gave the Plaintiffs time -- until I think February 9th to reply to the answer.

We already filed the answer saying that individually Mr. Lacy has -- holds no assets, no personal property of Mr. Muszynski, and he is not aware of any other persons or entities who hold his assets.

So at this point, we're just waiting basically for the Plaintiffs to reply. But my position, I think, with respect to this hearing is similar to Mr. Rivera's position because we -- it is true that Mr. Lacy doesn't hold any assets. So in theory, the order would not affect him. If he doesn't have any assets, there are no assets to restrain. I agree with that. I guess I'm appearing more in a capacity of an affected individual -- which is what the order states, that anybody who is an affected person, you know, would like to speak up, essentially show up. So this is the reason for why I'm here.

And at this point -- and maybe Your Honor would sort of take a note of that and let me know if we should just go ahead an engage in motion practice at this point on behalf of Mr. Lacy individually to dissolve the writ. Because any alleged evidence that Mr. Culpepper, on behalf of the Plaintiffs, has been able to present, concerns Mr. Lacy as an officer of Buhosabio. There is nothing in this case that I have seen or that has been presented to me by Mr. Culpepper, or by his team, that ties Mr. Lacy in his individual capacity to the Judgment Debtors.

The only connection that Mr. Lacy, my client, has to

Mr. Muszynski is that they know each other. So I think Mr. Lacy is sort of -- his name is thrown around. But the only alleged evidence of any connection to Mr. Muszynski is by him being the officer of Buhosabio.

So -- and I'm -- again, I'm not here to say that I have the standing to challenge the order, and especially because there are no assets to restrain. But I just wanted to put that on the record, that, as it comes to Mr. Lacy individually, he doesn't really have any business being a part of this case as a garnishee because, again, we filed the answer saying that there are no assets that he holds in his individual capacity.

THE COURT: All right. Thank you, Ms. Johnson.

Mr. Culpepper?

MR. CULPEPPER: Yes. Thank you, Your Honor.

I don't know what the basis is for saying that someone cannot hold money in their individual capacity, but hold it in one capacity. You either have the money, or have control of it, or you don't.

Now, what Your Honor pointed to earlier is the statement from Mr. Muszynski that Mr. Lacy holds the bank account under his Social Security number, not the EIN of Buhosabio. I filed -- in respect to Mr. Lacy's answer, we filed a reply yesterday at Docket Entry Number 388 denying that -- denying the answer of Mr. Lacy. And we included

factual assertions, detailed factual assertions, alleging that Mr. Lacy is basically the nominal figurehead of Buhosabio, who was put in place just so that Mr. Muszynski can conceal his ownership. And to be frank, Mr. Lacy's answer to the writ makes that clear. He -- according to website, he's the CEO of WasteWiser, but he doesn't even know if the company has customers.

So I want to reiterate, I don't -- I disagree with the premise that someone can answer a writ and separate their personal capacity from their capacity as an officer. They either have -- they know what they know. And you don't have two compartments in your brain where you can separate them out.

MS. JOHNSON: Your Honor, if I may respond.

The Plaintiff served two separate writs of garnishment. One was served to Mr. Lacy in his individual capacity, and one served as to Mr. Lacy as an officer of Buhosabio. So Mr. Culpepper has been able to separate the two when he served the writs.

So -- and just now he mentioned that Mr. Lacy is, quote, a nominal figure in Buhosabio and Buhosabio's CEO. Once again, he's talking about Mr. Lacy only being an officer of Buhosabio. There is no discussion about him -- being Terry Lacy -- in his individual capacity as Garnishee. So at this point, I think since he was able to separate the two, again, serving two separate writs, I think we should be able to

separate the two and let Mr. Lacy in his individual capacity be dismissed from the case as a garnishee. And surely Mr. Culpepper will continue to challenge the relationship of Buhosabio with the judgment.

THE COURT: Well, Ms. Johnson, I mean, logic would tell all of us that that argument is belied by the fact that there's a document that expresses that Buhosabio's account is in Terry Lacy's name and his Social Security number.

So you know, I think it's really hard to make that argument, with -- you know, separating the corporate man from the individual man, when he uses his own Social Security number.

MS. JOHNSON: Yes, Your Honor.

And I would like to point out that it is true that Mr. Lacy opened the bank account on behalf of Buhosabio to pay normal operating expenses. However, the only piece of evidence that Mr. Culpepper is citing is Mr. Muszynski's email to somebody else, stating that Mr. Terry Lacy was attempting to help him conceal the ownership of the assets. But that's the only evidence that we have.

There's absolutely no evidence -- no emails no communications between Mr. Muszynski and my client, Mr. Lacy, concerning any of that. In fact, we turned over the complete communications between Mr. Lacy and Mr. Muszynski to Mr. Culpepper already. And there is nothing beyond: "Hey,

how's your family doing?"

So it is a witch hunt a little bit when it comes to Mr. Lacy individually. So I -- again, if there's any evidence of maybe Mr. Lacy doing something on behalf of Buhosabio, that, Mr. Culpepper can challenge. But since there is a separate writ served to him individually, I think that needs to be kicked out of the case, and Buhosabio obviously would continue to -- you know, to defend against the claims.

And again, he's just a garnishee at the end of the day. He's not -- as Your Honor pointed out, he's not a judgment debtor. He's not a defendant of this case. However, you know, I feel that my client has been treated a little bit as a defendant in this case. And at this point its become expensive and harassing to him individually because now he's having to dish out the money to pay me, while, again, he filed a writ stating he has no assets of Mr. Muszynski.

THE COURT: All right. Mr. Culpepper, did you want to address the scope of the issuance of any preliminary injunction?

MR. CULPEPPER: Yes, Your Honor.

And before I say that, I did -- there are a lot of docket entries in this case. I believe there was a single writ issued to Mr. Lacy. There was not two writs listed to him in different capacities.

MS. JOHNSON: There were two writs.

MR. CULPEPPER: Do you have the docket entry for those two writs?

MS. JOHNSON: Absolutely.

MR. CULPEPPER: Like, what were the two different writs to Mr. Lacy, one individual and one personal?

MS. JOHNSON: Yes. I can tell the Court the docket entry numbers.

MR. CULPEPPER: You mean 360 and 361?

MS. JOHNSON: One moment, please.

THE COURT: 320 is one.

MS. JOHNSON: 320 is to Mr. Lacy, yes.

And I believe it's 319. But let me double-check.

There was -- in a package, Your Honor, that Mr. Lacy sent to me originally when he retained me, there was a writ also to Terry Lacy, CEO, I believe, WasteWiser, I want to say, that is a d/b/a of Buhosabio.

MR. CULPEPPER: Your Honor, this is Kerry Culpepper.

I think she is talking about a subpoena that was to Mr. Lacy as CEO.

THE COURT: Yeah. There's one writ. I don't see a second writ.

MS. JOHNSON: Yeah. I know that there was -- I have to look. But I mean, I know that there was a writ to -- or a document to Mr. Lacy CEO either of WasteWiser or Buhosabio. At least this is what he got in his packet, from what I recall.

But I don't have it in front of me right now. So we can -- but either way, I mean, Buhosabio -- clearly, Terry Lacy has been connected to Buhosabio as an officer of Buhosabio. So I don't see how -- you know, why he would be as a garnishee in this case both in his individual capacity and as an officer of Buhosabio, especially once we -- since we served an answer saying that he has no assets.

And I think Mr. Culpepper may have his theories as to there is some, you know, conspiracy to -- you know, to conceal. But the answer is what it is. There are no assets to turn over.

MR. CULPEPPER: Your Honor, this is a different issue. But just to reiterate, at Docket Entry Number 388, we filed our reply to Mr. Lacy's answer. We made clear opposition on that part.

And returning to the scope of the preliminary injunction, I -- to be frank, you know, I would urge the Court to make clear that Buhosabio and Mr. Lacy have to restrain assets that are controlled or owned by Mr. Muszynski or the other Judgment Debtors. Because they seem to be taking the position that because it's a trust -- well, what I've noticed is that Mr. Rivera was being very careful. He was saying: "Assets in Florida." This is a worldwide order. So if they know of any assets that they control through a trust that maybe isn't in Florida, they should restrain them.

So you know, I just -- I would urge the Court to basically adopt the TRO as a preliminary injunction, but make clear that Buhosabio and Mr. Lacy also need to restrain assets that they know are owned or controlled by the Judgment Debtors.

And in view of the Judgment Debtors' continued contempt that hasn't been purged, I would respectfully request the Court to cancel the bond that was paid and allow the Plaintiffs to get back the injunction bond.

THE COURT: All right. Is there anything further?

MR. RIVERA: Your Honor, from our behalf, I think that, as our position, we already filed a motion. And I think that it can affect our operations. However, we state that we do not have, again, any property belonging to that -- or any control from this Mr. Muszynski over the company. And we're here to try to rebut the factual assertions. And we believe that this order, at the end of the day, will affect us. That is our position.

THE COURT: All right. And I do see that Mr. Mockler, Mr. Muszynski's lawyer, has made an appearance.

Sir?

MR. MOCKLER: Yes, Your Honor.

I was testifying in another matter at 9:00 a.m. I was retained by Mr. Muszynski years ago simply to file an objection and a motion to quash the service of process.

I believe I woefully misunderstood -- in Florida state

court when a judgment terminates and a case is over, you're excused from being counsel of record. And that was my understanding in this court as well. I researched that. And it appears that that is not the case, that there's not an automatic termination of representation even after a judgment is entered in federal court -- or at least I couldn't find any support for that, as is provided by the Florida Rules of Judicial Administration.

Mr. Muszynski has asked expressly that I not represent him, not move forward, and that I file a motion to withdraw in this case. So I don't have any authority to speak for him at the present time, but I will be filing a motion to withdraw.

THE COURT: Well, you've already filed it, have you not?

MR. MOCKLER: Mr. Gartenlaub filed one. And I'm filing as well. But I have no authority to speak for Mr. Muszynski today. He hired me, I believe in 2020, I want to say, or thereabouts.

THE COURT: Are you still counsel of record on the Millennium case, Docket Entry 21-cv-20862?

MR. MOCKLER: Well, that was the whole dispute, Judge -- or misunderstanding, perhaps. Judgment was entered, and I thought my role in the case had terminated. I only filed a limited appearance to contest the service of process because Mr. Muszynski no longer lived in the United States and was not

even a United States citizen anymore. But I believe that actually started in, I want to say 2019. So we're talking about -- I appeared four years ago for that purpose.

THE COURT: All right. Because I do have Docket Entry 363, that is Douglas Gartenlaub's motion to withdraw.

MR. MOCKLER: I am filing one today as well.

I just saw that this hearing was occurring. And I -- after researching, I don't have the clear cover of having the judgment terminate the case, which was my prior understanding -- I mean terminate my representation in the case.

THE COURT: So having the understanding that you are still representing the Judgment Debtor, obviously, much of the argument and the discussion is related to Mr. Muszynski's transferring of assets in order to avoid the payment of this judgment. Are you here to speak to any of those issues?

MR. MOCKLER: I am not informed or authorized to do so. I don't have any knowledge of anything he's done financially. I was his active counsel in 2019 and 2020. And I did attempt to assist him with filling out the -- the debtor form, and I believe I filed that on his behalf.

THE COURT: The debtor form that Judge Otazo-Reyes determined was inaccurate and that Mr. Muszynski be found in contempt of court for submitting those inaccuracies?

MR. MOCKLER: I can't speak to that, Judge.

THE COURT: Well, I just -- I'm just trying to understand. There was a Report and Recommendation, Docket Entry 322, in which Magistrate Judge Otazo-Reyes recommended that Mr. Muszynski be found in contempt of court for submitting a Form 1.977 that included inaccuracies.

MR. MOCKLER: If that's what the Court represents. I'm not aware of that or ...

THE COURT: All right, sir.

MR. CULPEPPER: Your Honor?

THE COURT: Then it's clear that there is no objection by Mr. Muszynski with regard to the entry of this preliminary injunction, by way of a lack of filing or a lack of objection at this hearing.

Is there anything further, Mr. Culpepper?

MR. CULPEPPER: Just -- Plaintiffs don't object to Mr. Mockler -- if he wishes to withdraw. But Mr. Mockler submitted the form -- he filed the form that was at issue there. Mr. Mockler emailed a copy of the form to me.

I've exchanged emails with Mr. Mockler concerning deposition -- an attempt to depose Mr. Muszynski. I sent copies of the filings -- the motion order to show cause to Mr. Mockler by email and by mail. That's in the certificates of service. It's astounding that Mr. Mockler would say he doesn't know anything about this case. It was filed in 2021, not in 2019. Mr. Mockler appeared when Mr. Muszynski made a

motion to quash service. That was denied by the Court.

MR. MOCKLER: That was my involvement, was filing the motion to quash service. I, regrettably, tried to assist Mr. Muszynski in providing his affidavit, which I advised him he needed to comply, and obviously that the affidavit should be accurate. If it wasn't, I certainly was not aware of that.

THE COURT: Well, let me state that the Court has received, by way of the courtroom deputy, a letter from Mr. Muszynski. I am going to file it, so the parties are aware of this letter. It shows a courtesy copy to Mr. Gartenlaub, Mr. Mockler, Mr. Rothman, SRiplaw.com, and Mr. Culpepper at culpepperip.com. But I'll file it for record.

But at this point, the record bears out that Mr. Muszynski is represented by counsel. And regardless of his intent to discharge his counsel, there is pending Docket Entry 363. And Mr. Mockler, you've represented that, while you believe your services automatically ended upon the entry of the final judgment, you're still representing Mr. Muszynski. And as such, the Court disregards any of the contents within that letter. They are inappropriate under our local rule, since he's represented by counsel.

So is there anything further with regard to this hearing and the motion for a preliminary injunction?

MR. CULPEPPER: Plaintiffs have nothing further, Your Honor.

THE COURT: Mr. Rivera Fernandez?

MR. RIVERA: No, Your Honor. Nothing from Buhosabio.

THE COURT: Ms. Johnson?

MS. JOHNSON: Nothing, Your Honor.

THE COURT: All right. Well, as the parties are well aware, the standard for a temporary restraining order is identical to the standard for a preliminary injunction. And that is binding case law from the Eleventh Circuit.

A party can obtain a preliminary injunction by showing that it's likely to succeed on the merits. Obviously, there is a final judgment that has been entered by this Court that it's likely to suffer irreparable harm in the absence of preliminary relief. Certainly difficulty collecting on a judgment has been shown under the law to be irreparable harm.

The balance of equity tips in its favor, and certainly the Plaintiffs' longstanding inability to collect on a valid judgment certainly allows this Court to make that finding. An injunction is in the public interest, since this the Court has an interest in ensuring that the parties that are bound by this Court, by way of any order or judgment, comply with it. And there's been certainly sufficient information that has been presented to the Court that Mr. Muszynski has concealed assets in order to avoid paying this judgment.

So let me certainly find that the injunctive relief is in the public interest. It will be used to enforce this

Court's money judgment. The public has an interest in a court system whose judgments are enforced and certainly to require that litigants who are subject to a judgment testify truthfully with regard to assets that may be in their possession in order to satisfy that judgment. As such, the Court certainly finds that the issuance of a preliminary injunction is appropriate.

Let me address the scope of the preliminary injunction. And I cite directly -- I know that there have been filings that suggest that the Fourth DCA's opinion in Sargeant v. Al-Saleh, 137 So. 3d 432, a 2014 decision, is still good law. And let me educate the party that made that filing that it is no longer good law. And the Supreme Court, in Shim v. Buechel, 339 So. 3d 315, has certainly recognized that under the statute, on proceedings supplementary, that a trial court has the authority to order a defendant over whom it has in personam jurisdiction to act on foreign property. And as such, I do believe that the preliminary injunction (audio distortion).

(Court reporter interruption.)

(Pause in proceedings.)

THE COURT: Can you hear me now?

All right. My apologies.

The request for the preliminary injunction by the Plaintiff is granted.

Is there anything further to address in this action?

MR. MOCKLER: I would only ask whether the judgment -- or whether the Plaintiffs oppose my withdrawal from this action.

MR. CULPEPPER: Your Honor, the Plaintiffs do not oppose Mr. Mockler if he wishes to with withdraw.

And the only remaining thing is the issue of Plaintiffs' request that the injunction bond requirement be dissolved, and it be returned, since the Judgment Debtors have not appeared and have not opposed the requested relief.

THE COURT: That request is granted.

With regard to Mr. Mockler's motion to withdraw, Mr. Mockler, I would need a motion filed. But it would be a consent motion, and I'll enter that order.

And with regard to Docket Entry 363, Mr. Muszynski's other attorney's request to withdraw, is there any objection by the Plaintiff?

MR. CULPEPPER: No, Your Honor. And in fact, we filed a notice of withdrawal of our opposition to Mr. Gartenlaub's motion to withdraw.

THE COURT: And that motion will be granted as well.

Is there anything further that the Court can assist with today?

MR. MOCKLER: I have one last question.

THE COURT: Mr. Mockler?

MR. MOCKLER: In a motion to withdraw, I would

normally provide an address and/or email address where the party might be served pro se. Does Mr. Culpepper have that that information available, as he might know better than I?

MR. CULPEPPER: This is Mr. Culpepper.

Yes. We have -- through the Nevis action, we have Mr. Muszynski's address. And we don't have his email address, but we have his address -- physical address.

MR. MOCKLER: I can provide an email address, if that would help with the motion.

THE COURT: For purposes of any future filings, particularly this order, Mr. Culpepper, if there's information you could provide to Mr. Mockler that can be part of the order, so that the clerk has an address for Mr. Muszynski in which to serve future pleadings.

MR. CULPEPPER: Yes, Your Honor, we will do -- I will do that.

MR. MOCKLER: And I'll include it today.

MR. CULPEPPER: And Your Honor, just to be clear, in the previous sentence, when you said you were going to allow them to withdraw, you also said, yes, the injunction bond requirement would be dissolved, Your Honor?

THE COURT: I'm sorry. What was the last part?

MR. CULPEPPER: I had requested that the injunction bond be dissolved, and I wasn't sure --

THE COURT: Yes. Mr. Culpepper, I did address that,

yes. And that request is granted.

MR. CULPEPPER: Thank you very much, Your Honor.

THE COURT: All right. If there's nothing further, then, Mr. Culpepper, let me ask that you submit a proposed order for the Court's consideration. And Mr. Mockler, if you'll submit that motion with a proposed order as well.

MR. MOCKLER: Thank you, Judge.

THE COURT: Okay. All right. Have a nice day, everybody.

MR. MOCKLER: Thank you.

MR. CULPEPPER: Thank you, Your Honor.

MR. RIVERA: Good morning, Your Honor.

(Proceedings concluded at 9:51 a.m.)

UNITED STATES OF AMERICA )
ss:
SOUTHERN DISTRICT OF FLORIDA )

C E R T I F I C A T E

I, Yvette Hernandez, Certified Shorthand Reporter in and for the United States District Court for the Southern District of Florida, do hereby certify that I was present at and reported in machine shorthand the proceedings had the 7th day of February, 2023, in the above-mentioned court; and that the foregoing transcript is a true, correct, and complete transcript of my stenographic notes. Please note: This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of reporting remotely.

I further certify that this transcript contains pages 1 - 34.

IN WITNESS WHEREOF, I have hereunto set my hand at Miami, Florida this 8th day of April, 2023.

/s/Yvette Hernandez
Yvette Hernandez, CSR, RPR, CLR, CRR
400 North Miami Avenue, 10-2
Miami, Florida 33128
(305) 523-5698
yvette_hernandez@flsd.uscourts.gov